## In the United States District Court
## For the Eastern District of Pennsylvania

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> JOHN J. KORESKO, V, et al., <br><br> Defendants | Civil Action No. 2:09-cv-00988 |

**Defendants', John Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust and Single Employer Welfare Benefit Plan and Trust,**

## MOTION FOR PROTECTIVE ORDER TO QUASH SUBPOENAE
## AND REQUESTS FOR DOCUMENT PRODUCTION
### And
## Defendants' Request for Sanctions
## under 28 USC § 1927 and the Federal Rules of Civil Procedure

Defendants move this Honorable Court to quash the subpoenae duces tecum issued by the Department of Labor, copies of which are attached. Defendants incorporate by reference their attached Memorandum of Law.

Respectfully submitted,

_____

John J. Koresko, V

August 14, 2009

**In the United States District Court**

**For the Eastern District of Pennsylvania**

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor,<br>United States Department of Labor,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN J. KORESKO, V, et al.,<br><br>        Defendants | Civil Action No. 2:09-cv-00988 |

**Defendants', John Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust and Single Employer Welfare Benefit Plan and Trust,**

**MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO DOCUMENT PRODUCTION**

**And**

**Defendants' Request for Sanctions
under 28 USC § 1927 and the Federal Rules of Civil Procedure**

# TABLE OF CONTENTS

I.    PROCEDURAL BACKGROUND ................................................................................. 1

II.   Summary of the Argument ....................................................................................... 3

III.  Standard For Protective Order ................................................................................ 5

IV.   Argument ................................................................................................................. 6

    A.    Incorporation of Proceedings .......................................................................... 6

    B.    Lawyers for DOL have no power to issue demands for discovery under the Federal Rules if the district court does not clearly possess jurisdiction or the agency does not have standing. 6

        1.    The court has inherent authority to prevent abuses. ...................................... 6

        2.    No federal court, and no federal agency, can presume that it has any jurisdiction to act on any matter. ..................................................................................................... 7

        3.    If subject matter jurisdiction is questioned, lawyers for the DOL should not be permitted to issue discovery requests because of probable and potential abuses. .................. 9

    C.    When jurisdiction is in question, federal courts who have allowed discovery have placed great limits on it, but discovery is not required if the record is well-enough developed for a decision. ................................................................................................................... 13

    D.    Significant privacy interests weigh against the requested discovery. .............................. 15

    E.    Until DOL meets its burden to prove jurisdiction this Court must not allow DOL to ring "the bell that cannot be unrung." ......................................................................................... 16

    F.    The Court must deny the requested discovery in an instance such as this, where the burden and expense of the proposed discovery outweighs its likely benefit. .......................... 17

    G.    There cannot be discovery as there has been no meet and confer. ................................... 19

    H.    DOL cannot show substantial need for the materials to prepare its case and can, without undue hardship, obtain the substantial equivalent by other means.  DOL already has the Plan and Trust Documents.  See Rule 26 (b)(3)(A)(ii). ................................................................ 20

    I.    The information it seeks is for an improper purpose, is likely to harass the Koresko Parties, increase the Koresko Parties' cost of litigation; is unreasonable and is unduly burdensome, particularly because DOL already has made its case in Court and has the relevant Plan and Trust Documents in hand. See Rule 26(g)(1)(B)(ii) and (iii). .................................. 21

    J.    DOL needs leave of Court to take the Koresko Parties' depositions. See Rule 30 .......... 22

    K.    DOL has no substantive grounds for discovery because nothing the DOL seeks leads to relevant evidence necessary to keep this case in court. ........................................................... 22

        1.    The DOL has again admitted in 2008 that REAL VEBA and Single Employer Trust are not ERISA plans so there is no ground for discovery. .......................................................... 22

        2.    The discovery requests have nothing to do with the appropriate equitable relief permitted by the statute. ................................................................................................ 23

3.    The discovery requests cannot change the plan provisions that disqualify all non-owner employees who are not eligible for benefits, and therefore DOL cannot obtain relief for them................................................................................................................................. 24

4.    The Circuit Courts of Appeal have rejected the DOL position – even beneficiaries of actual ERISA plans have no claim to demutualization proceeds. ....................................... 26

5.    Discovery is not calculated to reveal anything related to ERISA, because ERISA did not apply before, and it certainly does not apply now. ......................................................... 27

6.    DOL has admitted that the statute of limitations has expired on this case. ................. 29

7.    DOL cannot rewrite the Plan and Trust so as to invent participant rights that do not exist. ...................................................................................................................................... 29

8.    DOL has no cause of action unless the Plan and Trust documents themselves are illegal.................................................................................................................................... 31

9.    DOL seeks discovery of beneficiaries' information, and the private financial data of the defendants,  for an improper purpose – especially when subject matter jurisdiction cannot be established. ........................................................................................................... 32

10.    DOL knows that the fiduciaries of Top Hat Arrangements like REAL VEBA and SEWBT have no liability for breach of fiduciary duty under  ERISA – and the discovery is not going to change that fundamental impediment to jurisdiction. ....................................... 32

L.    DOL's Joanne Jarquin should be held liable for the Koresko Parties' Reasonable Fees and Costs having Served the Notices of Deposition and Instant Motion ................................. 34

V.    CONCLUSION................................................................................................................. 34

Defendants move this Honorable Court to quash the subpoenae duces tecum issued by the Department of Labor.   The discovery is not permitted as a matter of law and has been propounded in bad faith.

## I.  PROCEDURAL BACKGROUND

On March 6, 2009, Plaintiff, Hilda L. Solis, Secretary of Labor,  United States Department of Labor ("DOL"), filed suit against various Defendants claiming violations of the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants John J. Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust and Single Employer Welfare Benefit Plan Trust ("the Koresko Parties") on March 12, 2009 filed an Emergency Motion to Place Case under Seal and for other Equitable Relief as well as an Emergency Motion for Temporary Restraining Order and Other Preliminary and Permanent Injunctive Relief.  After hearing on March 12, 2009, and further briefings, the Court denied both motions on March 31, 2009.  After rejection of their Motion for Reconsideration the Koresko Parties timely appealed to the Third Circuit Court of Appeals on April 21, 2009, at 09-2192.

In a related matter, the Koresko Parties have on Appeal in the Third Circuit the DOL subpoena enforcement Orders of Judge McLaughlin, at 09-1142 and 09-2191. The enforcement action is against Penn Public Trust ("PPT") and PennMont Benefit Services, Inc. ("PennMont"), among other entities and individuals, and includes DOL's request for PPT financial information and PennMont client identification.  The Koresko

Parties also appealed Judge McLaughlin's denial of their motion to find DOL in contempt for bringing the instant action against them.

On July 6, 2009, PennMont, by its attorney John Koresko, removed as Trustee of the Single Employer Welfare Benefit Plan Trust ("SEWBPT) the Defendant Farmers and Merchants Trust Company of Chambersburg ("F&M") (successor by merger to Community Trust Company ("CTC")).  DOL then applied for a Temporary Restraining Order and Preliminary Injunction to maintain F&M as Trustee, enjoin payment of certain Trust expenses and compel production of documents.   In support of its application DOL submitted thirteen (13) exhibits consisting of 200 pages, including an affidavit of its investigator Jocelyn Diaz-Sweeting ("Sweeting Affidavit').  In response the Koresko Parties submitted the affidavit of Jeanne Bonney, Esquire, consisting of forty (40) exhibits and over six hundred seventy five (675) pages ("Bonney Affidavit"). At the July 17, 2009 hearing on the motion, DOL's witness Robin Murray, a Trust officer at F&M, testified that the Trustee could be fired by PennMont "for any reason or for no reason."  *See* Exh 1, 7/17/09 Tr. p.45 L13.   The application for a temporary restraining order was denied at the close of DOL's case without evidence or argument from the Koresko Parties.  *Id*. p. 121 L19, 20. The Court ordered that a preliminary injunction hearing be held prior to the expiration of ninety (90) days from the date F&M was terminated as Trustee. The Court expressed the purpose of the hearing to be to permit the parties an opportunity to fully present their case.  *Id.* p.122 L 5. The Court has since set September 2, 2009, as the hearing date.

A Motion to Dismiss for Lack of Jurisdiction was filed by the Koresko Parties on July 17, 2009, and is still pending before this Court.  The Koresko Parties on July 16,

2009, filed a Complaint and Petition for Injunctive Relief against DOL and numerous individuals, at 09-cv-3152.

On or about August 5, 2009 DOL sent four (4) Notices of Deposition directed to PPT, PennMont, John J. Koresko, V and Jeanne Bonney, the first two being Depositions *Duces Tecum* pursuant to Fed.R. Civ. Proc. 30(b)(6), the latter Oral Examinations. *See* Exh. 2 (Notices of Deposition).   PPT is asked to produce financial, tax, customer and contractual data dating back to 2006. PennMont is asked to produce legal services and plan related documents, including participant names and addresses, without limitation of time.  On August 6, 2009, DOL filed the instant Motion to Expedite Plaintiff's Motion for Order Setting Shorter Deadline for Defendants' Responses to Plaintiff's Document Requests.  The Court denied the Motion to Expedite on August 10, 2009.  The Koresko Parties move for a Protective Order as to the Notices of Deposition and request for documents, and sanctions against DOL's counsel under 28 U.S.C. §1927.

## II. Summary of the Argument

The issues of DOL's investigational jurisdiction under ERISA §504 and standing to bring suit under ERISA §502 have not been resolved.  These are the subject of a pending Motion to Dismiss and three related Third Circuit appeals.  The Court should not allow DOL to put the cart before the horse and circumvent the exact issues that are on appeal.  DOL seeks discovery that is not necessary for the September 2, 2009 preliminary injunction hearing.  In addition, the DOL has not yet proven subject matter jurisdiction.  Recent events make these issues clearer.   Therefore, DOL attorneys had no authority to issue any subpoenae or the discovery requests.

What is at issue is <u>not</u> whether the Koresko Parties have more deposition testimony or documents that can be produced – but whether DOL has the right to question what the Plan and Trust documents already say:

- The trusts are not the plans;

- The assets of the trusts, and further, those of the other defendants are not "plan assets" within the meaning of ERISA;

- No non-owner employee ("NOE") has any property interest in any part of the trust estate;

- The arrangements were set up by the employers for tax purposes and the lack of ownership interests are an intended consequence to prevent taxation;

- PennMont is the administrator with complete discretion;

- Legal services benefits are permitted;

- Non-owner employees are not participants or beneficiaries of either SEWBT or REAL VEBA; and accordingly

- The SEWBT and REAL VEBA are "top hat plans" and the defendants are excluded by ERISA from the fiduciary responsibility provisions DOL seeks to enforce in its lawsuit.

If DOL cannot answer all these in the positive, there is no ERISA claim, no DOL standing, federal court jurisdiction, and no basis for further discovery.

When this Court denied DOL's Emergency Motion for a Temporary Restraining Order and ordered further hearing on DOL's request for a Permanent Injunction it expressly stated its purpose was to "give everyone a full opportunity to present the evidence to the Court for the Court to make a decision." *See* Exh. 1 (7/17/09 Tr., p. 122

L 3-6).  The Court qualified the nature of any discovery, stating it "**could allow for any discovery that's absolutely necessary – not of harassment nature, because the filings here are already voluminous**." *Id*. at L 1-3.  DOL's present discovery request is in direct conflict with this Court's directive and Third Circuit precedent.  This discovery request should be rejected not only because it is completely unnecessary to the Secretary's preliminary injunction motion, but because it constitutes obvious harassment.  **DOL already has all that is needed – the Plan and Trust documents and 350,000 pages of previously produced documents.**  DOL's request further fails as it does not comport with Federal Rules of Civil Procedure 26 and 30.   As a result, a Protective Order should issue and DOL held liable under 28 U.S.C. § 1927 for the Koresko Parties' costs, expenses and attorney's fees reasonably incurred because of DOL's conduct.

## III.   Standard For Protective Order

The Third Circuit recently cited factors to consider in the determination of whether to grant a protective order. *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir.2005).  These factors include:

> (1) whether disclosure will violate any privacy interests;

> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;

> (3) whether disclosure of the information will cause a party embarrassment;

> (4) whether confidentiality is being sought over information important to public health and safety;

(5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefitting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

## IV.       Argument

### A.   Incorporation of Proceedings

In support of this Motion for Protective Order, defendants incorporate by reference their own motion for injunction and supporting memoranda, their Motion to Dismiss and supporting memoranda, the Affidavit of Jeanne D. Bonney and exhibits thereto, and the record of proceedings to date.  In support of its argument that DOL does not have jurisdiction to issue any discovery request, defendants incorporate by reference their Response to Motion for Injunction.

### B.       Lawyers for DOL have no power to issue demands for discovery under the Federal Rules if the district court does not clearly possess jurisdiction or the agency does not have standing.

#### 1.  The court has inherent authority to prevent abuses.

The Third Circuit long ago took a stand against abusive tactics by the government in connection with the issuance of subpoenas.  The Third Circuit held in *In re Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973), (*Schofield I*), and *In re Grand Jury Proceedings*, 507 F.2d 963 (3rd Cir. 1975) (*Schofield II*) a district court, in connection with grand jury proceedings, could deny abusive discovery, or discovery sought by one branch of government for another, or any other unreasonable invasion of

personal rights masquerading as discovery.  The circuit court held that such authority

flows from the inherent power of the district courts, notwithstanding any rules, as

inherent powers are not institutionally embedded and need not flow from a statute.  If

grand jury subpoenae can be limited on grounds not necessarily rooted in a statute or

rule, certainly the same applies to the subpoena of an administrative agency or the

discovery request of a lawyer.

### 2.  No federal court, and no federal agency, can presume that it has any jurisdiction to act on any matter.

The issue of jurisdiction is always open for determination by the court.

*Underwood v. Maloney*, 256 F.2d 334 (3d Cir.), *cert. denied*, 358 U.S. 864, 3 L. Ed. 2d

97, 79 S. Ct. 93 (1958). If a court then determines that it lacks subject matter

jurisdiction, it cannot decide the case on the merits. It has no authority to do so. A

federal court can only exercise that power granted to it by Article III of the Constitution

and by the statutes enacted pursuant to Article III. *Bender v. Williamsport*, 475 U.S.

534, 541, 89 L. Ed. 2d 501, 106 S. Ct. 1326 (1986); *Marbury v. Madison*, 5 U.S. 137, 1

Cranch 137, 173-80, 2 L. Ed. 60 (1803); *see also Willy v. Coastal Corp.*, 503 U.S. 131,

137, 117 L. Ed. 2d 280, 112 S. Ct. 1076 (1992) (noting that "[a] final determination of

lack of subject-matter jurisdiction of a case in a federal court, of course, precludes

further adjudication of it.").  If a case, over which the court lacks subject matter

jurisdiction, was originally filed in federal court, it must be dismissed. *Ray v. Eyster (In*

*re Orthopedic "Bone Screw" Prods. Liab. Litig.),*  132 F.3d 152 (1997).

In the context of an injunction proceeding like the one here, the failure to

establish subject matter jurisdiction is a complete bar to relief because there can be no

entitlement to relief, probability of success on the merits, public interest, or equitable weight on the side of injunction. To grant an injunction when subject matter jurisdiction is in question would most certainly inflict a grievous harm. "Where jurisdiction is found to be lacking, there can be no adjudication of the merits of the case." *Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.),* 132 F.3d 152, 156 (3d Cir. 1997) "A preliminary injunction is not granted as a matter of right. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc*., 630 F.2d 120, 136 (3d Cir.), cert. denied, 449 U.S. 1014, 101 S. Ct. 573, 66 L. Ed. 2d 473 (1980). It may be granted, however, if the moving party demonstrates both a reasonable probability of eventual success in the litigation and that the party "will be irreparably injured pendente lite if relief is not granted." *Id*. at 136*; Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir. 1980). The trial court may also consider the possibility of harm to other interested persons from the grant or denial of the injunction, as well as harm to the public interest. *Eli Lilly & Co.,* 630 F.2d at 136.

A federal court must assume that it does not have the power to act, and this principle must militate against granting any preliminary injunctions, especially if there is a substantial question of subject matter jurisdiction or standing. Federal courts are courts of limited jurisdiction. They possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). The court's jurisdiction cannot be expanded merely through judicial decree. *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

A District Court's authority to enforce subpoenae issued by an administrative agency begins with the accepted premise that federal courts must "scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 30 L. Ed. 2d 383, 92 S. Ct. 418 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270, 78 L. Ed. 1248, 54 S. Ct. 700 (1934)). "It is a principle of first importance that the federal courts are courts of limited jurisdiction. . . . They are empowered to hear only those cases that (1) are within the judicial power . . ., and (2) that have been entrusted to them by a jurisdictional grant by the Congress. . . . The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists." *United States v. Hill,* 694 F.2d 258, 260-1; 224 U.S. App. D.C. 138 (D.C. Cir. 1982). It is clear, moreover, that "the fact that Congress has legislated in a specific area, without more, does not empower a federal court to adjudicate matters arising from or requiring an interpretation of that legislation. Rather, a specific grant of subject matter jurisdiction must exist before a federal tribunal may so act." *Id.* (citations omitted.).

### 3.  If subject matter jurisdiction is questioned, lawyers for the DOL should not be permitted to issue discovery requests because of probable and potential abuses.

If federal courts are to assume that they do not have jurisdiction to act, administrative agencies of the Executive Branch must be bound by a similar presumption. Unless they first demonstrate that they have authority, the courts must not assume that the door to the courthouse is open. And lawyers, government or not, have a duty not to act beyond the powers of the courts which they serve.

Although a subpoena issued under Federal Rule 45 or a Notice of Deposition under Rule 26 is, in a sense, the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions. For example, in *NLRB v. Warren Co.,* 350 U.S. 107, 100 L. Ed. 96 , 76 S. Ct. 185 (1955), the Court held that the lower court had no discretion to withhold sanctions against a contemnor who violated a subpoena. Under traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a "final decision" and therefore is not immediately appealable. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). *See generally*, 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2466, at 87 (2d ed. 1995). Instead, in a criminal or civil proceeding, a witness wishing to contest a subpoena must usually disobey the subpoena**,** be held in civil or criminal contempt, and then appeal the contempt order. *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, 469 (2d Cir. 1996) ("To obtain appellate review, the subpoenaed party must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under [28 U.S.C.] § 1291.").  This is true whether the witness attempting to quash a subpoena is a party to the litigation in which the subpoena was issued or merely a non-party witness. *See Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992) ("A non-party witness ordinarily may not appeal directly from an order compelling discovery but must instead defy the order and be found in contempt in order to obtain review of the court's initial order."); *see also United States v. Nixon*, 418 U.S. 683, 690-92, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

The 1948 revision of *Rule 45* put the attorney in a position similar to that of the administrative agency, as a public officer entitled to use the court's contempt power to investigate facts in dispute. Two courts of appeals have touched on the issue and have described lawyer-issued subpoenae as mandates of the court. *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.,* 893 F.2d 605 (3d Cir., 1990); *Fisher v. Marubent Cotton Corp.,* 526 F.2d 1338, 1340 (8th Cir., 1975). *Cf. Young v. United States ex rel Vuitton et Fils S.A.,* 481 U.S. 787, 821 (Scalia J., concurring). This revision makes the rule explicit that the attorney acts as an officer of the court in issuing and signing subpoenae.  Accompanying the evolution of this power of the lawyer as officer of the court is the development of *increased responsibility and liability for the misuse of this power.* The later development is reflected in the provisions of subdivision (c) of the rule, and also in the requirement that the attorney issuing a subpoena must sign it.

Consequently, attorneys wield the sword of the court, but few federal judges would agree that attorneys possess the temperament of judges. Attorneys can cause great mischief. Persons who object to discovery are forced to go before the Court and seek judicial relief under Rule 45 and, more generally, Rule 26 of the Federal Rules. Under Rule 45(a) of the Federal Rules, without question, this Court would have jurisdiction to entertain a motion to quash a subpoena issued out of this District, but only if there is a pending action before a federal court with federal subject matter jurisdiction. *See Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1552 (10th Cir. 1996).

If, however, a court has no power over a case, it follows there is no jurisdiction purely under the provisions of Rules 26 or 45 for counsel for the government to issue a subpoena, notice or documents request.  Although the government might seek sanctions,

and possibly be sanctioned for improperly employing process of a court without jurisdiction, the court appears limited in how it must respond.  It cannot grant relief, to compel enforcement of discovery or grant protection, except as an exercise of inherent authority.

Lawyers, however, are not given any inherent authority by courts in this country. They cannot unilaterally extend the jurisdiction of the court by simply filling out a form and sending it to an adversary.  For this simple reason, the possibility of sanctions and lack of power, the accepted practice is that discovery is not employed by either plaintiffs or defendants.  Furthermore, courts are apt to refrain from imposing burdens on parties until questions of jurisdiction are resolved.  See *NLRB v. Interstate Dress Carriers, Inc., 103 L.R.R.M. 284,* 1979 U.S. Dist. LEXIS 14342 (D.NJ 1979) (judge decided not to act on subpoena requests because of serious questions of jurisdiction and possible government abuse),

The present case militates against any further discovery until DOL proves its standing, its own jurisdiction and that of this court.  They have had 5 years to build a case.  They have gotten over 350,000 documents.  They have publicized to the press the scandalous allegations of their complaint – a plan abuse of process under *Bochetto v Gibson*.  They have come to the court and said that they can defame anybody with impunity.  And they have caused a fiduciary, F&M Trust, to interfere with the legal defense of the beneficiaries that trustee was bound to serve.  DOL has demonstrated nothing but contempt for the rights of the defendants.

 DOL cannot be accorded any benefit of the doubt in light of its behavior.  If DOL did not have the facts necessary for its injunction, it should not have requested

one.  A denial of discovery is not fatal, as DOL can prove its case at the hearing scheduled by this court.

### C.  When jurisdiction is in question, federal courts who have allowed discovery have placed great limits on it, but discovery is not required if the record is well-enough developed for a decision.

Most of the cases dealing with early "jurisdictional" discovery arise in situations where **personal jurisdiction** is in question.  In such case, the rules tend to be looser. A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction. *See Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994); *Royal Gist-Broades N.V. v. Sierra Products, Ltd.*, 1997 U.S. Dist. LEXIS 20509, No. 97-1147, 1997 WL 792905, at *7 (E.D. Pa. Dec. 12, 1997). The scope of this discovery is within the court's discretion. *See Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999). Jurisdictional discovery is allowed unless the plaintiff's claim is "clearly frivolous." *See Massachusetts School of Law*, 107 F.3d at 1042. A court can deny  discovery on the issue of personal jurisdiction where the party that bears the burden of establishing jurisdiction fails to establish a "threshold prima facie showing."  *See Southern Ocean Seafood Co.,* 1997 U.S. Dist. LEXIS 12159, 1997 WL 539763, at *8.

As a general rule, courts are wary of allowing discovery absent *some* showing of personal jurisdictional facts if a defendant has challenged plaintiff's assertion of personal jurisdiction over him, *because basic fact-finding should precede discovery*. *See, e.g., Poe v. Babcock Int'l, PLC,* 662 F. Supp. 4, 7 (M.D. Pa. 1985) ("Since plaintiff

- 13 -

has met defendants' affidavit evidence with mere speculation, plaintiff's request for an

opportunity to conduct discovery on the matter should be denied."); *Rose v. Granite City*

*Police Dep't,* 813 F. Supp. 319, 321 (E.D. Pa. 1993) ("The Court chooses to exercise its

discretion here and deny Plaintiff's motion requesting discovery because Plaintiff has

failed to make even a threshold *prima facie* showing that the Court has jurisdiction over

the persons of Defendants."). In the context of subject matter jurisdiction, courts appear

to be a little more circumspect. See *Exxon Corp. v. Federal Trade Com*., 436 F. Supp.

1019 (D.Del. 1977) (disclosure of confidential documents not ordered when subject

matter jurisdiction was lacking).

In *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1976) the

Third Circuit said:

> Because at issue in a factual 12(b)(1) motion is the trial court's
> jurisdiction - its very power to hear the case - there is substantial
> authority that the trial court is free to weigh the evidence and satisfy
> itself as to the existence of its power to hear the case. In short, *no
> presumptive truthfulness attaches to plaintiff's allegations,* and the
> existence of disputed material facts will not preclude the trial court
> from evaluating for itself the merits of jurisdictional claims.
> Moreover, the plaintiff will have the burden of proof that jurisdiction
> does in fact exist.

*Id.* at 892.  The court has discretion on how it wants to take evidence in such matters. *Id.*

Consequently, no discovery is required.  The court need only have a record sufficiently

developed for it to justify its decision. If a plaintiff has ample opportunity to argue his

jurisdictional position, but despite the opportunity, plaintiff produces only the barest

conclusory allegations in his complaint, with little to buttress them, dismissal is proper.

*Rosemound Sand & Gravel v. Lambert Sand & Gravel*, 469 F.2d 416 (5th Cir. 1972)

(Sherman Act claim dismissed).

### D.    *Significant privacy interests weigh against the requested discovery.*

Both Rules 26 and 45 contemplate quashing or modifying a subpoena in response to the party's claim that a subpoena calls for disclosure of trade secret or confidential commercial information, not simply the party's "confidential" information. Rather, federal statutes operate to fill the void and protect personal privacy.

The DOL has already seen the Koresko Parties and Community Trust Company vigorously defend privacy rights, and the Third Circuit recognized them.  There is a significant "business" privacy interest that would affect the Koresko Parties if testimony and document production concerning PPT's finances and PennMont's client names/addresses is required.  *See Century Indem. Co. v. Certain Underwriters at Lloyds, London*, 592 F. Supp. 2d 825 (EDPA 2009) (businesses have a privacy interest); *Ray Marshall, Secretary of Labor v. Barlow's, Inc*., 436 U.S.  307, 98 S. Ct 1816 (U.S. Idaho 1978) (business privacy interest is protected under the Fourth Amendment and federal privacy laws).

As set forth herein, the reasons for denying deposition testimony and document production are legitimate and plentiful.  The information DOL seeks goes beyond this lawsuit and is not relevant to the preliminary injunction hearing.  The Parties are embroiled in multiple lawsuits and appeals and this Court has before it a Motion to Dismiss.  DOL's attempts to collect financial information and client names/addresses are at the heart of those lawsuits.  At best, the request for discovery is premature.

The Koresko Parties have already been attacked and embarrassed in other venues, including most recently a commercial arbitration in which DOL's publications were entered into evidence by the Koreskos' adversaries and used in an attempt to

impeach John Koresko's credibility and to prove he had no reputation as a lawyer! As this Court has been apprised, further disclosure by the Koresko Parties is highly likely to end up on DOL's website, casting the Koresko Parties in an untrue light.

Public health and safety issues are not implicated here. Fifth, there is NOTHING to be gained by DOL discovery for the purposes of the preliminary injunction hearing. Depositions and document production is unfair, unnecessary and certainly not efficient. The preliminary injunction hearing is itself an evidentiary hearing, such that the discovery sought is redundant. The fact that DOL is a public entity weighs in favor of protecting the Koresko Parties. Finally, determination of DOL's jurisdiction and standing to sue prior to mandating discovery against the Koresko Parties will promote public confidence in the Court's prevention of undue governmental intervention in private citizen's business affairs and identities; a sound public policy objective.

### E.    Until DOL meets its burden to prove jurisdiction this Court must not allow DOL to ring "the bell that cannot be unrung."

In their Motion to Dismiss and on Appeal the Koresko Parties maintain that DOL lacks jurisdiction and standing, such that this Court lacks subject matter jurisdiction. DOL must meet its burden of proof that jurisdiction does in fact exist. *See Mortensen v First Fed. Savings & Loan Ass'n*, 549 F2d 884, 891 (3rd Cir. 1977). Until such time as the Court rules it should prevent what the Third Circuit recognized as wrongful disclosure: "the bell that cannot be unrung." *See Chao v. Community Trust Company*, 474 F.3d 75 (3rd Cir. 2007). The Federal Rules of Civil Procedure, including those which permit discovery, may not be permitted to abridge, enlarge or modify any substantive right. *See* 28 U.S.C. §2072(b). Nor may they be construed to extend subject

not an ERISA plan.  So even if DOL were to examine the books and records of the

defendants [an issue which IS before the Court of Appeals] what would be served?  If

the defendants were to put money back into the trusts, the NOEs cannot receive a dime.

ERISA is not served by this exercise.  DOL cannot demonstrate that the requested

discovery will lend any light on its inability to do what it wants to do or what it legally

can do.  The only way DOL can succeed is to have the defendants judicially removed,

and then amend the trust documents to get money to NOEs.  This is not only illegal

under *Kennedy*, it is unconstitutional.  DOL seeks to unconstitutionally destroy the

property rights of defendants and those of the owner-employees, too.

### 8.    DOL has no cause of action unless the Plan and Trust documents themselves are illegal.

It is telling what DOL has not alleged.  There has been no charge that the

Koresko Parties failed to follow the Plan and Trust documents.  Apparently DOL does

not like what the Plan and Trust documents SAY.  DOL has been trying to conjure up in

this Court and in the public's mind the specter of an ERISA violation even where the

Trust has funded all benefit claims (excepting Castellano) and paid all its bills (but those

that F&M refuses to pay to hired professionals).  DOL alleges nowhere that the Plan and

Trust documents are unlawful!  DOL has no cause of action and no need for further

discovery; it cannot allege a violation of law unless the documents themselves are

illegal.

matter jurisdiction of the District Court.  Fed.R.Civ.Proc. 82.  A short read of the

deposition notices (at Exh. 2), showing demand for financial data as well as client

names and addresses, makes it clear that DOL intends to go beyond the scope of any

information the Court needs to consider injunctive relief

Furthermore, as affirmed by the court in *Community Trust*, the Gramm-Leach-

Bliley Act, 15 U.S.C. §6801 *et. seq*, provides that no party need disclose anything of a

personal, financial nature to a governmental agency that does not prove jurisdiction.

The DOL has not and cannot prove any shred of jurisdiction over persons who do not

have plan assets under their control.  The Sweeting Affidavit and Bonney Affidavit

show that the "plans" alleged by DOL are unfunded arrangements.  The Koresko Parties

acted with respect to Trusts that are not ERISA plans.  There is not a shred of

jurisdiction.

The Koresko Parties have filed suit against the DOL alleging, *inter alia*, that the

DOL actions are illegal.  DOL does not have jurisdiction to bring a claim in which it has

a pecuniary interest, and which is the result of expending appropriations in violation of

law.  The Koresko Parties allege that this action is illegal, in large part, because it

evolves from evidence improperly derived when DOL did not disclose material facts to

Judge McLaughlin.

### *F.  The Court must deny the requested discovery in an instance such as this, where the burden and expense of the proposed discovery outweighs its likely benefit.*

The Federal Rules of Civil Procedure contemplate that Parties may

obtain discovery of any non privileged matter that is relevant to their claim or

defense, even if not admissible at trial.  However, all discovery is subject to the limitations imposed by Rule 26(b)(2)(C). [1]

DOL's wish list for deposition and document production **LESS THAN TEN DAYS AWAY** includes voluminous financial records dating back to 2006, and encompasses hundreds of participants and documents. The nature and extent of the information requested goes far beyond the scope of what is required for a preliminary injunction hearing.  DOL already has on hand whatever it considered relevant to bring its initial Motion for a Temporary Restraining Order, including the Plan and Trust documents that provide for payment of legal fees, and this Court should not allow further burdening of the Koresko Parties.

DOL is simply asking again for what it sought in the 2004 and 2006 subpoenae. *See* Exh. 7 (2004 and 2006 subpoenae on PennMont).  In response to those subpoenae the Koresko Parties produced to DOL over 350,000 documents – among them hundreds of adoption agreements and financial statements.  DOL's own pleadings show that Jeanne Bonney, Esquire, voluntarily met with the DOL on numerous occasions since 2004 and answered questions with detailed explanation, most of which was transcribed by DOL.

---

[1] Rule 26(b)(2)(C) When Required.  On motion or on its own, the court must limit the  frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (**iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. (**emphasis added**).**

The burden on the Koresko Parties to assemble and produce documents which in some cases have already been produced considerably outweighs whatever relevance such documents may have.

### G.    There cannot be discovery as there has been no meet and confer.

Unless this matter falls within an exception to the rules governing initial disclosure set forth at Rule 26(a)(1)(B))[2], DOL must first meet and confer with the Koresko Parties prior to engaging in discovery. *See also*, Rule 26(d)[3].  This case does not fall within those exceptions and a meet and confer is required.  DOL did not contact

---

[2] (B) *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure: (i) an action for review on an administrative record; (ii) a forfeiture action in rem arising from a federal statute; (iii) a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence; (iv) an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision; (v) an action to enforce or quash an administrative summons or subpoena; (vi) an action by the United States to recover benefit payments; (vii)an action by the United States to collect on a student loan guaranteed by the United States; (viii)a proceeding ancillary to a proceeding in another court; and  (ix) an action to enforce an arbitration award.

[3] Rule 26 (d) Timing and Sequence of Discovery. (1) Timing. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

(f) Conference of the Parties; Planning for Discovery (1) Conference Timing. Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, **the parties must confer** as soon as practicable — and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

the Koresko Parties prior to serving the four Notices of Deposition and discovery should

not go forward.

> ### H.    DOL cannot show substantial need for the materials to prepare its case and can, without undue hardship, obtain the substantial equivalent by other means.  DOL already has the Plan and Trust Documents.  See Rule 26 (b)(3)(A)(ii). [4]

On July 17, 2009, the DOL presented all of its witnesses, moved all

documentary evidence into the record and closed its case.  PPT's financial information

and plan participant identities are completely irrelevant to the preliminary injunction

hearing – particularly because the PLAN AND TRUST DOCUMENTS ALREADY IN

DOL'S POSSESSION CLEARLY PROVIDE FOR LEGAL SERVICES.  PPT will be

trustee of non-ERISA trusts that do not and will not cover any non-owner employees

(NOEs).  Issues regarding PPT's solvency or financial history have no bearing on

whether it is a suitable trustee, because DOL has no authority over suitability in NON-

ERISA matters.  There is no need, much less substantial need, for the disclosures that

DOL is seeking.

---

[4] Rule 26 (b)(3)(A)(ii)

> (3) Trial Preparation: Materials.(A) Documents and Tangible Things.
> Ordinarily, a party may not discover documents and tangible things that
> are prepared in anticipation of litigation or for trial by or for another
> party or its representative (including the other party's attorney,
> consultant, surety, indemnitor, insurer, or agent). But, subject to Rule
> 26(b)(4), those materials may be discovered if: (ii) the party shows that it
> has substantial need for the materials to prepare its case and cannot,
> without undue hardship, obtain their substantial equivalent by other
> means.

> **I.  The information it seeks is for an improper purpose, is likely to harass the Koresko Parties, increase the Koresko Parties' cost of litigation; is unreasonable and is unduly burdensome, particularly because DOL already has made its case in Court and has the relevant Plan and Trust Documents in hand. See Rule 26(g)(1)(B)(ii) and (iii).[5]**

DOL cannot possibly convince this Court that asking for the same data it already has, or that which is the subject of controversies on appeal, or is beyond its jurisdiction or that of this Court, is anything other than harassment of the Koresko Parties.  DOL knows that its request is either moot, unrelated to the preliminary injunction hearing, or the subject of an Appeal. By so doing, DOL has violated Rules 26(g)(1)(B)(ii) and (iii).

---

[5]  Rule 26(g)(1) Signature Required; Effect of Signature.

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name — or by the party personally, if unrepresented — and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (B) with respect to a discovery request, response, or objection, it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any **improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action. (**emphasis added**).

### J.  DOL needs leave of Court to take the Koresko Parties' depositions. See Rule 30[6]

DOL has failed to obtain leave of court to depose the Koresko Parties,

and the Court is not required to grant leave where the parties have not stipulated

to the depositions and there has been no meet and confer.

### K.  DOL has no substantive grounds for discovery because nothing the DOL seeks leads to relevant evidence necessary to keep this case in court.

Before the court evaluates a discovery request, it must first determine if it is of

the type that can lead to relevant evidence.  In the present case, the discovery should be

focused toward the matter at hand, whether DOL can force PennMont to revoke its

dismissal of a faithless fiduciary, F&M Trust Co.  The discovery is not proper because it

is aimed at something that DOL is not even permitted to ask this court to order.

### 1.  The DOL has again admitted in 2008 that REAL VEBA and Single Employer Trust are not ERISA plans so there is no ground for discovery.

In ERISA Advisory Opinion 2008-07A (Sept. 26, 2008) (available at

http://www.dol.gov/ebsa/regs/aos/ao2008-07a.html), the DOL advised the Bend,

---

[6] Rule 30. Deposition by Oral Examination (a) When a Deposition May Be Taken. (2) With Leave. A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2): (A) if the parties have not stipulated to the deposition and:(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants; (ii) the deponent has already been deposed in the case; or (iii) the party seeks to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or (B) if the deponent is confined in prison.

Oregon Chamber of Commerce that its new welfare benefit trust, a multiple employer

trust ("MET"), was not an ERISA plan.  The DOL reaffirmed all the previous law on the

topic, including its positions in two decades of advisory opinions.  The Bend plan was

open to any member.  According to DOL, open membership is not an indicator of

sufficient economic interrelationship among members to satisfy classification of the

arrangement as an ERISA plan.

There is no practical distinction between the Bend plan and the trusts of the

defendants.  The plain language of the trust documents shows no restrictions on

adoption.  As DOL alleged for 20 years, and the court agreed, entrepreneurial trusts are

not contemplated as those within the scope of ERISA.


### 2.  The discovery requests have nothing to do with the appropriate equitable relief permitted by the statute.

In ERISA, DOL's remedies are limited to "appropriate equitable relief, "and one

statutory remedy – to compel a benefit payment that has not been paid.  The discovery

request is not at all supportive of either of these remedies.

First, as DOL is aware, there are no unpaid claims except the *Castellano* matter.

By the plain terms of the trust instrument, any benefit would have to come out of the

REAL VEBA trust corpus.  The personal finances of the defendants have absolutely

nothing to do with that corpus.  Furthermore, as this court knows from the *Castellano*

matter, the defendants demonstrated to the late Judge Green the existence of the funds to

pay any claim awarded in *Castellano*.

Under *Kennedy*, this court is not permitted to order anybody to deviate from the

plan documents.  This is what DOL wants the court to do by the proposed injunction.

Such an order could issue only if the court found the trust documents illegal. There has not even been an allegation to that effect. The discovery will not change the trust documents.

The remedy of "appropriate equitable relief" is not the relief that DOL tells the court to give. In fact, there is no restitutionary remedy properly requested in the present DOL complaint. The Trust fund, from which expenditures were made, is not an ERISA plan and the assets are not Plan assets. Thus, even if DOL were to identify a particular pot of money that could be disgorged from the holder under the common law of trusts, it would under *equitable restitution* be restored to the payor. *In this case, that payor is not and was not an ERISA plan*. Furthermore, DOL said in its complaint that Jefferson Government Relations was the payee of $250,000 in payments DOL protests [without citation to authority]. DOL cannot obtain restitution from the Koresko Parties on account of amounts paid to Jefferson. Equitable restitution is related to the doctrine of constructive trust. If moneys can be traced to Jefferson Government Relations, they are not in the hands of the defendants. DOL should have sued Jefferson, not the Koresko Parties for money DOL knows the Koresko parties do not have. Notwithstanding, DOL has no power to restore anything to a non-ERISA trust.

> **3. The discovery requests cannot change the plan provisions that disqualify all non-owner employees who are not eligible for benefits, and therefore DOL cannot obtain relief for them.**

A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually "due"; that is, he or she must have a right to benefits that is legally enforceable against the plan. See 29 U.S.C. § 1132(a)(1)(B) There is no civil

action when benefits are "unaccrued and nonvested." As a result, "[e]mployers or other

plan sponsors are generally free under ERISA, for any reason and at any time, to adopt,

modify or terminate welfare plans." *Curtis-Wright Corp. v. Schoonejongen,* 514 U.S.

73, 78 (1995).   Welfare benefits are not vested.  See: *In Re Lucent Death Benefit ERISA

Litigation,* 530 F3d 250 (3rd Cir. 2008), *Bennett v Conrail, et al.,* 168 F3d 67 ( 3rd

Cir.1999), *Malia, et al v General Electric,* 23 F3d 828 (3rd Cir. 1994);  *s*ee also *REAL

VEBA, et al v Sidney Charles Markets, Inc,.* 2006 WL2086761USDC ED Pa.*(* Slip

Opinion July 21, 2006) (Sanchez, J.)   Only where the express language of the

governing documents provide that an employee is irrevocably entitled to a certain

benefit, and where all of the conditions precedent to the employee's receipt of that

benefit have been satisfied that benefit is said to have accrued (or 'vested' or 'ripened')

and cannot be taken away by plan amendment.

    As permitted by all relevant case law and its sole authority to amend, PennMont

has amended the Trusts to terminate any future benefits of non-owner employees

("NOEs").  *See Stewart v NEA*, 471 F.3d 169 (D.C. Cir. 2006) (amendments to clarify the

status of trust surplus may be retroactive); Exh. 3 (Trust Amendment dated July 29,

2009) and Bonney Affidavit at Exhibits 13 (SEWBPT Plan Document) and 14 (SEWBPT

Trust Document).  NOEs no longer have even an expectancy of receiving any part of

trust corpus, whether for a former allegedly unpaid benefit or on account of any

recovery DOL might obtain against any defendant.

    Since the trusts cover only owner employees, if they were plans, they would be

known as "top hat" plans.  A "top hat" plan is one "which is unfunded and is maintained

by an employer primarily for the purpose of providing deferred compensation for a

select group of management or highly compensated employees...." 29 U.S.C.A. § 1101(a)(1) (West 1999). Top hat plans are subject to ERISA only as far as its enforcement provisions, *and administrators of top hat plans are exempted from ERISA's fiduciary responsibility requirements. See In re New Valley Corp.,* 89 F.3d 143, 149 (3d Cir.1996). There is no cause of action under ERISA for breach of fiduciary duty in top hat plans, even though the plan administrators may be said to fall under ERISA's definition of "fiduciary." *See Goldstein,* 251 F.3d at 443 (top hat plan administrators are not fiduciaries under ERISA); *In re New Valley Corp.,* 89 F.3d at 153 (no cause of action for breach of fiduciary duty in a top hat plan).

Since the arrangements are now limited to only owner employees, there is question that they benefit only a select group of management. Defendants demonstrated in their Response to the Motion for Injunction that the REAL VEBA and SEWBT trusts are "unfunded " as a matter of law. Since the trusts only benefit owner employees, ERISA does not apply to them and there is no cause of action for breach of fiduciary duty. *In re IT Group,* 448 F.3d 661 (3d Cir. 2006). Accordingly, there is no basis for any injunction. DOL, having succeeded in destroying future benefits, has no authority in this case. There is no ERISA arrangement, and the discovery is not going to change that.

### 4.   The Circuit Courts of Appeal have rejected the DOL position – even beneficiaries of actual ERISA plans have no claim to demutualization proceeds.

The *Stewart* case, *supra,* is the second which has rejected another of DOL's causes of action. DOL said that the "beneficiaries of the plans" were entitled to ownership of certain demutualization proceeds allegedly received by the REAL VEBA

trustee.  In *Stewart*, the National Education Association ("NEA") life insurance trust

received demutualization proceeds.  NEA classified those proceeds as surplus, to which

no participant was entitled.  In fact, NEA adopted the amendment, to clarify the

proceeds as non-benefit surplus, retroactively.  The D.C. Circuit court rejected a

beneficiary's claim that beneficiaries had any ownership interest in the demutualization

proceeds.  The court could not see how any person, who contemplated only a term life

insurance benefit, could make a claim against any trust assets.  Furthermore, the court

simply applied what is now hornbook law -- that welfare benefits are not vested, and

that the amendment of a plan to change or eliminate nonvested benefits is a settlor

function, not a fiduciary function.  In finding demutualization proceeds outside the

promise of the plans at issue, the *Stewart* court refused to recognize that the DOL's

2001 opinion letter on the status of demutualization proceeds had any legal effect.

　　　　Not only does *Stewart* affirm that most of the DOL complaint is meritless, the

case involved the NEA trust.  There was no question that the NEA trust was in fact a

group trust with people who had sufficient economic commonality;  and therefore, it

was an ERISA plan.  The NEA trust is a far cry from REAL VEBA and SEWPT.  If an

ERISA plan fiduciary does not have a duty to allocate demutualization proceeds to

participants, administrators of a non-ERISA trust have no duty, either.  The DOL

discovery requests have no bearing whatsoever on why ERISA does not apply and why

demutualization proceeds are surplus.

> **5.  Discovery is not calculated to reveal anything related to ERISA, because ERISA did not apply before, and it certainly does not apply now.**

**Only owner employees can benefit under the SEWBPT and REAL VEBA Trusts.**  DOL has already received 350,000 pages of discovery materials relating to the time when employees might receive a term insurance benefit.  Those benefits are ended.  While the Koresko Parties gave detailed arguments in their previous filings that ERISA did not apply to the Trusts, the matter is now settled.  Under *Yates v Herndon*, 124 S. Ct. 1330, 32 E.B.C. 1097 (2004), the Supreme Court made clear that ERISA does not apply to plans that benefit only owner-employees.  So even if the Trusts were Plans, the DOL has no jurisdiction, and this Court has no jurisdiction because ERISA cannot apply to the corpus or income of the Trusts or to the persons who are associated with those Trusts.

DOL can make no showing that any benefits payable under the terms of the plan are unpaid to any NOEs.  The Bonney Affidavit affirms that aside from the pending matter of *REAL VEBA v. Castellano*, 03-cv-6903 (also before this Court) every benefit claim presented for payment has been evaluated, calculated, and paid pursuant to the terms of the Trusts, articles 5, 8 and 9.  Furthermore, the copies of the receipts and releases for the payments were attached to Ms. Bonney's affidavit.  There is no benefit claim that remains unpaid [except the disputed claim of Gretchen Castellano].

There is no emergency stated by DOL.  And there is no exigency for which the DOL should be permitted to ignore the Rules of Civil Procedure.  It is impossible for DOL to make any showing that any discovery it demands would lead to evidence relevant to an ERISA violation, because DOL cannot make a threshold showing that ERISA could apply to this matter – now, in the past, or in the future.  The families of

employees will no doubt thank the Department of Labor and Internal Revenue Service for causing employers so much chaos that death benefits had to be eliminated.

### 6.  DOL has admitted that the statute of limitations has expired on this case.

DOL employee Sweeting admitted on the witness stand that she began her investigation in 2007. See Exh. 1 at P98, L16-19.  The Sidney Charles case dates back to 2002, and DOL was involved.[7]  Under ERISA, the applicable statute of limitations is three years.  Since DOL appears to have blown the statute of limitations, it could not survive a motion for judgment on the pleadings.  The Court can take judicial notice of the records of the last 4 years.  It is a little late in the day for DOL to come to court, whether on a statutory theory or under the equitable doctrine of laches.

The discovery requested by DOL is not going to change the statute of limitations problems.  Seeing how much money Koresko Law Firm or PennMont made is not going to change the predicate legal hurdles.

### 7.  DOL cannot rewrite the Plan and Trust so as to invent participant rights that do not exist.

The Plan and Trust were deliberately structured for tax advantaged purposes to prevent the participants' receipt of anything other than the unsecured promise of a death benefit.  Death benefits are not income taxable.  DOL is destroying the benefit structure by threatening to dismantle the Trust and harming the participants' estate plan and financial stability.

---

[7] *REAL VEBA, et al v Sidney Charles Markets, Inc., et al.,* 2006 WL 2086761, USDC, ED Pa. No. 01-4693 (July 21, 2006).

The Plan and Trust arrangement do not permit what DOL recently revealed as its true purpose: "additional recoveries for the affected plans and participants."[8] It is dangerous thinking for DOL to believe that it can obtain Trust "monies" for the purpose of distribution to plan beneficiaries. Presumably DOL is referencing cash value Trust owned life insurance policies. However, cash value is neither a plan benefit nor a plan asset. Perhaps DOL believes it can compel distribution of experience gain to the Trust. However, experience gain is surplus funds derived from interest income, demutualization proceeds and forfeitures. These funds permit the Trust to pay its own way. They are not tied to benefit claims. *See Stewart v NEA*, 471 F.3d 169 (D.C. Cir. 2006); *RLJCS Enterprises, Inc. v Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust*, 487 F. 3d 494 (7th Cir. 2007). Surely DOL does not intend to "take" employer contributions in the pooled Trust fund and distribute them to participants. All of these funding sources constitute Trust assets. Neither employers nor employees have any access to or absolute right to distribution of Trust assets. Notwithstanding DOL's desire to do so, it cannot invent rights over Trust assets that do not exist. Were Trust assets accessible to employees they would have been taxed on them all along, and they would not now be in Tax Court on IRS' new theories of "tax benefit rule" and "split dollar." A participating employee's interest in a possible death benefit DOES NOT HAVE ANY VALUE AND CANNOT BE QUANTIFIED.

How does DOL intend to "divvy up" Trust assets once it destroys the Plan and Trust? Under rules of equity, any recovery has to go back to the trust estate, which is

---

[8] *Secretary of Labor's Opposition to Appellant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike Appellee's Supplemental Appendix and Brief and For Other Relief* at page 9 in the consolidated appellate matters No. 09-1142; 09-2191.

**9. DOL seeks discovery of beneficiaries' information, and the private financial data of the defendants, for an improper purpose – especially when subject matter jurisdiction cannot be established.**

DOL's desire to learn participants' names and addresses is to what end?  How is it relevant for the limited purpose of a preliminary injunction hearing?  We have already seen DOL damage the reputations of the defendants by sending out 100 letters intended to interfere with the relationships between lawyers and clients.  The recent pressure on Taxpayers to settle IRS cases by "agreeing" to terminate their Plan and pay tax is highly suspect.  Now DOL attacks the ability of these same Taxpayers to defend themselves with experienced counsel.  By interfering with the operation of the Trust, DOL cannot avoid the claim that it has a pecuniary interest in destroying the benefit structure so as to distribute Trust assets.  The Plan and Trust are deliberately structured to PREVENT such an action.  Death benefits are not income taxable and tax may be avoided altogether via a properly established estate plan (such as an irrevocable life insurance trust). DOL may well be in violation of ERISA §510 for interfering with the provision of benefits for intended recipients in the (nontaxable) form intended.

**10. DOL knows that the fiduciaries of Top Hat Arrangements like REAL VEBA and SEWBT have no liability for breach of fiduciary duty under ERISA – and the discovery is not going to change that fundamental impediment to jurisdiction.**

ERISA provides that a top-hat plan is exempt from many burdensome ERISA requirements. A top-hat plan is an unfunded plan maintained by the employer to provide

deferred compensation to a "select group of management or highly compensated employees" (a top-hat group). ERISA §§ 201(2), 301(a)(3), 401(a)(1).  DOL cannot allege that this is an ERISA arrangement giving rise to fiduciary responsibility.  The instant Plan is UNFUNDED.  *See In re IT Group,* 448 F.3d 661, (3d cir 2006); Exh. 3 (Trust Amendment); Exh. 4 (selected cases explaining Top Hat Unfunded Plans cannot be subject to ERISA Fiduciary Duty).  In an unfunded top hat plan cash value life insurance is not a plan asset subject to fiduciary responsibility.  The use by an employer of a MET to provide a conditional indemnity for benefits removes the arrangement from ERISA oversight.  In this context, the Employer's participation in the Plan, and the Plan's promise to pay at the behest of the Employer, is indemnified by the Trust.  Thus, the trust is more like a contractual guarantor. The Plan Administrator is the Settlor.  The insurance policy is purchased by the Trust to indemnify the Plan's promise to pay.  In that regard it is like a stop loss insurance contract that attaches at first dollar.  Neither the employer nor the employee has an interest in the assets of the indemnifier (the Trust).  One could not reach into the general assets of an insurance company in a guaranty relationship. Similarly, employee participants have no claim against the employer or the Trust itself in the event of a benefits claim.   A participating employee is only a third party beneficiary of the contractual relationship between the employer and the Plan (by its Administrator), with no rights to Trust assets other than the Plan's unsecured promise of the payment of a death benefit. *See* Exh. 5 (Diagram of the Arrangement).  *See* Exh. 6 (Tax Notes – IRS FOIA produced email).

### L.  DOL's Joanne Jarquin should be held liable for the Koresko Parties' Reasonable Fees and Costs having Served the Notices of Deposition and Instant Motion[9]

Attorney Jarquin was present when this Court specifically directed the Parties NOT to engage in exactly this kind of harassment.  Attorney Jarquin knows or should know that the Notices of Deposition do not comport with the Federal Rules of Civil Procedure.  Ms. Jarquin also knows that the documents requested are redundant to prior subpoenae already complied with by the Koresko Parties, unlikely to contribute to the preliminary injunction proceedings and very likely to place the Koresko Parties under duress and cause financial harm.  Furthermore, Ms. Jarquin abused her authority,  as an attorney and as an agent of the Department of Labor, by requesting discovery beyond that permitted before subject matter jurisdiction is established.  There is perhaps no clearer case of multiplying litigation vexatiously and without cause when a litigant attempts to take discovery of the same facts that are the subject of a pending circuit court appeal.  Given the nature of these proceedings to date, the court would not be criticized for inferring bad faith.

## V. CONCLUSION

For the above reasons, the Koresko Parties believe that a Protective Order should issue, quashing the notices of subpoenae duces tecum, denying further  document

---

[9] 28 U.S.C.§ 1927. Counsel's liability for excessive costs: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

production, and that DOL held liable under 28 U.S.C. §1927, the discovery rules, or

Rule 11, for the Koresko Parties' costs, expenses and attorney's fees reasonably

incurred because of DOL's conduct.

Respectfully submitted,

John J. Koresko, V

August 14, 2009

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that at my direction a true and correct copy of the

Defendants' MOTION FOR PROTECTIVE ORDER, DENIAL OF document

production AND Motion for Sanctions against Plaintiff's Counsel under 23 U.S.C.

§1927 was served this date, via ECF, upon the following:


JOAN ROLLER, ESQ.

LINDA HENRY, ESQ.

JOANNE JARQUIN, ESQ.

The Curtis Center, Suite 630 East

170 S. Independence Mall West

Philadelphia, PA  19106-3317


TIMOTHY J. NIEMAN
STEPHEN MONIAK

Rhoads & Sinon LLP

One South Market Square, 12th Floor

Harrisburg, PA  17101



_____

John J. Koresko, V, Esq.

August 14, 2009