# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | : :  |
| Plaintiff, | : Civil Action : : No. 09-988 |
| v. | : : |
| JOHN J. KORESKO, V, JEANNE BONNEY, PENN-MONT BENEFIT SERVICES, INC., KORESKO & ASSOCIATES, P.C., KORESKO LAW FIRM, P.C., COMMUNITY TRUST COMPANY, PENN PUBLIC TRUST, REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST, and SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST, | : : : : : : : : : : : |
| Defendants | : |

## <u>MEMORANDUM</u>

Jones, J.                                                                                    August 31, 2009

Before the Court is certain Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Plaintiff's Opposition thereto (Doc. No. 78). For the following reasons, the Motion to Dismiss will be denied.

### **I.**     **Background and Relevant Procedural History**

<u>Plaintiff's Filing of the Complaint and the Koresko Defendants' Initial Responses</u>

On March 6, 2009, Plaintiff filed suit against several defendants claiming violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. Among those defendants are John J. Koresko, V; Jeanne Bonney; Penn-Mont Benefit Services,

Inc.; Koresko & Associates, P.C.; Koresko Law Firm, P.C.; Penn Public Trust; Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust; and Single Employer Welfare Benefit Plan Trust (collectively, "the Koresko Defendants"). Plaintiff alleges that the Koresko Defendants violated ERISA by breaching their fiduciary duties to over 100 benefit plans known as the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association ("the REAL VEBA") and Single Employer Welfare Benefit Plan ("the SEWBP") (jointly, "the Plans) by directing Community Trust Company ("CTC"), which was then Trustee of both Plans' Trusts ("the Trusts"), to pay over one million dollars of Trust assets to the Koresko Defendants and other entities who were not entitled to receive those assets.[1]

On March 12, 2009, the Koresko Defendants filed an Emergency Motion to Place Case Under Seal and for Other Equitable Relief and an Emergency Motion for Temporary Restraining Order and Other Preliminary and Permanent Injunctive Relief. After argument and additional briefing, on March 26, 2009, the Court denied the Koresko Defendants' Emergency Motions. On April 14, 2009, the court denied reconsideration of its March 26, 2009, Order. An appeal of the latter ruling is pending.

Factual Allegations

The allegations below are taken from the Complaint except where otherwise noted.

During the period of January 1, 2000, to the present, Penn-Mont Benefit Services, Inc. ("Penn-Mont") sold prototype welfare plans to numerous companies and persons throughout the

---

[1] Plaintiff does not allege that the REAL VEBA Trust and the SEP Trust ("the Trusts") violated ERISA, but she joined the Trusts pursuant to Fed. R. Civ. P. 19(a). (Compl. ¶ 16.)

United States. (Compl. ¶¶ 3, 7, 17.)[2] Employers purchased the product and used the prototype Plan to establish death benefit and/or welfare benefit plans for their businesses. (Compl. ¶ 17, 20.) Penn-Mont, whose President is Koresko and which has no employees, was the Plan Administrator for each Plan. (Compl. ¶¶ 9, 18.) Penn-Mont (Compl. ¶ 18.) Penn-Mont's Plan Administrator duties were performed by Koresko's law firms, Koresko & Associates, P.C. ("KAPC") and Koresko Law Firm, P.C. ("KLF"). (Compl. ¶ 18.) Bonney, an attorney employed by KAPC and KLF, was responsible for the operations of plan administration, including issuance of directions to the Plans' Trustee. (Compl. ¶ 18.) Koresko was attorney and sole shareholder of KAPC and president of KLF. (Compl. ¶ 9.)

The Plans' assets were originally held in the REAL VEBA Trust or predecessor trusts. (Compl. ¶ 21.) In late 2004 or early 2005, the bank accounts of the REAL VEBA Trust were closed and the Plans' assets were transferred from the REAL VEBA Trust to the SEP Trust. (Compl. ¶ 21.)

    *1.    Death Benefits*

Each plan funded death benefits by purchasing from an insurance company insurance on the lives of individual participants. (Compl. ¶ 22.) The Plan documents promised the participant's beneficiary a certain sum to be paid upon the death of the participant. (Compl. ¶ 23.) After being notified of a participant's death, an insurance company paid the Trust the value of the policy issued on the life of that participant. (Compl. ¶ 24.) Penn-Mont directed CTC to transfer the insurance proceeds out of the Trust account to "death benefit accounts." Only

---

[2] Prior to the year 2000, Penn-Mont sold other prototype plans under other names, and the earlier plans were merged or transferred to the REAL VEBA. (Compl. ¶ 3.) The names of the Plans at issue in this matter are identified in Exhibit A to the Complaint. (Compl., Ex. A.)

Koresko and Bonney, who were not Trustees of the Plans' Trusts, had authority over the death benefit accounts. (Compl. ¶ 24.)

In regard to at least three of the Plans, the designated beneficiaries did not receive the full amount required by the terms of the Plans upon the death of the participants. (Compl. ¶¶ 25-28.) Rather, Penn-Mont gave the beneficiary an option either to receive the full amount of the death benefit in ten annual payments, without interest, or to accept a lump sum considerably less than the full amount of the death benefit and the insurance proceeds. (Compl. ¶¶ 25-28.) In two instances, the beneficiaries chose the lump sum. (Compl. ¶¶ 25-27.) Defendants Koresko and/or Bonney paid the lump sum, made a small payment to the Internal Revenue Service, and then transferred the balance of the insurance proceeds – over $200,000 and almost $500,000, respectively – and out of the death benefit accounts to the accounts of KAPC, KLF and/or the accounts of a participant in an unrelated Plan. (Compl. ¶¶ 25-27.) In a third instance, the insurance proceeds were transferred to a separate trust account, controlled exclusively by Bonney and Koresko, and no benefits have been paid to the beneficiary of the deceased participant. (Compl. ¶ 28.) This third instance is the subject of a pending lawsuit before this Court, Civ. No. 03-6903. (Compl. ¶ 28.)

2. *Income Paid out of the Trust to the Koresko Defendants*

Employers forwarded contributions to the Trusts for the purposes of paying premiums on the insurance policies. (Compl. ¶ 29.) On a daily basis, monies were swept from the Trust account and deposited in investments until needed to pay premiums. (Compl. ¶ 29.) The interest income was taken out of the Trusts and deposited into a bank account belonging to Penn Public Trust ("PPT") and controlled by Koresko. (Compl. ¶ 30. See also Defs.' Mem. 4 (stating that

Koresko formed PPT).) In particular, during the period of April 2002 through December 2004, Penn-Mont directed CTC on a monthly basis to transfer all the interest to a bank account belonging to PPT, despite that the Trust Agreements state that all income and/or earnings of the Trusts belong solely to the Trusts. (Compl. ¶ 30.) During the same time period, Kroesko controlled the money in and wrote checks on this PPT account. (Compl. ¶ 30.) He did not return the interest income to the Trust. (Compl. ¶ 30.)

3. *Other Transfers Out of the Trust to the Koresko Defendants*

On a regular basis, Penn-Mont directed CTC to transfer varying sums of money from Plan Trusts to Penn-Mont, KAPC, KLF, and PPT. (Compl. ¶ 33.) Some of these transfers were characterized as administrative fees owed to Penn-Mont. (Compl. ¶ 34.) However, Penn-Mont charged its fees to the employers, not to the Trusts. (Compl. ¶ 34.) Penn-Mont set its own fees, which were not approved by an independant fiduciary, and directed that the fees be paid with Plan assets. (Compl. ¶ 34.) Koresko regularly moved money between Penn-Mont, KAPC, KLF, and PPT accounts, and did not return Plan assets to the Trusts. (Compl. ¶ 35.)

4. *Stock and Dividends*

Some of the insurance companies from which the Plans bought policies insuring the lives of the individual participants were mutual companies that demutualized and became stock companies. (Compl. ¶ 36.) Upon demutualization, these insurance companies issued stock to some of the Plans and thereafter paid dividends on this stock to the shareholder Plans. (Compl. ¶ 36.) Penn-Mont never credited the stock and dividends to the Plans and/or the participants that had purchased the policies. (Compl. ¶ 37.)

5. *Lobbying Expenses*

Koresko, as chair of Penn-Mont, entered into an agreement with a lobbying firm in Washington, DC, and obligated the REAL VEBA Trust to pay a retainer and other expenses for the services of the lobbying firm. (Compl. ¶ 38.) At the direction of Penn-Mont, CTC paid the lobbying firm with money from the Trusts. (Compl. ¶ 38.) The Trusts paid for lobbying activities that included, *inter alia*, enhancing Penn-Mont's ability to market the plans by seeking favorable tax treatment for the employers who purchased the plans sold by Penn-Mont. (Compl. ¶ 38.) The lobbying also included contacting Department of Labor officials concerning the open Department of Labor investigation underlying this lawsuit. (Compl. ¶ 38.) This lobbying sought to benefit Penn-Mont and Koresko and/or the employers as taxpayers, but not the Pans. (Compl. ¶ 39.)

Plaintiff's Claims Regarding ERISA Coverage

Plaintiff contends that the Plans are subject to ERISA coverage pursuant to Sections 3(3) and 4(a) of ERISA, 29 U.S.C. §§ 1002(3) and 1003(a).[3] (Compl. ¶ 4.) She contends that each of

---

[3] According to Section 3(3), "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 28 U.S.C. § 1002(3). Section 4(a) provides as follows:

> Except as provided in subsection (b) or (c) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained--
>
> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
>
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

the Koresko Defendants was a fiduciary and a "party in interest" with respect to the Plans within the meaning of ERISA Sections 3(21)(A) and 3(14). 29 U.S.C. §§ 1002(14); 1002(21)(A).[4]

---

(3) by both.

29 U.S.C. § 1003(a).

[4] Section 3(21)(A) provides as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

According to Section 3(14), a the term "party in interest" to an employee benefit plan includes all the following persons:

> (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
>
> (B) a person providing services to such plan;
>
> (C) an employer any of whose employees are covered by such plan;
>
> (D) an employee organization any of whose members are covered by such plan;
>
> (E) an owner, direct or indirect, of 50 percent or more of--
>
> > (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation. [FN1]

(Compl. ¶¶ 9-13, 15.)

### Plaintiff's Application for Injunctive Relief

On July 14, 2009, Plaintiff filed an Application for a Temporary Restraining Order and Preliminary Injunction ("Application"). (Doc. No. 63 & 65.) The Court held a TRO hearing on

---

       (ii) the capital interest or the profits interest of a partnership, or

       (iii) the beneficial interest of a trust or unincorporated enterprise,

which is an employer or an employee organization described in subparagraph (C) or (D);

(F) a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E);

(G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of--

       (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,

       (ii) the capital interest or profits interest of such partnership, or

       (iii) the beneficial interest of such trust or estate,

is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E);

(H) an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly, of a person described in subparagraph (B), (C), (D), (E), or (G), or of the employee benefit plan; or

29 U.S.C. § 1002(14)(A) and (H).

July 17, 2009. In her Application and at the TRO hearing, Plaintiff argued that, after she filed her Complaint in this matter, the Koresko Defendants have continued to direct the Trustee – currently Farmers & Merchants Trust Co. of Chambersburg ("F&M") – to make unlawful payments of Trust assets.[5] Plaintiff presented evidence that the Koresko Defendants have directed F&M to use Trust assets to pay legal fees to KLF and to other law firms that are defending various Plan sponsors involved in litigation with the Internal Revenue Service. (See, e.g., Pl.'s Application for Prelim. Inj., Exs. 3, 5, 7 & 9 (Penn-Mont Requests for Payment, May 5, May 12, May 26, and June 9, 2009); Tr. of TRO Hearing, July 17, 2009 ("TRO Tr.") at 16-30.)[6] Plaintiff also presented evidence that F&M did not comply with the Koresko Defendants' directives because F&M did not believe the expenses were allowable under the Plans. (See, e.g., TRO Tr. at 16-30, 60-62, 67-72, 81-82.)

On July 6, 2009, Penn-Mont, acting through Koresko, discharged F&M as Trustee directed that F&M transfer all Trust assets to Penn Public Trust ("PPT"). (See Pl.'s Application for Prelim. Inj., Ex. 11, E-mail from Koresko to Drake D. Nicholas, July 6, 2009 (discharging F&M); TRO Tr. at 30-31, 76-78.) It appears to be undisputed that the Trust Agreements enable Penn-Mont to discharge F&M "for any reason or for no reason." (TRO Tr. at 42, 73.) As of July 17, 2009, F&M had not complied with PennMont's directive. (See TRO Tr. 79.) On July 21,

---

[5] It is undisputed that PennMont, the Plan Administrator, hired Community Trust Company ("CTC") to serve as Trustee for the REAL VEBA and that CTC was sold to F&M Trust Company in 2008. (Koresko Defs.' Mem. in Supp. of Mot to Dismiss ("Defs.' Mem.") 4. See also TRO Tr. at 39, 87-88.)

[6] The Koresko Defendants objected to the presentation of most of Plaintiff's documentary and testimonial evidence on the grounds of privilege. The Court overruled these objections. (See, e.g., TRO Tr. at 18-19.)

2009, the Parties stipulated that, pursuant to the Trust Agreement and PennMont's directive to F&M, the Trust assets are due to be transferred to PPT no later than October 6, 2009. (See TRO Tr. at 75-77, 79-81; Stipulation, July 21, 2009 (Doc. No. 73).) Counsel for F&M testified that he would advise F&M not to turn over the Trust assets before that date. (TRO Tr. at 79-81.)

Plaintiff argues that, if the Koresko Defendants have unilateral control of the trusts and their assets, they will continue to violate ERISA. In her Application, Plaintiff seeks to prevent the Koresko Defendants from removing F&M as Trustee unless a new Trustee is appointed who is not related to the Koresko Defendants and who meets certain additional conditions. (See Pl.'s Mot. to Substitute Proposed Order (Doc. No. 86).)

On July 17, 2009, the Court denied Plaintiff's Application for a Temporary Restraining Order. Plaintiff's Application for a Preliminary Injunction is still pending. A preliminary injunction hearing is scheduled for September 2, 2009.

The Koresko Defendants' Motion to Dismiss

On July 17, 2009, the Koresko Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. No. 69.) Plaintiff filed a Response on July 31, 2009. (Doc. No. 78.)

The Court now addresses the Koresko Defendants' Motion to Dismiss. The Court addresses the Motion to Dismiss prior to hearing argument on Plaintiff's Application for a Preliminary Injunction because of its obligation to determine whether subject matter jurisdiction exists before it addresses the merits of the case. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-102 (1998). Moreover, should Plaintiff meet her preliminary injunction burden, this Court must have subject matter jurisdiction

in order to grant any relief.

## II. Standard of Review

### A. Rule 12(b)(1)

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge concerns an alleged pleading deficiency, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008); Gould Elec. Inc. v. United States, 220 F.3d 169, 177 (3d Cir. 2000). When considering a facial challenge, "the trial court must consider the allegations of the complaint as true." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." CNA, 535 F.3d at 139 (internal quotation, citation, and alterations omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the plaintiff's complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. Id. With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of jurisdiction. Id.; U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." Mortensen, 549 F.2d at 891.

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in Bell Atl. Corp. v. Twombly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In Ashcroft v. Iqbal, the Supreme Court clarified that this standard applies to all civil cases. Iqbal, 129 S.Ct. at 1949.

### III. Discussion

#### A. This Court Has Subject Matter Jurisdiction Over Plaintiff's ERISA Claims

The Koresko Defendants raise a factual challenge to this Court's subject matter jurisdiction over Plaintiff's claims. In the Koresko Defendants' view, ERISA does not apply to the Plans at issue. The Court now holds that it has subject matter jurisdiction over ERISA claims and that Plaintiff has alleged a colorable ERISA claim against the Koresko Defendants.

According to the United States Supreme Court, "limits on the reach of federal statutes . . . are only jurisdictional if Congress says so." Bowles v. Russell, 551 U.S. 205, 217 (2007). "When Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006) (holding that the employee numerosity requirement of Title VII of the Civil Rights Act is

a merits requirement and is not jurisdictional).

The Koresko Defendants argue that the REAL VEBA and SEP Trust are not ERISA plans but are "entrepreneurial insurance arrangements adopted for tax purposes." (Defs.' Mem. 17.) They further argue that "[w]elfare plans are not subject to ERISA's requirements relating to coverage and vesting; and insurance plans are exempt from ERISA's general requirements of a trust." (Id.)

ERISA contains a specific provision detailing its jurisdictional requirements: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of all civil actions under this subchapter brought by the Secretary [of the Department of Labor]. . . ." 29 U.S.C. §1132(e)(1).[7] ERISA's jurisdictional provision contains no additional threshold requirements. Likewise, the federal question jurisdiction statute, 28 U.S.C. § 1331, provides only that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" and contains no additional threshold requirements.[8] Therefore, whether the plans at issue in this matter are subject to ERISA coverage is not a jurisdictional question. The Court holds that it has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1). Moreover, the Court finds that Plaintiff has pled a colorable ERISA claim. See Arbaugh, 546 U.S. at 513 and n.10 (citing Bell v. Hood, 327 U.S. 678, 681-685 (1946), for the holding that a plaintiff properly invokes § 1331 federal question jurisdiction when she pleads a colorable claim arising under the Constitution or laws of

---

[7] The exception noted is for certain actions by a participant or beneficiary and is not applicable here. See 29 U.S.C. §1132(a)(1)(B).

[8] Plaintiff's Complaint does not assert jurisdiction pursuant to 28 U.S.C. § 1331.

the United States, not when the claim is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous.")

### B. Plaintiff Has Standing to Bring these ERISA Claims

The Court briefly addresses the Koresko Defendants' challenge to Plaintiff's standing and holds that Plaintiff has both Constitutional and statutory standing to bring this suit. Again, the Koresko Defendants rely on their assertion that the Plans are not covered by ERISA in order to support their argument that Plaintiff lacks standing. The Court reaches the same conclusion: Plaintiff has pled colorable ERISA claims against the Koresko Defendants, and the Court has subject matter jurisdiction to adjudicate those claims.

#### 1. Statutory Standing

According to the Third Circuit,

> [s]tatutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury. To answer the question, we employ the usual tools of statutory interpretation. We look first at the text of the statute and then, if ambiguous, to other indicia of congressional intent such as the legislative history.

Graden v. Conexant Systems Inc., 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original). In Section 502(a)(2) of ERISA, Congress explicitly and unambiguously permits the Secretary of the Department of Labor to bring a civil action for relief under Section 1109 of ERISA. 29 U.S.C. § 1132(a)(2) ("A civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.").[9] The Koresko Defendants

---

[9] Section 1109 assigns liability to persons who breach fiduciary duties with respect to ERISA plans:

> (a) Any person who is a fiduciary with respect to a plan who

refer to various ERISA provisions to support their argument that the Plans at issue are not covered by ERISA, that the actions alleged do not violate ERISA, and that ERISA exempts certain actors from liability. However, under Arbaugh, Plaintiff need not prove ERISA coverage in order to have standing to sue. Arbaugh, 546 U.S. at 516. Therefore, the Court need not look further than Section 502(a)(2). The Court holds that ERISA provides Plaintiff with statutory standing.

### 2. Constitutional Standing

Under Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to the resolution of "cases and controversies." U.S. CONST. art. III § 2. Three elements are necessary to establish Article III standing. First, the plaintiff must have suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (certain internal quotations and citations omitted). Second, that injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (internal quotation and alterations omitted). Third, the plaintiff must establish that a favorable decision likely would redress the injury. Id.

---

> breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

The Koresko Defendants purport to bring a factual challenge to Plaintiff's standing, but their arguments pertain mainly to the issue of ERISA coverage and liability. (See Defs.' Mem. 10 ("If there is no ERISA claim, there is no ERISA-based standing.").) Once again, the Court follows Arbaugh and holds that ERISA coverage and liability are merits-based issues that are not relevant to standing. Arbaugh, 546 U.S. at 516.

On the face of the Complaint, Plaintiff's allegations satisfy all three elements of Constitutional standing. Plaintiff is suing pursuant to her statutory standing to redress actual harm to certain benefit Plans. In her Complaint, she alleges that the Koresko Defendants improperly directed that monies be taken from Plan Trusts and be used in ways that are unlawful under ERISA. Plaintiff alleges actual injury to the Plans that, if true, has caused concrete and particularlized financial harm to the Plans. Therefore, the first element of Constitutional standing is satisfied. The injury Plaintiff alleges is directly traceable to the alleged actions of the Koresko Defendants. Thus, Plaintiff has satisfied the second element of Constitutional standing. Finally, should the Court find that the Koresko Defendants have violated ERISA with respect to the Plans, Plaintiff asks that the Court, *inter alia*, remove the Koresko Defendants as fiduciaries, trustees, third party administrators, and service providers for the Plans and to require the Koresko Defendants to restore any losses caused by their violations. This prayer for relief satisfies the third element of Constitutional standing.

The Koresko Defendants have not raised a proper factual challenge to Plaintiff's standing. They simply argue that they were authorized by the Plan documents to direct these withdrawals to be made and that ERISA did not bar their actions. These are legal arguments that are not properly considered in a Rule 12(b)(1) factual challenge to standing. They also argue that

Plaintiff cannot sue because the interests of the Plans' beneficiaries are not ripe. (See Defs.' Mem. 24 -30.) This argument is not relevant to the issue of Plaintiff's Constitutional standing. This suit was not brought by the beneficiaries or on behalf of the beneficiaries. Plaintiff is suing on behalf of the Plans, as she is statutorily authorized to do. Therefore, the Court denies the Koresko Defendant's challenge to Plaintiff's standing.

### B. Plaintiff Has Stated a Claim Upon Which Relief Can be Granted

The Koresko Defendants' Rule 12(b)(6) motion fails because Plaintiff's Complaint includes sufficient allegations to support a reasonable inference that the Koresko Defendants are liable for the alleged ERISA violations. See Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009). Above, the Court has held that Plaintiff has made a colorable argument that the REAL VEBA and SEWBP Plans are subject to ERISA coverage and that the Koresko Defendants are subject to ERISA liability. In deciding a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and take them in the light most favorable to Plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). In the interest of expediency, the Court shall not review the facts again. The Court finds that Plaintiff's factual allegations, summarized above, exceed the pleading standard set forth in Iqbal and Twombly. Therefore, the Koresko Defendants' Rule 12(b)(6) motion will be dismissed.

## IV. Conclusion

The Court holds that it has subject matter jurisdiction to consider Plaintiff's Complaint and that Plaintiff has stated a claim upon which relief can be granted. Therefore, the Koresko Defendants' Rule 12(b)(1) and 12(b)(6) motion will be denied.

An appropriate Order follows.