# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | NO. 2:09-CV-00988-CDJ |
| Plaintiff, | |
| v. | |
| JOHN J. KORESKO, V; JEANNE BONNEY; PENN-MONT BENEFIT SERVICES, INC.; KORESKO & ASSOCIATES, P.C.; KORESKO LAW FIRM, P.C.; COMMUNITY TRUST COMPANY; PENN PUBLIC TRUST; REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST and SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST, | HONORABLE C. DARNELL JONES, II |
| Defendants. | ELECTRONICALLY FILED |

## DEFENDANT FARMERS AND MERCHANTS TRUST COMPANY OF CHAMBERSBURG'S, SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY, SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Farmers and Merchants Trust Company of Chambersburg,

successor by merger to Community Trust Company ("F&M Trust"), files the

within Supplemental Proposed Findings of Fact and Conclusions of Law[1] pursuant to this Court's direction at the October 6, 2009 hearing, as follows:

## I.    **PROPOSED FINDINGS OF FACT**

1.    All parties to this action have been able to agree on one thing – F&M Trust is not interested in continuing as Trustee of the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust ("REAL VEBA") and the Single Employer Welfare Benefit Plan Trust ("SEWBPT") (collectively the "Trusts"). [Plaintiff's Motion to Substitute Proposed Order Granting Preliminary Injunction, pp. 1-2; Koresko Defendants Proposed Findings of Fact and Conclusions of Law, p. 94].

2.    Six days of hearings have revealed that employers established tax motivated programs set up primarily to benefit owner employees. These programs provided very limited, no current value term life insurance coverage to a very limited number of non-owner employees. The overwhelming amount of money in the programs was and is attributable to non-ERISA protected owner employees. Employers can continue to provide term life insurance for their non-owner employees outside of the Trusts.

---

[1] F&M Trust incorporates its Proposed Findings of Fact and Conclusions of Law filed on October 5, 2009, herein by reference.

## A. Background

3. The nature of the arrangement at issue in this case involves the creation of plans by employers. [Tr. 10/6/09 p.m., p. 65].

4. The employers determine who participates in their plans. [*Id.*].

5. The employers determine the amount and types of benefits provided by their plans. [*Id.*].

6. Ninety-seven (97%) to ninety-eight (98%) percent of these employer plans do not include non-owner employees ("NOEs"). [Tr. 10/6/09 p.m., p. 66].

7. Ninety-seven (97%) to ninety-eight (98%) percent of the funds contributed to and disbursed from the Trusts are not attributable to NOEs. [*Id.*].

8. Of the money currently held in the SEWBPT by F&M Trust, only $37,000.00 can be traced to employer plans that at one time included NOEs. [*Id.*].

9. Under the SEWBPT, none of the $37,000.00 is specifically earmarked for NOEs because plan participants do not own any of the assets in the Trust; however, even if such was the case, some portion of this $37,000.00 would go to pay for owner employee whole life insurance premiums. [Tr. 10/6/09 p.m., pp. 66-7].

757490.2

**B.    F&M Trust's actions**

10.    There is no record evidence that F&M Trust engaged in any
prohibited transactions or breached any fiduciary duties, nor has the Department of
Labor ("DOL") alleged any such issues in its Motion for Preliminary Injunction.

11.    Rather, F&M Trust was fired as Trustee for requesting certain
information from PennMont Benefit Services, Inc. ("PennMont") and other
Koresko Defendants, in order to verify the appropriateness of certain expenditures
that PennMont directed F&M Trust to make, and for refusing to make certain
payments for legal fees until directed to do so by this Court. [Tr. 7/17/09, p. 67-69,
74-75; Tr. 7/17/09, p. 71-72, 76-78].

12.    F&M Trust is a directed Trustee under the Trusts. [Tr. 7/19/09, p. 15,
84; F&M Ex. 1, Article III; F&M Ex. 2, Article III]. All disbursements made from
the Trusts by F&M Trust were at the direction of PennMont. [Tr. 9/09/09, p. 192;
F&M Ex. 1, §3.1; F&M Ex. 2, §3.1].

13.    The Custodial Agreement between F&M Trust's predecessor
Community Trust Company ("CTC") and Koresko & Associates, P.C. provides
that F&M Trust is entitled to request information concerning the life insurance
policies owned by F&M Trust and held by Koresko & Associates. [Koresko
Defendants Ex. 11, §§4(c), 5]. Further, F&M Trust is given the absolute right to
terminate the Custodial Agreement. [*Id.* at §6].

4

14. Koresko & Associates' powers under the Custodial Agreement are limited to matters involving the insurance policies, nothing else. [*Id.* at §12].

15. There is no evidence that F&M Trust and the Koresko Defendants entered into a joint defense agreement. There is no evidence that F&M Trust improperly complied with a subpoena.

16. There is no evidence that F&M Trust improperly discontinued the *Chao v. Community Trust Company* appeal in the United States Court of Appeals for the Third Circuit.

17. As directed Trustee, F&M Trust's role is generally to receive assets delivered to it in Trust, hold the assets, invest the assets as directed by the Plan Administrator, PennMont, and to pay out the assets for various insurance premiums and other payments as instructed by PennMont. [Tr. 9/02/09, p. 56; F&M Ex. 1, §4.2; F&M Ex. 2, §§4.2, 5.03].

18. As of October 6, 2009, approximately $2.45 million was in the SEWBPT. [Tr. 10/6/09 p.m., p. 74]. This amount continues to decrease as requests for distributions from PennMont continue without contributions being made to the Trust. [*Id.*]. The last deposit F&M Trust received from PennMont was on June 30, 2009. Since that time, no further deposits have been received by F&M Trust. [Tr. 9/02/09, p. 40; Tr. 10/6/09 p.m., p. 74]. Since July 17, 2009, the assets of the SEWBPT have decreased by approximately $1.5 million due to

5

ongoing disbursement directions given by PennMont to F&M Trust for sizeable insurance premium payments for owner employees. [Tr. 7/17/09, p. 31; Tr. 10/6/09 p.m., p. 74].

## C. The July 29, 2009 Amendment

### 1. The July 29, 2009 Amendment as to F&M Trust

19.   By letter dated July 30, 2009, Mr. Koresko advised F&M Trust that he was amending the REAL VEBA and SEWBPT Trust and Plan Documents, and provided F&M Trust with a copy of the Amendment (the "July 29, 2009 Amendment"). [F&M Ex. 3].

20.   The July 29, 2009 Amendment generally purports to eliminate all rights, authority, duties, responsibilities, and immunities of F&M Trust as trustee under the Trusts. For example:

    a.   The July 29, 2009 Amendment purports to eliminate the ninety-day notice period for removal of the trustee under section 9.1 of the SEWBPT Trust and 8.1 of the REAL VEBA Trust. [F&M Ex. 3, Art. XIII(b)].

    b.   The July 29, 2009 Amendment purports to amend the Trust Agreements to include a confession of judgment clause against F&M Trust, a $250,000 per occurrence liquidated damages provision, and an attorney's fees commission of "no less than $20,000". [F&M Ex. 3, Art. XIII(j)].

    c.   The July 29, 2009 Amendment also purports to eliminate F&M Trust's "power to act, to be compensated, to possess or control assets, to be indemnified, to seek judicial review, or to exercise any responsibility whatsoever." [F&M Ex. 3, Art. XIII(a)].

6

21. Section 10.1(c) of the SEWBPT Trust Agreement and Section 9.1(c) of the REAL VEBA Trust Agreement provide:

> (c) No amendment (including, for the purpose of this Section 9.1 [10.1], any provision of the Plan, incorporated by reference in this Trust Agreement) which affects the rights, duties or responsibilities of the Trustee may be made without its prior written consent.

[F&M Ex. 1, § 9.1(c); F&M Ex. 2, § 10.1(c)].

22. F&M Trust did not provide its prior written consent to the July 29, 2009 Amendment and does not consent to the July 29, 2009 Amendment insofar as it affects the rights, duties or responsibilities of F&M Trust as Trustee. [Tr. 9/08/09, p. 103; Tr. 9/09/09, p. 17–19].

23. The Koresko Defendants all but acknowledge that the July 29, 2009 Amendment is not effective as it relates to the Trustee. [Koresko Defendants Proposed Findings of Fact and Conclusions of Law, pp. 39-40].

## 2. The July 29, 2009 Amendment as to NOEs

24. The July 29, 2009 Amendment also amended the REAL VEBA and SEWBP Trust and Plan Document to eliminate any benefits for NOEs as follows:

> III. BENEFITS - § 5.01 is amended to include the following and excise any contrary provisions:
>
> General – Subject to Sec. 5.02, the Benefits provided by this Plan are stated in the Adoption Agreement except as follows
> No Benefits shall be paid to or on account of any claimant, person, participant, or former participant (hereinafter collectively referred to as non-

7

owner-employee ("NOE")), classified as a non-owner-employee, or to any beneficiary of any such NOE. . .

[F&M Ex. 3, § 3 (the "NOE Amendment")].

25.     Since the time of the NOE Amendment, PennMont has made no requests for payments for any insurance policy that would have benefited or been in the name of an NOE. [Tr. 10/6/09 p.m., p. 67].

26.     PennMont has sent a letter to sponsoring employers who previously had NOEs in their plans informing them of the NOE Amendment and that the term life insurance can stay in place provided that the employee or his or her employer pay the term life insurance premium. [Koresko Ex. 15]. Thus, while the Trusts will no longer pay NOE term life insurance premiums, the term life insurance can remain in effect. [Tr. 10/6/09 p.m., p. 67-8].

## D.     Harm to F&M Trust

27.     F&M Trust will be harmed if it remains as Trustee. At its most basic level, this harm stems from the fact that decisions that F&M Trust makes concerning the disposition of Trust assets will be disputed, challenged and opposed by DOL or the Koresko Defendants.

28.     If the provisions of the July 29, 2009 Amendment purporting to affect the rights, duties and responsibilities of F&M Trust would be held to be effective, despite the language of Sections 9.1(c) and 10.1(c) of the Trust Agreements and

757490.2

F&M Trust's refusal to consent thereto, and if F&M Trust is ordered to remain as Trustee, F&M Trust, among other things:

a. will be subject to additional litigation since it will be unable to satisfy either the Koresko Defendants or DOL when it makes disbursement decisions;

b. will not be paid for its services as evidenced by the fact that payment has not been made since March 2009. [Tr. 7/19/09 p.44];

c. will likely face litigation from plan participants or beneficiaries since it may not be able to make premium payments because disbursement directions from PennMont and payments of owner employee insurance premiums will have exhausted SEWBPT assets and no funds have been deposited with F&M Trust for the SEWBPT since July 6, 2009 [Tr. 10/6/09 p.m., p. 74];

d. risks the Koresko Defendants confessing judgment against it in the amount of $250,000 per occurrence plus attorneys fees;

e. will not be indemnified for its actions; and

f. will not be permitted to seek judicial review of its actions.

29. If the provisions of the July 29, 2009 Amendment purporting to affect the rights, duties and responsibilities of F&M Trust are declared null and void, but F&M Trust is ordered to remain as Trustee, F&M Trust, among other things:

9

a.     will be subject to additional litigation since it will be unable to satisfy either the Koresko Defendants or DOL when it makes disbursement decisions;

b.     will not be paid for its services as evidenced by the fact that payment has not been made since March 2009.  [Tr. 7/19/09 p.44]; and

c.     will likely face litigation from plan participants or beneficiaries since it may not be able to make premium payments because disbursement directions from PennMont and payments of owner employee insurance premiums will have exhausted SEWBPT assets and no funds have been deposited with F&M Trust for the SEWBPT since July 6, 2009 [Tr. 10/6/09 p.m., p. 74].

30.     As to F&M Trust's power to be compensated and indemnified, the Trust Agreements provide in relevant part that:

> the Plan Administrator and Adopting Employer hereby agree to indemnify and hold harmless the Trustee, individually and as Trustee . . . from and against all amounts, including without limitation taxes, expenses (including reasonable counsel fees), liabilities, claims, damages, actions, suits, or other charges, incurred by or assessed against each Indemnified Party ("Claims"), in advance, unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement.

[F&M Ex. 1, §7.5; F&M Ex. 2, §8.5].

31.     The Trust Agreements further provide that "fees for legal services rendered to the Trustee (whether or not rendered in connection with a judicial or

10

administrative proceeding) . . . shall be paid from the Trust unless first paid by Adopting Employer." [F&M Ex. 1, §7.1; F&M Ex. 2, §8.1].

32.     The Trust Agreements further provide that upon termination, the Trustee "is authorized to reserve such amount as it may deem advisable for payments of its fees and expenses in connection with the settlement of its account or otherwise, and any balance of such reserve remaining after the payment of such fees and expenses shall be paid over in accordance with the directions of the Plan Administrator under Section 9.2." [F&M Ex. 1, §8.3; F&M Ex. 2, §9.3].

33.     Section 7.7 of the REAL VEBA Trust Agreement [8.7 of the SEWBP Trust Agreement] provides in relevant part:

> Settlement of Disputes.  In the event that any controversy should arise between the Trustee and the . . . Plan Administrator . . . with respect to the payment or delivery by the Trustee of any monies it holds hereunder, with respect to the proper construction of this Trust Agreement or of any amendment hereto, or the proper construction of the Plan or any amendment thereto, the Trustee shall not be obligated to determine such controversy at its peril but may insist that such controversy be determined by a court of competent jurisdiction; and the Trustee shall not be obligated to make payment or delivery of such monies or other property or to take any other action in connection with the matter in controversy until a final adjudication of such controversy shall have been made by a court of competent jurisdiction.

[F&M Ex. 1, §7.7; F&M Ex. 2, §8.7].

757490.2

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard for a Preliminary Injunction

1.   "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3rd Cir. 2004).

2.   The Court must balance the harm to F&M Trust if the injunction is granted and F&M Trust is required to continue as Trustee versus the harm to NOEs who DOL purports to represent in this action.

3.   The Court finds that the request for preliminary injunction must be denied because F&M Trust will suffer significant harm compared to the de minimus harm, if any, that NOEs will experience.

### B.   Weighing the harm to F&M Trust

#### 1.   There is no harm to the NOEs

4.   DOL can only seek to protect the interests of NOEs who participated in the employer plans at issue in this action. *See* 29 C.F.R. § 2510.3-3 ("For purposes of title I of the Act and this chapter, the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants under the plan, as

12

defined in paragraph (d) of this section."); *Yates v. Hendon*, 541 U.S. 1 (2004) (finding plan covering one or more employees, other than business owner and his or her spouse, covered by ERISA).

5. Under the Trust Agreements, and except as provided in Section 9.1(c) and 10.1(c), "PennMont may at anytime and from time to time amend, in whole or in part, any or all of the provisions of this Trust Agreement by notice thereof in writing delivered to the Trustee . . . ." [F&M Ex. 1, §9.1; F&M Ex. 2, §10.1]. *Cf. Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (the employer or plan sponsor generally has the right under ERISA, for any reason at any time, to adopt modify, or terminate its welfare plan).

6. Through action taken by PennMont, the NOE Amendment has eliminated the payment of term life insurance premiums for NOEs from the SEWBPT. By action taken by the Koresko Defendants, each employer and its NOEs was advised of the NOE Amendment to cease providing for payment of term life insurance premiums from the SEWBPT and their ability to continue to maintain their coverage.

7. The NOE Amendment in no way harms or effects the ability of an NOE to continue the same term life insurance coverage going forward. [F&M Ex. 3; Korekso Ex. 15]. Rather, any harm suffered by NOEs is not a result of their removal from the plans but is a result of **employers** deciding to no longer pay the

13

term life insurance premiums for the NOEs. Further, an employer is entitled to discontinue benefits at any time. *See Curtiss-Wright Corp.*, 514 U.S. at 78.

8.      It is well established that welfare plan benefits do not vest. *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Railway Co.*, 520 U.S. 510, 514 (1997). Accordingly, no NOEs in the plans at issue were ever vested in plan benefits and were not entitled to, or guaranteed, any benefits from the Trusts. Nor were they or are they guaranteed that their employer would always pay the benefit. Thus, there is no harm to the NOEs by reason of the amendment terminating NOE participation because they never had a legally enforceable interest in the benefits in the first place.

9.      Since there is no harm to NOE term life insurance coverage going forward, there is no harm to the interests DOL is attempting to protect through this action.

10.      The NOEs will continue to receive their death benefits as provided by term life insurance policies as long as the premiums are paid by the employer. And even if the employer would discontinue paying premiums (as is the employer's right under ERISA and the relevant documents), the employee could assume such payments his or herself. [Koresko Ex. 15].

757490.2

11. Even if it is determined that the NOEs were not removed as plan participants by the NOE Amendment, any harm to the NOEs is de minimus or nonexistent.

12. Currently only $37,000.00 of the $2.45 million ($4 million as of July 17, 2009) held by F&M Trust is attributable to plans with NOEs. Of this amount, the actual amount attributable specifically to NOEs is even less since some portion of the $37,000.00 will go to pay premiums on owner employee insurance policies.

13. Contributions for NOEs are used to purchase term life insurance policies. These contributions are not held for any appreciable time in the Trust. Rather, the contributions for NOE term life insurance premiums are made at roughly the same time as the insurance premium is paid. [Tr. 10/6/09 p.m., p. 40]. This contrasts with contributions for owner employee whole life insurance policies where the contribution may be made well in advance of the premium due date in order to take advantage of income tax deductions. [Id.].

14. There is no evidence that term life insurance premiums were ever not paid. Rather, DOL's allegations against the Koresko Defendants is that they took surplus from the Trusts to pay for legal expenses. Accordingly, there is no evidence that insurance policies that fund plan death benefits for NOEs have lapsed or will lapse in the future.

15

15. Since the plan documents do not provide the NOEs – or any beneficiary for that matter – with a right to Trust surplus in the form of interest, experience gain or demutalization proceeds, the NOEs have no interest in the surplus of the Trusts. *See, e.g.*, *RLJCS Enterprises, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust*, 487 F.3d 494, 486-7 (7th Cir. 2007)(". . . the Trust acts as insurer and buys policies to reinsure the risk; only the Trust has any property interest in any particular policy. It follows that distributions of cash or stock attributable to any policy also belong to the Trust."). Accordingly, even if the Koresko Defendants have improperly transferred plan surplus to themselves, or would do so in the future, such transfers do not harm the NOEs in any material manner.

## 2. F&M Trust will suffer significant harm

16. By comparison, if F&M Trust is required to continue as Trustee, the harm that it will suffer is substantial. Going forward, F&M Trust will be stuck between the rock of DOL and the hard place of the Koresko Defendants, and it will not be paid, will not have sufficient Trust assets to pay legitimate expenses, will face significant litigation and will be unable to otherwise protect its rights and properly discharge its duties.

17. Further, even though it is a directed Trustee, F&M Trust was prudently exercising its power as Trustee when it asked PennMont and the

16

Koresko Defendants for additional information and refused to pay certain expenses pending the outcome of this matter. *See In re Worldcom, Inc. ERISA Litigation*, 263 F.Supp.2d 745, 762 (S.D.N.Y. 2003)(recognizing that even a directed trustee is required to adhere to the prudent man standard of care); [F&M Ex. 1, §7.7; F&M Ex. 2, §8.7].

## C. Irreparable Harm to NOEs

18.     As outlined above, DOL can only seek to protect the interests of NOEs.

19.     As outlined above, there is no harm to the NOEs in this case by replacing F&M Trust with Penn Public Trust.

20.     Further, even if it could be interpreted in some way that the NOEs are harmed, such damage is not irreparable since they can be made whole through an award of money damages. *See A.L.K. Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761, 763 (3d Cir. 1971). Further, this Court could order that some portion of the $37,000.00 that is arguably attributable to plans that had NOEs be deposited with the Court for disbursement at a later date.

21.     While in some situations the alleged violation of a statute can constitute irreparable harm, this is not such a case since DOL has made only a colorable evidentiary showing of a violation. *See Miller v. California Pacific Medical Center*, 19 F.3d 449, 459 (9th Cir. 1994).

757490.2

**D.    Likelihood of Success on the Merits**

22.    Since there are no NOEs going forward who are being denied benefits, or who are being denied funds that DOL claims they are entitled to, and since the NOEs are not entitled to Trust surplus, DOL has not sustained its burden and proven that it is likely to succeed on the merits of its claim.

**III.    PROPOSED CONCLUSIONS**

23.    DOL's Motion for Preliminary Injunction is denied.  Further, the July 29, 2009 Amendment as it affects the rights, duties or responsibilities of F&M Trust is null and void and without effect, including, but not limited to Article XIII(a)-(j) of the July 29, 2009 Amendment, which is null and void in its entirety.

24.    Alternatively, DOL's Motion for Preliminary Injunction is denied. F&M Trust is ordered to deposit an amount not to exceed $37,000.00 with the Court.  Further, the July 29, 2009 Amendment as it affects the rights, duties or responsibilities of F&M Trust is null and void and without effect, including, but not limited to Article XIII(a)-(j) of the July 29, 2009 Amendment, which is null and void in its entirety.

25.    Alternatively, DOL's Motion for Preliminary Injunction is granted. F&M Trust shall remain as Trustee until further Order of this Court, with the following conditions:

a. F&M Trust shall be paid for its services as Trustee based on its current Trustee fee schedule for other ERISA plans pursuant to which F&M Trust serves as Trustee, and it shall be permitted to be paid its fee as trustee of the Trusts. [F&M Ex. 6].

b. The Koresko Defendants shall provide to F&M Trust on a timely and updated basis, documents and other information necessary for F&M Trust to perform its duties as Trustee including, but not limited to: actual plan documents; inventories and copies of all insurance policies for which the Trustee is owner; identification and contact information for participating employers, insureds and beneficiaries; and copies of all insurance company and third party invoices for which payment directions are submitted to the Trustee.

c. The July 29, 2009 Amendment as it affects the rights, duties or responsibilities of F&M Trust is null and void and without effect, including, but not limited to Article XIII(a)-(j) of the July 29, 2009 Amendment, which is null and void in its entirety.

19

Respectfully submitted,

RHOADS & SINON LLP

Date:  October 9, 2009

By:  /s/Timothy J. Nieman
     Timothy J. Nieman
     Attorney I.D. No. 66024
     Stephen Moniak
     Attorney I.D. No. 80035
     One South Market Square
     P.O. Box 1146
     Harrisburg, PA 17108-1146
     (717) 233-5731
     tnieman@rhoads-sinon.com
     smoniak@rhoads-sinon.com
     Attorneys for Defendant Farmers
     and Merchants Trust Company of
     Chambersburg, successor by merger
     to Community Trust Company

757490.2

## CERTIFICATE OF SERVICE

It is hereby certified that on October 9, 2009, the foregoing F&M Trust Company of Chambersburg's Supplemental Proposed Findings of Fact and Conclusions of Law was transmitted electronically to the Court for filing and for electronic service, upon the following:

Joan M. Roller, Esquire
Linda M. Henry, Esquire
Joanne Jarquin, Esquire
U.S. Department of Labor
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall, West
Philadelphia, PA 19106-3306

John J. Koresko, V, Esquire
Koresko Law Firm, P.C.
200 West Fourth Street
Bridgeport, PA 19405

/s/ Timothy J. Nieman
Timothy J. Nieman