**In the United States District Court
For the Eastern District of Pennsylvania**

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>John J. Koresko, V, et al.,<br><br>Defendants | Civil Action No. 2:09-cv-00988 |

**Motion for Temporary Restraining Order and Preliminary Injunction**

By and through their attorney, Defendants Koresko Law Firm, P.C.; John J. Koresko, V; Jeanne Bonney; Koresko & Associates, P.C.; PennMont Benefit Services, Inc.; the Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust; the Single Employer Welfare Benefit Plan Trust; and Penn Public Trust [the "Koresko Parties"] move this Court for a temporary restraining order and preliminary injunction mandating F&M Trust payments as directed by PennMont Benefit Services, Inc., Plan Administrator, and in support thereof submits and incorporates by reference their Memorandum of Law and all other filings and evidentiary proceedings to date.

Respectfully submitted,

*[signature]*

John J. Koresko, V

**In the United States District Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> John J. Koresko, V, et al., <br><br> Defendants | Civil Action No. 2:09-cv-00988 |

**Defendants' Memorandum of Law**
**in Support of Motion for Temporary Restraining Order and Preliminary Injunction**

Defendants Koresko Law Firm, P.C.; John J. Koresko, V; Jeanne Bonney; Koresko & Associates, P.C.; PennMont Benefit Services, Inc. (PennMont); the Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association (REAL VEBA) Trust; the Single Employer Welfare Benefit Plan (SEWBP) Trust; and Penn Public Trust (PPT) (collectively, the "Koresko Parties") have petitioned this Court seeking temporary and preliminary injunctions in the form of an Order mandating F&M Trust payments as directed by PennMont, Plan Administrator, and in support thereof submit the following Memorandum of Law.

So as to assist the Court and reduce voluminous pleadings and exhibits, the Koresko Parties incorporate by reference the testimony and exhibits submitted in their Findings of Fact and Conclusions of Law (Dkt. 137) in reference to the Motion of the Department of Labor (DOL) for Preliminary Injunction (cited herein as "DOL TRO Exhibits) as well as the Koresko's recently filed Memorandum of Law in support of their

Motion to Strike the Motion to Intervene of Penn Mutual Life Insurance Company (Dkt. No. 147), as well as the Memorandum of Law and twenty two (22) Exhibits submitted in support of their Motion for Emergency Temporary Restraining Order and Preliminary Injunction against TD Bank, N.A. (TD Bank) and to Seal Volume Two of the Exhibits (Dkt. 150).  The Koresko Parties' Exhibits to the motion for injunction against TD Bank are referenced herein as TD BANK TRO Exh. "__".

The Koresko Parties submit that the refusal of F&M Trust Co. (F&M) to pay benefit premiums combined with TD Bank's specious freezing of funds is an assault on the Trusts as a going concern.  That alone is grounds for injunctive relief. *See* Memorandum re TD BANK TRO (*Id.*) When combined with the civil rights violations alleged against DOL personnel (2:09-cv-03152-CDJ), and the actions of TD Bank and F&M Trust Co. (F&M) to apparently aid an abet them, the Koresko Parties believe they have made a sufficient showing of irreparable harm.  Given the argument of DOL set forth in its memorandum in support of their application/petition for injunction against the Koresko Parties (Dkt 63), a violation of ERISA is *prima facie* irreparable harm.  ERISA § 402 requires a fiduciary to abide by the plan documents.  F&M is not taking its direction from the Administrator, and F&M has no discretion to refuse to act according to the trust documents.  It appears, if ERISA applies, that F&M is violating its legal duties and no further showing of irreparable harm is required.

I.     **The History of the Parties**

    A.     <u>F&M Unilaterally Imposed New Conditions for Trust Payments</u>

F&M Trust (F&M) became Trustee of the REAL VEBA and SEWBP Trusts as successor by merger to Community Trust Company (CTC), effective November 29, 2008. F&M made payments as directed by PennMont without dispute through February of 2009. Upon institution of the instant Complaint in March 2009, F&M refused to execute PennMont's directives for premium payment based on a new scheme of documentary requirements, later amending its policy to more limited information and honoring such requests. [*See* F&M DOL TRO Exhs. 3 and 4]. However, by email dated October 30, 2009, F&M Trust has refused **any** further payments unless certain demands are met by PennMont. F&M has been advised that some of these policies are in imminent lapse status. [*See* Exhibit A]. As F&M testified, these unilateral conditions imposed by F&M are substantially different than the course of conduct established between PennMont and CTC. [DOL TRO R. Murray Tr. 07/17/09 pp. 27-29]. F&M is operating under a subpoena from DOL, and F&M has adopted an adversarial role by placing these plan benefits at risk. F&M has already breached the Gramm Leach Bliley Act privacy rights of parties to whom it owes fiduciary duties by its turnover of information to the DOL.[1] On information and belief, F&M is turning over every bit of information to DOL, such that these requests for information are in effect discovery for an agency of the government that has proven no jurisdiction.[2]

  B. F&M was sued by the Koresko Parties in State Court for, *inter alia*, turnover of client information without permission, settling litigation without client knowledge or permission and other breaches of duty and <u>contractual obligations.</u>

---

[1] Gramm Leach Bliley Act 15 U.S.C. §6801 *et seq*.
[2] The Koresko Parties have contended from the outset that DOL lacks ERISA jurisdiction. Certainly there is no DOL jurisdiction today, as by Plan Amendment dated July 29, 2009, only owner/employees participate in the Plan. F&M filed a brief saying ERISA does not apply.

F&M is a directed Trustee under the REAL VEBA and SEWBP Trusts. [DOL TRO Tr. 7/19/09 p.15, 84; F&M Ex 1, Article III; F&M Ex 2, Article III]. F&M is in a contractual and fiduciary relationship with PennMont and the Koresko Defendants as to administration of the Plans and Trusts. [DOL TRO Bonney Aff2 Tab 30].[3] F&M's

---

[3] Trust 3.1    Payment of Benefit. At the direction of the Plan Administrator, the Trustee shall pay such portion of the Trust Fund as the Plan Administrator shall direct, to be paid directly to or for the benefit of Employees of the Adopting Employer and its beneficiaries. Any monies disbursed or paid over by the Trustee pursuant to this Section 3.1 shall no longer be part of the Trust.
Trust 3.3    Reliance on Plan Administrator. Any directions pursuant to Section 3.1 may, but need not, specify the application to be made of monies so ordered. Each direction to the Trustee under Section 3.1 shall constitute a representation and warranty by the Adopting Employer, the Advisory Committee., and the Plan Administrator that such direction is in accordance with applicable law, the Plan and this Trust Agreement. The Trustee shall have no duty to make any independent inquiry or investigation before acting upon such direction, or to see to the application of any monies so paid over. (emphasis added)
Trust 3.4    Trustee Not Responsible for Plan Administration. The Trustee shall not be responsible under this Trust Agreement, or otherwise, in any way respecting the determination, computation, payment or application of any benefit, for the form, terms, payment provisions or issuer of any Insurance Contract, for performing any functions under any such Insurance Contract which it may be directed to purchase and/or hold as contract holder thereunder (other than the execution of any documents incidental thereto and transfer or receipt of funds thereunder upon direction of the Plan Advisory Committee or Plan Administrator), or for any other matter affecting the administration of the Plan by the Adopting Employer, Advisory Committee., Plan Administrator or any other Person to whom such responsibility is allocated or delegated pursuant to the terms of the Plan.
**The Trustee is to comport with the Trust Document and the Rules and Directions of the Plan Administrator:**
Trust 2.04    Standard of Conduct - The Trustee, Plan Administrator and all the other Fiduciaries with respect to the Trust shall discharge their duties solely with the interests of all Participants and Beneficiaries and for the exclusive purpose of providing Benefit to Participants and Beneficiaries and defraying any reasonable expenses of administration; with the care, skill, prudence and diligence, under the circumstances then prevailing , that a prudent man acting in a like capacity and familiar with such certain matters would use in the conduct of the enterprise of like character and with like aims; by diversifying the investments so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so; and in accordance with the Trust and the rules and directions of the Plan Administrator.
**PennMont Benefit Services, Inc., is named as the Plan Administrator with authority to direct disbursements by the Trustee:**
Plan 6.03    Rights and Duties - Unless an Administrator has been named in the Adoption Agreement, the Committee shall enforce this Plan in accordance with its terms and shall be charged with its general administration. The Committee shall exercise all of its discretion in a uniform, nondiscriminatory manner and shall have all necessary power to accomplish those purposes, including but not limited to the power:
(e)    To authorize all the disbursements by the Trustee from the Trust.…If an Administrator has been named in the Adoption Agreement, it shall assume and perform all and each and every, duty and responsibility to the Committee; except that if the Trust is a directive Trust as stated in the Adoption Agreement, then the sole and exclusive duty of the Committee shall be issuance of investment directions (other than those relating to Insurance Contracts) and matters incident thereto. The term "Committee" as used herein shall include the "Administrator," unless the context of the instrument indicates a contrary intent.

clients are the administrator and the attorney-in-fact of beneficiaries (*See Chao v Community Trust* 474 F. 3d 75 (3rd Cir. 2007) (REAL VEBA represents the beneficiaries as customers).  John Koresko is the attorney in fact for the Plan and Trust pursuant to the Plan and Trust documents.  He has power of attorney executed by every individual personally.  He exercises power of attorney for every Trust policy and asset.  Mr. Koresko is also the majority shareholder in PennMont. [DOL TRO Bonney Aff2 Tab 30]. PennMont and the Koresko Defendants directed F&M not to turn over materials to DOL pursuant to those obligations and anticipated continued defense against DOL regarding such turnover in the Third Circuit Court of Appeals. [DOL TRO F&M Exhs.3 and 4]. Nevertheless, DOL introduced documents bates-stamped "CTC" and "F&M" through pages 3500 in their Temporary Restraining Order exhibits.  [DOL TRO Gov Exhs. 1-4]. The Koresko Parties believe that the documents were obtained in violation of Gramm Leach Bliley Act 15 U.S.C. §6801 *et seq*.

Without the knowledge or permission of PennMont or the Koresko Defendants, or the representatives of the beneficiaries, F&M agreed to withdraw the Third Circuit Court appeal at No. 08-4381 (*Community Trust v. Chao*), as part of their deal with DOL. The Trustee, out of trust funds, had already paid the Gates, Halbruner and Hatch, P.C. law firm $145,000 to prosecute for the trust estate.  F&M's attorneys who torpedoed the appeal on the eve of oral argument, were never retained by the real parties in interest.

Subsequently, F&M was sued in Montgomery County, Pennsylvania, for, *inter alia*, turnover of client information without permission, settling litigation without client knowledge or permission and other breaches of duty and contractual obligations.  All

these are elements of a general breach of fiduciary duty that also requires this request for injunction.

### C. F&M was removed as Trustee.

The structure of REAL VEBA, and the roles of John Koresko, his affiliated law corporations, and PennMont, were all examined in *REAL VEBA v. Sidney Charles Markets*, 2006 WL 2086761 (E.D.Pa. 2006). Under the VEBA trust documents, PennMont has numerous discretionary powers (ranging from "sole" to "absolute"), including powers to hire and fire trustees and service providers, to determine the recipient and amounts of benefits, and to take any other action it feels necessary. REAL VEBA evolved from the Delaware Valley Leagues, an unincorporated association formed by Mr. Koresko. Penn Public Trust, a Pennsylvania non-profit corporation also formed by Mr. Koresko, was the original named trustee.

The governing documents grant to Mr. Koresko an irrevocable power of attorney on behalf of (1) each participant with respect to insurance policies and other matters relating to the trust; (2) each employer with respect to DOL and tax matters; and (3) any employer's Committee that might have a power if PennMont were not Administrator. The Trustee has NO discretion to refuse the payment directions of PennMont:

> Plan 2.05 [PennMont] shall have sole discretion to delegate any and all Fiduciary responsibilities under the Trust (other than those of the Trustee) to designated persons. . . . The Trustee may appoint an investment manager . . . .The Plan Administrator and the Trustee may additionally delegate the performance of specific ministerial responsibilities. Any reference in the Plan and Trust to "Trustee" shall also mean "Plan Administrator" when a duty, privilege or immunity has been delegated.

Plan 3.1 Payment of Benefit – At the direction of the Plan Administrator, **the Trustee shall pay such portion of the Trust Fund as the Plan Administrator shall direct…**

Plan 9.04(b) The Administrator shall have the right to amend this Plan, in its sole discretion, from time to time and to amend or cancel any such amendments.

Trust 12.3 Plan Administrator.  Unless otherwise specifically stated in this Trust Agreement, the Trustee may take directions from the Plan Administrator in all matters relating to the Plan and shall be further fully protected in acting upon any notice or direction received from the Plan Administrator.  Unless otherwise specifically stated in the notice or direction, notice or direction from the Plan Administrator shall be deemed to be notice or direction from the Employer.

Trust 3.3 Reliance on Plan Administrator:  Any directions pursuant to Section 3.1 may, but need not, specify the application to be made of monies so ordered.  Each direction to the Trustee under Section 3.1 shall constitute a representation and warranty by the Adopting Employer, the Advisory Committee., and the Plan Administrator that such direction is in accordance with applicable law, the Plan and this Trust Agreement. The Trustee shall have no duty to make any independent inquiry or investigation before acting upon such direction, or to see to the application of any monies so paid over.

Trust 12.7 Fiduciary Discretion.  Unless otherwise provided, any Plan Administrator acting hereunder shall be deemed to act pursuant to its absolute discretion, and any such action may be reviewed only for abuse of discretion.

Trust 9.1 Resignation or Removal.  The Trustee may be removed by PennMont at any time upon ninety (90) days notice in writing to the Trustee.

Trust 10.1  Amendment. . . . PennMont may at anytime and from time to time amend, in whole or in part, any or all of the provisions of this Trust Agreement by notice thereof in writing delivered to the Trustee.

Plan 6.03 The Administrator does all Committee functions [but if not, John Koresko as secretary of the Committee takes all actions (per Adoption Agreements)];

Plan 6.02 PennMont enforces Plan in accordance with its terms and is charged with general administration; 6.02(b) PennMont computes and certifies to the trustee the amount and kind of Benefit; 6.02(e) PennMont authorizes disbursements from the Trust); 6.02(f) – PennMont - directs the investments to be made by the Trustee; 6.02(g) – PennMont makes and publishes rules and regulations of the Plan.

If a trustee does not like the instructions, its sole option is to resign, not interfere. The operating documents give the trustee protection from suit.

It is uncontested that Community Trust Company (CTC) was hired by PennMont to serve as the directed trustee for the REAL VEBA Trust. [DOL TRO Tr. 7/19/09 p.15, 84; F&M Ex 1, Article III; F&M Ex 2, Article III]. Either the trustee or administrator [pursuant to the administrator's general authority in Trust sec. 5.04(p)] can hold contributions and trust earnings, but the Administrator has sole discretion to direct the Trustee to pay for trust expenses and costs.  The Trustee takes direction from the Administrator and has no discretion to compel the Administrator with respect to the Administrator's duties.   Pursuant to its authority to delegate, CTC gave Koresko & Associates (and through KAPC, PennMont and John Koresko), complete discretion as to management and operation of policies purchased by REAL VEBA.  [*See* DOL TRO Koresko Exh 11: Custodial Agreement; Gates Testimony Tr. 10/06/09 pp 40:15-25; 41:1-12]. *The agreement also gave KAPC authority to disregard any order of the Trustee.* Regardless of any Custodial Agreement, PennMont has the broadest powers under the documents, as exemplified in the following provisions of the Trust at Articles 3, 4, 5, 6, 8 and 12:

> **3.1 Payment of Benefit – At the direction of the Plan Administrator, the Trustee shall pay such portion of the Trust Fund as the Plan Administrator shall direct…**
>
> 3.3 Reliance on the Plan Administrator – Any directions pursuant to Section 3.1 . . . need not specify the application of the monies so ordered.  Each direction to the Trustee shall constitute a representation and warranty . . . that such direction is in accordance with applicable law, the Plan and this Trust Agreement.  The

Trustee shall have no duty to make independent inquiry or investigation before acting on such direction, or to see to the application of any monies so paid over.

3.4 Trustee Not Responsible for Plan Administration.  The Trustee shall not be responsible under this Trust Agreement, or otherwise, in any way respecting the determination, computation, payment or application of any benefit. . . for performing any functions under any such Insurance Contract . . . or for any other matter affecting the administration of the Plan by the . . . Administrator. . .

3.6 Effect on Adopting Company.  The Trustee shall be fully protected by the Adopting Employer in relying upon the decisions, instructions, actions and directions of the . . . Administrator.

4.2 The Trustee shall, at the direction of the Plan Administrator, use and apply the assets comprising the trust . . .(a) To provide and/or otherwise arrange for the payment of all premiums, benefits and services. . . (b) To provide and/or otherwise arrange for payment of all reasonable and necessary expenses incurred in enforcing the rights of the Trust; (c) To provide for the administration of the Trust fund in accordance with the direction of the Administrator.

5.02 Plan Administrator - The Administrator shall administer the Plan in accordance with its terms, shall be responsible for its operation, shall have authority to enforce the Plan for and on behalf of any and all parties interested herein, and shall have powers necessary to carry out the provisions of the Plan, specifically including the power to establish and publish such rules, regulations and other specifications of the Plan as may be necessary or desirable to carry out the provisions of the Plan.

5.04 Powers of the Administrator - **Without limiting the general of the foregoing, the Administrator shall have the following powers:**
a. To designate another person, firm or corporation to serve as administrator of the Plan, and to contract for or delegate the administration of all or any portion of the Plan;
b. To determine from time to time the benefits to be provided to     Participating Employees under the Plan . . .
**d. To establish from time to time administrative procedures, specifications and conditions applicable to the payment and/or provision of benefits . . .**
e. To determine from time to time the method and manner for funding payment of, and/or otherwise providing benefits . . .
**f. To direct and arrange for the payment and/or provision of, and otherwise arrange for and cause to be paid** and/or provide, all services to which Participating   Employees are entitled to under the Plan;
g. To verify and investigate claims . . .

h. To determine from time to time the amount and frequency of contributions hereto . . .

i. To determine and establish the level of cash reserves of the Trust as may be necessary, appropriate and/or desirable for the proper execution, administration and accomplishment of the purposes and objectives of the Plan and Trust; j. To direct and authorize the payment of the Trust Fund . . .

k. To adopt such rating Plans for insurance purchased hereunder as may be necessary or desirable; . . .

**m. To determine all questions arising in connection with the administration, interpretation and application of the Plan, including questions of eligibility, and status and rights of Participating Employees and Beneficiaries and any other   person hereunder and the payment and/or provision benefits hereunder;**

**n. To   decide any dispute or question arising under the Plan; .** . .

**p. To do all other acts and things, and in connection therewith to execute all such instruments and documents, as may be necessary, appropriate, desirable or convenient for the exercise of the powers granted hereunder** or for the  accomplishment of the purposes and objectives of this Trust.

6.3   **The Trustee shall execute documents, settle transactions, take action on behalf of or in the name of the Trust and make and receive all payments, on the direction of an authorized representative of the Plan Administrator or Advisory      Committee.**

6.4   **The Trustee may, by written request, seek instructions from the Plan Administrator on any matter . . . without incurring any liability whatsoever.**

8.2   Plan Expenses.  . . . Each direction to the Trustee under this Section shall constitute a representation and warranty by the Adopting Employer, Advisory Committee., and Plan Administrator that such direction is in accordance with applicable law, the terms of the Plan, and the terms of this Trust Agreement, and the Trustee shall have no duty to make any independent inquiry or investigation as to any of the foregoing before acting upon such direction or to see to the application of any monies paid over.

12.3  Plan Administration – Unless otherwise specifically stated in this Trust Agreement, the Trustee may take directions from the Plan Administrator in all matters relating to the Plan and shall be further fully protected in acting upon any notice or direction received by the Plan Administrator.  Unless otherwise specifically stated in the notice or direction, notice or direction from the Plan Administrator shall be deemed notice or direction from the Employer.

- 10 -

>   12.7   Fiduciary Discretion  - Unless otherwise provided, any Plan Administrator acting hereunder shall be deemed to act pursuant to its absolute discretion, and any such action may be reviewed only for abuse of discretion.

As anyone can see, the Trustee is granted NO discretion anywhere in the documents. F&M pleads it was a "directed trustee."

Following the changes in the relationship, and upon knowledge of F&M's turnover of allegedly protected documents, as well as F&M's discontinuation of the second appeal in *CTC v Chao* (08- 4381) (3d Cir.), PennMont fired F&M by notice given July 6, 2009.[4]   F&M was further directed to surrender Trust assets immediately to Penn Public Trust [DOL TRO Tr. 7/17/09, p. 76-78].  This Court has had pending since July the DOL's motion for an injunction barring that removal.  DOL introduced no evidence that the documents were illegal or that there are any non-owner employees who could benefit by its actions.  DOL *also introduced no evidence that any action alleged against Defendants caused the trust to be unable to satisfy a claim for benefits*, as required by the Supreme Court's clarification of the cause of action for breach of fiduciary duty in the context of a defined benefit arrangement. *See LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1024-25 (2008).  DOL introduced no evidence that the arrangement was not really a "top hat" arrangement, such that there can be no liability against Defendants for breach of fiduciary duty or prohibited transactions.  *See In re IT Group,* 448 F.3d 661 (3d Cir. 2006).  The firing of a trustee is  a settlor function, not a fiduciary function, s*ee Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), so there cannot be an impediment under Title I, Part IV to the transfer of trust funds.

**II.   This Court should compel F&M to Pay as Directed by PennMont**

---

[4]     Both REAL VEBA and SEWB Trusts provide the "Trustee may be removed by PennMont at any time upon ninety (90) days notice in writing to the Trustee." [DOL TRO Tr. 7/17/09 pp. 78-77; F&M Ex 1 §8.1; F&M Ex 2, §9.1].  F&M Trust is contractually required under REAL VEBA and SEWBP Trust Agreements to transfer Trust assets to Penn Public Trust following the expiration of the 90-day notice period set forth in the Trust documents, if not before. [DOL TRO F&M Ex. 1, § 8.1; F&M TRO Ex. 2, §9.1].

      A.      The Court has authority to act and the equities weigh in favor of <u>payment for insureds' benefits.</u>

A court employs equity jurisdiction in its consideration of an Application for Preliminary Injunction. The standard for this Court's determination is set out in full in the Koresko Parties recent motion against TD Bank, seeking an order from this Court to compel release of funds. The irreparable harm, lack of harm to F&M, equities in favor of the Koresko Parties and public interest in compelling F&M to make premium payments are equally at play here. Adjustment and reconciliation between public interest and private needs as well as competing private claims may be given consideration. *Lemon v Kurtzman,* 411 U.S. 192, 200-1 (1973) (quoting *Hect Co. v Bowles,* 321 U.S., 329-30 (1944).

As there are no NOE's to benefit from operation of the Trust going forward, there is no justification and nothing to be gained by permitting F&M to hold trust assets as ransom in order to collect data for the DOL, particularly where DOL has no ERISA jurisdiction over these owner-only plans. F&M's demands as a condition precedent to payment of benefits are in violation of the Custodial Agreement and the Trust Agreement [DOL TRO F&M Exh 3; Koresko TRO Exh 11].

Even if ERISA applied, PennMont's discretion as Plan Administrator prevails. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

These questions and impediments to payment by F&M were never part of the arrangement with the directed Trustee. F&M by its trust officer Robin Murray testified at length that the demands on PennMont had never been imposed before. [DOL TRO Tr.

7.17.09 pp. 27-29.]  Lowell Gates, Esquire, Chairman of CTC likewise stated that "we never had reason to question any PennMont expenditure request." [DOL TRO Tr. 10/06/09 p 42:1-11].  F&M would never have been allowed to be trustee if PennMont knew it would breach the plain language of the trust and would not take direction [DOL TRO Bonney Aff2 Tab 29].  F&M agrees that ERISA does not apply. [See F&M's Findings of Fact and Conclusions of Law at p.11 (Dkt. 135)].  Accordingly, under PA law F&M must act.  They are released by the trust docs. [DOL TRO F&M Exh 3]. Pennsylvania law governing the power of attorney 20 Pa. C.S.A. §§5601 *et seq* and The Uniform Trust Code, 20 Pa.C.S. § 7790.3 (2009) absolve them from liability.  Not only do PennMont and Koresko have power under the documents as administrator, the employers gave powers of attorney to the Plan Administrator [Plan Document 10.21] and the employees gave powers of attorney to Koresko as part of each participation agreement. [DOL TRO Koresko Exh 5: Sharratt Participation Agreement].

  The trustee is directed and the trustee is under no obligation to question disbursement requests.  [DOL TRO Tr. 7/19/09 p.15, 84; F&M Ex 1, Article III; F&M Ex 2, Article III].  FM has been fired.  On information and belief, F&M is holding onto Trust funds so as to make a claim for its own fees. [DOL TRO F&M Exhibit 5: F&M Fee Schedule].

  The DOL and F&M are blocking premium payments for an improper purpose.  F&M attorney Nicholas admitted to Lawrence Koresko that Linda Henry and Jane Roller of DOL told them that the goal of DOL was to put the Defendants out of business. [*See* Exhibit B: Affidavit of Larry Koresko].

The order of this Court previously issued did not give F&M the right to question expenditures that are within the absolute discretion of PennMont. [*See* TD BANK TRO Exhibit 21: Order dated September 30, 2009]. The Court only said that F&M was not yet fired as to the funds F&M'controls and that money was not to be transferred to PPT. *There was no order impairing the authority of PennMont as administrator.*[5] The instructions at issue today are for payments to third party insurers. Without a court order eliminating F&M from attempting to exercise discretion, in a fashion they were not granted by any document, more harm will be done. A list of expenditures outstanding in excess of $900,000 as of October 21 is attested to by Larry Townsend of PennMont [TD BANK TRO Exhibit 12 Affidavit of Larry Townsend.]

The plan documents prevail and F&M is bound to them. *See Kennedy vs. Plan Administrator For DuPont Savings And Investment Plan*, 129 S.Ct. 865 (2009).

PennMont as Plan Administrator and John Koresko as attorney in fact and Secretary of the Plan Committee (if there is no administrator) require an immediate injunction to compel F&M to make distributions as ordered.

    B.    The Administrator's powers to direct the Trustee are sole and absolute and should be enforced by this Court.

The Plan Administrator's powers to direct and take all actions are absolute. The Trustee does not have authority to ask any questions and has a duty to take directions. The administrator has an absolute right to remove the trustee. Furthermore, the administrator has the power of the trustee under the documents. [Trust Document 5.1 – the administrator is to be substituted for trustee - the administrator is a defacto trustee

---

[5] And there is no provision of the trust documents that prevented PennMont from naming two or more trustees, as it has complete discretion to interpret the documents.

within the operative meaning of the documents]. There can be no conceivable conflict of interest, as the payments are requested for third parties. *See Pinto v. Reliance Standard Life Insurance*, 214 F.3d 377, 392-93 (3d Cir. 2000). On information and belief, it is the trustee that is acting under a conflict, to preserve a fund for its fees. The actions of DOL likewise are for an improper purpose. *See* Exhibit B : Affidavit of L. Koresko. In the absence of an administrator's conflict about the denial of a benefit, this Court must defer to the Administrator's judgment about the operation of the Trust. However, this case is not about any conflict between the interests of a beneficiary or an administrator. The Administrator's interest comports with that of beneficiaries - the direction to pay benefits. The instant matter is about a Trustee's conflict in failing to pay a benefit as required by plain documents. The *Pinto* standard prevails against F&M because F&M is in a conflict of interest – it has been fired, it has hurt beneficiaries by discontinuing an appeal, and it has refused to pay, ostensibly to keep $2 million on deposit so it can make a specious claim for fees.[6] It has no discretion under the trust documents.

### III.  CONCLUSION

Based on the foregoing, this Court should Order F&M Trust Co. to make the benefits related payments as directed by PennMont Benefit Services, Inc., and other relief as is just and equitable.

---

[6] The Court heard no evidence that F&M's fees were ever accepted by the Administrator, and they were not. Rather, Mr. Gates testified about a nominal fee. The Trust documents gave F&M the ability to simply not participate in litigation, which was the excuse it gave when it compromised the interest of the trust estate in the Datalink case in California. In that case, an employer attempted to cause General American Insurance Co. to retitle assets on the basis of false representations of authority. In the present case, three lawyers sat through every proceeding. The run-up of fees will be astounding, once known, because F&M simply could have interpled any money and resigned. Or it could have refused to make deals with DOL.

- 16 -

Respectfully submitted,

John J. Koresko, V

**In the United States District Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>John J. Koresko, V, et al.,<br><br>Defendants | Civil Action No. 2:09-cv-00988 |

**ORDER**

AND NOW this _____ day of November, 2009, having considered the Motion of Defendants Koresko Law Firm, P.C.; John J. Koresko, V; Jeanne Bonney; Koresko & Associates, P.C.; PennMont Benefit Services, Inc.; the Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust; the Single Employer Welfare Benefit Plan Trust; and Penn Public Trust seeking a temporary restraining order mandating F&M Trust payments as directed by PennMont Benefit Services, Inc., Plan Administrator, and the supporting documents and any response thereto,

IT IS HEREBY ORDERED that F&M Trust Company shall immediately make such payments as are set out in the Koresko Parties' Exhibits 14 and Exhibit 15 of their companion motion for injunction against TD Bank, N.A.,[1] and further;

---

1.  **Exh. 14**: Failure of F&M to Honor Requests for Payment of Trust Expenses and Premium Payments; **Exh. 15**: Policies that will lapse or lose No Lapse Guarantee as a result of Failure of F&M to Honor Requests for Payment.

- 2 -

ORDERED that F&M Trust Company shall on a weekly basis continue to make such payments as directed by PennMont Benefit Services, Inc.

_____, J.