In the United States District Court
For the Eastern District of Pennsylvania

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> JOHN J. KORESKO, V, et al., <br><br> Defendants | Civil Action No. 2:09-cv-00988 |

**Defendants', John Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers Assurance Leagues Voluntary Employees Beneficiary Association Trust and Single Employer Welfare Benefit Plan and Trust,**

Motion for Reconsideration of "Stand-Still"
Order Dated 16 November 2009

For reasons set forth in its Memorandum of Law filed contemporaneously herewith, the Koresko Defendants respectfully ask this court to reconsider its "stand still" order issued on 16 November 2009. The order appears to be injunctive and contains provisions that appear be in conflict with law not considered by the Court at its previous hearing.

| | |
|---|---|
| <br><br><br><br><br><br> November 20, 2009 | Respectfully, <br><br> *[signature]* <br><br> John J. Koresko, V, Esquire <br> Pro se and <br> Attorney for Defendants |

# In the United States District Court
# For the Eastern District of Pennsylvania

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> JOHN J. KORESKO, V, et al., <br><br> Defendants | Civil Action No. 2:09-cv-00988 |

Defendants', John Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers Assurance Leagues Voluntary Employees Beneficiary Association Trust and Single Employer Welfare Benefit Plan and Trust,

## Memorandum of Law in Support of
## Motion for Reconsideration of "Stand-Still"
## Order Dated 16 November 2009

The Koresko Defendants respectfully ask this court to reconsider its "stand still" order. While utilizing the term "stay" several times in its order, it appears that the court has actually issued mandatory injunctions. The difference is material. A stay is usually a procedural device that imposes no affirmative duties on a party; but rather serves to stop a court process. On the other hand, an injunction stops someone from acting or compels somebody to act; and such an order would be appealable.

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C § 1102(a)(1). The plan must "specify the basis on which [benefit] payments are made ... from the plan" (§1102(b)(4)), and the administrator must make payments to the " 'beneficiary' ... designated by a participant, or by the terms of ... [the] plan" (§ 1002(8)). Finally, a plan administrator, acting as a fiduciary, must "discharge his duties ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]." § 1104(a)(1)(D). Because the statute is clear, there is

no gap for courts to fill in by creating federal common law directing payment or administration contradictory to the plain language of the governing documents.. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 (1993); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)

In the present case, this court has effectively ruled that it can change the method by which the office of trustee is filled under the trust documents, when that task was delegated to the sole discretion of PennMont. *Cf. Firestone, supra.* Furthermore, the court has effectively ordered PennMont to act inconsistently with the trust documents. *Cf. Kennedy vs. Plan Administrator For DuPont Savings And Investment Plan*, 129 S.Ct. 865 (2009). The court has seemingly given no effect to the directions from employers and intended beneficiaries contained in powers of attorney, given by their attorney in fact, which are part of the documents governing the relationship in this matter – documents that give the attorney in fact and administrator any residual permission necessary from a participant (or former participant) with respect to an insurance contract on his or her life. The court ordered PennMont to cede its exclusive discretionary functions, or face the possibility of sanctions for refusing the attempt of a faithless trust company to assert discretion not intended or given by the documents. But most seriously, this court has compelled one set of businesses to stay in a commercial relationship with F&M Trust Co., at the behest of the United States. The request by DOL, that this court order PennMont to stay in business with F&M or fire PennMont, was illegal, because no court has the power to order a business to be in business with another. What has resulted is not consistent with the statute or congressional design.

In the most recent hearing, F&M responded directly to the question of why it did not resign. The response was direct: F&M has not resigned because of this Court's order allegedly preventing resignation. In its most recent order, again this Court ordered PennMont and the entrepreneurial trusts to remain in business with F&M, and vice versa.[1] In the absence of any purpose to create or maintain a monopoly, the courts have no power to impair *"the long recognized right of . . . [one] engaged in an*

---

[1] The court did not have the benefit of this newly discovered law during the last hearing (which was noticed as a discussion of pending matters). Defendants believe reconsideration is appropriate under the circumstances. That DOL advanced this abrogation of liberty interests is grounds enough for the court to deny the injunction request, without further consideration, considering also the unlikelihood that any trust asset or benefit is subject to regulation by ERISA.

*entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." Lorain Journal Co. v. U.S.*, 342 U.S. 143, 155, 72 S.Ct. 181, 187, 96 L.Ed. 162, __ (1951) (Emphasis added; citations omitted.); *FTC v. Raymond Bros.-Clark Co.*, 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448 (1923). PennMont did not hire F&M, and PennMont was well within its discretion to fire a custodian who torpedoed a valuable appeal[2] and breached privacy rights of beneficiaries with unauthorized disclosures. PennMont should not be compelled to share trade secrets with its competitor and adversary, F&M, as F&M has demanded. Such an order is far from "equitable."

The United States is also estopped from denying its 20 year old position that a multiple employer trust, like REAL VEBA and SEWBT, is an entrepreneurial venture, not an ERISA plan. Under *Auer v. Robbins*, 519 U.S. 452, 462 (1997) the government's inconsistent positions do not warrant deference. *See Auer*, 519 U.S. at 461; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446-49 (1987). The government's legal analysis is not accorded deference for it has neither "expertise [nor] experience" to interpret legal terms. *Gonzales v. Oregon*, 546 U.S. 243, 757 (2006). The government's assertion of the meaning of the common law merits no deference, see *Jicarilla Apache Tribe v. FERC*, 578 F2d 289, 292-93 (10th Cir. 1978), especially when it is a litigation position "contrary to the ... view ... advocated in past cases." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S 204, 212-13 (1988). In fact, the government's positions in this case are the very essence of propaganda, which the government is barred from disseminating under each Appropriations Bill governing the Labor Department passed in the past 25 years. The DOL is not free to disseminate its opinions or further its policy objectives; and as DOL admitted to this court, it is aware of the law. *See Block v. Meese* 793 F.2d 1303 (D.C. Cir. 1986) (Scalia, J.)(defining "propaganda" consistent with 1983 WEBSTER's dictionary usage as "ideas, facts, or allegations spread deliberately to further one's cause or to damage an opposing cause").

---

[2] The DOL has not complained of this fiduciary breach, since the only party that would suffer from completion of the argument and subsequent opinion was DOL. How could it hurt participants to clarify their rights under the Gramm Leach Bliley Act 15 U.S.C §6801 *et. seq* and the scope of DOL subpoena authority under ERISA sec. 504? DOL has not acted in good faith at any point in this proceeding.

Entrepreneurial ventures in trust form are "business trusts," not the trusts of which F&M and DOL speak.³ Lowell Gates, Esq. confirmed in his testimony the entrepreneurial character of the arrangement. "The distinction between a traditional express trust and a business trust is that "[i]n what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains." *Morrissey v. Commissioner*, 296 U.S. 344, 356-57, 56 S.Ct. 289, 294-95, 80 L. Ed. 263 (1935)." Even if this court were to find that ERISA plans existed between employers and their employees, as DOL asserted for 20 years, ERISA contains no provision allowing DOL the right to impose on entrepreneurial ventures a duty to act as a non-profit organization by contriving a definition of "plan assets" allegedly in the hands of the entrepreneur. The courts recognize that a business trust may result in gain to its founders or administrators, and that interest in profits may be deemed a form of beneficial interest. *See Emerald Investors Trust v. Gaunt Parsippany Ptnrs*, 492 F.3d 192, 199-90 (3d Cir.)(recognizing the possible nonapplicability of limitations on fiduciaries).

In fact, the statute - 29 U.S.C. § 1104(a)(1)(B) - dictates that a fiduciary shall discharge ERISA responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use *in the conduct of an enterprise of a like character and with like aims.*" This is the rule of common sense. One does not compare an arrangement like this with a defined contribution plan, as both DOL and F&M have done to date. It is the Congressional intention of common sense which allows a company to terminate a pension plan, after paying all accrued vested benefits, and take back the excess despite ERISA's seemingly inflexible command that the fiduciaries "act solely in the best interest of plan participants." *Malia v. General Electric Co.*, 23 F.3d 828, 832 (3d Cir. 1994). Since employers do not have to give any benefits by law, employees do not have rights beyond the plain language of the documents to any benefit or any

---

³ Herbert B. Chermside, Jr., Modern Status of the Massachusetts or Business trust, 88 A.L.R.3d 704 (2006). *See also* Am.Jur.2d, Business Trusts §§1-107. Trusts that are instruments of commerce tend to look more like agencies, *see generally Roberts v. Roberts*, 419 Mass. 685, 646 N.E.2d 1061 (1995), in contrast to the trustee-beneficiary relationship.

asset. *Borst v. Chevron Corp.*, 36 F.3d 1308, 1320 (3d Cir. 1994)(employees in defined benefit plan had no rights in property of trust, except to the extent of vested benefits).

ERISA does not give DOL authority over the internal governance of an entrepreneurial venture[4] or the right to put it out of business. DOL cites no case where the issues raised here were resolved in support of DOL's position. It is certainly not "appropriate equitable relief" for a court to compel an entrepreneurial venture not to act consistently with the plain language of trust documents or contracts. ERISA does not prohibit an entrepreneurial venture, acting as administrator, from making a profit, so long as that profit does not result in damage to vested benefits.[5] *LaRue v. DeWolff, Boberg & Assocs.*, --- U.S. ----, 128 S.Ct. 1020, 1023, 169 L.Ed.2d 847 (2008). DOL overlooks this latter condition, which the Supreme Court interpreted as part of the congressional design in cases involving alleged violations of the fiduciary duty and prohibited transactions rules of ERISA Title I, Part IV. Accordingly, this court's order assumed that it should take some action, *even though DOL introduced no evidence that any vested benefit was harmed or could be harmed by anything Defendants allegedly did!* DOL refuses to accept that the minority of pre-*LaRue* cases, which elevated apparent statutory *faux-pas* over the issue of real damage to benefits, are now obsolete.

---

[4] It remains questionable whether DOL can even assert receivership, which is a partial effect of this court's order. The reported cases do not appear to address a most thorny problem. ERISA was enacted 75 years after the Bankruptcy Act (replaced by Title 11, U.S.C.). It appears that Congress pre-empted the common law remedy of receivership in federal courts through the exercise of its power to make uniform bankruptcy law. And if so, appointing substitute "fiduciaries" would not appear to be "appropriate equitable relief" permitted under ERISA sec. 502. There is a big distinction between "all historical equitable relief" and that which is "appropriate" under present law. The court does not have the statutory authority to satisfy DOL's every whim. Accordingly, as the Seventh Circuit found in *Leigh v Engle*, 727 F.2d 113 (7th Cir.1984) ("Leigh I" ) [on remand *Leigh v. Engle*, 669 F.Supp. 1390 (N.D.Ill.1987) ("Leigh II" ); affd. 858 F.2d 361 (7th Cir. 1988)] not every prohibited transaction or breach of fiduciary duty requires a remedy unless "there is a causal connection between the use of the plan's assets and the profits made by fiduciaries on the investment of their own assets." 727 F.2d at 137. A judge "might very well find no damages appropriate," 727 F.2d at 138, let alone the serious remedy of injunction and interference with legal ventures. As the *Leigh* court wrote, the remedy intended by Congress was disgorgement of *profits from plan assets, not automatic disqualification.* DOL's case was overcome by the testimony of Jeanne Bonney, who said that there were no profits as the allegedly improper fees were in fact reimbursements of expenses. DOL is required to produce "proof of a subjective intent to benefit a party in interest" in order to make its case. *Reich v. Compton*, 57 F.3d 270 (3d Cir. 1995)(rev'g summary judgment for DOL).
[5] Certainly, every insurance company that takes a premium from an ERISA-governed arrangement expects to profit from that premium, whether or not the premium come from "plan assets" or the insurance company acts as an administrator.

A simple example illustrates the fallacy of the DOL position that the trust's insurance contracts (and their incorporated cash value rights) are "plan assets" that the Court should or could direct. The evidence shows that each employer signed an Adoption Agreement – its "plan." Each such "plan" contracted with the Trusts to provide a benefit. There is no document that says that the Trusts were required to purchase insurance policies for any plan. Rather, the conditions of receiving the promise of a death benefit were three-fold. First, the employer and employee-participants had to agree to the terms of the arrangement in writing. Secondly, the employee had to give the Trust(ee) or Administrator (or both) permission to buy an insurance policy on the employee's life; and that policy would be held for the sole purpose of protecting the trust estate from the uncertainty of the promised benefit. Thirdly, the employer had to pay the amount determined by the Administrator. Without any documentary evidence, DOL asserts that employees have a "beneficial" interest in something they never owned – a result that could not occur without immediate taxation under sec. 83 and 451 of the Internal Revenue Code. DOL does not answer the question of how any one person could own a policy, when any policy or asset of the trust could be used for satisfaction of any claim, in the sole discretion of the Administrator (not F&M).[6] Accordingly, it appears that DOL and F&M have confused the issue by asking this court to act in a

---

[6] The trust document states at sec. 4.4: "This Section shall be applied consistent with Treasury Regulation 1.414(1)-1(b)(1) and such allocation of the Trust Fund or the separate accounting described herein shall not operate to prevent any portion of the Trust Fund from being available for the payment of any claim arising under the Plan."
And the Master Plan Document, incorporated by reference into the Trust document, confirms in various places the pooled nature of the fund, the authority of the Administrator to classify and divide it, and the lack of any vested interest of any participant:

5.04  Source of Benefits - The amount of Benefit shall to the extent thereof, be paid out of Contracts and out of other funds held by the Trustee for the payment of benefits under the Plan, in the discretion of the Trustee.
7.05 (f) Ownership - All policies and Contracts shall be owned by the Trustee. All cash value contained in such policies and Contracts shall be owned by the Trustee. The Trustee shall be under no obligation to distribute a policy or Contract to any participant or beneficiary as part of any benefit or termination payment, but may, instead, distribute the cash surrender value of same.
8.04 . . . . However, neither the maintenance of accounts, the allocation of credits to accounts, nor the statement of account shall operate to vest in any Participating Employee of a Participating Employer any right to interest in or to any asset of the Trust except as the Trust specifically provides. The Plan Administrator's determination of the account balances shall be final unless deemed arbitrary and capricious by a court of competent jurisdiction.
9.02(c) Nothing herein shall be interpreted to require distribution under section 9.02(b) of forfeitures or other amounts *classified by the Trustee or Plan Administrator as unallocated experience gains or losses for the benefit of the entire Trust*; and the determination of amounts distributable hereunder by the Trustee or Plan Administrator shall be final unless determined by to be arbitrary and capricious by a court of competent jurisdiction.
9.03 - In no event shall this provision be construed as vesting any right to any benefit to any individual prior to the time all events have occurred which fix the nature, timing and amount of such benefit and absolute entitlement thereto.

fashion attributable to a defined contribution plan rather than the contingent defined benefit arrangement evidenced by the documents.

Even if Penn Public Trust were not permitted to serve, this court has ordered a "trustee" when fully-insured arrangements, like those at Bar, are not required to be constructed as trusts. Congress did not exclude the authority to eliminate a trustee from the administrator's right to amend. Congress has never banned business trusts from buying insurance on the lives of others (whether participants in an ERISA plan or not) *to protect itself* from risks for which the business trust has agreed to act as guarantor. A guaranty is a commercial contract, not a charitable one. And although ERISA plan participants may be third party beneficiaries of the arrangement created by their employer, that contract – the Adoption Agreement – does not magically transform a business trust's assets into those of any ERISA plan. The claim of a third party beneficiary is purely contractual, not the equitable matter contemplated by scope of ERISA. Contractual claims under an insurance policy do not become ERISA claims unless the insurance contract is, itself, the "writing" which is the "ERISA plan." In this case, however, DOL has never alleged, nor can it, that the "plan" was anything more than contemplated by the documents it introduced as evidence.

PennMont, as administrator, exercised all discretionary duties that might be allocated to a trustee under other circumstances. Although ERISA would allow a trustee to delegate a discretionary function, under the common law of trusts such delegation would not be proper. John Koresko, as attorney in fact for each employee and employer, exercised his authority under state law to advise the administrator of the course of conduct in the best interest of the collective of participants and the discretion vested in him. *See* Restatement (Second) of Trusts, § 183 ("When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them"). No discretion was ever left in the office of custodial trustee. Absent discretion, F&M has never been a trustee at common law; rather, F&M is legally an agent who is

compelled to take orders or be fired.[7] There is thus a "fundamental difference between a trustee and an agent." *National Bank of Germantown & Trust Co. Appeal,* 156 Pa.Super. 650, 654, 41 A.2d 412, 414 (Pa.Super.Ct.1945). A trustee acts as a principal whereas an agent does not. *Id.* at 654, 41 A.2d at 414 (citing 2 Am.Jur., Agency, § 6). These different roles impose different duties. The agent has the duty of loyalty to act only for the principal's benefit. *See Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115 (2000). The trustee's duties are more comprehensive. Custody or nominal ownership does not convert an agency into legal trusteeship.[8] Calling F&M a trustee did not make it any more of a trustee than calling PennMont administrator made it illegal to direct F&M as to matters normally allocated to trustees.[9] 1 A. Scott, Law of Trusts § 8, pp. 74-79 (3d ed. 1967) (distinguishing trustees from agents).

This court has apparently compelled PennMont to cede its discretionary powers to F&M, and vested F&M with discretionary powers it never had – both of which violate the requirements of the common law and ERISA § 404 to follow the documents. *Kennedy v Administrator, supra.* The court has also sanctioned F&M's disregard of directions it did not have the discretion to ignore.

Regardless of what DOL thinks, wants, or likes, the modern law of trusts never gave the government or a faithless servant like F&M the authority to change what the settlors, **Defendants,** wrote. The trustee has an over-arching duty to carry out the intentions of the settlor as they have been manifested in the

---

[7] A trustee in general does not act as an agent of his beneficiaries, see *Taylor v. Davis,* 110 U.S. 330, 334-335, 4 S.Ct. 147, 149-150, 28 L.Ed. 163 (1884) ("A trustee is not an agent. An agent represents and acts for his principal.... [A trustee] has no principal"). The ability to dismiss is a settlor function.

[8] In an agency or escrow, the depositor retains real title to the funds, and title does not transfer until the performance of the escrow conditions. *See Paul v. Kennedy,* 376 Pa. 312, 315, 102 A.2d 158, 159 (1954); *see also Knoll v. Butler,* 675 A.2d 1308, 1312 (Pa.Cmwlth.Ct.1996), *aff'd* 548 Pa. 18, 693 A.2d 198 (1997). "An escrow is a deed or other instrument importing an obligation deposited with a third party to be held by that party until the performance of a condition or the happening of an event and then delivered to take effect." *Angelcyk v. Angelcyk,* 367 Pa. 381, 384, 80 A.2d 753, 756 (1951). In an escrow agreement, the depositary is considered an agent for the parties and is bound by the terms of the agreement. *See Paul,* 376 Pa. at 315, 102 A.2d at 159.

[9] Use of the term "trustee" to describe the relationship, while a factor to be included in the equation, does not preclude the court from determining that the parties' relationship was that of agency and not trust. *See Buchanan v. Brentwood Federal Sav. & Loan Ass'n,* 457 Pa. 135, 143-44, 320 A.2d 117, 122-23 (1974). Rather, the court must look at the agreements "taken as a whole" to determine whether the agreements "evidence an intent ... 'to impose ... upon a transferee of the property equitable duties to deal with the property for the benefit of another person.' " *Id.,* 320 A.2d at 122 (quoting 1 A. Scott, Law of Trusts § 24, at 192 (3d ed.1967)). In other words, courts must search for the "powers and duties conferred," and not look solely at the precise words, phrases, or "title given" the instruments creating the relationship. *Id.* at 144, 320 A.2d at 122-23.

terms of the trust. Restatement (Second) of Trusts §164, cmt. A (1959); 2A Scott on Trusts §§ 164, 164.1. Deviation from the intent of the settlor is permitted only in exceptional circumstances, such as impossibility or illegality of trust terms. 2A Scott on Trusts §§ 165-168. The clearly expressed intentions of the settlor should be "zealously guarded." *American Natl. Bank of Cheyenne v. Miller*, 899 P.2d 1337, 1339 (Wyo. 1995). The wishes of the beneficiaries are **subordinate** to those of the settlor. *Id.* This rule of "settlor's intent" mandates that PennMont's interpretation of the documents must prevail in this case.

The court cannot discount the fact that the owners remaining as participants are businesspeople and not poor consumers. Despite claims by DOL witnesses that they did not know what they were signing, not one of them can be heard to contest the enforcement of the written documents in law or equity. The failure of a literate adult to read a contract, or a decision by him to sign in haste without understanding the terms, does not alter the enforceability of the contract. *See Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 900 (3d Cir.1981); *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162, 165 (Pa.1990).

Wherefore, this Honorable Court should revoke its Order of 16 November; and instead, order that F&M Trust Company is no longer a trustee and that F&M should immediately surrender any assets under its control, and take direction from the Administrator according to the applicable trust documents.

|  | Respectfully,<br><br>*[signature]*<br><br>John J. Koresko, V, Esquire<br>Pro se and<br>Attorney for Defendants |
|---|---|
| November 20, 2009 |  |

## CERTIFICATE OF SERVICE

I hereby certify that at my direction a true and correct copy of the foregoing Motion for Reconsideration of "Stand-Still" Order dated 16 November 2009 and Memorandum of Law in Support thereof were served via ECF upon the following:

JOAN ROLLER, ESQ.
LINDA HENRY, ESQ.
JOANNE JARQUIN, ESQ.
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA 19106-3317

TIMOTHY J. NIEMAN, ESQ.
STEPHEN MONIAK, ESQ.
Rhoads & Sinon LLP
One South Market Square, 12th Floor
Harrisburg, PA 17101

CHRISTOPHER A. WEALS
Morgan Lewis Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004

ELIZABETH H. FAY
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103

H. MARC TEPPER
Buchanan Ingersoll, P.C.
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102

and via first class U.S. mail upon the following:

**TOD S. CHASIN**
Buchanan Ingersoll, P.C.
650 College Road East
Princeton, NJ 08540

                                                            John J. Koresko, V, Esq.

November 20, 2009