In the United States District Court
For the Eastern District of Pennsylvania

Hilda v. Solis, Secretary of Labor, DOL      Civil Action No. 2:09-cv-00988
        Plaintiff,

v.

John Koresko, V et al.
        Defendants.

### Motion of Koresko Defendants' Objecting to Specific F&M Trust Co. Conditions Precedent to Payment of Benefit Premiums and to Limit Data provided to F&M Trust CO. in order to perform its Fiduciary Duties

And now come the Koresko Defendants objecting to specific F&M conditions precedent to payment of benefit premiums and to limit data to be provided to F&M Trust Co. in order to perform its fiduciary duties. In furtherance of the Motion the Koresko Parties' submit the attached Memorandum of Law.

                                              _/s/ John J. Koresko_
                                              John J. Koresko, V, Esq.

November 20, 2009

## In the United States District Court
## For the Eastern District of Pennsylvania

**Hilda v. Solis, Secretary of Labor, DOL**
        **Plaintiff,**

v.

**John Koresko, V et al.**
        **Defendants.**

Civil Action No. 2:09-cv-00988

## **ORDER**

AND NOW this _____ day of November, 2009, having considered the Motion of the Koresko Defendants' Objecting to Specific F&M Conditions Precedent to Payment of Benefit Premiums and to Limit Data provided to F&M Trust CO. in order to perform its fiduciary duties, and any response thereto, it is hereby

ORDERED that PennMont shall release to F&M Trust Co. only the first initial and last name of the insured; the policy number; the premium amount; the carrier; the carriers address and/or wire instructions; the date the premium is due; and a copy of the carrier's premium notice in order to F&M to fulfill its duties.

_____
                              , J.

# In the United States District Court
# For the Eastern District of Pennsylvania

| | |
|---|---|
| **Hilda v. Solis, Secretary of Labor, DOL**<br>Plaintiff,<br>v.<br><br>**John Koresko, V et al.**<br>Defendants. | Civil Action No. 2:09-cv-00988 |

**Koresko Defendants' Memorandum in Support of Motion Objecting to Specific F&M Conditions Precedent to Payment of Benefit Premiums**

## I. Background

The Department of Labor (DOL) moved for Preliminary Injunction to prevent Koresko Defendants from removing F&M Trust (F&M) as Trustee of the Regional Employer' Assurance Leagues Voluntary Employees' Beneficiary Association (REAL VEBA) Trust and Single Employer Welfare Benefit Trust (SEWBT) (the Trusts) and the transfer of assets to Penn Public Trust (PPT). On November 16, 2009, the ordered F&M to communicate to the Koresko Parties the specific information it reasonably requires to fulfill its duties as a fiduciary. F&M provided such correspondence to PennMont Benefit Services, Inc. (PennMont), on November 18, 2009, copy of which is attached hereto as Exhibit A. Five categories are identified. Whereas PennMont agrees that certain information is required in order to follow its directives, most of F&M's requests are beyond the custodial trustee's authority under the governing documents, exceed what is reasonably necessary to pay premiums, are contrary to the historical course of conduct since 1994 between PennMont and the sitting Trustee, and therefore alter the contract with PennMont and the privacy expectations of plan participants. The demands invoke a breach of plan participants' federal statutory rights to confidentiality of private financial information and common law privileges inherent in the nature of the Koresko Law Firm's representation of participants in proceedings against the Internal Revenue Service (IRS) in the United States Tax Court.

The Koresko Parties attach hereto a detailed matrix of the information sought by F&M, that historically required by Trustees to pay insurance premiums, the extraordinary information that PennMont has and will continue to provide to F&M as a courtesy, and the specific information sought by F&M that runs afoul of the contractual, privacy and privilege to which the Koresko Parties object and which must be denied.

> A. **F&M has no authority to request and does not reasonably need unredacted adoption agreements; participant's stock ownership; insurance policy detail and/or contribution history in order to make premium payments. It is reasonable and sufficient to have the first initial last name of the insured, the policy number, the premium payable; the carrier; the carriers address and/or wire instructions; the date the premium is due and a copy of the carrier's premium notice.**

F&M is a directed Trustee under REAL VEBA and SEWBP Trusts. [Tr. 7/19/09 p. 15, 84; F&M Ex 1, Article III; F&M Ex 2, Article III]. F&M is in a contractual and fiduciary relationship with PennMont and the Koresko Defendants as to certain elements of the Plans and Trusts, and is bound to the agreements made by CTC, **but F&M is not responsible for plan administration** [Trust Doc 3.4; Bonney Aff2 Tab 30; Tr. 7.17.09 39: 21-23; Tr. 7.17.09 73:8-17]. As set forth in the Trust and Plan documents, the Trustee has NO DUTY to inquire in any way respecting the determination, computation, payment or application of any benefit, for the form, terms, payment provisions or issuer of any Insurance Contract, for performing any functions under any such Insurance Contract [1]

---

[1] **Trust Preamble**: WHEREAS, the Plan Administrator and Advisory Committee have responsibility for administering the Plan and the claims made thereunder; and
Trust 3.4 Trustee **Not Responsible for Plan Administration.** The Trustee shall not be responsible under this Trust Agreement, or otherwise, in any way respecting the determination, computation, payment or application of any benefit, for the form, terms, payment provisions or issuer of any Insurance Contract, for performing any functions under any such Insurance Contract which it may be directed to purchase and/or hold as contract holder thereunder (other than the execution of any documents incidental thereto and transfer or receipt of funds thereunder upon direction of the Plan Advisory Committee or Plan Administrator), or for any other matter affecting the administration of the Plan by the Adopting Employer, Advisory Committee., Plan Administrator or any other Person to whom such responsibility is allocated or delegated pursuant to the terms of the Plan.

2

It is PennMont that has the exclusive authority to allocate experience gain inside the "black box" of the trust. Contrary to F&M's demands, there is no correlation between a dollar in and a dollar out. Such demands evidence a disregard and misunderstanding that the arrangement is for defined benefits, not defined contributions. All assets are available for all claims and premium payments at the absolute discretion of PennMont.[2]

---

[2] **ARTICLE V - ADMINISTRATOR**
**Trust 5.04 Powers of the Administrator** - Without limiting the general of the foregoing, the Administrator shall have the following powers:
(l) To offset any portion of all experience rating refunds on insurance benefits purchased in accordance with the Plan against the obligations of Participating Employer to make contributions becoming due hereunder.
(m)To determine all questions arising in connection with the administration, interpretation and application of the Plan, including questions of eligibility, and status and rights of Participating Employees and Beneficiaries and any other person hereunder and the payment and/or provision benefits hereunder;
(n)To decide any dispute or question arising under the Plan;
(p)To do all other acts and things, and in connection therewith to execute all such instruments and documents, as may be necessary, appropriate, desirable or convenient for the exercise of the powers granted hereunder or for the accomplishment of the purposes and objectives of this Trust

**Trust 6.3 Reliance on Plan Administrator or Advisory Committee.** The Trustee shall execute documents, settle transactions, take action on behalf of or in the name of the Trust and make and receive all payments, **on the direction of an authorized representative of the Plan Administrator or Advisory Committee**. Any direction of the Plan Administrator or Advisory Committee., shall constitute a representation and warranty to the Trustee:

**Trust 12.3 Plan Administrators.** Unless otherwise specifically stated in this Trust Agreement, the Trustee may take directions from the Plan Administrator in all matters relating to the Plan and shall be further fully protected in acting upon any notice or direction received from the Plan Administrator. Unless otherwise specifically stated in the notice or direction, notice or direction from the Plan Administrator shall be deemed to be notice or direction from the Employer.

**Trust 12.7 Fiduciary Discretion.** Unless otherwise provided, any Plan Administrator acting hereunder shall be deemed to act pursuant to its absolute discretion, and any such action may be reviewed only for abuse of discretion

**Plan 6.03**: If an Administrator has been named in the Adoption Agreement, it shall assume and perform all and each and every, duty and responsibility to the Committee; except that if the Trust is a directive Trust as stated in the Adoption Agreement, then the sole and exclusive duty of the Committee shall be issuance of investment directions (other than those relating to Insurance Contracts) and matters incident thereto.

The Custodial Agreement executed in 2002 between CTC and the Koresko Firm (Exh. D 11) makes clear that the Koresko Firm acts in an agency capacity for CTC (¶13), but gives the Koresko Law Firm control over all Trust insurance polices (¶12) **and the discretion to ignore requests of the Trustee for information about those policies (¶10).** No evidence was introduced to suggest that the Custodial Agreement was violated or that it has yet been terminated. [Tr. 10/6/09 p. 36:3-25; 37:1-6; 40:1-6, 22-25: 41:1-11]. The Custodial Agreement merely emphasized the complete control of insurance policy information and administration approved by each participant pursuant to signed Participation Agreements. Quite simply, the documents never intended that the custodial trustee have the information demanded by F&M.

> **B. The Adoption Agreements and Participation Agreements are already under Seal by this Court's Order dated November 16, 2009. Other documents at issue are on Appeal in the Third Circuit. On information and belief, F&M shall be subject to DOL pressure to divulge personal data about owner/employees to DOL, and thus to IRS.**

On November 16, 2009, DOL notified counsel of its intent to seek discovery of the same Adoption Documents and Participation Agreements requested by F&M herein, which subsequently this Court sealed on November 16, 2009. (Volume Two of Koresko Parties Motion for Temporary Restraining Order Against TD Bank, N.A.) Over the objections of PennMont, F&M produced over 3500 documents to DOL in preparation for the injunction hearing. [*See* Gov Exh 1-4] The issue of DOL discovery against the Koresko Parties is on appeal at consolidated cases 09-1142 and 09-2192 (3d.Cir). Providing this information to

---

The term "Committee" as used herein shall include the "Administrator," unless the context of the instrument indicates a contrary intent.

**10.09 Persons Dealing with Administrator** - No person dealing with the Administrator shall be required to see to the application of any money paid or property delivered to the Administrator or to determine whether or not the Administrator is acting pursuant to any authority granted to it under this

4

F&M, and thus DOL, at this juncture would render these appeals moot. Moreover, No question exists on whether DOL will share this information with the IRS, as DOL had no compunction calling these law clients and asking the same questions asked by IRS during audit interviews.

DOL is clearly using F&M to press for the names of the clients of the Law Firm. Such information is covered by the attorney-client privilege and is not subject to disclosure. *United States v. Liebman*, 742 F.2d 807 (1984) (attorney not required to turn over identities of clients and other information to IRS as part of investigation of tax-motivated transaction). In *Liebman*, IRS attempted to compel the names of a tax lawyer's clients and this Court held that disclosure of names would be tantamount to disclosing client confidences. IRS could not get the information. The present case involves §419 arrangements, which IRS has been litigating since before its announcement of intent to litigate in Notice 95-34 1995-1 C.B. 309; 1995-23 I.R.B. 109 (June 5, 1995). The IRS has previously attempted and been unsuccessful in attaining the information that it is on the verge of getting from DOL as mandated by its shared investigation procedure.

When there is a question about privileges, it is the duty of the district court not to order turnover, but rather, to receive any allegedly privileged information under seal. The issue is immediately appealable. *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 95-96 (3d Cir. 1992).

Under established notions of Due Process and fairness under law, clients have a fundamental liberty interest in both their privacy and the private nature of the information they disclose to their lawyers under expectation of privacy. *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001) citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977) (an individual has a constitutional right to privacy which protects the individual interest in avoiding disclosure of personal

5

matters including facts of a personal nature and medical information). If nothing else, this explains the existence of privileges and the critical roles attorneys play in society. The powers DOL seeks to exercise using F&M against the law firm and its clients are incompatible with the concepts of ordered liberty enunciated by this Court and the Supreme Court. *See Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987) ("[i]t would be incompatible with the concept of privacy and ordered liberty to permit protected medical, financial and behavioral information . . . to be publicly disclosed." *Id.*at 118. Section 504 of ERISA and its failure to include any procedural safeguards against disclosure or malfeasant use of confidential tax and financial information cannot stand up to modern constitutional scrutiny. The threat to breach some confidential aspect of one's life then is tantamount to a violation of the privacy right because the security of one's privacy has been compromised by the threat of disclosure. *Scheetz v. Morning Call Inc.*, 946 F.2d 202 (3d Cir. 1991) (financial records within the zone of privacy); *Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000) (collecting cases affirming right to privacy). PennMont and other organizations intimately associated with the Law Firm in connection with the activities under consideration, share the right to assert privilege and work product protection. *In re Cendant*, 343 F.3d 658 (3d Cir. 2003).

The Koresko Parties have briefed extensively their arguments regarding the protections of the Gramm Leach Bliley Act, 15 U.S.C. §6810 *et seq.*, the Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq.*, and the decision in *Chao v. Community Trust Company*, 474 F.3d 75 (3d Cir. 2007). As a state licensed Certified Public Accountant Koresko received confidential client information when setting up and administering benefits. Such information is privileged from disclosure to an adversary who has already shown disregard of the rights of Koresko's clients. *See* 63 Pa. C.S.A. §9.11 (1997). As their

attorney in tax court, and disputes with IRS, additional privileges apply to John Koresko and Jeanne Bonney as federal tax practitioners. (*See* Internal Revenue Code §7525(a) (3)(B) (tax practitioner privilege) As we know from *Chao, supra*, the Third Circuit has taken the position to decline discovery where, as here, "the bell cannot be unrung." The Koresko Parties have more than good reason to believe that F&M, now conceding it is bound by DOL subpoenae, will not hold information in confidence. Nonetheless, the law does not permit the turnover of such information without the consent of other people.

### C. As the Plan was amended on July 29, 2009, there are no NOE's in the Plan. Insurance policy detail and census data are irrelevant and protected information not necessary to show that only owner/employees are receiving benefits.

The Court heard extensive testimony that nonowner employees are no longer in the plan effective April 7, 2009, by amendment dated July 29, 2009. PennMont introduced evidence that in fact all NOEs were in the process of electing whether to take ownership of the Trust policy that insures them and that said policies were being transferred to NOE ownership accordingly, such that ERISA cannot apply. [Def Exh 12 and 13] In short, there is no need for F&M to have insurance policy or census information. Moreover, the July 29, 2009 amendment eliminating NOE participation makes all Plans outside the scope of DOL's jurisdiction. See *Yates v. Herndon* 541 U.S. 1 (2004). As there are no NOE's to benefit from operation of the Trust going forward, there is no justification to surrender private financial and medical information to F&M.

### D. F&M is incorrect to request one to one correlation between contributions and premium payments, there is none.

Extensive testimony was given that all assets are available to pay all claims and expenses and there is no one-to-one correlation between contributions into the "black box" or other Trust income and Trust expenditures. This demand as a condition precedent to

payment of benefits violates the Custodial Agreement [Def Exh 11] and the Trust Agreement [F&M Exh 3]. While a demand for correlating contributions would have some conceivable basis in a defined contribution situation, it is patently irrelevant where as here the arrangements contemplate defined benefits without reference to contributions. All assets are available for all claims. F&M's demands demonstrate their misunderstanding, and frankly, probable unsuitability as custodian for this arrangement. F&M want to change the documents and seize discretionary authority not allocated to them.

> E. **This court is bound to follow the plan documents and the interpretations of them that are not arbitrary and capricious as advanced by the Koresko Parties**

A court is compelled to apply the governing documents as written and not to deviate from them on the basis of any state or federal common law theories in the ERISA area that "might blur the bright-line requirement to follow plan documents in distributing benefits." *Kennedy vs. Plan Administrator For DuPont Savings And Investment Plan*, 129 S.Ct. 865 (2009). In short, only the first initial and last name of the insured, the policy number, the premium amount, the carrier; the carriers address and/or wire instructions; the date the premium is due and a copy of the carrier's premium notice should be provided to F&M in order to fulfill its duties.

Respectfully,

*/s/ John J. Koresko*

November 20, 2009

John J. Koresko, V, Esquire
Pro se and
Attorney for Defendants

8

# CERTIFICATE OF SERVICE

I hereby certify that at my direction a true and correct copy of the foregoing Koresko Defendants' Memorandum in Support of Motion Objecting to Specific F&M Conditions Precedent to Payment of Benefit Premiums

was served via ECF as follows:

**JOAN ROLLER, ESQ.**
**LINDA HENRY, ESQ.**
**JOANNE JARQUIN, ESQ.**
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA 19106-3317

**TIMOTHY J. NIEMAN, ESQ.**
**STEPHEN MONIAK, ESQ.**
Rhoads & Sinon LLP
One South Market Square, 12th Floor
Harrisburg, PA 17101

**CHRISTOPHER A. WEALS**
Morgan Lewis Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004

**ELIZABETH H. FAY**
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103

**H. MARC TEPPER**
Buchanan Ingersoll, P.C.
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102

and via first class U.S. mail upon the following:

**TOD S. CHASIN**
Buchanan Ingersoll, P.C.
650 College Road East
Princeton, NJ 08540


_____
John J. Koresko, V, Esq.

November 20, 2009

**Matrix to Koresko Parties' Motion**
**Objecting to F&M Data Request**

| F&M Request Number Data | Given to All Trustees for Premium Payment | Given to F&M as Courtesy | Never Given to a Trustee | GLBA Violation | RFP Violation | Invokes Atty Client Issues | Invokes Tax Practitioner Issues | Violates Plan and Trust Documents |
|---|---|---|---|---|---|---|---|---|
| 1 Unredacted Adoption Agreement | redacted | redacted | x | x | x | x | x | x |
| 2 Participant Name | | | | x | x | x | x | x |
| 2 Stock Ownership | | | x | x | x | x | x | x |
| 3 All Policy Numbers | x | x | | | | | | |
| 3 Date of Policy Issuance | | | x | | | | | |
| 3 Face Amount | x | | | | | | | x |
| 3 Related Employer Plan | | | x | | | | | x |
| 3 Loan Information | | | x | x | x | x | x | x |
| 3 Current Cash Value | | | x | x | x | x | x | x |
| 3 Policy Type | | | x | | | | | x |
| 3 Premium Due Date | x | x | | | | | | x |
| 4 Contributions by Employer Since 1/1/2009 | | | x | x | x | | x | x |
| 5 One to One Contribution to Premium Payment | | | x | | | | | x |

The Koresko Parties do not object to giving F&M redacted names, the policy number, the premium amount to be paid
    redacted names
    policy number to be paid
    premium amount to be paid
    carrier namej
    carrier address
    wire instructions
    date premium due
    copy of carrier's premium notice

Exhibit A



November 18, 2009

Re: **REAL VEBA and SEWBP Trusts – Request for Information**

PennMont Benefit Services, Inc.
Attn: John J. Koresko, V, Esquire
200 West Fourth Street
Bridgeport, PA 19405

Jeanne Bonney, Esquire
200 West Fourth Street
Bridgeport, PA 19405

Dear Plan Administrator:

     As you are aware, the Court issued an Order on November 16, 2009 pursuant to which it ruled on various motions of the parties involved in the current litigation involving the U.S. Department of Labor, F&M Trust, the Koresko Defendants and now TD Bank and Penn Mutual Life Insurance Company. Pursuant to the Order, the Court ruled that F&M Trust was to continue its fiduciary duties as Trustee for the REAL VEBA Trust and the SEWBP Trust (collectively "Trust") and not transfer trust assets to Penn Public Trust absent further Order of the Court. A component of the Court's ruling concerning F&M Trust's continuation as Trustee, by footnote, stated as follows:

> As stated above, F&M Trust remains Trustee while this standstill Order remains in effect, and the Court finds F&M Trust is entitled to access to such information it reasonably asserts is necessary to fulfill its duties as fiduciary. Accordingly, F&M Trust SHALL, no later than <u>5:00 p.m.</u> on <u>November 18, 2009</u>, communicate to the Koresko Defendants the specific information it <u>reasonably</u> requires to do so.

     In reference to the above Order of the Court, F&M Trust hereby requests the following information from PennMont Benefit Services and/or the Koresko Law Firm, Koresko & Associates and/or John J. Koresko, V, Esquire and/or Jeanne Bonney, Esquire (collectively "Koresko Defendants"):

1. A copy of each participating employer adoption agreement which confirms the benefit(s) currently provided by the respective employer on behalf of its eligible participants.

2. The name of each participant under each respective participating employer's plan, including designation of the participant's status as either an owner employee or non-owner employee.



3. A detailed list of each and every insurance policy currently owned by the Trust and/or the Trustee for the benefit of the Trust, including the policy number and date of issuance, the face amount of each policy, the name of the insured, the most recent annual policy statement, the name of the applicable participating employer pursuant to which the policies were initially purchased in order to fund benefits for their respective eligible participants, current information on outstanding loans on each policy, information concerning the current cash surrender value of each policy, information concerning the type of policy issued and each policy's specific premium due date (monthly, quarterly, semi-annually or annual).

4. Identification of the respective dates and amounts of contributions made by each participating employer since January 1, 2009 and the identity and location of the Trust account(s) to which such contributions have been deposited.

5. As indicated by our counsel at the November 12th hearing, F&M Trust reserves the right to not effectuate any requested distribution from the Trust unless PennMont Benefit Services arranges and effectuates the deposit of a corresponding employer contribution to the Trust account at F&M Trust.

Very truly yours,

Tom Peterson, Vice President

cc: Drake D. Nicholas, Esquire
Dean H. Dusinberre, Esquire
Timothy J. Nieman, Esquire

bcc: William S. Snell, Jr.

2

761765.3    717-264-6116    888-264-6116    P.O. Box 6010    Chambersburg, PA    17201-6010

FINANCIAL SOLUTIONS — FROM PEOPLE YOU KNOW