IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | NO. 2:09-CV-00988-CDJ |
| Plaintiff, | HONORABLE C. DARNELL JONES, II |
| v. | |
| JOHN J. KORESKO, V; et al, | ELECTRONICALLY FILED |
| Defendants. | |

**<u>FARMERS AND MERCHANTS TRUST COMPANY OF CHAMBERSBURG'S, SUCCESSOR BY MERGER TO COMMUNITY TRUST COMPANY, RESPONSE TO THE KORESKO DEFENDANTS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST F&M TRUST MANDATING REVERSAL OF CHANGE OF OWNERSHIP AND ADDRESS OF RECORD ON TRUST INSURANCE POLICIES</u>**

**I.     FACTUAL BACKGROUND**

On or about March 18, 2002, Community Trust Company ("CTC") became the trustee of the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Plan and Trust ("REAL VEBA"), pursuant to that certain Master Trust Agreement for the REAL VEBA (the "REAL VEBA Trust Agreement"). (Peterson Affidavit, ¶ 3).[1] On or about December 30, 2002, CTC became the trustee of the Single Employer Welfare Benefit Plan and Trust ("SEWBPT"), pursuant to that certain Master Trust Agreement for the SEWBPT (the "SEWBPT Trust Agreement"). (*Id.*, ¶ 4). Effective November 29, 2008, F&M Trust acquired CTC by way of a merger transaction. F&M Trust is the successor by merger to CTC, and the successor trustee to the REAL VEBA and SEWBPT. (*Id.*, ¶ 5). Under the Trust Agreements,

---

[1] The Affidavit of Tom L. Peterson can be found at Docket Entry 158, Attachments 1 and 2.

762449.1

F&M Trust is a directed trustee, and takes direction from the Plan Administrator, currently PennMont. (*Id.*).

### *Nature of the Plans and Benefit Arrangements*

Employers established or maintained plans for the purposes of providing death benefits, medical, education or other benefits to employees pursuant to each employer's execution of an adoption agreement to the Regional Assurance Leagues [Formerly: The Delaware Valley Leagues] Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan (the "Plan Document").

Generally, adopting employers contributed sums to the Trust which were disbursed by the Trustee to pay insurance premiums on life insurance policies acquired by the Trustee at the direction of the Plan Administrator for the purpose of funding the death and other benefits provided for by the plans of adopting employers. The Trustee is the owner of all insurance policies on behalf of the Trust, including all cash value in the policies. (See Plan Document, § 7.05(f); Affidavit of Jeanne Bonney, ¶ 29, Docket Entry 150).

Under the Trust Agreements, the REAL VEBA and SEWBPT Trusts were established "for purpose of receiving contributions of the Adopting Employer and its employees to provide for life, sick, accident or other benefits and distributing benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan." (§ 2.1 of the SEWBPT). The Trust Agreements further provide that "The Trustee shall receive contributions into the Trust Fund which shall be made only in cash or in the form of such other property as the Trustee may deem acceptable and hold same uninvested until applied to the purposes of this Trust as directed by the Plan Administrator". (§ 4.2 of the SEWBPT).

2

762449.1

### *The Custodial Agreement*

On March 21, 2002, CTC and KAPC, its successors and assigns, entered into a Custodial Agreement pursuant to which KAPC agreed to act as custodian of all insurance policies owned by the Trustee during the term of the Agreement (the "Custodial Agreement"). (Peterson Affidavit, ¶ 6). Pursuant to the Custodial Agreement, KAPC currently has physical possession of the insurance policies, and is required to maintain appropriate records of all insurance policies and all transactions. (*Id.*, ¶ 7). KAPC also agreed under the Custodial Agreement to provide the Trustee, upon request, with a periodic statement of all insurance policies held in custody by KAPC, that the Trustee, in its sole discretion, can withdraw the insurance policies from KAPC's possession, and that the Trustee can terminate the Custodial Agreement at any time. (*Id.*, ¶ 8).

### *F&M Trust's Request For Information*

In order to discharge its fiduciary duties, on June 2, 2009, F&M Trust requested the Koresko Defendants to provide copies of all plan documents, an updated list of all insurance policies in effect, together with the identity of the insured and the associated employer, current cash surrender value, and policy face value. (*Id.*, ¶ 12). The Koresko Defendants refused and continue to refuse to provide the requested information. (*Id.*, ¶ 13).

On July 6, 2009, F&M Trust again requested the Koresko Defendants to provide copies of the plan documents and insurance policy information. (*Id.*, ¶ 14). The Koresko Defendants refused and continue to refuse to provide the requested information. (*Id.*).

In response to F&M Trust's requests for information, on July 6, 2009, the Koresko Defendants took action to remove F&M Trust as Trustee to the REAL VEBA and SEWBPT. (*Id.*, ¶ 15). On July 14, 2009, the United States Department of Labor filed an Application for

Temporary Restraining Order and Preliminary Injunction against the Koresko Defendants seeking to enjoin the discharge of F&M Trust as Trustee, *inter alia*. (*Id.*, ¶ 16).

### *Koresko Defendants Take Out Millions In Loans On Insurance Policies*

In or about late July 2009 and without the knowledge or consent of F&M Trust or the insureds, the Koresko Defendants requested loans from Penn Mutual Life Insurance Company ("Penn Mutual") on twelve insurance policies owned by the Trustee on behalf of the Trust, in the aggregate amount of $4,732,912.50 and to have such proceeds paid to the Koresko Defendants. (Docket Entry 144). The Koresko Defendants were successful in obtaining loan proceeds from Penn Mutual in the amount of $609,605.90. (*Id.*). The Koresko Defendants have retained authority or control over the $609,605.90, and it is unclear whether they have spent the $609,605.90. To date, the Koresko Defendants have not accounted for these sums, nor have they notified F&M Trust of the fact that they requested the loans.

F&M Trust has also recently learned that the Koresko Defendants have sought and obtained the proceeds of additional unauthorized loans in the millions of dollars on insurance policies owned by the Trustee on behalf of the Trust. In August and September 2009, the Koresko Defendants caused to be deposited in an account at TD Bank entitled "John Koresko, Esquire" 73 checks drawn on insurance companies totaling $34,064,648.84 (the "Checks"). The Single Employer Trust was the payee on 52 of the Checks. Of those 52 checks, 22 listed Community Trust Company as Trustee, 13 listed only Single Employer Trust, and 17 listed Penn Public Trust as Trustee. (Docket Entry 146).

By letter dated October 23, 2009, F&M Trust demanded that the Koresko Defendants provide further information relative to the policy loans taken by the Koresko Defendants, and requested the information by October 28, 2009. (Peterson Affidavit, ¶ 25). F&M Trust, as

owner of the policies on behalf of the Trust, has also informed the Koresko Defendants that they are not authorized to take any additional loans on the policies without F&M Trust's prior written consent. (*Id.*). To date, the Koresko Defendants have not provided F&M Trust with any of the information requested on the policy loans. (*Id.*, ¶ 26).

Although serving in a limited capacity as a directed trustee, the Koresko Defendants repeated refusal to provide F&M Trust with necessary plan information and their unilateral action to borrow over $34 million from insurance policies owned by the Trustee on behalf of the Trust caused F&M Trust, by letter dated October 30, 2009, to inform the Koresko Defendants that F&M Trust had terminated the Custodial Agreement, and to request that all insurance policies and related information be immediately transferred to F&M Trust. (*Id.*, ¶ 27). F&M Trust also made further demand on the Koresko Defendants to return to F&M Trust all other Trust assets in their possession, custody or control. (*Id.*). To date, the Koresko Defendants have refused to transfer the insurance policies to F&M Trust or transfer the Trust assets in their possession, custody or control. The Koresko Defendants have also indicated that they do not acknowledge the termination of the Custodial Agreement. (*Id.*, ¶ 28).

Being unable to obtain any information from the Koresko Defendants, and concerned about the millions in loans that the Koresko Defendants took against the insurance policies, on November 4, 2009, F&M Trust sent letters to insurance companies that may have issued insurance policies associated with the Trusts. (A representative letter can be found at Docket Entry 160, Attachment 1). In the letters, F&M Trust requested the following information:

- Confirmation of which policies are currently in effect and that F&M Trust or Community Trust Company is listed as the record owner of each policy.

- For each policy, the date and amount of each loan taken by or on behalf of the Trustee since March 20, 2002.

5

762449.1

- The amounts, if any, paid on each loan, including current balances.
- A current policy statement of account and projection of future value for the next five years for each policy.

F&M Trust also advised the insurance companies that it had terminated the Custodial Agreement and revoked the authority of John J. Koresko, Jeanne Bonney, PennMont Benefit Services, Koresko and Associates P.C., and Koresko Law Firm to act on behalf of F&M Trust or Community Trust Company with respect to any insurance policy and requested the insurance companies to refrain from extending any further loans on any insurance policy without F&M Trust's prior consent.

## II.    ARGUMENT

### A.    Standard for TRO and Preliminary Injunction.

A court "should consider four factors in evaluating a party's motion for preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."

*Byrne v. Calastro*, 205 Fed. Appx. 10, 15 (3d Cir. 2006)(quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction. *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D.Pa. 1994). The Koresko Defendants are unable to meet their burden and have failed to address these elements in their Motion and Brief.

762449.1

B.  **The Koresko Defendants Lack Standing to Seek a TRO or Preliminary Injunction.**

The Koresko Defendants lack standing to seek a TRO or preliminary injunction because they have not filed a pleading seeking permanent relief against F&M Trust. *Solis v. Koresko*, 2009 U.S. Dist. LEXIS 44357, *7 – *9 (E.D. Pa. 2009).

C.  **F&M Trust Remains as Trustee.**

The Koresko Defendants argue that F&M Trust's termination of the Custodial Agreement was improper because F&M Trust had been removed as Trustee. On this basis, the Koresko Defendants allege that F&M Trust misrepresented its authority to the insurance companies. This simply is untrue. As this Court reaffirmed on November 11, 2009, ". . . F&M Trust SHALL continue its fiduciary duties as Trustee for the REAL VEBA Trust and SEWBP Trust and SHALL NOT transfer Trust assets to Penn Public Trust absent further Order of this Court." (November 16, 2009 Order, p. 5, Docket Entry 165; emphasis in original).

Further, and contrary to the Koresko Defendants' assertion, F&M Trust did not remove PennMont as the Plan Administrator. Rather, F&M Trust merely withdrew the insurance policies from the custody of KAPC, as is its absolute right pursuant to Section 5 of the Custodial Agreement.

D.  **F&M Trust Has Not Violated This Court's Standstill Order.**

The Koresko Defendants argue that by sending the **November 4, 2009** letter to insurance companies, F&M Trust violated this Court's **November 6, 2009** and **November 16, 2009** Standstill Orders. This argument is absurd. Further, even if the letters were sent after the entry of the Standstill Orders, they would comply therewith because F&M Trust was simply trying to identify and safeguard Trust assets.

7

762449.1

### E.  F&M Trust is the Owner of the Insurance Policies.

The Koresko Defendants criticize F&M Trust for allegedly "changing the ownership and address of record on life insurance policies administered by PennMont." (Brief, p. 4). This argument is also absurd. The Koresko Defendants ignore the plain language of the very documents that they keep trumpeting, which unequivocally state that F&M Trust owns the insurance policies. (Custodial Agreement, ¶ 1; Plan Document, ¶ 7.05). Paragraph 7.05(a) of the Plan Document specifically provides that "[t]he policy shall be a contract between the Trustee and the Insurer and shall reserve to the Trustee all rights, options and Benefits provided by the Policy . . ." How does the owner of an insurance policy cause a change in ownership of the policy or act improperly if it makes sure that it is indeed listed as the owner of the policy and makes sure that the insurance company has its address on file?

### F.  There Is No Evidence That Plan Participants Will Be Harmed.

F&M Trust has repeatedly tried to avoid the current situation by requesting information from the Koresko Defendants regarding the insurance policies and requesting that the Koresko Defendants deposit employer contributions into the Trust. The Koresko Defendants have not honored either request. Accordingly, since the requested information was not forthcoming, and in light of the millions of dollars of loans that the Koresko Defendants have taken against the policies, F&M Trust had no alternative but to seek the information directly from the insurance companies so it could discharge its fiduciary duties. The Koresko Defendants have made their own bed and now they must sleep in it.

There is no evidence that the policies "may lapse" as alleged by the Koresko Defendants. To the contrary, now F&M Trust will be able to confirm exactly when premium payments are due and the basis for such payments. Removing non-owner benefits are not "in limbo" as F&M

Trust will assist as appropriate to transfer insurance policies to non-owner employees. Whether F&M Trust has specialized competence is not an issue since the administration of the insurance policies remains with PennMont. The only thing that F&M Trust's actions change is that, until this Court rules otherwise, PennMont will now need to work through F&M Trust with respect to PennMont's administration of the Trust's insurance policies.

Finally, F&M Trust has no interest in taking over PennMont's role as Plan Administrator. Nor is F&M Trust conspiring with the Department of Labor. F&M Trust is not seeking some unarticulated windfall from the Trust assets since it can only be paid or reimbursed for those fees and expenses that it is entitled to under the plan documents and applicable law. Repeatedly stating the Koresko Defendants' spurious accusations does not, and will not, make them true. F&M Trust has repeatedly asked this Court to release it as Trustee, hardly the request that one would expect from a party that wants to stay on as Trustee. F&M Trust will take its direction from this Court and abide by its Orders.

**G.     F&M Trust Made No Misrepresentations at the November 12, 2009 Hearing.**

The Koresko Defendants suggest that at the **November 12, 2009** hearing, F&M Trust misrepresented to this Court that it had no information about the insurance policies. The basis for this belief is that on **November 13, 2009** an insurance company (Guardian) issued change of address notices. Since they were issued on November 13, 2009, it is obvious that F&M Trust could not have known about the change of address notices on November 12, 2009. F&M Trust does not deny that it has the names of certain insurance companies and certain policy numbers from payment directions it has received from the Koresko Defendants. It does not, however, have the information that it has repeatedly requested concerning the policies, such as an updated

9

list of all policies in effect, the identity of the insured and the associated employer, current cash surrender value, and policy face value.

                                         Respectfully submitted,

                                         RHOADS & SINON LLP

Date: November 25, 2009

                                         By: /s/Timothy J. Nieman
                                              Timothy J. Nieman
                                              Attorney I.D. No. 66024
                                              Stephen Moniak
                                              Attorney I.D. No. 80035
                                              One South Market Square
                                              P.O. Box 1146
                                              Harrisburg, PA 17108-1146
                                              (717) 233-5731
                                              tnieman@rhoads-sinon.com
                                              smoniak@rhoads-sinon.com

                                              Attorneys for Defendant Farmers and
                                              Merchants Trust Company of
                                              Chambersburg, successor by merger to
                                              Community Trust Company

## CERTIFICATE OF SERVICE

It is hereby certified that on November 25, 2009, the foregoing document was transmitted electronically to the Court for filing and for electronic service, upon the following:

Joan M. Roller, Esquire
Linda M. Henry, Esquire
Joanne Jarquin, Esquire
U.S. Department of Labor
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall, West
Philadelphia, PA 19106-3306

John J. Koresko, V, Esquire
Koresko Law Firm, P.C.
200 West Fourth Street
Bridgeport, PA 19405

Elizabeth Hoop Fay, Esquire
A. Lauren Carpenter, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

H. Marc Tepper, Esquire
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102

/s/ Timothy J. Nieman
Timothy J. Nieman

762449.1