## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HILDA L. SOLIS, SECRETARY OF LABOR,   :
UNITED STATES DEPARTMENT OF LABOR,   :
                                  :     CIVIL ACTION No.
          Plaintiff,             :     2:09-cv-00988 MAM
                                    :
            v.                      :
                                    :
JOHN J. KORESKO, V; JEANNE BONNEY;   :
PENN-MONT BENEFIT SERVICES, INC;   :
KORESKO & ASSOCIATES, P.C.;   :
KORESKO LAW FIRM, P.C.;   :
COMMUNITY TRUST COMPANY;   :
PENN PUBLIC TRUST;   :
REGIONAL EMPLOYERS ASSURANCE   :
LEAGUES VOLUNTARY EMPLOYEES'   :
BENEFICIARY ASSOCIATION TRUST and   :
SINGLE EMPLOYER WELFARE BENEFIT   :
PLAN TRUST,   :
          Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### SUPPLEMENTAL COMPLAINT

Hilda L. Solis, Secretary of Labor, United States Department of Labor, pursuant to Federal Rule of Civil Procedure 15(d), hereby supplements her Complaint (Dkt No. 1) to add new claims against Defendants John J. Koresko, V and Penn Public Trust, and new allegations of co-fiduciary liability against Defendants Koresko, Penn Public Trust, Penn-Mont Benefit Services, Inc., and Koresko Law Firm.  The new factual averments and violations are set forth in paragraphs 43 to 48 and 55 below.  Plaintiff's Prayer for Relief remains unchanged.

### JURISDICTION AND VENUE

1.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.*, and is brought to obtain relief under Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, in the form of equitable remedies that will



redress violations, obtain restitution from employee benefit plan fiduciaries, and enforce the provisions of Title I of the Act.

2.      This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.      Penn-Mont Benefit Services, Inc. ("Penn-Mont") sold prototype welfare plans to numerous companies and persons throughout the United States.  The prototype plans were known as the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan ("REAL VEBA") and/or the Single Employer Welfare Benefit Plan ("SEP"), hereinafter the "prototype Plans."  The plans offered death benefits and/or other welfare benefits to the participants.   Prior to 2000, Penn-Mont sold other prototype plans under other names.  These earlier plans were merged into or transferred to the REAL VEBA.

4.      By adopting the prototype Plan documents, employers established or maintained over 100 single-employer employee benefit plans ("the Plan or Plans") subject to ERISA coverage, pursuant to Sections 3(3) and 4(a) of ERISA, 29 U.S.C. §§ 1002(3) and 1003(a).  The names of the currently identified covered Plans are listed in Exhibit A, attached hereto and incorporated by reference.

5.      At all relevant times, the Plans were administered in Montgomery County, Pennsylvania.

6.      Venue with respect to this action lies in the Eastern District of Pennsylvania, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

7.      The relevant period is January 1, 2000, to date.

2

**PARTIES**

8.      The Secretary, pursuant to Sections 502(a)(2) and (5) of the Act, 29 U.S.C. §

1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among

other means, the filing and prosecution of claims against fiduciaries and others who commit

violations of ERISA.

9.      Defendant John J. Koresko, V ("Koresko") maintains an office in Bridgeport,

Pennsylvania.  He is the president of defendant Penn-Mont.  He also is an attorney and the sole

shareholder of defendant Koresko & Associates, PC ("KAPC"), a law firm, the president of

defendant Koresko Law Firm, PC ("KLF"), and vice president and secretary/treasurer of

defendant Penn Public Trust.  Plan assets were deposited in bank accounts controlled by Koresko

and others.  Koresko exercised authority or control respecting disposition of the Plans' assets.

Koresko was therefore a fiduciary with respect to the Plans within the meaning of Section

3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.  Koresko was a party-

in-interest within the meaning of ERISA Section 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and

(H), for the relevant time period.

10.      Defendant Jeanne Bonney ("Bonney") maintains an office in Bridgeport,

Pennsylvania.  She is an attorney at Koresko's law firms, KAPC and KLF.  She controls the

operations of Penn-Mont and/or KAPC and KLF with regard to their responsibility to provide

plan administration to the Plans, and has responsibility for directing the Plan Trustee to transfer

assets.  Plan assets were deposited in bank accounts controlled by Bonney and Koresko.  Bonney

exercised discretionary authority or discretionary control respecting management of the Plans,

exercised authority or control respecting management or disposition of the Plans' assets, and had

discretionary authority or discretionary responsibility in the administration of the Plans.  Bonney

was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.  Bonney was a party-in-interest within the meaning of ERISA Section 3(14)(A), (B), and (H), 29 U.S.C. § 1002(14)(A), (B), and (H), for the relevant time period.

11.     Defendant Penn-Mont Benefit Services, Inc. ("Penn-Mont") maintains an office in Bridgeport, Pennsylvania.  Penn-Mont was the named Plan Administrator of each Plan.  Plan assets were deposited in bank accounts belonging to Penn-Mont.  Penn-Mont exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and had discretionary authority or discretionary responsibility in the administration of the Plans.  Penn-Mont was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.  Penn-Mont was a party-in-interest within the meaning of ERISA Section 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B), for the relevant time period.

12.     Defendant Koresko & Associates, PC ("KAPC") is a law firm and maintains an office in Bridgeport, Pennsylvania.  During some or all of the relevant period, KAPC provided plan administration services to the Plans.  Plan assets were deposited in bank accounts belonging to KAPC.   KAPC exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and had discretionary authority or discretionary responsibility in the administration of the Plans.  KAPC was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.

4

KAPC was a party-in-interest within the meaning of ERISA Section 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B), for the relevant time period.

13.     Defendant Koresko Law Firm, P.C. ("KLF") maintains an office in Bridgeport, Pennsylvania.  During some or all of the relevant period, KLF provided plan administration services to the Plans.  Plan assets were deposited in bank accounts belonging to KLF.  KLF exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and had discretionary authority or discretionary responsibility in the administration of the Plans.  KLF was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.  KLF was a party-in-interest within the meaning of ERISA Section 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B), for the relevant time period.

14.     During the relevant time period, Defendant Community Trust Company ("CTC") maintained an office in Camp Hill, Pennsylvania, was the trustee of the REAL VEBA Trust and the SEP Trust, and was the trustee of each Plan.  According to the Trust Agreements, CTC moved trust funds at the direction of the Plan Administrator, Penn-Mont.  As the trustee of the Trusts and each Plan, CTC exercised authority or control respecting management or disposition of the Plans' assets.  CTC was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), during the relevant time period.  CTC was a party-in-interest within the meaning of ERISA Section 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B), for the relevant time period.

15.     Defendant Penn Public Trust ("PPT") maintains an office in Bridgeport, Pennsylvania.  Plan assets were deposited in bank accounts belonging to PPT.  PPT exercised

authority or control respecting disposition of the Plans' assets.  PPT was therefore a fiduciary with respect to the Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), for the relevant time period.  PPT was a party-in-interest within the meaning of ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A), for the relevant time period.

16.   The REAL VEBA Trust and the SEP Trust are joined as party defendants, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to assure that complete relief can be granted.

## PREFATORY ALLEGATIONS

### General Background

17.   Penn-Mont sold the prototype Plans nationwide.  Employers purchased the product and used the prototype Plan to establish death benefit and/or welfare benefit plans for their businesses.

18.   Penn-Mont was the Plan Administrator for each Plan.  Each employer paid Penn-Mont an administrative fee for its services as the Plan Administrator.

19.   Koresko was Penn-Mont's president.  Penn-Mont had no employees.  Penn-Mont's duties as Plan Administrator were performed by Koresko's law firms, KAPC and KLF.  Bonney, an attorney who worked for KAPC and KLF, had responsibility for the operations of plan administration, including issuance of directions to the Plans' Trustee.   Accordingly, all allegations hereinafter against Penn-Mont are also alleged against Bonney, KAPC and KLF.

20.   Each of the employers that established or maintained the Plans listed on Exhibit A adopted a prototype Plan document and provided death benefits or other welfare benefits to its employees.

21.   The Plans' assets were originally held in the REAL VEBA Trust or predecessor

6

trusts.  In approximately late 2004 or early 2005, the bank accounts of the REAL VEBA Trust were closed, and the Plans' monies were transferred from the REAL VEBA Trust to the SEP Trust.

**Death Benefits**

22.     Each Plan funded the death benefits by purchasing insurance from an insurance company.  The insurance policies were issued on the lives of individual participants.

23.     The Plan documents promised the participant's beneficiary a certain sum to be paid at the death of the participant.

24.     After being notified of a death, an insurance company paid the Trusts the value of the policy issued on the life of the deceased participant.  Penn-Mont directed CTC to transfer the insurance proceeds out of the Trust account to accounts styled as "death benefit accounts."  Only Koresko and Bonney, who were not Trustees of the Plans, had authority over these "death benefit accounts".  Trustee CTC had no authority or control over the accounts.

25.     In regard to at least three ERISA-covered plans administered by Penn-Mont, as described below, the beneficiaries designated by the participants did not receive the full amount required by the terms of the Plans upon the deaths of the participants.  Rather, Penn-Mont gave the beneficiary two options: either to receive the full amount of the death benefit in 10 annual payments, without interest, or to accept a lump sum considerably less than the full amount of the death benefit and the insurance proceeds.   If the beneficiaries chose the lump sum, Defendants Koresko and/or Bonney diverted the balance of the insurance proceeds, which belonged to these beneficiaries or their Plans, out of the "death benefit accounts" to KAPC and/or KLF.

26.     The terms of the Cetylite Industries Inc. Health and Welfare Benefit Plan ("the Cetylite Plan") required that the beneficiary of a certain deceased participant was entitled to a

payment of at least $1,000,000. Upon the death of that participant, the insurance company paid approximately $1,027,374 to the Trust. Penn-Mont directed CTC to transfer the insurance proceeds out of the Trust into an account called the Kelling Family Death Benefit Trust. Although called a "Trust," this account was controlled exclusively by Bonney and Koresko, who are not Trustees for the Cetylite Plan. Trustee CTC had no authority or control over the account. Koresko and/or Bonney paid the participant's beneficiary only approximately $812,681. Koresko and/or Bonney, after a small payment to the Internal Revenue Service, transferred the balance of the money, over $200,000, to a KAPC and/or KLF bank account and another "death benefit account" named the Angermeier Death Benefit Trust ("Angermeier account"), which was a bank account opened upon the death of another participant in an unrelated plan and controlled only by Koresko and Bonney.

27.     The terms of the Décor Coordinates  Inc. Health and Welfare Benefit Plan ("the Decor Plan")  required that the beneficiary of a certain deceased participant was entitled to a payment of at least $2,500,000.  Upon the death of that participant, the insurance company paid approximately $2,515,890 to the Trustee.  Penn-Mont directed CTC to transfer the insurance proceeds out of the Trust into an account called the Ferraro Death Benefit Trust.  Although called a "Trust," this account was controlled exclusively by Bonney and Koresko, who are not Trustees for the Décor Plan.  CTC, who is a Trustee for this Plan, did not have any authority or control over this account.  Koresko and/or Bonney paid the participant's beneficiary only approximately $2,027,723.  Koresko and/or Bonney, after a small payment to the Internal Revenue Service, transferred the balance of the money, almost $500,000, to the KAPC and/or KLF bank account and the Angermeier account.

28.     The terms of the Domenic M. Castellano D.D.S. P.A. Health and Welfare Benefit

Plan ("the Castellano Plan") required that as a result of the death of Dr. Castellano, his beneficiary was entitled to a payment of at least $750,000.  Upon the death of Dr. Castellano, the insurance company paid approximately $751,266 to the Trust.  Penn-Mont directed CTC to transfer the insurance proceeds out of the Trust into an account called the "Castellano Death Benefit Trust."  Although called a "Trust," this account was controlled exclusively by Bonney and Koresko, who are not Trustees for the Castellano Plan.  CTC, who is a Trustee for this Plan, did not have any authority or control over this account.   No benefits have been paid to any beneficiary of Dr. Castellano.  Koresko and/or Bonney, after a small payment to the Internal Revenue Service, transferred over $762,000 to the KAPC and/or KLF bank account and the Angermeier account.  The benefit dispute is the subject of a lawsuit which is now pending in this Court as Civil Action Number 2:03-CV-06903 (CDJ).

### Income paid out of the Trust to Defendants

29.     The employers forwarded contributions to the Trusts for the purposes of paying premiums on the insurance policies.  The contributions to the Plans remained in the Trusts for varying periods of time.  Monies were swept daily from the checking accounts and deposited in investments until needed to pay premiums.

30.     The interest income was taken out of the Trusts and deposited into a bank account belonging to PPT and controlled by Koresko.  In particular, during the period April 2002 through December 2004, on a monthly basis, Penn-Mont directed CTC to transfer all the interest to a bank account belonging to PPT, despite the fact that the Trust Agreements state that all income and/or earnings of the Trust belonged solely to the Trusts.

31.     During that same time period, Koresko controlled the money in and wrote checks on this PPT account.  He did not use his control over the PPT bank account to return the interest

income to the Trust.

32.     Any directions to CTC by the other Defendants about the transfer of interest income were not properly made in accordance with the terms of the Plan and were contrary to ERISA.

### Other transfers out of the Trust to the Defendants

33.     During the relevant period, Penn-Mont directed CTC to transfer Plan assets to Penn-Mont, KAPC, KLF and PPT, all parties in interest.  These Defendants were not entitled to receive these funds from the Trusts.  However, on a regular basis, Penn-Mont directed CTC to transfer varying sums of money to these parties in interest.

34.     Although some of these transfers were characterized as administrative fees owed to Penn-Mont, Penn-Mont should not have deducted its fees from the Trusts.  Penn-Mont charged its fees to the employers, not to the Trusts.  Penn-Mont set its own fees, which were not approved by an independent fiduciary, and directed that the fees be paid with Plan assets.  In this manner, Penn-Mont impermissibly used its authority over Plan assets to set its own compensation with those assets.

35.     Koresko had control over the Penn-Mont, KAPC, KLF, and PPT accounts to which Plan assets were transferred.  Koresko regularly moved money between the entities, but he did not use his control over the bank accounts to return the Plans' assets to the Trust.  Instead, on at least one occasion, a certain sum of money deposited into the PPT account was within days transferred by Koresko to a KAPC bank account.

### Stock and dividends

36.     Some of the insurance companies from which the Plans bought policies insuring the lives of individual participants were mutual companies that demutualized and became stock

companies.  Upon demutualization, these insurance companies issued stock to some of the Plans and thereafter paid dividends on this stock to the shareholder Plans.

37.     Penn-Mont never credited the stock and dividends to the Plans and/or the participants that had purchased the policies.

## Lobbying expenses

38.     During the relevant period, Koresko, signing as chair of Penn-Mont, entered into an agreement with a lobbying firm in Washington, D.C., and obligated the REAL VEBA Trust to pay a retainer and other expenses for the services of the lobbying firm.   At the direction of Penn-Mont, CTC paid the lobbying firm with money from the Trusts.  The Trusts paid for lobbying activities that included, but were not limited to, enhancing Penn-Mont's ability to market the plans by seeking favorable tax treatment for the employers who purchased the plans sold by Penn-Mont, and similar issues related to tax deductions.  This lobbying also included contacting Department of Labor officials concerning the open Department of Labor investigation underlying this lawsuit.

39.     These lobbying activities were not reasonable or necessary administrative expenses for the Plans.  This lobbying sought to benefit Penn-Mont and Koresko who were selling prototype plans and/or the employers as taxpayers, but not the Plans.

## Need for an accounting by a master and new fiduciaries

40.     The Department has served subpoenas on Koresko, Penn-Mont, KAPC, KLF and CTC, as well as related parties, starting with subpoenas issued on or about February 4, 2004.   To date, Koresko, Penn-Mont, KAPC, KLF and CTC have interfered with the Department's investigation by their failure to fully comply with the subpoenas.  Subpoena enforcement actions to compel production of documents are currently pending in the Third Circuit Court of Appeals.

41.     Due to the Defendants' widespread self-dealing and imprudent and disloyal conduct, and their sustained refusal to cooperate with a legitimate government investigation, a special master is needed to perform, at Defendants' expense, a full accounting to protect the Plans by determining the full amount of the Plan assets improperly diverted to Defendants and the full amount of restitution due to each Plan.

42.     An independent fiduciary or other new fiduciaries are needed for the Plans, to administer the Plans, in accordance with the requirements of ERISA and the Plan documents to the extent the Plan documents are consistent with ERISA, including paying beneficiaries for all benefits due to them.

**Loans taken out against insurance policies held by the Trust for the benefit of the Plans**

**43.     Koresko and Penn-Mont attempted to dismiss Farmers & Merchants Trust of Chambersburg ("F&M"), successor to CTC, in July 2009 and replace it with PPT.  This attempted dismissal did not comply with the Plan documents.  Specifically, Koresko and Penn-Mont attempted to dismiss F&M as Trustee without giving the required 90-day notice.  Koresko and Penn-Mont also attempted to amend plan documents to eliminate the 90-day notice provision. The amendment purported to change provisions of the Trust Agreement which required the Trustee's consent; the Trustee did not consent to these amendments.**

**44.     During the relevant period, including from July 9, 2009 until January 15, 2010, Koresko and PPT misrepresented to insurance companies that PPT was the Trustee and that Koresko and PPT were authorized to request loans on policies held by the Trustee for the benefit of the Plans, when in fact F&M remained the sole Trustee of the REAL VEBA Trust and the SEP.**

45.     **Koresko and PPT submitted applications for insurance policy loans to various insurance companies that insured the lives of participants in the Plans listed on Exhibit A to this Complaint, including but not limited to applications for loans on policies issued by American General Life Insurance.**

46.     **In response to these applications, insurance companies issued loan checks in the name of the Trusts, including but not limited to the SEP, as well as in some instances the name of the individual employer Plans.  Although the policies from which the loans were taken were issued in the name of the Trusts and the insurance company's checks forwarding the loan proceeds were made payable to the Trusts and the Plans, the checks were deposited into Account XXXXXX7801 at TD Bank in the name of John Koresko, Esquire.**

47.     **Many of these loans taken by Koresko and PPT are outstanding and have not been repaid.**

48.     **The Plan documents limit the amount of benefits that beneficiaries will receive to the amounts payable by the insurance policies. The amounts payable under these insurance policies in the event of a claim were, and continue to be, reduced as a result of loans taken by Koresko and PPT.  Thus, applying the plain language of the Plan documents, the amount of death benefits payable to beneficiaries is reduced as a result of these loans.  In addition, the insurance companies charge withdrawal fees and interest for these loans, which further reduce the amount payable on the subject insurance policies.**

## VIOLATIONS

49.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts by reference the averments and allegations of paragraphs 1 through 48, inclusive.

**Unlawful Transfer of Death Benefits to Defendants**

50.     By their actions and conduct described in paragraphs 22 to 28 above with regard to the death benefits:

a.     Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.     Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.     Defendants Penn-Mont, Bonney, KAPC and KLF caused the Plans to engage in transactions that they knew or should have known constituted direct or indirect transfers to, or use by or for the benefit of, a party in interest, of any assets of the Plans, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.     Defendants Koresko and Bonney dealt with the assets of the Plans in their own interest and for their own account in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1);

e.     Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF failed to hold all assets of the Plans in trust, in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a);

f.      As fiduciaries, Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF participated knowingly in, or knowingly undertook to conceal, the acts or omissions of each other with regard to the death benefits, knowing such acts or omissions were breaches of ERISA, and are liable for each others' breaches set forth in subparagraphs 22 to 28 above, pursuant to ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1);

g.      As a fiduciary, Defendant Penn-Mont failed to comply with Section 404(a)(1) in the administration of its specific duties which gave rise to its status as a fiduciary, and thus enabled the other fiduciaries to commit breaches of ERISA with regard to the death benefits set forth in subparagraphs 22 to 28 above.  Therefore, Defendant Penn-Mont is liable as a co-fiduciary for the other fiduciaries' breaches pursuant to ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2); and

h.      As fiduciaries, Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF had knowledge of each others' breaches of ERISA with regard to the death benefits set forth in subparagraphs 22 to 28 above, and failed to make reasonable efforts under the circumstances to remedy each others' fiduciary breaches and are each liable for each others' fiduciary breaches, pursuant to ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Unlawful Transfer of Interest Income to Defendants**

51.     By their actions and conduct described in paragraphs 29 to 32 above with regard to the income paid out of the Trust to Defendants:

a.      Defendants Penn-Mont, Koresko, Bonney, KAPC, KLF, CTC and PPT failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their

beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.      Defendants Penn-Mont, Koresko, Bonney, KAPC, KLF, CCT and PPT failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.      Defendants Penn-Mont, Bonney, KAPC and KLF caused the Plans to engage in transactions that they knew or should have known constituted direct or indirect transfers to, or use by or for the benefit of, a party in interest, of any assets of the Plans, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.      Defendant Koresko dealt with the assets of the Plans in his own interest and for his own account in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1);

e.      As fiduciaries, Defendants Penn-Mont, Bonney, KAPC, KLF and CTC participated knowingly in, or knowingly undertook to conceal, the acts or omissions of each other with regard to the income paid out of the Trust to Defendants, knowing such acts or omissions were breaches of ERISA, and are liable for each others' breaches set forth in subparagraphs 29 to 32 above pursuant to ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1);

f.      As fiduciaries, Defendants Penn-Mont and CTC failed to comply with Section 404(a)(1) in the administration of their specific duties which gave rise to its status as fiduciaries, and thus enabled the other fiduciaries to commit breaches of ERISA with regard to the income paid out of the Trust to Defendants.  Therefore, Defendants Penn-Mont and CTC are liable as co-

fiduciaries for the other fiduciaries' breaches set forth in subparagraphs 29 to 32 above pursuant to ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2); and

g.      As fiduciaries, Defendants Penn-Mont, Bonney, KAPC, KLF and CTC had knowledge of each others' breaches of ERISA with regard to income paid out of the Trust to Defendants set forth in subparagraphs 29 to 32 above, and failed to make reasonable efforts under the circumstances to remedy each others' fiduciary breaches and are each liable for each others' fiduciary breaches, pursuant to ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3); and

h.      Defendants CTC and PPT knowingly participated in the violations of ERISA described in subparagraphs 29 to 32 above.  Accordingly, pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1105(a)(5), they must restore to the Plans the monies they unlawfully received as a result of those violations.

**Unlawful Transfers of Plan Assets to Defendants**

52.      By their actions and conduct described in paragraphs 33 to 35 above with regard to the other transfers out of the Trust to Defendants:

a.      Defendants Penn-Mont, Koresko, Bonney, KAPC, KLF and PPT failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.      Defendants Penn-Mont, Koresko, Bonney, KAPC, KLF and PPT failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

      c.     Defendants Penn-Mont, Bonney, KAPC and KLF caused the Plans to engage in transactions that they knew or should have known constituted direct or indirect transfers to, or use by or for the benefit of, a party in interest, of any assets of the Plan, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

      d.     Defendants Penn-Mont, Koresko, KAPC and KLF dealt with the assets of the Plans in their own interest and for their own account in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1);

      e.     As fiduciaries, Defendants Penn-Mont, Bonney, KAPC, and KLF participated knowingly in, or knowingly undertook to conceal, the acts or omissions of each other with regard to the other transfers out of the Trust to Defendants, knowing such acts or omissions were breaches of ERISA, and are liable for each others' breaches set forth in subparagraphs 33 to 35 above pursuant to ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1);

      f.     As a fiduciary, Defendant Penn-Mont failed to comply with Section 404(a)(1) in the administration of its specific duties which gave rise to its status as a fiduciary, and thus enabled the other fiduciaries to commit breaches of ERISA with regard to the other transfers out of the Trust to Defendants.  Therefore, Defendant Penn-Mont is liable as a co-fiduciary for the other fiduciaries' breaches set forth in subparagraphs 33 to 35 above pursuant to ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2); and

      g.     As fiduciaries, Defendants Penn-Mont, Bonney, KAPC and KLF had knowledge of each others' breaches of ERISA with regard to the other transfers out of the Trust to Defendants set forth in subparagraphs 33 to 35 above, and failed to make reasonable efforts

18

under the circumstances to remedy each others' fiduciary breaches and are each liable for each others' fiduciary breaches, pursuant to ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3); and

h.      Defendants KAPC, KLF and PPT knowingly participated in the violations of ERISA described in subparagraphs 33 to 35 above.  Accordingly, pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1105(a)(5), they must restore to the Plans the monies they unlawfully received as a result of those violations.

**Defendants' Unlawful Failure to Credit Stock and Dividends**

53.      By their actions and conduct described in paragraphs 36 to 37 above with regard to stock and dividends:

a.      Defendants Penn-Mont, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.      Defendants Penn-Mont, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.      Defendants Penn-Mont, Bonney, KAPC and KLF failed to hold all assets of the Plans in trust, in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a) and;

d.      Defendants Penn-Mont, Bonney, KAPC and KLF failed to discharge their duties in accordance with the documents and instruments governing the Plans, in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

**Defendants' Unlawful Use of Plan Assets to Pay Lobbying Expenses**

54.     By their actions and conduct described in paragraphs 38 to 39 above with regard to the lobbying expenses:

a.      Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.      Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.      Defendants Penn-Mont and Koresko dealt with the assets of the Plans in their own interest and for their own account in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1);

d       As fiduciaries, Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF participated knowingly in, or knowingly undertook to conceal, the acts or omissions of each other with regard to the lobbying expenses, knowing such acts or omissions were breaches of

20

ERISA, and are liable for each others' breaches set forth in subparagraphs 38 to 39 above pursuant to ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1);

e.      As a fiduciary, Defendant Penn-Mont failed to comply with Section 404(a)(1) in the administration of its specific duties which gave rise to its status as a fiduciary, and thus enabled the other fiduciaries to commit breaches of ERISA with regard to the lobbying expenses. Therefore, Defendant Penn-Mont is liable as a co-fiduciary for the other fiduciaries' breaches set forth in subparagraphs 38 to 39 above pursuant to ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2); and

f.      As fiduciaries, Defendants Penn-Mont, Koresko, Bonney, KAPC and KLF had knowledge of each others' breaches of ERISA with regard to the lobbying expenses set forth in subparagraphs 38 to 39 above, and failed to make reasonable efforts under the circumstances to remedy each others' fiduciary breaches and are each liable for each others' fiduciary breaches, pursuant to ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Unlawful Requests for Loans and Transfer of Loan Proceeds**

**55.      By their actions and conduct described in paragraphs 43 to 48 above with regard to loans taken out against insurance policies held by the Trusts and by their continuing actions and conduct:**

**a.      Defendants Koresko and PPT failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);**

     b.     Defendants Koresko and PPT failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

     c.     Defendants Koresko and PPT failed to discharge their duties with respect to the Plans in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of Title I and IV of ERISA, in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

     d.     Defendants Koresko and PPT caused the Plans to engage in transactions that they knew or should have known constituted direct or indirect transfers to, or use by or for the benefit of, a party in interest, of any assets of the Plans, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

     e.     Defendants Koresko and PPT dealt with the assets of the Plans in their own interest and for their own account in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1).

     f.     As fiduciaries, Defendants Koresko, PPT, Penn-Mont and KLF had knowledge of each others' breaches of ERISA with regard to the loan requests set forth in subparagraphs 43 to 48 above, and failed to make reasonable efforts under the circumstances to remedy each others' fiduciary breaches and are each liable for each others' fiduciary breaches, pursuant to ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3).

## PRAYER FOR RELIEF

     WHEREFORE, the Secretary prays that this Court enter an Order:

a.      Removing all Defendants as fiduciaries, trustees, third party administrators and service providers for the Plans;

b.      Enjoining all Defendants from receiving, either directly or indirectly, compensation from any ERISA-covered plan;

c.      Enjoining all Defendants from exercising any custody, control, or decision-making authority with respect to the assets of any ERISA-covered plan;

d.      Enjoining all Defendants from serving as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee or representative in any capacity for any ERISA-covered plan, or as a consultant or adviser to any employee benefit plan, including but not limited to, any entity that provides goods or services to such plan;

e.      Appointing an independent fiduciary for the Plans;

f.      Appointing a Special Master to make an accounting, at Defendants' expense, of each Plan's assets, including contributions received, the insurance polices, stock and dividends, together with appropriate interest, to determine the full amount of Plan assets improperly diverted by the Defendants and the full amount of restitution due to each Plan.

g.      Requiring all Defendants, their agents, employees, service providers, banks, accountants, and attorneys to provide the Secretary, the Special Master and successor fiduciaries all of the books, documents and records relating to the finances and administration of the Plans and the Plans' Trusts.

h.      Requiring Defendants to transfer the assets of each of the Plans to the newly appointed fiduciaries who will administer the Plans, in accordance with the requirements of ERISA and the Plan documents, to the extent the Plan documents are consistent with ERISA, including paying beneficiaries for all benefits due to them.

23

i.      Requiring Defendants to restore any losses, including lost opportunity costs, caused by

their fiduciary misconduct;

j.      Requiring Defendants to disgorge any funds they have obtained in violation of ERISA' s

fiduciary duties or their knowing participation in fiduciary misconduct by a fiduciary as alleged

in this Complaint;

k.      Permanently enjoining each of the Defendants from engaging in any action in violation of

Title I of ERISA;

l.      Awarding plaintiff, Secretary of Labor, the costs of this action; and

m.      Awarding such other relief as is equitable and just.


Post Office Address:                          M. Patricia Smith
                                              Solicitor of Labor

Catherine Oliver Murphy                       Catherine Oliver Murphy
Regional Solicitor                            Regional Solicitor
Office of the Solicitor
The Curtis Center, Suite 630 East
170 S. Independence Mall West                 _____
Philadelphia, PA 19106-3306                   Joanne Roskey
(215) 861-5134                                Regional Counsel, ERISA
                                              Linda M. Henry
                                              Ashton Phillips
                                              U.S. DEPARTMENT OF LABOR
                                              Attorneys for Plaintiff

24