UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, : | |
| UNITED STATES DEPARTMENT OF LABOR, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION No. |
| : | 2:09-cv-00988 |
|     v. : | |
| JOHN J. KORESKO, V, et al., : | |
|     Defendants. : | |

DEFENDANTS' REPLY TO THE SECRETARY'S OPPOSITION TO
KORESKO DEFENDANTS'  MOTION FOR RECONSIDERATION OF
THIS COURT'S ORDER DATED AUGUST 3, 2012, OR, IN THE ALTERNATIVE, MOTION
FOR CERTIFICATION PURSUANT TO 29 U.S.C. § 1292(B)

ARGUMENT

**I.  The Koresko Defendants' Motion for Reconsideration Properly Raises
Arguments That May Be Considered Under U.S.D.C. Local Rule 7.1(g).**

On September 28, 2012, pursuant to the Order of this Court granting the Koresko Defendants' unopposed Motion for Extension of Time to File a Motion for Reconsideration (Doc. No. 318), the Koresko Defendants filed their Motion for Reconsideration of this Court's Order Dated August 3, 2012, or, in the Alternative, Motion For Certification Pursuant to 29 U.S.C. 1292(b).  In the Motion and the supporting Memorandum of Law, the Koresko Defendants inadvertently cited F.R.Civ.P. 59(e) as the basis for the Motion when, in fact and law, the correct citation should have been to this Court's Local Rule 7.1(g).  As more fully explained herein, Local Rule 7.1(g) clearly permits a party to ask the Court for reconsideration of the Order in question.  Although the Rule requires the motion to be filed within fourteen (14) days after the entry of the ". . . order", the Local Rule does not limit or restrict an extension of the time limit by Order of this Court.  See Local Rule 7.1(g).  Moreover, nothing in the Local Rules of this Court purport to deny a party the opportunity to instruct this Court regarding a perceived error of law or fact or a manifest injustice arising from the challenged order.

Although there are no clear-cut guidelines under which a Court may decide a motion brought pursuant to Local Rule 7.1(g), it may fairly be assumed that a proper application of the Rule would be

no more restrictive that those applicable under F.R.Civ.P. 59(e) and, therefore, may be brought "to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex. Rel Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995), particularly since the basis of the within Motion arises from arguments that were previously raised but were apparently overlooked by the Court. See *Post Confirmation Trust For Fleming Companies, Inc. v. Friedland*, No. 06-CV-1118, 2006 WL 3484374, at *2 (E.D. Pa. Nov. 21, 2006) (Tucker, J.) (citing *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003).

F.R.Civ.P. 59(e), captioned "Motion to Alter or Amend a Judgment" is inapplicable here because the Motion filed was not filed to "alter or amend a judgment" since no "judgment" had been entered. The document entered was an Order of this Court (Doc. No. 315) granting partial summary judgment as to some, but not all, of the defendants herein upon some, but not all, of the multiple claims asserted by the DOL in this action. Under these circumstances, any analysis regarding the Koresko Defendants' current standing to assert arguments for reconsideration must focus on the definition of the term "judgment" as set forth in F.R.Civ.P. 58 ("Entering Judgment").

F.R.Civ.P. 58(a) requires that "Every judgment" must be "set out in a separate document, except in certain specified instances that are not applicable in this case. Although one of the specified instances – that set forth in F.R.Civ.P. 58(a)(4) – eliminates the requirement for a "separate document" where the judgment is to ". . . alter or amend the judgment, under Rule 59," it is clear that, in this instance, the relief sought is directed to the Order of this Court granting partial summary judgment and not to any judgment which, as indicated, has not been entered upon the docket. If a judgment were to be entered upon the docket as the result of an Order of this Court, the clerk could not do so upon his or her own initiative, as provided in F.R.Civ.P. 58(b)(1) because, in this case, there has been no "jury verdict" or an award of "only costs or a sum certain" and, clearly, the Court has not denied "all relief". Instead, this issue is governed by F.R.Civ.P. 58(b)(2) which provides, in pertinent part, as follows:

2

> (2) Court's Approval Required. Subject to Rule 54(b), the court must promptly approve the form of judgment, which the clerk must promptly enter, when:
>
> \* \* \*
>
> (b) the court grants other relief not described in this subdivision (b).

In this case, the DOL could have, but did not, request this Court to approve a form of judgment or to order the clerk to enter a judgment pursuant to F.R.Civ.P. 58(a), as required by F.R.Civ.P. 58(d). In fact, the Court would be restricted from approving any request to do so by F.R.Civ.P. 54(b) to which Rule 58 is expressly subject. F.R.Civ.P. 54(b) ("Judgment on Multiple Claims or Involving Multiple Parties") provides, in pertinent part, that "any order or other decision, however, designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." This Rule confirms the lack of finality in the Order entered in this case, hence the request, in the alternative, for Certification for appeal. *Freixenet v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 152-153 (3d Cir. 1984).[1]

Based upon the foregoing, other than Local Rule 7.1(g), there are no time restrictions relating to the Koresko Defendants' Motion for Reconsideration. Since the Motion was filed within the extended period of time granted by the Court, upon consent of all parties, the Motion may be considered on its merits by this Court and is not bared by the limitations of F.R.Civ.P. 59(e). Moreover, any issue regarding the applicability of F.R.Civ.P. 60, raised only by the DOL, is moot. Consequently, the Koresko Defendants have properly raised arguments that this Court may properly consider pursuant to this Court's Local Rule 7.1(g).

Contrary to the DOL's gross mischaracterization, the Motion is properly brought to correct clear errors of law or fact with respect to arguments that were previously raised but overlooked by the Court. *See Max's Seafood Café ex. Rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citing

---

[1] The interrelationship between F.R.Civ.R. 54(b) and 58(b) is discussed at length at 10 Fed. Prac. & Proc. Civ. § 2656 (3d ed.).

*North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)); *Post Confirmation Trust For Fleming Companies, Inc. v. Friedland,* No. 06-CV-1118, 2006 WL 3484374, at *2 (E.D. Pa. Nov. 21, 2006) (Tucker, J.) (citing *United States v. Jasin,* 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003)).

First, the DOL claims that the Court has already considered and rejected the Koresko Defendants' argument pursuant to *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12 (1987), that the alleged employer-level "plans" are not covered by ERISA because the employers did not assume any "responsibility to pay benefits on a periodic basis." (Response at 9). The DOL wholly misunderstands the Koresko Defendants' argument in its Motion. The Koresko Defendants argue that the Court erred by inappropriately weighing evidence in connection with its *Fort Halifax* analysis and conclusion that the employers "established and maintained" an ERISA plan because the employers paid contributions to REAL VEBA. (Motion at 12-15)

Second, the DOL grossly mischaracterizes the thrust of the Koresko Defendants' Motion relating the existence of ERISA "plan assets" by asserting that the Court has already rejected arguments relating to the beneficiaries' "mere expectancy" interests in REAL VEBA. (Response at 9) In fact, the Koresko Defendants' Motion on this issue argues that the Court's erred in its *analysis* of *Sec'y of Labor v. Doyle,* 675 F. 3d 187 (3d Cir. 2012), and *Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639 (8th Cir. 2007), and in its interpretation of REAL VEBA's governing documents. (Motion at 15-23).

Third, the DOL claims that the Court has already considered and rejected the Koresko Defendants' argument that the alleged employer-level "plans" are "unfunded" top hat plans because the beneficiaries have no beneficial interest in REAL VEBA's assets. (Response at 9) On this issue, the DOL oversimplifies the Koresko Defendants' argument. The Koresko Defendants' Motion on this issue argues that the Court erred in its application of *In re IT Group, Inc.*, 448 F.3d 661 (3d Cir. 2006) because the Court failed to properly consider the nature and quality of the beneficiaries rights under REAL VEBA's governing documents. (Motion at 23-27)

4

Fourth, the DOL claims that the Koresko Defendants made a new argument that cannot be brought in this Motion by arguing that PennMont and John Koresko as attorney-in-fact have authority to adopt the 2009 Amendment. (Response at 10) The DOL never challenged the validity of the 2009 Amendment in its Motion for Partial Summary Judgment. As a result, the Koresko Defendants had no reason to defend PennMont's and John Koresko's authority to adopt the Amendment. Nevertheless, the Koresko Defendants properly relied upon the 2009 Amendment (assuming its validity) in its Response to the DOL's Motion. (Doc 285 at 17-18)

Fifth, the DOL is flat wrong in claiming that the Koresko Defendants' argument that PennMont could direct the Trustee to transfer amounts to death benefit escrow accounts is new. (Response at 10) Citing numerous provisions of REAL VEBA's governing documents, the Koresko Defendants argued at length that they transferred insurance proceeds from REAL VEBA's Trust to "Death Benefit Trust" accounts in accordance with the terms of REAL VEBA's governing documents. (Doc 285 at 37-40)

## II. The Court Erred When It Held That The 2009 Amendment Is Invalid.

The DOL's contention that "no amending party" – not even the League – could amend REAL VEBA to eliminate coverage of non-owner employees because Plan § 9.03(c)(3) prohibits discriminatory amendments is flat wrong. Plan Document § 9.03(c)(3) is nothing more than one of many provisions in REAL VEBA's governing documents that is intended to accomplish REAL VEBA's tax objective under IRC § 501(c)(9) so that any earnings on the trust are exempt under IRC § 501(a).

Neither the Court nor the DOL can continue to turn a blind eye to the tax driven design of REAL VEBA. It is simply not logical for this Court to conclude that REAL VEBA's drafters intended that Plan Document § 9.03(e) would forever eliminate their right and ability to do what Congress explicitly permitted when it enacted ERISA nearly 30 years ago. ERISA neither requires that plan sponsors provide non-owner employees with benefits, nor does it prohibit a plan sponsor for taking them away. Plan § 9.03(c)(e) is part of REAL VEBA's tax design; it neither limits nor prohibits the plan sponsor's right under our voluntary system to decide what benefits it will offer and to whom.

5

The DOL's characterization of the 2009 Amendment as a prohibited exculpatory instrument under ERISA § 410 is also flat wrong. ERISA § 410 prohibits language in a plan document or trust agreement holding a fiduciary harmless for any breach of fiduciary duty. The 2009 Amendment neither explicitly nor implicitly purports to do any such thing; the 2009 Amendment is not an exculpatory instrument. Rather, as is freely permitted under our voluntary employee benefits system, the 2009 Amendment amends the coverage provisions of REAL VEBA by eliminating coverage of non-owner employees. That this particular design change has the intended result, per *Yates v. Hendoen*, 541 U.S. 1, 21 (2004), of eliminating ERISA coverage of REAL VEBA does not cause the 2009 Amendment to be a prohibited exculpatory instrument. The 2009 Amendment merely eliminates ERISA coverage (which includes ERISA's fiduciary requirements) of REAL VEBA. But, the 2009 Amendment does not purport to relieve any fiduciaries of REAL VEBA of any fiduciary responsibility.

The DOL incorrectly asserts that the 2009 Amendment is an attempt to retroactively eliminate and thereby evade liability under ERISA for fiduciary misconduct. On the contrary, the Koresko Defendants have consistently maintained that the Secretary lacks standing to assert ERISA breach of fiduciary claims, and as such, the Secretary cannot establish any ERISA fiduciary misconduct. The 2009 Amendment is meant to establish definitively that ERISA no longer covers REAL VEBA (if it ever did). Nothing about that decision violates public policy. If a plan sponsor no longer sponsors an ERISA covered plan, the Secretary can no longer allege ERISA fiduciary violations.

**III.    The Court Erred By Ruling That The Employer-Level "Plans" Are Covered By ERISA.**

Apparently, the DOL is operating under the mistaken assumption that it does not bear the burden of proof on its claims against the Koresko Defendants. In opposing the Koresko Defendants' Motion on the issue of ERISA coverage, the DOL complains that the "Koresko Defendants provided *no* citations to the record to dispute the Secretary's factual allegations underpinning the Court's finding that the subject plans are covered by ERISA." (Response at 14)  It is not the Koresko Defendants' burden to disprove ERISA coverage. The burden of proving ERISA coverage falls to the DOL.

6

It is the Koresko Defendants' position that the Court erred when it ruled that the alleged employer-level "plans" are covered by ERISA because the DOL failed to meet its burden as a matter of law, and because the Court inappropriately weighed the evidence presented by the DOL on summary judgment. In sum, the Koresko Defendants argue in the Motion at 9 to 15:

1. The Court erred as a matter of law because the record presented by the DOL does not establish that a "reasonable person" could determine the "existence of an intended class of beneficiaries" as required by *Donovan* and *Gruber*;

2. The Court erred when it weighed the evidence presented by the DOL on the issue of whether the alleged employer-level "plans" were "established and maintained" by the employers, and concluded that the DOL had presented "substantial evidence" to prove that issue; *Donovan* and *Gruber* and Fed. R. Civ. P. 56(a) require a greater showing on summary judgment;

3. The Court also erred when it inferred from *Donovan* that an employer *may* establish an ERISA "plan" when it subscribes to a multiple employer trust; but, whether the employer does – *or does not* – is a fact issue that cannot be decided on summary judgment;

4. The Court also inappropriately weighed the evidence presented by the DOL when it concluded as a matter of law under *Fort Halifax* that the subject plans are "included" under ERISA, just because that are "not excluded" from ERISA coverage where the employer faces demands on its assets.

**IV.    The Court Erred When It Ruled That The Employer-Level "Plans" Have A Beneficial Interest In "Plan Assets."**

Whether the employer-level "plans" have a beneficial ownership interest in ERISA "plan assets" turns on a simple, yet fundamental question: Did the employers *intend* to grant the alleged "plans" a beneficial ownership interest in the assets? The employers owned the assets in the first place, and only the employers can grant any ownership interest in the assets to the alleged "plans." The Third Circuit recognized this simple truth in *Secretary of Labor v. Doyle,* 675 F.3d 187, 203 (3d Cir. 2012) when it cited *Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 647 (8th Cir. 2007). Thus, if an employer places funds in a trust, but the employer does not *intend* to grant a beneficial ownership interest in those funds to a "plan," then the "plan" cannot acquire a beneficial ownership interest in the funds placed in the trust.

The DOL's recitation of the "classic definition of a trust" (Response at 18) is inapposite. The REAL VEBA Trust is not a "classic trust." As is plainly evident from the terms of the REAL VEBA

7

Trust Agreement, the REAL VEBA Trust is specifically designed to accomplish an explicit tax objective under Internal Revenue Code §§ 419A(f)(6) and 501(c)(9) that impacts the ownership interests in the assets held by the Trust. Thus, the DOL's argument that the alleged employer-level "plans" acquired an ownership interest in the assets simply "by virtue of the employers use of the Trust to fund benefits under the Plans" (Response at 18) blindly ignores REAL VEBA's tax driven design and the terms of the Trust which clearly provide that no ownership interest **"whatsoever"** inures to the benefit of "any person" including an alleged employer-level plan. (Doc. 268-14, § 2.1)

Under non-ERISA law (*i.e.,* IRC §§ 419A(f)(6), 501(c)(9)), the dominate feature of REAL VEBA is the *severance* of a participating employer's ownership rights and interests in the assets it contributes to REAL VEBA in exchange for the opportunity to *deduct* those contributions on the employer's corporate tax returns. If an employer somehow retained a beneficial ownership interest in the assets it contributed to the REAL VEBA Trust, and then conferred that ownership interest upon an alleged employer-level "plan," REAL VEBA could fail to satisfy IRC § 419A(f)(6), and the employer could not deduct its contributions to REAL VEBA. Neither the DOL nor the Court can continue to blindly ignore that REAL VEBA is a tax driven vehicle that cuts off an employer's rights – and, as a result, any beneficial ownership interest of an alleged employer-level "plan" – to the assets the employer contributes to REAL VEBA so that the employer can gain a tax advantage.

V.     **The Court Erred When It Ruled That The Alleged Employer-Level "Plans" Are "Funded."**

The Court erred as a matter of law when it held that the alleged employer-level "plans" are "funded," (Doc 214 at 40), and the DOL's argument to the contrary is superficial at best. The DOL surprisingly asserts that the "newly cited" cases of *Belsky v. First Nat'l Life Ins. Co.,* 818 F.2d 661, 663-64 (8th Cir. 1987) and *Demery v. Extebank Deferred Compensation Plan,* 216 F.3d 383, 287 (2d Cir. 2000) "undermine" the Koresko Defendants' argument (Response at 18). In fact, the Third Circuit cited both of these cases in *In re IT Group, Inc.,* 448 F.3d 661, 669 (3d cir. 2006), in further support of its holding that the mere existence of insurance policies to support a death benefit plan does not cause

the plan to be "funded" and subject to ERISA's substantive requirements.  Contrary to the DOL's assertion, the fact that the *employer* owned the policies in *Belsky* and *Demery* as opposed to a *trust* had no bearing on the outcome of either case, and certainly had no bearing on the Third Circuit's decision in *In re IT Group, Inc.*  Thus, the DOL's citation of those cases in support of its assertion that the REAL VEBA Trust holds a *res* separate from the participating employers' assets, and that that *res* causes the alleged employer-level "plans" to be "funded" is wrong.

On the contrary, under *In re IT Group, Inc.,* REAL VEBA's intended tax treatment under non-ERISA law compels the conclusion that the beneficiaries cannot look to any *res* separate from the employers' assets to satisfy claims for a death benefit, and stand in an even more tenuous position than general unsecured creditors.  As such, the Court erred in concluding that the alleged employer-level "plans" are "funded."

**VI.     The Court Erred When It Held That The Koresko Defendants Violated ERISA By Paying Benefits To Trust Accounts Established For Participants.**

The Koresko Defendants' argument that they properly directed REAL VEBA's Trustee to pay plan benefits pursuant to the terms of REAL VEBA's Plan Document to "death benefit escrow accounts" is not new.  Citing numerous provisions of REAL VEBA's governing documents, the Koresko Defendants specifically argued in their response to the DOL's Motion for Partial Summary Judgment that they transferred insurance proceeds from REAL VEBA's Trust to "Death Benefit Trust" accounts in accordance with the terms of REAL VEBA's governing documents. (Doc. 285 at 37- 40)

The DOL's assertion that the Koresko Defendants failed to follow the terms of REAL VEBA's governing documents in violation of ERISA § 404(a)(1)(D) based on the *DOL's interpretation* of REAL VEBA's governing documents is patently wrong.  First of all, neither the DOL nor the Court may interpret REAL VEBA's governing documents *de novo.*  Under *Firestone v. Bruch*, 109 S. Ct. 948 (1989) and *Metropolitan Life Insurance Company v. Glenn,* 128 S. Ct. 2343 (2008), PennMont's discretionary interpretation of the terms of REAL VEBA's governing documents, including those

9

provisions that address beneficiary designations and payment of benefits, is entitled to judicial deference which affords a extraordinarily narrow scope of review. Neither the DOL nor the Court may substitute its judgment for PennMont's regarding such discretionary decision-making. Thus, the DOL's lengthy discussion of beneficiary nominations that it views as permitted under REAL VEBA's governing documents (Response at 20-22) should be dismissed out of hand because the DOL has made no attempt whatsoever at showing that PennMont's discretionary decision-making is arbitrary and capricious. Moreover, the Koresko Defendants set up the three *death benefit trust accounts* for the benefit of the very participants identified by the DOL under its interpretation of the documents. (Doc 268-28 – Ferraro Death Benefit Trust; Doc 268-46 – Kelling Family Death Benefit Trust; Doc 268-54 – Castellano Death Benefit Trust)

The DOL's attempt to limit the holdings in *Faber v. Metropolitan Life Ins. Co.,* 648 F.3d 98, 102 (2d. Cir. 2011) and *Edmonson v. Lincoln Nat'l Life Ins. Co.,* No. 10-4919, 2012 WL 368367, at *16-17 (E.D. Pa. Feb. 3, 2012) (Baylson, J.), is wrong. Both *Faber* and *Edmonson* as well as the Supreme Court's decision in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 434, 444 (1999), stand for the broad proposition that Congress afforded plan sponsors wide latitude to design a plan, including the form and structure of a plan, who is entitled to receive plan benefits and in what amounts, how those benefits are to be calculated, and the mechanism for distribution of benefits, as plan sponsors see fit. Neither *Faber* nor *Edmonson* stand for the proposition that the Koresko Defendants were somehow required to design REAL VEBA so that they had to "relinquish control" of the death benefit escrow accounts to any beneficiaries upon transfer of the insurance proceeds to those accounts, as the DOL apparently contends. (Response at 22)

Finally, PennMont's *discretionary* decision to select the death benefit trust accounts as the vehicle for distribution of death benefits was explicitly permitted by REAL VEBA's governing documents, and the Court erred in holding that the transfers violated ERISA § 403's trust requirement and ERISA § 404(a)'s fiduciary requirements. There is simply no factual or legal basis for the Court's

10

conclusion that money "transferred" to accounts out of the reach of the Trustee, standing alone, evidences disloyalty or an intent by the Koresko Defendants to use those funds for themselves. Likewise, the DOL's assertion – also standing alone and unsupported by the record – that assets in the death benefit trust accounts were then "diverted" to the Koresko Defendants does not establish any violations of ERISA § 404(a)'s fiduciary requirements.

**VII.     The Court Should Certify The Issue Relating To The Validity Of The 2009 Amendment.**

This Court specifically ruled:

> The Court agrees with the Secretary that the purported July 29 2009 Amendment was not valid under the terms of the REAL VEBA Plan document, for two reasons.

Doc. 314 at 35. As such, the DOL's contention that the Court did not declare the 2009 Amendment invalid is incontrovertibly wrong. (Response at 25-26) The DOL's attempt to parse and mischaracterize the Court's holding on this issue is plainly at odds with the Court's clear holding.

The reasons given by the Court in support of its holding that the 2009 Amendment is invalid are legal findings that may be certified for review. The Court's construction of REAL VEBA's governing documents as not authorizing PennMont to amend the documents and as prohibiting discriminatory amendments, and its conclusion that the 2009 Amendment violates public policy are clearly legal findings capable of being certified for review. (Doc. 314 at 34-37) The DOL's assertion that the Court made an alternative "factual finding" not capable of certification when it commented that "The Koresko Defendants have not pointed the Court to anything in the Plan Document giving the plan administrator authority to amend the plan…" is disingenuous. The Court's statement is not a "factual finding" that would foreclose certification of the issue. It is merely a gratuitous comment directed to the Koresko Defendants' support of PennMont's authority to amend REAL VEBA's governing documents.

Because the 2009 Amendment eliminated REAL VEBA's coverage of non-owner employees, whether the 2009 Amendment is valid is a "controlling question of law" in this case that if decided

erroneously would lead to reversal on appeal of all of the Court's rulings regarding ERISA's applicability to REAL VEBA.

## VIII. The Court Should Certify The Issue Relating To The Existence Of ERISA "Plan Assets."

The Court's holding that the alleged employer-level "plans" hold an undivided beneficial ownership interest in REAL VEBA's assets is a controlling question of law that is capable of being certified for appeal. Again, the DOL's attempt to parse and mischaracterize the Court's holding on this issue is plainly at odds with the Court's clear holding. (Response at 27) As explained above, and in the Koresko Defendants' Motion, the Court erred in its application of *Doyle*, REAL VEBA is not a "classic trust" and so the Court's reliance on "classic trust law" as a basis for its holding is error, and there is no controlling Third Circuit authority for the Court's conclusion that the alleged employer-level "plans" hold an undivided beneficial ownership interest in REAL VEBA's assets. Contrary to the DOL's assertion, there are no "uncontroversial and well-settled principles" (Response at 28) that compelled the Court's holding relating to "plan assets." Indeed, as is evident from the Court's Order, other than *Doyle,* the Court had very little authority on which to ground its decision and was compelled to resort to a single comment in the Restatement of Trusts for authority for its ultimate holding.

The Court's alternative regulation-based rationale for its holding relating to the existence of ERISA "plan assets" is not a basis for denying the Koresko Defendants' Motion to certify this question because the Court's alternative holding is also a clear error of law.[2] The DOL's argument based on its plan assets regulation, 29 CFR § 2510.3-101(h)(2), contorts its own regulation beyond recognition and the Court's acceptance of the DOL's regulation based argument is clear error.

---

[2] The DOL raised its alternative regulation based argument for the first time in its Reply to the Koresko Defendants' Opposition to the DOL's Motion for Partial Summary Judgment ("MPSJ Reply") (Doc. 299 at 21-22) so the Koresko Defendants had no opportunity to respond to this argument before the Court issued its August 3, 2012 Order.

12

The DOL's "plan asset" regulation describes circumstances when it is appropriate to "look through" a plan's *investment* in a separate legal entity – such as a corporation or a partnership – and to treat the underlying assets of the entity in which the plan invests as plan assets subject to ERISA's fiduciary requirements. Under the regulations, the underlying assets of an entity in which a plan obtains an equity interest are presumptively plan assets unless an exception applies. 29 C.F.R. § 2510.3-101(k). The look-through rule does not apply to interests in an entity that are not "equity interests." An interest is an equity interest unless (1) it is treated as indebtedness under applicable local law, and (2) it has no "substantial" equity features. 29 C.F.R. § 2510.3-101(b)(1).

The preamble to the regulation emphasizes that the determination of "whether a particular investment has substantial equity features is an inherently factual question that must be resolved on a case by case basis." *Final Regulation Relating to the Definition of Plan Assets,* 51 Fed. Reg. 41262-01 (Nov. 1, 1986). The DOL's argument in its MPSJ Reply that the alleged employer-level "plans" hold a beneficial ownership interest in REAL VEBA's assets ***assumes*** that that alleged ownership interest is an "equity interest" within the meaning of the regulation, and conspicuously avoids the requisite "inherently factual" inquiry that would establish any "substantial" equity features of that alleged beneficial ownership interest. Citing a provision in the regulation that merely provides – "When a plan acquires or holds [an equity interest,] … its assets will include … an undivided interest in the underlying assets…." -- the DOL leaps to the conclusion that REAL VEBA's assets are "plan assets" of the alleged employer-level plans without first establishing that the subject plans actually hold an "equity interest" within the meaning of the regulation. (Doc 299 at 21). The DOL never undertakes that requisite "inherently factual" inquiry, nor could they, because under ordinary notions of property law under non-ERISA law, the DOL cannot establish that that the alleged employer-level "plans" hold a beneficial ownership interest in REAL VEBA's assets.

Further, the DOL's assertion that the plan asset regulation "was uncontrovertibly designed" to address the provision of benefits by a multiple employer trust is a blatant misrepresentation of the

13

regulation. (Response at 29). The regulation itself never mentions "multiple employer trusts" and the lengthy preamble to the regulation uses that phase *once* in a passing reference to the types of entities that *may* be subject to the regulation. 51 Fed. Reg. 41262-01, 41263. Thus, the DOL's plan investment regulation is hardly "on point" as the DOL contends, and the Court's reliance on the regulation as an alternative basis for its holding relating to "plan assets" is clear error.

## IX. The DOL's Opposition to Dismissing Ms. Bonney is Unsupported in Law and Equity.

The DOL insists that the Court retain Ms. Bonney in this litigation, but provides no explanation of why her presence in the case is necessary, nor how the agency will be harmed by her dismissal. Further, the DOL has provided no authority for its insistence that Ms. Bonney remain exposed to liability, notwithstanding her inability to participate. The cases cited in support of the DOL's argument that this unique situation does not implicate due process concerns are not factually or legally on point and are not persuasive: *United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367, 1380 (2010) (bankruptcy case in which creditors provided with notice of hearing and plan did not suffer a due process violation); *Link v.Wabash Railroad Co.*, 370 U.S. 626, 636 (1962) (dismissing negligence action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) after plaintiff's counsel received due notice of scheduling of pretrial conference and failed to attend); *Pioneer Investment Services, Co. v. Brunswick Assoc. Limited Partnership*, 507 U.S. 380, 397-99 (1993) (bankruptcy case in which creditors' late filing of proof of claim was "excusable neglect," citing to the "unusual" form of notice of filing date and second amended reorganization plan that took account of creditors' claims). None of these cases bear any similarity to the facts and due process and equitable concerns that are at issue here.

The DOL's reliance on the Court's March 13, 2012 Order is similarly misplaced. The Court's statement in that Order that "Ms. Bonney's illness is not relevant to this legal brief, as Mr. Koresko orally argues the issue at hand frequently" reflects more on Mr. Koresko's ability to represent all of the Koresko Defendants, rather than "the significance of Ms. Bonney's status as to the ability of her attorneys to litigate the merits of this case on her behalf." (Response at 5) The DOL incorrectly asserts

that the Court has already ruled on the issue presented here: whether Ms. Bonney's continued exposure to liability when she cannot participate meaningfully in her own defense presents a due process violation.

Having found no binding cases to support its position, the DOL instead relies on the Restatement of the Law of Judgments (Second) § 72.  While the Court found facts and made conclusions of law in support of its August 3, 2012 Order and Opinion, no final judgment has yet been filed in this case, and the standards that apply to the preservation of a judgment are not applicable here.  Nevertheless, even at this procedural juncture, the interests of judicial finality, economy and fairness support a dismissal here. Without injury to any other party's interest or even noticeably changing the course, realities, and logistics of this litigation, dismissing Ms. Bonney from the case removes any cloud of uncertainty over the Court's rulings, a cloud created by the due process concerns raised here.

The relief requested here is aimed at preventing Ms. Bonney from being exposed to a judgment, and preventing any future preclusive effect of the Court's findings.  *Compare, Publicker Industries, Inc. v. Roman Ceramics Corp*.  603 F.2d 1065, 1069 (3d Cir. 1979) (The court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered.) The importance of this relief cannot be understated, as a finding that Ms. Bonney breached her fiduciary duty could be subject to preclusive effect in a future disciplinary proceeding. The applicable legal and equitable principles here all weigh in favor of granting the relief sought.  Ms. Bonney has been excused from participating because of a disabling illness and it is clear that dismissing her from the action entirely presents no prejudice to any of the other parties.  Dismissal serves to prevent Ms. Bonney from being in the untenable position in which she now she finds herself, excused from participating but not excused from liability.  Basic principles of fundamental fairness support this dismissal.  *Wolgin v. Atlas United Financial Corp.*  397 F. Supp. 1003, 1013 (E.D. Pa. 1975) ("Based upon considerations of judicial efficiency, the lack of prejudice to the parties and the adequacy of judgment that can be rendered without AFC, 'in equity and good conscience' I conclude that AFC is not indispensible.")

## CONCLUSION

For the reasons above, the Koresko Defendants respectfully request the Court grant the Koresko Defendants' DOL's Motion for Reconsideration of This Court's Order Dated August 3, 2012, or, in the Alternative, Motion for Certification Pursuant to 29 U.S.C. § 1292(b).

Date: November 2, 2012                               Respectfully submitted,


                                                    */s/ Jeanne L. Bakker*
                                                    Jeanne L. Bakker
                                                    PA I.D. #79122
                                                    Montgomery, McCracken, Walker & Rhoads, LLP
                                                    Attorney for Defendants
                                                    123 S. Broad Street
                                                    Philadelphia, PA 19109
                                                    jbakker@mmwr.com
                                                    215/772-7521

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Reply To The Secretary's Opposition To Koresko Defendants' Motion For Reconsideration of This Court's Order Dated August 3, 2012, or, In The Alternative, Motion For Certification Pursuant to 29 U.S.C. § 1292(B) was filed electronically and made available for viewing and downloading on the Court's ECF system:

>Linda M. Henry, Esquire
>Joanne Roskey, Esquire
>Ashton S. Phillips, Esquire
>U.S. Dept. of Labor Office of the Solicitor
>170 S. Independence Mall West
>Suite 630 The Curtis Center
>Philadelphia, PA 19106
>
>Timothy J. Nieman, Esquire
>Stephen Moniak, Esquire
>Rhoads & Sinon, LLP
>One South Market Square, 12th Floor
>P.O. Box 1146
>Harrisburg, PA 17108-1146

November 2, 2012          /s/ Jeanne L. Bakker
                           Jeanne L. Bakker