HILDA L. SOLIS, Secretary        )   09-CV-0988
of Labor, United States          )
Department of Labor,             )
                                 )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
JOHN J. KORESKO, V, et al,       )   Philadelphia, PA
                                 )   July 9, 2013
          Defendants.            )   1:36 p.m.
---------------------------------
                                 )
REGIONAL EMPLOYERS' ASSURANCE    )   03-CV-6903
LEAGUES VOLUNTARY EMPLOYEES'     )
BENEFICIARY ASSOCIATION TRUST,   )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
GRETCHEN HUTTO CASTELLANO,       )
et al,                           )
          Defendants.            )
---------------------------------
                                 )
HARRY R. LARKIN, ROBERT V.       )   11-CV-7421
LARKIN,et al.,                   )
                                 )
                                 )
          Plaintiffs,            )
     vs.                         )
                                 )
PENN PUBLIC TRUST, et al,        )
                                 )
          Defendants.            )
---------------------------------

```
MORGEN & OSWOOD CONSTRUCTION    )
CO., INC., et al,               )
                                )   13-CV-0666
        Plaintiffs,             )
                                )
vs.                             )
                                )
PENN PUBLIC TRUST, et al,       )
                                )
        Defendants.             )
--------------------------------
```

             TRANSCRIPT OF TELEPHONE CONFERENCE
          BEFORE THE HONORABLE MARY A. McLAUGHLIN
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiff         JOANNE ROSKEY, ESQUIRE
Hilda L. Solis:           ASHTON S. PHILLIPS, ESQUIRE
                          UNITED STATES DEPARTMENT OF LABOR,
                          REGION III
                          Office of the Solicitor
                          170 South Independence Mall West
                          Suite 630 East
                          The Curtis Center
                          Philadelphia, PA   19106-3306


For the Defendants        JEANNE L. BAKKER, ESQUIRE
John J. Koresko, V,       RICHARD H. MARTIN, ESQUIRE
Koresko Law Firm,         MONTGOMERY, McCRACKEN, WALKER & RHOADS
Bonney and Penn-Mont:     123 S. Broad Street, 28th Floor
                          The Fidelity Building
                          Philadelphia, PA   19109-1030


For the Plaintiffs,       IRA B. SILVERSTEIN, ESQUIRE
Morgen & Oswood           HARGRAVES, McCONNELL & COSTIGAN, PC
Construction Co.:         10 Penn Center, Suite 2300
                          1801 Market Street
                          Philadelphia, PA   19103

Audio Operator:           KELLY HAGGERTY

Transcribed by:          DIANA DOMAN TRANSCRIBING
                         P.O. Box 129
                         Gibbsboro, New Jersey  08026-0129
                         Office:  (856) 435-7172
                         Fax:     (856) 435-7124
                         E-mail:   dianadoman@comcast.net

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                    I N D E X

2

3    ARGUMENT:                                    PAGE

4      Re: Expansion of Interim Order

5      By Mr. Phillips                              6

6      By Ms. Roskey                                7

7      By Ms. Bakker                                9

8      By Mr. Phillips                             15

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1              (The following telephone conference proceedings were

 2       heard at 1:36 p.m.)

 3                    THE COURT:  Good afternoon, Counsel.  It's Judge

 4       McLaughlin speaking.  I am happy to talk with you all.  I am

 5       in the middle of an evidentiary hearing, but I told them that

 6       I need to do this first.

 7                    So I understand that for DOL, Mr. Phillips, you're

 8       on, are you, sir?

 9                    MR. PHILLIPS:  Yes, I am, Your Honor.

10                    THE COURT:  Okay.  We are on the record, by the way.

11       And who -- is anybody with you?  Ms. Roskey?

12                    MS. ROSKEY:  Yes, I am here, Your Honor.

13                    THE COURT:  Very good.  And Ms. Bakker and Mr.

14       Martin?

15                    MS. BAKKER:  Yes, we're here.

16                    MR. MARTIN:  We're here, Your Honor.

17                    THE COURT:  Very good.  And, Mr. Silverstein?

18                    MR. SILVERSTEIN:  I am here, Your Honor.

19                    THE COURT:  Anybody else represented?  Okay.  I

20       guess the insurance companies will be fine.  They didn't have

21       much to say yesterday.  I guess I didn't give them a chance,

22       did I?  But in any event, go ahead, Mr. Phillips or Ms.

23       Roskey.  I understand you wanted to, somehow, expand the

24       order.

25                    By the way, I continued to think about things, and I

1  do have an order almost prepared that looks that same as the

2  other one, of course, with some additional statement as to why

3  I am making the decision I am making.  But in terms of the

4  accounts, it's the same ones that I told you yesterday that I

5  would agree -- that I would take out those two or three.

6           But Ms. -- Mr. Phillips, you wanted to expand,

7  somehow.  I got your letter, come to think of it.  Let me look

8  at it.  It's talking about, you want me to expand to prohibit

9  anymore loans being taken out, is that it?

10          MR. PHILLIPS:  Yes, that is correct, Your Honor.  In

11  our original proposed order that we had filed with the

12  application for the TRO, we had asked for all of the plan

13  assets to be frozen.  And in the interim order, it was -- the

14  interim freeze order was limited just to bank accounts.

15          And, you know, of course yesterday, we had hoped

16  that we would be able --that -- that we would eventually see

17  an order to duplicate that would include the appointment of an

18  independent fiduciary and a bar on Mr. Koresko from accessing

19  plan assets, but, you know, we're not -- we are not sure that

20  that is going to happen, and in the case that it doesn't

21  happen, we have very, very serious concerns about the more

22  than 65 million dollars in cash value in life insurance

23  policies that Mr. Koresko referenced yesterday.

24          In the past, when he has lost access to the cash in

25  the trust accounts, he has found other ways to get access to

1    the plan's assets, specifically, by taking loans against the

2    insurance policies that are owned by the Trust, but of course,

3    these are the transactions that we talked about yesterday,

4    including the 35 million dollars in loans.

5         So he has represented that he has repaid somewhere

6    between 14 and 17 million dollars.  And so, it appears to us

7    that it's uncontested that -- that those funds, in the absence

8    of an order barring Mr. Koresko from having control over the

9    insurance policies, he would be able to, again, take out loans

10   under the policies, and then have access to many millions of

11   dollars in plan assets, which we think might be inconsistent

12   with the spirit of the freeze order, so we wanted to bring

13   that to the Court's attention.

14        Sure, but let me just ask you, one thing you said,

15   as you started to talk, you said, when Mr. Koresko lost access

16   to the trust accounts, what did you mean by that?

17        MR. PHILLIPS:  It -- it's --

18        MS. ROSKEY:  Well, I can address that, Your Honor.

19   This is Ms. Roskey.

20        THE COURT:  Sure.

21        MS. ROSKEY:  When we were at an earlier phase of

22   this case, you'll recall that we went in for TRO when Mr.

23   Koresko attempted to fire F&M Trust, which was the successor

24   to CPC, as the trustee.  That decision that Mr. Koresko made,

25   attempting to fire the trustee, took place in the end of the

1   summer of 2009.

2          We went in for a TRO, and it was during that TRO

3   proceeding, when Judge Jones had maintained the status quo,

4   and had kept F&M in control of the Trust for the duration of

5   the preliminary injunction hearing.  It was during that time,

6   when Mr. Koresko had no access to the Trust, other than

7   through F&M, that these loans, these initial 34 million

8   dollars or loans, were taken.

9          So that's one instance where, you know, when -- when

10  he did not have a trustee that was cooperating with him, and

11  when he -- you know, prior to him becoming the trustee, the

12  source of -- the policies were the source of these loans, at

13  that time.

14         So we're very concerned that he's, again, in that

15  situation where the only access he has to the plan's funds are

16  through these loans.

17         THE COURT:  Okay.  I just don't -- I don't think I

18  had realized that the loans were taking place during the time

19  that there was not -- you know, where the trustee was, as you

20  said.  Okay.

21         Ms. Bakker or Mr. Martin, is there an objection to

22  -- I can't imagine Mr. Koresko would be thinking of taking out

23  any loans at this point -- but so is there any objection to

24  putting in this provision that DOL is asking for?

25         MS. BAKKER:  Yes, Your Honor, we do have several

1    objections, actually.  First of all, the Department of Labor

2    has no evidence that the Koresko parties have taken any loans

3    from the insurance policies since the period that was from

4    August to October, 2009 that Ms. Roskey just described.

5            In fact, there is evidence to the contrary, because

6    the DOL has all of the Koresko parties' banking records

7    through, at least, January, 2013, and the DOL has not

8    identified any new loan proceeds, at all, going into the

9    Koresko parties' bank account since October of 2009.  And in

10   fact, it is on the record, now, that those loans, from the

11   October, 2009 period, have already been significantly repaid.

12           So expanding the interim order to include the

13   insurance policies, in advance of the evidentiary hearing on

14   October 12, in our -- we believe it's premature.

15           Now, second, expanding the interim order to include

16   the insurance policies will cause extreme harm to the Koresko

17   parties in the form of an onslaught of defensive intervener

18   and interpleader actions that the insurance companies will

19   then file.

20           Your Honor, also, has already had to deal with that

21   -- or maybe it was Judge Jones had to deal with that -- very

22   early in the case when Penn Mutual filed such an intervener

23   action, although they ultimately withdrew it.  But if -- if

24   this Court enters an order, basically freezing the insurance

25   policies, the insurance companies will have no choice but to

1    file those kinds of actions.  And that will result in an

2    escalation of the Trust's litigation costs in defending those

3    actions.  They'll have no choice.

4              THE COURT:  Okay.  Now --

5              MS. BAKKER:  It's my memory --

6              THE COURT:  Yes, go ahead.

7              MS. BAKKER:  -- I'm sorry, Your Honor.

8              THE COURT:  No, no.  That's okay.  Go ahead.  I just

9    had a couple of questions about your two points, because I

10   wasn't quite sure I understood, but you finish up, Ms. Bakker.

11   I don't want to interrupt you.

12             Was there anything else, ma'am, you wanted to say?

13             MS. BAKKER:  A couple more points.

14             THE COURT:  Sure, yeah.  No, no, go ahead.  Yes,

15   absolutely.

16             MS. BAKKER:  Already seen, in the -- so in

17   furtherance of my second point, we've already seen third

18   parties overreact to the Court's first interim order, freezing

19   the accounts for seven days.  And that is in the form of what

20   Pershing did.

21             THE COURT:  Right.

22             MS. BAKKER:  Instead of freezing the account for

23   seven days, as required by the order, Pershing has now frozen

24   that account for five years.

25             THE COURT:  Right.  But let me just ask you -- and I

1   just don't understand -- why would saying he can't -- Mr.

2   Koresko can't take out anymore loans, cause an onslaught of

3   these defensive interpleader actions?  I just am not

4   following.

5           MS. BAKKER:  Your Honor, I think the concern is that

6   the insurance policies, because the Trust is the owner of the

7   policies, the trustee is the owner of the policies, and

8   because all of the governing plan documents place control and

9   authority with respect to the insurance policies, including

10  the right to access the cash value of those policies in the

11  form of policy loans, an interim order that freezes the

12  policies and calls into question the Koresko parties' rights

13  under those governing documents to control all the insurance

14  policies will cause a question from the insurance companies'

15  perspective, the question of who has the right to control

16  these policies?

17          THE COURT:  Okay.

18          MS. BAKKER:  They will, then, want to protect

19  themselves by filing, either intervener or interpleader

20  defensive actions to get guidance from the Court as to who has

21  the right to control the policies.

22          THE COURT:  Okay.  Well, again, I'm not sure I'm

23  following you, but let me just -- I'll hear from DOL on that

24  point in a minute, but before I get to them, let me ask you,

25  again, now, on your first point that he -- that Mr. Koresko

1    hasn't taken out loans since '09, but the assets haven't been

2    frozen since then.  In other words, what Ms. Roskey just

3    explained about the timing with respect to who ever, FMC --

4    whoever came in or went out -- this was before Judge Jones, at

5    that point -- in terms of being a trustee, because he hasn't,

6    you know, I guess there hasn't, perhaps, been a need to, under

7    Ms. Roskey's theory, because he has had access to funds.

8          But now, that -- if they are now frozen, wouldn't

9    that be something -- a situation similar to what happened

10   before Judge Jones, and the potential, at least, for -- for

11   loans to be taken out, if Mr. Koresko doesn't have access to

12   the funds?

13         MS. BAKKER:  The situation are similar, because of

14   the seven day freeze, and presumably, the new interim order

15   that will continue that freeze.  But there's -- there's, as

16   you said, at the beginning of this call, there's no reason to

17   think that Mr. Koresko is, you know -- considering everything

18   that has happened between now and then, to think that he would

19   take any action with respect to those policies.  It wouldn't

20   make any sense for him to do that, at this point.

21         THE COURT:  No.  Well, it would be a very, very

22   fool-hearty thing to do, but I'm wondering why he wouldn't

23   just agree?  I mean, why does it matter, if he doesn't -- I

24   mean, why wouldn't he just agree, and say, you know, I'm not

25   going to do that?  That's really why I raised it.  But no, I

1    agree with you that it would be fool-hearty.  But I suggest,

2    it --

3         MS. BAKKER:  Well --

4         THE COURT:  -- may have been fool-hearty to do a lot

5    of things that were, at least at this point, you know, on this

6    record, look like they were done, but --

7         MS. BAKKER:  Well, but that's --

8         THE COURT:  -- yeah, go ahead.  Go ahead, ma'am.

9         MS. BAKKER:  I don't mean to interrupt.

10        THE COURT:  No.  No, you're not.  Go ahead.

11        MS. BAKKER:  This actually goes to another point

12   that I was going to raise with respect to this request from

13   the DOL.  I mean, we just received notice of this request from

14   the DOL to expand the interim order about two hours ago.  We

15   haven't had an opportunity to even discuss it with Mr.

16   Koresko, much less try to obtain his agreement with respect to

17   their request.

18        So you know, the DOL keeps filing these things at

19   the last minute or -- in this case, even after the hearing,

20   and -- and so, you know, it -- it seems to us that they are

21   just constantly grappling and overreaching, to a certain

22   extent, in a -- in a way that is not really supported by the

23   current -- it makes it very difficult for us to respond in a

24   meaningful way.

25        THE COURT:  Okay.  No, I appreciate that point very

1  much.  Okay.  Ms. Roskey or Mr. Phillips, do you want to

2  respond to those three points, the first being, you know, he

3  hasn't -- Mr. Koresko hasn't done it since; it's unlikely he

4  will, since as I said, at lest it would be fool-hearty?

5       Secondly, the concern about these new cases that would

6  pop up, and then thirdly, you know, the timing issue that,

7  come on, it's too late, at this point, to be adding to the

8  order, for all the reasons Ms. Bakker just said?

9            MS. BAKKER:  Excuse me, Your Honor, I actually have

10  one additional point.

11            THE COURT:  Sure.

12            MS. BAKKER:  Do it now or later?

13            THE COURT:  Sure.  No, go ahead.  Do it now.

14            MS. BAKKER:  All right.  My final point was that,

15  essentially a freeze like this will -- is unwarranted, because

16  it has to be demonstrated that the entire Trust is subject to

17  ERISA and subject to the Department of Labor's jurisdiction.

18  The Department of Labor has repeatedly acknowledged that

19  REALVEBA contains underlying arrangements that are not subject

20  to ERISA, because those arrangements do not cover any

21  employees.  They only cover owner/participants.

22            Those employees on all of the insurance policies

23  under REALVEBA, when it has not been demonstrated that all of

24  those policies are either subject to ERISA or the Department

25  of Labor's authority or jurisdiction, it is overreaching at

1   this point.

2           THE COURT:  Okay.  That's another, I think very fair

3   point.  Ms. Roskey or Mr. Phillips, and you can obviously each

4   take one or more of them or each talk about both of them.  No

5   problem.  Go ahead.

6           MR. PHILLIPS:  Thank you, Your Honor.  I'm sorry.

7   I'm hearing someone else's voice?

8           THE COURT:  Oh, I did, too.  Was that you, Mr.

9   Silverstein or Mr. Martin?  You're the only two --

10          MR. SILVERSTEIN:  It was not, Your Honor.

11          THE COURT:  No?

12          MR. PHILLIPS:  Okay.

13          THE COURT:  Okay.  Go ahead, Mr. Phillips.

14          MR. PHILLIPS:  Sure.  As to Ms. Bakker's first

15  point, I think Your Honor anticipated our response quite well.

16  The incentive, it was not -- has not been there, in the

17  interim, for Mr. Koresko to turn to the insurance policies for

18  access to cash.

19          As to her second point about the litigation

20  expenses, we have a couple of responses.  One is that, these

21  same interests are at play as to the bank accounts.  So

22  there's not really a principal basis for distinguishing

23  between the two.  And because I think the strength of our

24  application is so high, and because we have put forward

25  documents -- documents showing that the Koresko defendants

1  aren't going to be -- are not able to restore the assets

2  they've already misappropriate to the plan, it's important

3  that these assets are frozen, and because there's such a

4  history and pattern here of misappropriating and malfeasance,

5  frankly, that it's important that all these assets are covered

6  by an interim order, which leads to the third point about the

7  timing.

8        It's not -- it's not, in my view, fair to

9  characterize it as some new relief that we're seeking.  The

10  relief that we sought in our application, the relief that we

11  sought yesterday, was a package that included a bar on Mr.

12  Koresko from accessing plan assets.  We're simply saying,

13  here, that to the extent that that bar is not forthcoming or

14  that the placement of an independent fiduciary is not

15  forthcoming, that the least relief that can be granted that's

16  going to insure meaningful protection to the plan and insure

17  the status quo is for the freeze to include this other body of

18  plans' assets.

19        As to the fourth point about the number of plans,

20  it's my understanding from what was stated yesterday that the

21  Koresko defendants are representing that there are 54 plans,

22  total, that are participating in this arrangement, and also

23  that there are 54 plans that, but for the 2009 non-owner

24  employee amendment, would have employees participating in

25  them.

1        Therefore, all of the plans that continue to exist

2   are covered by ERISA, and I'd be happy to address it --

3   address this issue further as to why we believe, even outside

4   that information, that the majority of the plans are likely

5   covered by ERISA, but first, let me make a legal point, which,

6   you know, this Court is well aware of.  You've heard argument

7   on this issue, days of it and issued an 80 page decision that

8   talked about this at length.

9        But it's pertinent, here -- the plan documents

10  provide that all of the assets of the Trust are held co-

11  mingled, available to pay the benefits of any participant in

12  these plans.  We've put forward documents showing that -- and

13  an affidavit showing 126 plans that are covered by ERISA, to

14  the extent that if any dollar in this Trust is misappropriated

15  by Mr. Koresko, there's an injury to any -- to all of the

16  ERISA covered plans.

17       And at this stage, where we're dealing with a

18  temporary restraining order, we are only -- it's not

19  appropriate to get into the specifics of these -- these

20  factual plans, of the facts as to coverage, because we are to

21  show, given the emergency nature of the relief needed, we show

22  that a likelihood of prevailing on the merits, which I believe

23  we have shown and a probability of irreparable harm, in the

24  absence of the relief requested.

25       THE COURT:  Okay.  Well, this is what I am going to

1   do, because I do need to get back to the courtroom.  I'm going

2   to issue this afternoon the order that I had planned to,

3   without this language in it, in order to give Ms. Bakker a

4   chance to talk to her client and respond in writing.  And I'm

5   wondering -- this just is occurring to me, as we're talking,

6   it may be that I could be comfortable, Ms. Bakker, if I had an

7   agreement, you know, that we don't even -- I mean, I don't

8   have to put it in the injunction, but just that Mr. Koresko

9   agrees that he will not seek to get any loans with respect to

10  these policies.

11          That would certainly cure your -- the onslaught, you

12  know, of new cases and, perhaps, some of the PR issues that

13  you're concerned about, and yet, you know, it would have Mr.

14  Koresko on record as saying that he will not do that.  Ms.

15  Bakker, does that make sense for you to talk to Mr. Koresko

16  about that?

17          MS. BAKKER:  We will most definitely address that

18  with him, Your Honor.

19          THE COURT:  Okay.  And then meanwhile, you know, get

20  back to me promptly, if you could, Ms. Bakker.  It should be

21  by -- certainly, by tomorrow, I would expect you would be able

22  to get a hold of him in view of, you know, what we talked

23  about yesterday, his availability for the Trust.

24          And then, of course, Mr. Phillips, you all can

25  respond to that, as well, and if I think I need to talk to you

1    again, I know where to reach you.  Okay.  I think that's about

2    all I can do right now, because I do have to get back to

3    court, and I also want to get this order out.

4              Somebody was trying to speak, go right ahead.

5              MR. MARTIN:  I was, Your Honor.

6              THE COURT:  Yes?

7              MR. MARTIN:  Richard Martin.

8              THE COURT:  Yes, Mr. Martin?

9              MR. MARTIN:  I -- before you go, and I know you're

10   -- you're in a hurry, but we have to bring this to your

11   attention.  I mean, first of all, we're trying to deal with

12   this.  We have summoned Mr. Koresko to our office, and he is

13   coming in here this afternoon.

14             I want to inform the Court that just minutes ago, we

15   were informed, through electronic filing, that Mr. Koresko,

16   without our knowledge or permission, has filed appeals from

17   the order of June 28th, which was mooted yesterday, but he

18   filed these appeals within the last hour, I guess, without our

19   permission or knowledge, and they are pending now, I guess.

20             I don't know.  But we certainly intend to talk to

21   him about this, among other things.  But I wanted Your Honor

22   to know it, at this point, for whatever it means.  And I'm not

23   -- I haven't really given it much thought to find out what I

24   think  it means at this point, but --

25             THE COURT:  I appreciate that, Mr. Martin.  Thank

1    you for telling me that.  All right.  Okay.  Everybody, well,

2    all we can do is take it one step at a time, but I still will

3    allow -- as I just said, I would allow you to talk to your

4    client.

5         And then, Mr. Phillips, you can get back to me, you

6    know, promptly in response to the letter, if we don't get an

7    agreement, and then I'll just have to decide it, and I may

8    want to talk to you some more.  But both of you have raised,

9    you know, good issues.  And I will be mulling that over until

10   we resolve this.

11        Anything else that anybody needs to raise now?

12   Okay.  Thanks very much, Counsel.  I appreciate it.

13        (Proceedings concluded at 1:57 p.m.)

14                         * * *

# C E R T I F I C A T I O N

        I, Jacqueline Mullica, court approved transcriber,
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.


_____     July 14, 2013
JACQUELINE MULLICA
DIANA DOMAN TRANSCRIBING