IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH D. HARRIS, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR | : : : : : : : | NO. 09-988 |
| vs. | | |
| JOHN J. KORESKO, V, et al. | | |

# MOTION TO POSTPONE INJUNCTION HEARING UNTIL TRIAL, POSTPONE TRIAL, RELEASE FROZEN FUNDS AND POSTPONE FURTHER PROCEEDINGS

Defendants John J. Koresko, Jeanne Bonney, PennMont Benefit Services, Inc., Koresko & Associates, P.C., Koresko Law Firm, P.C., Penn Public Trust, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust and Single Employer Welfare Benefit Plan Trust ("the Koresko Parties") hereby request postponement of the hearing scheduled for August 12, 2013, until trial, release of certain frozen funds relating to non-ERISA arrangements, and postponement of any further proceedings, and in support thereof, submit the following:

1. The Defendants incorporate by reference the factual record in this matter, including but not limited to, the sworn testimony and evidence given during 2009 when the Secretary of Labor was unsuccessful in procuring injunctive relief.

2. Since this Court's order of June 28, 2013, Mr. Koresko has been unable to get any relief whatsoever consistent with the recommendations of his physicians. As a result, his symptoms have become worse and, therefore, he is unable to defend himself or the other Koresko Parties or mount a defense consistent with due process.

3. The Internal Revenue Service, in a rather coincidental action, instituted an action to assert a lien against Mr. Koresko based on matters from 2002 (11 years ago).

4. Mr. Koresko does not have the physical or financial resources to devote to both that lien action and the DOL and other related matters in this Court.

5. Given the 8 years of DOL investigation and activity, there can be little prejudice as the result of any postponement.

6. This Court is aware of the illegal press release which appeared in the <u>Philadelphia Inquirer</u> has already damaged Defendants' relations with its clients. On information and belief, this "press release" was also received by at least 150 other newspapers and deposited for all time onto the Internet.

7. The Court is aware that the Koresko Parties are operating with limited staff and will need time to attempt to rehabilitate the damage that has been done, in addition to any of the other activities incident to defending an injunction hearing.

8. Defendants' counsel has announced, under seal, to all lawyers in the various cases before this Honorable Court their intention to withdraw.

9. Despite payments of amounts of approximately $1 million dollars in attorney fees charged in connection with this case, counsel for the Koresko Parties has not been able to take depositions of those responsible for the presentation to this Court which took place on July 8, and counsel has [on information and belief] not been able to propound any discovery to DOL in order to assist in the Koresko Parties' defense. The Defendants, depending on the skill of such counsel, have not received copies of all discovery supposedly provided by the Secretary of Labor and suffer under a substantial and continuing prejudice, given that there are only a few weeks available before the next scheduled hearing.

10. The Defendants ask the Court to consider the following clarifications to the record made in this case.

11. On July 8, it was represented by the Department of Labor's Ms. Roskey that a certain counsel for Nationwide Insurance Co. informed her that John Koresko was "involved in a contentious, six-hour, mediation involving a suit involving breach of confidentiality agreements and a patent claim." See <u>Nationwide Life Insurance Company v. PennMont Benefit Services, Inc.</u>,Case No's. 2:05-cv-0604, 2:05-cv-1066, 2:06-cv-0066b(USDC – SD Ohio), Settlement Conference Pursuant to Court Order Dated May 8, 2013.

12. In fact, somebody is responsible for manufacturing a damaging misrepresentation to this Court, as Mr. Koresko did not arrive at the courthouse in Columbus, Ohio on June 28 until nearly noon after making transportation accommodations consistent with the recommendations of Dr. Christopher Bradley. Furthermore, Mr. Koresko spoke with Magistrate Judge Terrence Kemp and his co-counsel, D.J. Young, Esq., for approximately 2.5 hours as they discussed the theory of the case and certain pre-trial procedural matters. The Magistrate Judge then brought Nationwide General Counsel and his patent attorney Kevin Fee into the same room with M.J. Kemp, Mr. Koresko, and Mr. Young for at most 10 minutes and announced what M.J. Kemp was going to recommend Judge Watson. Mr. Koresko then got transportation back to the airport, and after a weather delay prevented departure, was back in Philadelphia at approximately 6 p.m.

13. On July 8, it was further represented to this Court that Mr. Koresko was with his lawyers until approximately 10 p.m. on a particular night. Ms. Bakker accurately reported to the court that Mr. Koresko's condition deteriorated as the meeting went on. In fact, however, the attorneys were concerned with matters of preparation, were apparently testing Mr. Koresko's abilities, and the meeting concluded earlier than reported. What is especially disturbing is that

Mr. Koresko is apparently under surveillance by the Secretary of Labor and other parties who have a vested interest in the Secretary's litigation success.

14. On Friday, June 28, at 3:40 p.m., Mr. Koresko and his assistant received an email stating that the deposition of July 1 was postponed and that the Court had postponed an evidentiary hearing on July 8. The communication is believed to have accurately represented the Court's order: "No evidence or witnesses shall be presented that day."

15. Based on that communication, Mr. Koresko was in no way prepared for the telephone calls he received the morning of July 8, or the proceeding that ensued [which was not supposed to be an evidentiary hearing].

16. Of course, this was after the Court made various orders relating to Mr. Koresko's condition and orders relating to tests, gathering of records, and securing of medical opinions, orders that placed substantial stress on Mr. Koresko and did not improve his condition.

17. It was reported to the court on July 8 that Mr. Koresko "got notice of the hearing" of July 8. After further investigation, it appears that an email was sent on the evening of July 7 to Mr. Koresko's office email, without any confirmation by telephone, with a message indicating counsel's intention to present an oral motion to withdraw. That limited message cannot be construed as notice that Mr. Koresko should be prepared for an argument which he had reasonably expected lawyers to argue. Given the post-concussive symptoms of Mr. Koresko, it could not be inferred that Mr. Koresko actually received notice that the "argument" scheduled for July 8 would become a hearing or that Mr. Koresko would need to be prepared to argue a matter when his attorneys had not yet been given permission to withdraw and he was in no condition to become appropriately prepared.

18. On July 8, the court contacted Mr. Koresko at his home, where he had neither

4

files nor access to relevant information – while adversaries argued that inability of a post-concussion patient to answer questions was supportive of their position. Quite literally, the call from the court roused Mr. Koresko from rest with respect to his symptoms, and the transcript of the entire proceeding reflect numerous instances of communications quite consistent with a person caught completely off-guard and suffering from the symptoms observed by Dr. Bradley and Ms. Kornblau, as reflected in their Declarations previously provided to the Court..

19. On July 8, a statement was made that "Mr. Koresko asked for his files." There was once such a statement, many months before, and the source of the dispute was resolved to the point that representation continued, files were not delivered, and Defendants' attorneys continued their tasks and continued to bill at remarkable rates. Such instances of anger or disagreement are apparently consistent with symptoms observed by Dr. Bradley. The Secretary of Labor certainly made an issue about such billing, inferring that a payment was improper.

20. The totality of circumstances, including the patent unfairness of the press release issued by the Secretary of Labor, reasonably requires a response from the Court consistent with all the prejudice suffered by and inuring to the detriment of the Defendants.

21. The asset freeze imposed by this Court has exposed the Koresko Parties to a variety of new lawsuits, which on information and belief, was the intention of the Secretary of Labor. It is impossible to estimate the damage to Defendants' business without any due process of law.

22. This Court's order has frozen the 412i checking account at Continental Bank, number 1476 [item (g) on the order of July 9, 2013] , which consists of assets contributed by employers who expect payment of their pension plan contributions. Although the transcript of the proceeding of July 8, 2013 demonstrates an intention to unfreeze pension funds, which have

5

no relationship to the welfare benefit assets of REAL VEBA, this account was apparently overlooked by counsel when she spoke with respect to the 412i [money market account] no. 1484, which was unfrozen.

23. If these payments are not made, the Koresko Parties face an unknown number of lawsuits, and innocent third parties will be unable to make pension contributions – resulting in lost income tax deductions and violations of the Internal Revenue Code and ERISA relating to the requirements of pension plan contributions. This real and imminent harm is much more compelling than the allegations of the Secretary, who have frozen approximately $7 million of other assets.

24. This Court has also frozen accounts containing administrative fees of approximately $300,000, which are typical minimal fees that have been paid by employers for the past 20 years and which are utilized to pay ordinary expenses. The Defendants need these amounts for operations. There is no significant harm to release of such funds since the Secretary has frozen approximately $7 million in funds in a Bank of America IOLTA account, a Pershing securities account, and other accounts at Continental and Citizens bank.

25. This Court has frozen the Continental Bank SPC account [item h on the July 9 order] which amounts are necessary to pay counsel defending the Trust in a matter in Oregon - a copycat lawsuit resulting from refusal of a claimant to provide information necessary for completion of a claims process. The Claimant sued rather than provide requested information.

26. The SPC account holds assets relating to a single claim of a non-ERISA arrangement, and thus is necessary to the process of claim resolution. This account does not relate to any matter on the list of 127 alleged "plans" in the Secretary's Complaint [at least 70 of which do not exist].

27. The Continental 419 account - Continental no. 1195 - consists of amounts relating to three non-ERISA claimants that cannot be defended or resolved– having been frozen by this Court's order.

28. Given that it has cost the Trust approximately $1 million for the Montgomery McCracken representation, and other attorneys have been engaged to defend other suits [including one which resulted in a $1.5 million reduction of outstanding loans] the Koresko Parties believe, based on Philadelphia rates, it will cost another $1 million to obtain a new law firm (if anyone will even take the case following the illegal propaganda distribution by the DOL), to educate them, to have them become familiar with discovery items, to conduct the necessary discovery, to prepare for trial, file dispositive motions, and then finally force DOL to prove its case at trial.

29. The Koresko Parties are simply not able to erect a constitutionally appropriate defense absent new counsel within the time scheduled by the Court, and Mr. Koresko does not have the individual capability, given his condition, to participate in his own discovery, preparation, and litigation while suffering his present condition.

30. The Defendants remain damaged by this Court's most recent order, which appeared to indicate something less than honorable, while the Court accepted many allegations without admissible evidence.

31. Viewed objectively, the most advance notice the Defendants had was that of a scheduled argument (without evidence) to be handled by counsel and an indication by counsel of intention to make an oral motion to withdraw. There was no evidence of whether such oral notice would be given before or after the argument. In fact, such counsel engaged in limited participation at the request of the Court. Given the nature of the communications that could not

7

be expected to be read on a Sunday night, there was no reason to believe that Mr. Koresko would have to participate in an evidentiary hearing, given the existing declarations of Dr. Christopher Bradley and Barbara Kornblau, JD, OTR that Mr. Koresko was supposed to be relieved from the stress of adversarial litigation.

32. As predicted by Barbara Kornblau, J.D., OTR the actions of the Secretary and various parties have actually dramatically increased and exacerbated Mr. Koresko's condition, which Defendants have reason to believe was calculated and constitute an arguable violation of the Rehabilitation Act of 1973. Of course, the "press release" cannot be ignored as any less calculated to harm Mr. Koresko and force upon him the demands of the Secretary.

33. The Order of July 9 that ensued not only hurt the Defendants, it hurt many other persons with pension arrangements and property effected by the Order, and has placed the Defendants in a pre-judgment state of unnecessary financial distress which impairs their ability to function consistent with the responsibilities placed upon them.

34. Although the order of July 9, 2013, unfroze a personal account containing relatively small amounts, and an account relating to another client, tremendous damage had already been done.

35. On July 11, 2013, Ms. Roskey and others from the Department of Labor appeared at the scheduled settlement conference with Judge Yohn; and Ms. Roskey immediately demanded that Mr. Koresko consent to all of DOL's conditions, including a PERMANENT BAR that would effectively destroy his livelihood and patent.

36. Montgomery McCracken as counsel appeared for that unfortunately short conference, and Judge Yohn stated that he anticipated there would be another time to present the financial information that had been prepared for that conference.

37. On information and belief, the Secretary has never engaged in any good faith contemplation of a settlement consistent with the instructions of Judge Yohn.

38. Thereafter, as this Court is aware, DOL requested additional relief relating to non-ERISA insurance contracts, and matters outside the "plans described in the Complaint"—relief which the Court denied.

39. Not content with the denial of additional relief, DOL employed their propaganda machine, dispatched a skewed press release to the Philadelphia Inquirer and over 150 other newspapers, and left their permanent mark about Mr. Koresko and all of the Koresko Parties on the Internet.

40. Meanwhile, Montgomery McCracken was dispatching copies of their "sealed" withdrawal motion to opposing counsel.

41. Counsel who wish to withdraw have been virtually silent toward Defendants since the July 8 confirmation that Defendants could expect no assistance, other than the fact Mr. Martin and Ms Bakker appeared for the aborted settlement conference. In the absence of actual counsel, Defendants have been unable to prepare appropriately for any upcoming proceedings and such deprivation of counsel has been severely prejudicial.

42. In light of all the circumstances, the "interim freeze" should be removed or modified until facts presented by the Secretary of Labor are proven by testimony under oath, consistent with the burden of proof which is theirs under ERISA.

43. It appears that some persons have overlooked that Mr. Koresko's firms have had responsibility for hundreds of millions of dollars of funds in the past 15 years, and yet there is not one sworn statement by DOL in the record which mandates the virtual destruction of the businesses involved.

44. As consistently argued by the Defendants, this matter represents in substantial part a change of 30 years of law. The authority cited by the Secretary in briefs and memoranda contain many citations to cases in other jurisdictions, but to date, the Secretary has not coordinated any of that old law to the Supreme Court cases, and the welfare cases of this Circuit, that ultimately bind this court. Furthermore, there remains a major question as which parts of the Restatement of Trusts applies to "entrepreneurial trusts for the sale of insurance," given that Restatement (2d) Trusts, sec. 1, cmt. b provides plainly that such trusts are not intended to be subjected to the general rules of the Restatement.. The Court will recall that the Secretary relies on the Restatement as the bedrock of its "plan assets" regulation. It also remains to be seen how DOL Adv. Op. 92-22, which exempts cash surrender value of insurance from the definition of plan assets, can be ignored in light of the definition of split dollar insurance in Treas. Reg. 1.61-22, and its instruction to ignore ownership by a trust in making the determination. The Secretary has avoided this point, as well. There are tremendously important unresolved legal issues in this matter, and the burden of reconciling them is on the Secretary.

45. In view of all the matters of record, Mr. Koresko and the Defendants should be given a fair opportunity to be represented consistent with constitutional notions of Due Process. The Secretary should not be rewarded for the damage done and some inquiry should ensue regarding statements made in court and the disturbing notions of surveillance. The Defendants have requested release of amounts that are not connected to ERISA plans, and the Secretary is sufficiently secure in the freeze of remaining accounts. Innocent third parties should not be hurt by the freeze. The Secretary of Labor demanded the bar of Mr. Koresko from his chosen profession, and the destruction of the businesses of the Defendants. The events of this past week are most abusive exhibitions of authority, and the relief requested in this Motion is nominal in

comparison to what this Honorable Court has witnessed. It was up to the Court to impose the judgment and the remedy, not for the Secretary to finish the job in the press and the internet.

46. The Defendants respectfully request relief from any additional requirement of a memorandum of law to support its positions. Defendants believe they have set forth good cause, a balance of the equities in their favor, a lack of prejudice to the Secretary, and special equitable considerations which warrant the relief they have requested.

WHEREFORE, for the reasons set forth herein, the Defendants respectfully request that this Honorable Court postpone the hearing scheduled for August 12, 2013 until trial, release the frozen funds to an amount reasonably supported by evidence to actual ERISA-covered plans, and postpone any further proceedings pending medical clearance for Mr. Koresko. At the very least, this Honorable Court should grant a release of the pension funds 412i account Continental 1476, as well as the non-ERISA funds in the 419 Account - Continental 1195, and the entire balance of the SPC Account – Continental 2185. This Honorable Court should permit the Defendants access to $1 million necessary for representation of the Defendants, by separate counsel if necessary, as recommended by counsel who wish to withdraw.

Respectfully submitted,

John J. Koresko, V, Esquire
Koresko Law Firm, P.C.
PA I.D. No. 42795
200 West Fourth Street
Bridgeport, PA  19405
610-992-2200

July 21, 2013

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Motion to Postpone Injunction Hearing Until Trial, Postpone Trial, Release Frozen Funds and Postpone Further Proceedings** has been served upon counsel by electronic means on the date noted below:

Linda M. Henry, Esquire
Joanne Roskey, Esquire
Ashton S. Phillips, Esquire
U.S. Dept of Labor Office of the Solicitor
170 S. Independence Mall West
Suite 630 The Curtis Center
Philadelphia, PA  19106

_____
John J. Koresko, V, Esquire

July 22, 2013