**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEREZ, SECRETARY OF LABOR** | )) ) ) ) | **NO.  09-cv-00988 MAM** |
| **V.** | | |
| **JOHN J. KORESKO, ET AL.** | | |

/

**EMERGENCY MOTION FOR STAY PENDING APPEAL;**
**MOTION FOR GENERAL STAY AND RELIEF FROM**
**OUT OF TIME RESPONSES OR DEFAULT PENDING RECOVERY**
**FROM AUTOMOBILE INJURIES; MOTION FOR UNRESTRICTED**
**REPRESENTATION OF COUNSEL WITH COMPENSATION**

**TO THE HONORABLE MARY A. MCLAUGHLIN:**

JOHN J. KORESKO, pro se, and still admitted to the  Bar of the Third Circuit, makes the foregoing **Motion of Stay Pending Appeal and a General Stay**, and to obtain a definitive declaration of the compensable duties of counsel,  This Motion is filed only due to the opinion of counsel, Dilworth Paxon, that it believes it does not have authority to pursue a motion like this or appeals in its defense of the defendant due in part to prior orders of the Court; and in no way does the Movant suggest that the Dilworth Firm has been dismissed.  Rather, this motion seeks constitutional and statutory clarification of the full indemnification due to Movant, so that Dilworth can and will act consistently with all its duties, without fear of involuntary and uncompensated service, consistent with the law of this Circuit.  This matter is an integral part of this Motion for Stay, and the Appeal intended to be pursued by the Defendant by himself or by Dilworth to prevent further harm to the defendants.

In support thereof, Movant states the following:

1.   The undersigned has appeals presently pending in the Third Circuit Court of Appeals with respect to his privileges to practice in this court; and that Court suspended further consideration of that matter pending appeal

2.   The undersigned has previously filed numerous  requests for STAY PENDING APPEAL pursuant to F.R. A. P. 8 and this Honorable Court has denied them, including stays relating to a MOTION TO STAY TRIAL, MOTION TO RECUSE, AND APPEAL OF THE JURISDICTION OF THIS COURT, THE STANDING OF PLAINTIFF TO SUE since ERISA does not apply due to two amendments, and various other matter.  The undersigned, when he was deprived of counsel by this Court, was forced to file a Notice of Appeal with respect to a certain mandatory injunction and receivership order, styled as an order for an Independent Fiduciary, issued in mid-September 2013 and continuing to this day.

3.   Under  ERISA, sec. 502, the Court was limited to appropriate equitable relief; and DOL had no authority to request receivership or mandatory injunction to seize the assets of the defendant, his clients, his firms, and otherwise commandeer the property of BNB Properties, LLC and Koresko Law Firm, Ltd. (a Delaware corporation and cause Wagner Law Group to take confidential data and dismantle the infrastructure of a law firm and business that had been operating for over 22 years.  The relief requested and granted was simply not appropriate equitable relief as it dismantled the notion of settlor intent and the primacy of the governing documents, deviating from the law of trusts and numerous Supreme Court precedents demanding that the Court apply the documents as written.  To date this Court has allowed Wagner to appropriate the administration business of PennMont Benefit Services, Inc., ignore the employment agreements of law firm employees who have noncompetition clauses, take the duly authorized administrative fees payable to PennMont; and the Court has refused to pay the

undersigned any compensation though basically forcing him through the DOL and Wagner Motions into involuntary servitude. All the while, Wagner appropriated assets to its name in excess of approximately $120 million with no valid claims outstanding, and destroyed the computer system of the various defendants while taking copies of the confidential computer data of the defendants. At no time did Wagner comply with its duties and prohibition against actions outside the Eastern District of Pennsylvania, and the Court is well aware of their failures. These and other issues are in one form or another before the Court of Appeals, but nonetheless, each represents a damage or cost of any kind, for any reason, directly or indirectly the result of service of the defendants or expressly indemnified as to the Trustee and Administrator and the other defendants; but this court has refused to mitigate those damages or give monetary compensation. After over a decade of investigation, all DOL could show in 2.5 days of trial before it rested and its failed 2009 mandatory injunction proceedings it lost before Hon. C. Darnell Jones, J., E.D. PA., is that DOL does not like the documents and cannot cite to any ERISA provision that any of them are illegal. Further, DOL has not proven that the undersigned was not entitled to compensation, and by declaration of the Board of Directors of Community Trust Company in 2008, the undersigned or his firms are entitled to accrued compensation for services rendered to participants, particularly a special compensation of $5 million, and Penn Public Trust, trustee, from whom the undersigned is entitled to compensation, adopted the 1.2% annual charge to corpus formerly in the published charges to the trust given by CTC, which for the years 2009 to present, entitles the defendants to share in 6.2% of corpus as compensation, constituting over $6,300,000, for a total claim per the documents of over $11.3 million. Despite this valid claim, a first claim per Articles 8,9, and 10 of the Master Plan and other provisions of the Master Trust and Plan, and the indemnifications and releases in the governing documents, the Court has made

the undersigned destitute, destroyed his business, harmed his family, impaired the long-term care of his children with conditions and special needs, forced him to incur credit card debt near $100,000 just to live, and otherwise deprived his firms the money necessary to support valuable real estate and has forced them into foreclosure and at least one bankruptcy in Wilmington, Delaware.  All the while, this court has allowed the Wagner firm and DOL to deviate from the documents, and to pay benefits not due, and otherwise erode the corpus of the trust in the absence of authority granted solely to the settlor/administrator and its related trustee that no party has the authority to contradict (as that authority demands strict adherence with the plain language and Settlor intent as the polestar of interpretation).  All these allegations have been previously presented, briefed, and supported with points, authorities, proposed findings of fact and law, and the failue of DOL to prove that any VESTED AND ACCRUED BENEFIT has not been paid or validly waived according to Supreme Court and Circuit precedents.

    4.   This matter is conclusively governed by the plan documents rule and other precedents repeatedly cited by the undersigned.  *See US Airways, Inc. v. McCutcheon,* 133 S. Ct. 1537 (2013); *Conkright v Frommert* , 559 U.S. 506 (2010); *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan,* 555 U.S. 285 (2009). (Plan documents prevail, discretion to administrator or trustee, remand is the proper remedy if there is a misinterpretation the court has the  standing to correct.) This Circuit court and the Supreme Court of the U.S. have found, there is no fiduciary breach absent and act resulting in inability to pay vested and accrued benefits, *LaRue v. DeWolff, Boberg & Assocs.,* ---U.S. ----, 128 S.Ct. 1020, 1023, 169 L.Ed.2d 847 (2008).  S*ee also Malia, et al v General Electric,* 23 F3d 828 (3rd Cir. 1994); *Harley v Minnesota Mining & Manu.* Co., 284 F.3d 901 (8th Cir. 2001) ($20 million loss to surplus assets and no standing because vested benefits were not affected). Nobody has yet to prove a vested or accrued benefit in a welfare plan, or a provision that states the

contrary.  Just as in the *Malia* case in this Circuit, the Eight Circuit stated the modern rule that

DOL will not accept, and now which has now infected the ODC: "In a defined benefit plan, if

plan assets are depleted but the remaining pool of assets is more than adequate to pay all accrued

or accumulated benefits, then any loss is to plan surplus. As  *Hughes Aircraft Co.*[ *v.*

*Jacobson,* 525 U.S. 432 (1999)] made clear, plaintiffs as Plan beneficiaries have no claim or

entitlement to its surplus. If the Plan is overfunded, [a sponsor] may reduce or suspend its

contributions. *See Hughes Aircraft,* 525 U.S. at 440 . If the Plan's surplus disappears, it is [the

employer's] obligation to make up any underfunding with additional contributions. If the Plan

terminates with a surplus, the surplus may be distributed to [the sponsor]."  This is the rule

everywhere except in the unsworn allegations by DOL, and an error that is on appeal.  Here we

are talking about a fully-insured defined-benefit welfare plan, without vesting, with benefits

limited to payments from insurance carriers (Master Plan Art. 8).  As a matter of fact and law,

there could be no "misappropriation" of amounts owned by the trustee who was my client. The

allegations that waivers executed by claimants who executed releases are without foundation in

law, and have been since the law of waiver began.  *Estate Of Kensinger v. URL Pharma, Inc.,*

674 F.3d 131 (3d Cir. 2012). *See also  Boyd v. Metropolitan Life Insurance Co.*  636 F.3d 138

(4th Cir. 2011); *Matschiner v. Hartford Life & Accident Insurance Co.*, 622 F.3d 885 (8th Cir.

2010) ( reaching same result, based in part on a virtually identical Amicus Curiae Brief of the

Solicitor of Labor). Allegations that there was a misuse of loans from insurance policies

disregarded the terms of the arrangement and this court's ruling that insurance policy cash

surrender value is not a plan asset. Assets in the general accounts of insurance companies, which

contain payments for for a guaranteed benefit policy, will not be considered to contain plan assets.

"Cash surrender value"  of an insurance policy is not the property of a policyholder, but rather an

unsecured claim subject to condition of solvency and the event of entitlement. See 40 P.S., § 221.36,

et seq.  Neither Congress nor the Department of Labor treat any assets held in an insurance company's general accounts as "plan assets." *Mack Boring and Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of New Jersey,* 930 F.2d 267 (3d Cir. 1991)(cash values of insurance contracts not plan assets; court rejected DOL advisory opinions to the contrary).  Each participant acknowledged in writing they did not control any policies or cash value suplus.  *Malia, supra.* Participants (and thus DOL) have no standing to inquire about a trust's surplus above its benefit obligations, even if a termination of a plan results in a windfall to a corporate sponsor.  *Bennett v. Conrail Matched Savings Plan Administrative Committee,* 168 F.3d 671 (3d Cir. 1999). No welfare benefit plan participant has an interest in surplus, including that derived from demutualization proceeds *Stewart v. NEA*, 471 F3d 169 (D.C. Cir. 2006).  The whole legal conclusion of diversion was a conclusion of law that has not been proven at any time, even in half a trial to date, for the simple reason it is an internal accounting entry per each contract, and cannot be proven if the governing documents are the law of the trust under which the fiduciaries were permitted to operate  and exercise ministerial decisions.  *Lockheed v Spink* 517 U.S. 882, 116 S. Ct. 1783 (1996),  The documents govern, not the legal conclusions of adverse litigants.


5.    Moreover, the trustee and administrator are corporations with intentionally broad discretionary powers, not the respondent; each participant gave the undersigned and related entities complete discretion with respect to certain assets; no person was vested or accrued in any asset; no benefit was ever unable to be funded; and the law clients of the undersigned, 108 of them in Tax Court, never dismissed him and in fact filed an involuntary bankruptcy to keep the DOL and IRS from interfering with his ability to protect their interests as the first extremely important case, with tremendous influences, neared summary judgment.  The Third Circuit court found in *Confer v. Custom Engine Co*., 952 F.2d 41, 43 (3d Cir. 1991),  that individuals acting in

the scope of their authority for corporate fiduciaries are not liable  At no time, even after ten years, had the DOL demonstrated that a multiple employer trust sponsor could not use surplus for the fees authorized by the Trustee, or for other purposes consistent with the governing instruments. Pennsylvania law now specifically permits more than one fiduciary commission and it can be paid from corpus.  *In re Estate of Fridenberg*  PA 2011 Pa. LEXIS 2820 (Nov. 23, 2011). Subsection (c)(3) of  20 Pa. C.S. § 7768 "repeals the contrary rule of *In re Williamson's Estate*, 82 A.2d 49 (Pa. 1951).  Compensation at levels that arise in a competitive market shall be presumed to be reasonable in the absence of compelling evidence to the contrary. There is no credible allegation alleged that any actions of the Defendants deviated from the plain language of the governing instruments, consistent with the law of settlor intent. *Inter-Modal Rail Employees Ass'n v Atchison, Topeka and Santa Fe Railway Co.,* 520 U.S. 510, 514 (1997); *Lockheed Corp. v Spink*, 517 U.S. 882, 890 (1996).   Moreover, the Third Circuit has permitted on various occasions plan sponsors to invade pension plans with vesting, as opposed to nonvested welfare plans, so long as vested and accrued benefits were not impaired. *Malia, et al v General Electric,* 23 F3d 828 (3rd Cir. 1994). There are no impaired benefits in this matter except as caused by the Department of Labor ("DOL") and the improperly appointed receiver/independent fiduciary ("Wagner") who have mismanaged trust assets and any plan assets they might prove to exist.

6.   Under *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 790 (3d Cir. 1998) and  *Donovan v. Dillingham*, 688 F.2d 1367, 1375 (11th Cir. 1982). An entrepreneurial venture operated as a trust, however, is not an ERISA plan.  *Id.* ERISA Adv. Op. 86-08A (Feb. 2, 1986); 85-42A (Dec. 16, 1985); ERISA Advisory Op. No. 96-25A, 1996 WL 634362, at *3).  It is impossible to coordinate allegations of "diversion" with the District Court's admission that the funding trust, an indemnitor, was entrepreneurial.  The Restatement (Second) of Trusts, sec. 2 makes clear that those rules generally do not apply to entrepreneurial ventures; and as previously argued, the

matter is one of contract and the primacy of the governing documents that each employee and electing participant agreed to sign, and the Custodial Agreement Community Trust gave to defendant attorneys of Koresko & Associates, including Jeanne Bonney, Esq. and John Koresko to take any actions with respect to insurance policies and assets under their control, including loans as contemplated by at least 15 appointments of broadest discretion.

7.   Now the Court has issued a mandatory injunction to compel the undersigned to execute a false POWER OF ATTORNEY, that is a plain substitute for pre-judgment execution without evidence or a hearing, or an illegal confessed judgment, or generally relief not authorized by the common law or ERISA as it is not APPROPRIATE EQUITABLE RELIEF.  ERISA sec. 502. That most recent order, after the undersigned complied with prior orders, is immediately appealable under 28 USC 1292(b) and otherwise is an extension of the order of September 2013 that is already on appeal.  The undersigned wants to appeal and vindicate its statutory and constitutional rights, and believes it is most appropriate for this Court to grant any stay, and refrain from threats of negative actions against the undersigned, until the fundamental matters of jurisdiction and legalities of the parties' actions are determined by the Court of Appeals.  The resolution of the pending appeals and motions will substantially determine whether any more punishments or actions are necessary in this Court, and whether the conduct of this case has proceeded consistent with the Constitution of Pennsylvania and the United States, ERISA, the Bankruptcy Code, the Federal Receivership Act, the Americans With Disabilities Amendments Act of 1998, the Civil Rights Act, the Hobbs Act, and other laws implicated by the actions of Wagner and the DOL granted by this Court.  Further, there remains a question as to the mandatory nature of 28 USC 155 relating to the unfortunate pollution of this District and the judges within it, as well as impediments on the constitutional right to unimpaired counsel.  There has never been any allegation that a receivership, appropriation of an entire business, damage to

its ability to operate ever again, damage to its principals and employees, and other matters that occurred have ever been appropriate equitable relief.

8. DOL has failed to notify the Circuit Court of the reopening of trial, violating its duty of candor to the tribunal, and thus improperly causing that court not to issue a stay of the trial and other proceedings, in part, because of that Court's belief the matters were mooted by completion of the DOL case. In fact, this appeal will highlight that tacit misrepresentation to the Circuit which, if appropriate equitable relief were applied by this Court, would result in dismissal of the DOL motion, if not its case, and at least provide the undersigned with relief instead of being subject to a possibly illegal order and prejudgment of execution and sanctions. To the extent the court wishes to view this matter under Rule 11 or to rescind its order under its inherent powers and prevent any sanctions from coming onto your Movant, that outcome would be most useful and expeditious. But Movant does not want to delay his stay pending an appeal. The Movant would be grateful not to file an appeal and to instead have a stay pending the evaluation of the merits, for there is no appropriate equitable relief in the conduct of DOL, Wagner, or the things they have requested. It would not be appropriate under Rule 59(e) for Movant to suffer a sanction while this court could avoid "reconsideration" and instead grant the stay wither with an an appeal or not.. A complex legal issue that Movant cannot answer without the advice of counsel is whether the Court has the authority under Rule 50 and 60, or ERISA or the Fifth Amendment, to make a correction on the basis of legal error, the nondisclosures to the court discussed below, and any equitable ground to reinstate the situation before its order (as there was no compelling reason for any further taking of assets or evidence rising to the standard of a mandatory injunction – we are supposed to be IN a trial, and there has been no judgment). Plainly, Movant does not wish to engage the Circuit again, but new issues have arisen and he

has a strong fear that liberty or property interests are at stake that can only be protected by  a stay,

either from this Court or the Circuit Court.  No doubt there is a duty to correct an erroneous order

that is inconsistent with the standard of the constitution, the statute,  the law of mandatory

injunctions or binding precedents, as the court has the authority to withdraw and reissue an order

on its own volition.  There is no intention to make a Rule 59(e) request, as the matters in this

request for stay and the appeal contemplated by the Movant are substantially the same as those

presently in the Third Circuit, thus already in the jurisdiction of the Circuit Court.  This Court

could, however, remove a mandatory injunction, even so far as dismissing Wagner as

receiver/independent fiduciary who has contol of over one hundred million dollars and had

mismanaged it without bond.  Movant  needs counsel to confirm whether the inception of trial,

and the evidence contemplated by a trial, are inconsistent with any extraterritorial attempt at pre-

judgment attachment, through the use of a compelled power of attorney that is a de facto

confession of judgment.  Movant believes that order, and the pre-judgment of contempt, is not

constitutional or permitted by the rules once a trial has started.  The trial is in the middle of its

conduct, and the Court cannot know whether there is the strongest likelihood of success on the

merits that is necessary for a mandatory injunction.  Now, the defendant is entitled to put on its

case and that has not happened.  However, the lack of counsel is a substantial constitutional

impediment that puts the Movant at substantial risk, and it is grossly unfair not to have access to

experienced counsel when the stress of this endeavor has reduced your Movant to the most

desperate and possibly erroneous actions and counsel wants to help but does not want to lose

favor, irritate, or suffer sanctions from the Court or not be paid rightfully for its work.  This

situation alone is sufficient for a stay and for the court to use its inherent powers to evaluate all

the facts, apply the governing documents, and allow this Movant the constitutional defense and retention of his property that due process and fairness require both under US and Nevis law.

9.   A power of attorney is a fiduciary relationship.  It is not an adversary relationship, and not meant to masquerade to hide an adversary relationship.  The DOL, whose motion for contempt is being advance by the so called "independent fiduciary" that took everything else, is simply engaged in conduct not permitted by the statute along with Wagner.  Movant was not been given Nevis counsel, or this Court would know that Wagner's counsel gave it a skewed opinion, consistent with what Wagner and DOL want, not what the English common law permits. You cannot give a power of attorney to an adversary.  That is a confession of judgment or pre-judgment execution.  DOL has the ability if it wins at trial to use the law of the US or Nevis to recover any assets that are consistent with *LaRue* and the requirement of appropriate equitable relief.  The post-judgment execution of the Federal Rules exist for that purpose, and Congress never intended compelled powers of attorney or pre-judgment execution to come within the ambit of "appropriate equitable relief" – the only relief DOL could request, if it could prove it, and the only relief the court could order if it were legal and proven.  We already know the majority of trust assets have not been affirmed as under ERISA as the Circuit has yet to rule, and DOL cannot show why the plan documents can be thrown in the trash when a firm has been paid for benefits provided to participants.  It makes no sense that all other assets can be taken, even those with no ERISA connection and outside REAL VEBA, and yet equity demands that somebody be deprived of justly earned property and there is $100 million of surplus, at least.

10. There has been no proof given by DOL, the litigant, that either it or its co-litigant and adversary, Wagner Law Group and its employees and agents, have demonstrated the highest standards of probability of success on the merits necessary for any mandatory injunction to

demand that the undersigned turnover property reduced properly to possession by order of the trustee in 2008 and the accrued fees in 2009 through September 2013 dictated by the governing documents. There has been no proof given by DOL that at any time any "Census Forms" are any parts of the governing documents, and DOL has not given proof that it confirmed the content of any employee census within the statute of limitations, or otherwise that any communications from employers complied with the requirements of the governing documents as to corporate form and actions. In short, the census information introduced by the DOL was hearsay from documents prepared long ago by unknown persons, and sent without any confirmation or duty of the Settlor/administrator to accept them since they were not accompanied by proper corporate resolution . Further, DOL has at no time cited to the plain language of the governing documents and disclosed any act of deviation from the plain powers given to the defendants. The DOL has consistently avoided the actual language of the governing documents, the national law that no welfare benefit is vested, the duty to show a damage to the ability of the fiduciary (within the time for operation and payment) to pay any vested and accrued claim, as compelled by the *LaRue,* decision, supra, and this Circuit's adoption of the similar theory espoused in the Eighth Circuit decision of *Minnesota Mining, etc. v. Harley, supra* (a $20 million loss did not impair the vested and accued benefit of a defined benefit pension plan); see *Malia v. GE, supra* (amounts not necessary for vested and accrued benefits did not impair any participant pension, and a plan sponsor can use them or remove them without fiduciary breach or violation of exclusive benefit rule). No participant or claimant has any property interest in anything except a claim for benefits, if vested and accrued, against the assets of a defined benefit plan (pension or welfare); and no benefits from a welfare plan are vested, especially where as here there is specific language making vesting impossible and the trustee or administrator the owner of all

assets. All adopting employers and electing participants agreed to these terms in writing. Consequently, the Court already controls up to approximately $125 million of liquid assets, per the Chapter 11 schedules of Penn Public Trust, and Penn Public Trust made clear that it rejected all Adoption Agreements per its discretion, years after it also, through the powers of PennMont Benefit Services, Inc., made the trusts not payable to anyone except owner employees. The court has overlooked these two amendments and their legal force, as amendments are ministerial and not against public policy in an entrepreneurial trust.

11. Recently, the Dilworth Paxon firm informed this court the Dilworth was not in a position to fully represent the defendant in various matters believed to be plainly connected to its defense of the trial and a contempt motion (a tactic plainly seen in the case record) to compel actions not constituting appropriate equitable relief, ERISA sec. 502, time after time since 1996, in one form or another. Dilworth has been unable to know the boundaries of its representation, and may be subject to impairment of its professional duties, particularly Rule 1.1, RPC (absolute loyalty) because this Court has selectively decided what the governing documents provide in terms of indemnification and payment "of all damages and expenses directly or indirectly related to the service of the administrator [its attorneys, et al.] under the [documents]." See REAL VEBA and SEWBPT Plan and Trust documents of record in this court, including the Adoption Agreements, Participation Agreements of each person electing to participate, the indemnification and release provisions contained therein (as adopted by each employer and participant), the portions of the documents of the former Delaware Valley Leagues incorporated into the governing documents via the last clause of the Master Plan (see *REAL VEBA v. Sidney Charles Markets, Inc., (E.D. Pa.) (Sanchez, J.)* explaining REAL VEBA documents and separate authority of administrator.

12. This Court issued an order stating in effect, that if Mr. Koresko does not like the Court's decision as to compensated legal services, he can pay for them himself…." That order is itself impacting on this matter, and contradicts all the governing documents, making it ripe for a contemplated, allowed interlocutory appeal, along with serious, unfortunate due process implications.

13. On information and belief, that order, and its effect of Dilworth's refusal to participate in this Motion and an appeal that is likely, represent unconstitutional impediments on the due process rights of the undersigned and defendants, and further are not appropriate equitable relief. permitted by ERISA , Supreme Court mandates of compliance with governing documents, and the common law generally that prohibits interference with the actions of counsel. Due process violations cannot be appropriate or equitable, especially when they lead to imminent loss of liberty or property rights.

14. On information and belief, without waiving any privilege, the failure of the Dilworth firm to act is directly attributable to its fear of the wrath of this Court and the firm's reasonable expectation under the law of trusts and the Supreme Court precedent to be fully paid for services rendered. They know the Movant has been made effectively unable to do anything except what they think the Court allows them to do. It is simply immoral and an incorrect application of precedent and the statute.

15. Accordingly, these serious matters, which have resulted in the mandatory injunction order last Friday, and the accompanying pre-determination that "Mr. Koresko will be in contempt" if he does not comply with orders likely issued beyond the scope of ERISA or Article III jurisdiction, and actions outside the Federal Receivership law, among other legal impediments, all represent an unconstitutional deprivation to counsel, interference with due process under the

Fifth Amendment, and further impair the obligation of lawyers, and the duty of the court to supply equal protection of the laws by preservation of Pennsylvania Constitutional rights as intended by the Ninth and Tenth Amendments of the federal constitution. Wagner, to the extent responsible for a plan to seize assets of another citizen through a "power of attorney" that is really pre-judgment execution or a forced confessed judgment, misrepresenting itself as having a fiduciary relationship with the defendants as required by the common laws of powers of attorney enforced in common law countries (where US influences do not matter), are themselves involved in possible violations of the Hobbs Act and Civil Rights Act, as well as actions outside the Eastern District of Pennsylvania at odds with the Federal Receivership Act. With control of at least $115 million of assets, and only a small percentage of corpus subject to any possible claim if allowed by the documents, the further taking of money from the undersigned is a possible violation of the Fifth Amendment and not Appropriate Equitable Relief, especially in the absence of any evidence justifying restitution. This court has already deprived the defendants of a business worth $20 million, millions of dollars of retained earnings, escrow amounts, policies of insurance, and caused debts that could lead to liability by refusing the efforts of defendants to satisfy them. In short, the Court needs no further security, it is punitive and disguised as criminal intent, there is no showing of the strongest showing of probable success, public interest, or irreparable harm required by a mandatory injunction. The prejudgment of contempt has its own constitutional infirmities as it is based on a legal premise that is in the jurisdiction of the Third Circuit Court of Common Pleas.

16. The law in this circuit is that loans by a fiduciary under its express powers are not the property of anyone, as a liability is not an asset, and no other person has authority to undo the

plain compliance of the fiduciaries with governing documents. The premise of the order is this not appropriate equitable relief.

17. According to Supreme Court and Circuit precedent, civil contempt can only be used to persuade if it is legal and the underlying order is legal. There is absolutely no evidence that the defendants were not given compensation awards by express action of CTC and F&M Trust, and that the awards were relating to benefits provided, not prohibited transactions described in ERISA sec.404 or 406.

18. The issue of loan moneys were disclosed in the summer of 2009 to Hon. C. Darnell Jones, who presided over this matter; and having an inventory of the amounts involved, he kept them under seal; and he subsequently decided that DOL did not meet its burden for relief. To the extent this Court claims that any amounts are loan amounts, not proven by DOL to be from ERISA arrangements, and substantially less than amounts seized already by the Court, and in the absence of any vested and accrued claims, any order to give such amounts back to Wagner or anyone else violates the law of the case, the express order of possession made by Judge Jones on 10 Jan 2010 and again after dismissing the interpleader action of the DOL, and further ignores that DOL had substantial opportunity and time to prove the contrary and did not.

19. The action of the Court is most appropriate for a stay of proceedings, as this court will render the undersigned destitute. By its orders to confuse the undersigned as to their litigation and indemnification rights, the court has impaired the right to counsel. By its orders to take nearly $100 million more than any claims, such claims not being vested and accrued as required by law and the governing provisions, the court is acting without appropriate equitable relief in mind and in prejudgment of relief that is not necessary and can never be necessary just by virtue of the mathematics and documents signed by employers and any participants.

20. The court's actions have the effect of leaving defendants at the complete mercy of the Court, who will forever determine the extent of its defense or appeal rights, defeat existing appeals and future appeals, and possibly impact this litigation to the unconstitutional detriment of the defendants.  Plainly, this Court took counsel away 60 days before the trial in which DOL presented evidence and rested, and impaired the defense of the undersigned.  This Court made its own potentially erroneous determination that its dissatisfaction with medical reports, not within its province after the ADA Amendments Act, were not appropriate to prevent the mandatory injunction or the prejudgment of contempt.  Thus, a major issue exists as to the discrimination against the undersigned by state and federal actors, including the courts and agencies required to enforce both the ADA and the Pennsylvania Human Relations Act, as well as the Civil Rights Act, uncodified portions and condified 42 USC 1981, et seq. Given the history of the Court's reactions to the motion of the undersigned to recuse under the mandatory authority of 28 USC 155, and the opinion in September 2013 that the court acted out of concern for the health of the undersigned, it is a fundamental constitutional issue whether the undersigned can receive a fair trial or other disposition.

21. The undersigned had to get an order from the Circuit Court, Rendell, J., to overrule this Court's unilateral termination of the mandate, rejection of the decision of the administrator, and the $4 million preference given to plaintiffs in the *Langlais* case.  To date, despite the amounts millions greater than demanded in  the Court's "power of attorney" order for mandatory injunction and prejudgment of contempt, this Court has refused to order return of any moneys released by the Clerk or given by *Langlais* attorneys to claimants with an illegal claim and illegal preference.  That failure, to the detriment of the clients of the undersigned, the Trust estate, and plainly impacting the court's concern with extraterritorial moneys of the undersigned transferred

rightfully, openly, and beyond any applicable statute of limitations, further illustrates the lack of appropriate equitable relief in the court's order against the undersigned.

22. The court itself has permitted Wagner to dissipate the trust estate.  Further, without notice and a hearing, the court issued an order, without notice or proof or hearing, purporting to immunize Wagner from its negligence with respect to management of trust assets.  Despite the largest increase in stock values in a decade, and the predominant use of investment sensitive policies in the Trust, Wagner is responsible for at least $20 million of lost profits that would have eliminated any loans, paid for administrative expenses, eliminated any basis for claims, and otherwise made the Order issued last week against the undersigned irrelevant and further not appropriate equitable relief.  The Court did however, err under the Receivership Act, by allowing Wagner to serve without a bond consistent with the assets of over $115 million dollars entrusted to it, as required by the Receivership Act.  The defendants have been rendered without the ability to act by orders of this court, thus being deprived of the ability to bring proper suit against Wagner and DOL for their complicity in these damages.  Nevertheless, the Court would destroy the business of the undersigned and render the undersigned and his family destitute == acts that in no way constitute appropriate equitable relief permitted by ERISA or contemplated by any injunction authority contemplated by statutory or common law.  The Court had no authority to immunize Wagner or anyone else in a position of fiduciary responsibility.

23. This Court is well aware the undersigned has had three severe head traumas, and barely survived a triple-rollover automobile accident at highway speeds in Florida in July 2014.  This court has demanded evidence to suit itself when federal law requires only evidence of the fact of statutory injuries rising to disabilities protected by law.

24. The Undersigned has had his computer system destroyed by Wagner contractors, and his place of business is decimated by the refusal of the court to restore assets after the original "4 to six week period" stated on the record at the time of the IF order.  It is now 15 months, and the Courts's actions have resulted in an attempt by others to take over $1.5 million in equity from an LLC and trust for the benefit of the children of the undersigned.  The court has already taken far more from the  undersigned that is allowed by law, as prejudgment execution, direct or indirect, is simply unconstitutional.  The undersigned has the right and duty to protect his family under the most basic elements of the law, and by demands of the common law, to defend the trusts under which he served.  There is no known justification, especially absent any allegation of fraud (because of approval of and disclosure to the Trustee and Judge Jones) resulting from any payments to the undersigned.  The unresolved legal issue does not permit direct or indirect prejudgment attachment, mandatory injunctions that are already subject to the same infirmities as prior appeals, and then threats of contempt.

25. On information and belief, if not incarceration, the court might construct a penalty of impairing the trial defense of the undersigned in any number of ways.  It cannot be known what the Court may do, but given recent issues of false discipline that are subject to Appeal and civil rights action, this Court's actions could have the improper consequence of allowing an allegation of further disciplinary sanction.  In sum, by impairing the ability of the undersigned to heal by its demands, and impairing his ability to earn a living, and subjecting him to daily emotional torture as to the next appealable issue, and subjecting him to the perception of counsel that services cannot be given and property compensated, and by the various potential violations of law that sit in the Circuit court, and the court's concentration on this matter, which is not a proper mandatory injunction and not subject to contempt sanctions under law, and by reinforcing various

protections of the Wagner Law Group (beyond the realm of Receivership law or the ERISA mandate of appropriate equitable relief), and then trying to compel the undersigned to give up his property which is legally beyond the jurisdiction of the court, and to indirectly impacting rights of persons who are subject to foreign laws and to affect their rights as dual citizens, the court has before it monumental issues that respectfully require resolution consistent with constitution, statute, and the common law.

26. This Court, by putting Dilworth in the position it is in through a failure of clarity of representation, and impediments to indemnification, has harmed the undersigned such that he has no other practical remedy but to appeal or seek a stay pending appeal. Certainly, the Court has already denied moneys for the subsistence of the undersigned, despite its statements in at least two court transcripts that it would do so, though it denied the requests by the undersigned and Dilworth when actually made. With respect, the Court has already appeared to embrace the punitive positions of the DOL and have allowed Wagner to be the effective adversary of the undersigned, the litigation advocate of DOL, and has thus erred in allowing the awesome judicial power to be utilized in a plainly unfair manner that does not reflect the only remedy permitted by DOL in its suit: appropriate equitable relief.

27. The use of the term "disgorgement" may not itself be sufficient to demonstrate that the plaintiff is asserting a claim in equity. **The underlying claim -- for breach of fiduciary duty -- seeks in substance an order of restitution, and the Supreme Court has pointed out that restitution, although commonly used as a remedy in equity, may also be utilized in some circumstances as a legal remedy**. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-15, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002). (emphasis added). 'Restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity

case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim and the nature of the underlying remedies sought. Id. at 213  (Quotation omitted.).  As summarized by the Supreme Court,

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common law writ of assumpsit. . . . In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. . . . Such claims were viewed as actions at law for breach of contract (whether the contract was actual or implied).

.Id. at 213 (emphasis added). In short, the focus appears to be on the nature of the remedy rather than on the legal label that the complaint attaches to the claim. See, e.g., Mertens v. Hewitt Assocs., 508 U.S. 248, 255-59, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) (fiduciary-breach claim treated as legal if plaintiff seeks compensatory damages, and treated as equitable if remedy is one traditionally viewed as equitable).  The Fifth Circuit ruled recently that the pursuit of insurance policy proceeds is legal, not equitable. Plaintiff has demanded insurance proceeds from a policy not owned by him, which is a claim for money damages, and is not appropriate equitable relief under ERISA  502(a)(3). *Amschwand ex rel. Amschwand v. Spherion Corp.,* 2005 WL 2045015 (S.D.Tex.), 36 Employee Benefits Cas. 2082 (S.D. Tx 2005), *affirmed* 505 F.3d 342 (5th Cir. 2007) (a suit for insurance proceeds is a suit for money damages, not a suit commanding an equitable remedy).

28. As stated by the Supreme Court in *Conkright, Great West v Knudson,* and other valid precedents, appropriate equitable relief is not all equitable relief; yet that is what this Court have

allowed to Wagner and DOL – everything possible to put the defendants out of business and impair their ability to reorganize under Chapter 11 as a matter of right and law.

29. There are matters of good faith legal disagreement at the heart of this case, yet the Court has sided with DOL and disregarded plain language in governing documents, simply because others without rights have sued for illegitimate benefits (the discretionary field of the fiduciaries) or they have tried to break the trust. There is no dispute that the Former Trustees know and approved actions of the defendants. And the depositions of John Koresko, Jeanne Bonney, and any admissible evidence show, as in 2009, that there is no basis for mandatory injunction and any relief like that, or dispossession of the defendants because of DOL and Wagner actions, has resulted in a legal tragedy of tremendous consequences. The undersigned and the defendants are due many tens of millions more in damage to the going concern and other valuable property interests of their businesses and reputations, that make any recent order of the court quite small in comparison. Nevertheless, the defenses of the undersigned are proper, founded in good faith, immediately appealable.

30. This Court should issue an order taking off any impediments to the full and complete representation of the undersigned and other defendants consistent with the plain language of the governing documents as all the actions at issue related to matters or actions connected with the services for the Trust and any participants. See Master Plan, Article 10. There is no good faith basis in law or equity to deny such defense or force the undersigned into this Motion because of the duty of the Court to apply the documents and to interpret it consistent with the intent of the Settlor/administrator and the indemnities and releases given by those who elected to adopt or participate. Impairment of contracts or plain rights does not constitute appropriate equitable relief, and neither does reducing a litigant in destitution by compulsion when there is no

judgment and the issue of liability is not even decided by trial and confirmed by appeal. There exists a complete procedure for post judgment execution that does not include imprisonment, and that result would, if affirmed, be the appropriate equitable relief contemplated by ERISA sec. 502. If the Court has jurisdiction, and DOL has standing, and Wagner has authority, a judgment gives them their rights; but a compelled confession of judgment under threat of possible jail is simply not within the ambit of relief contemplated by Congress in ERISA or the law of trusts that otherwise vests the undersigned with discretion. Appropriate Equitable Relief is something much different than any equitable relief, and a mandatory injunction without notice and a hearing and evidence is not appropriate, equitable, compatable with the evidentiary requirement. In this case, the same issue is already a 15 months in the Circuit Court, such that draconian measures while a trial is going on can only be elements of mistrial and improper focus of the Court. There is no proof or judgment that any amounts possessed rightfully by the undersigned are beyond his authority or the execution of possessory lien, or simply appropriate payment for what was already approved, taken, and re-vested in the defendants by Judge Jones.

31. The undersigned requests that the court not require any other supporting memorandum. The undersigned is trying to comply with FRAP 8 and the requirement to try and convince the court that a stay should be granted before seeking another at the Circuit Court.

32. The undersigned continues to suffer severe repercussions from the blows to his head and the soft tissue injuries that affected most of his body and do not show up on X rays. He suffers much pain in certain weather, and to find a living and relief, has chosen in the past year to find residence and possible work in a warmer climate. The impediments to his technology and the deprivation of his property work an unfair and inequitable impact on his due process rights. The court's conclusion that any doctor can reduce to writing all the things that affected a man --

suspended from a seatbelt upside down, with everything else ejected from a car, and having

broken bones, permanent scarring from asphalt burns, and things that may not become known for

years, and who lives everyday without any future but Faith in the unknown – such conclusions

and suppositions are just beyond science and certainly beyond the unilateral decision of a Court.

That is why Congress changed the ADA and Rehabilitation Act, because subjective opinions

have no impact on the law any more.  The protections of HIPPA allow any litigant his privacy,

and the court did not set forth any standard of satisfaction any competent physician could meet

and still comply with his ethical duties of confidentiality and loyalty to the patient.  On

information and belief, the Court demanded unnecessary reports, and still does, as a justification

of not giving the defendants their businesses to reopen and to perpetuate the incompetency

Wagner has demonstrated.  To this day, over $12 million of deposits remain in accounts with no

interest, Bank of America has taken $4 million off its books to keep from paying the IOLTA

fund or for some other reason, assets have not been reallocated as a professional would do, and

Wagner has spent a million dollars and then tried to act with IRS to destroy the inventory of

Koresko Law Firm and its client relations, in plain violation of the automatic stay and in the

attempt to appease IRS rather than represent the best interests of participants.  The damages, if

accumulated, are well over $40 million to the trust, the participants, and to the going concern that

used to be the defendants, especially when combined with incompetent management by persons

who needed to take employees of Koresko Law Firm because the IF was not competent to do its

job.  To this day, the Court does not consider how that damage militates against any order

against the undersigned, or how it translates in to a simply that is neither appropriate nor

equitable.  Despite all this damage to the interests of the trusts, and allegedly to the plans, DOL

has not made a peep as its goal, stated at the time it destroyed the possibility of mediation, is the same pledge to destroy the undersigned and the defendants as pledged by IRS.

33. In light of the severe legal contradictions, and the evidence the court has not taken, and the improper standards employed, the undersigned believes in good faith that this matter has been rendered subject to possible mistrial, has been impacted by improper forces, has been impaired by application of improper legal conclusions, has been polluted by influences not properly related to the issue, and has been continued with improper attention to issues that are not contemptuous in light of appeals and failures of the standards for appropriate equitable relief. Now this matter has international implication involving the constitutional powers delegated to another branch in matters of foreign commerce and treaties, and a man has been basically forced to make the Hobsons's choice of destitution, advance determination of his right to advance legal arguments, possible impact on his liberty and property without prior judgment, and otherwise further destruction of everything this Court has allowed Wagner and DOL to destroy. So where is the equity in taking away the ability to react to another taking of counsel, or refusal to comply with documents, or the unconstitutional limitation on counsel so that counsel is in the middle and may be forced into involuntary servitude? There is nothing equitable going on here, especially with $115 million of assets above any possibly allowed claim. Yet, that is the core question, because the right to eliminate unvested and unaccrued claims was the exclusive province of the defendants, and neither DOL, Wanger, nor this Honorable Court can identify the Supreme Court precedent that allows destruction of entrepreneurial trusts when the actors have tried to comply in good faith with the language they wrote and which they have the legal precedent to interpret. Every act in this case by DOL and Wagner, accepted by the court, has deviated from the polestar of trust interpretation - settlor intent… not the subjective interpretation of somebody else. That

is nothing more than the plan documents rule enunciated by the Supreme Court and also made the law of ERISA.

34. The undersigned respectfully requests a stay of proceedings pending disposition of the appeals applicable in the above captioned case as well as the other matters before this Court. Further, as described in the letter to the Clerk of Court incorporated by reference as an exhibit, the undersigned requests a GENERAL stay due to injuries suffered in a serious automobile accident in Florida during the second week of Florida, 2014. The undersigned has sent applicable photographs and reports to the Clerk, including confidential medical information protected by HIPPA and the Americans With Disabilities Amendments Act of 1998. Accordingly, the undersigned has established both the existence of a statutory disability that affects normal life activities (Tier I) and a record of same (Tier II). The undersigned claims protection under that act and the Civil Rights Act to prevent discrimination, as well as the traditional grace extended by this Honorable Court to injured persons. The Clerk rejected these items as they were not hand delivered in a separate envelope.

35. The undersigned was impossibly prejudiced by resignation of his assistant during this period of medical emergency, and appears to have missed certain deadlines imposed by the Judges of this Honorable Court. Therefore, the undersigned requests that any consequences of missing those deadlines be reversed and that he be given the opportunity to respond without penalty, in accordance with the inherent authority of the Court, and among others, Rules 59 and 60, F.R.C.P.

36.        The undersigned has requested that the clerk maintain photographs and other confidential data forwarded to the clerk in his custody, consistent with the privacy provisions of HIPPA and other law, to prevent the inevitable prejudice and to preserve the confidentiality of

sensitive data not necessary for public consumption or substantive resolution of the case issues. Certainly, the power of the Court to issue a general seal of such matters is not meant to be impaired in any way.  The Clerk would not accept these items electronically.

37.        This court should please maintain the  confidential medical records and other photos in its possession, consistent with the privacy rights of the respondent.

38. The undersigned has not waived attorney-client privilege, physician-patient privilege, or any other privilege at law or equity or statute, regardless of the reasons stated for his own participation in this motion.  The communication by Dilworth and the court's reaction, and Dilworth's repetition and explanation of it do only to Dilworth's belief in its limitations and ability to serve the undersigned, and not to any substantive matter of defense.  The injuries of the undersigned are within the knowledge of the court and were required to be alleged in the least prejudicial fashion to comply with the protections of state and federal law.  Any impairment of privilege has been unintentional and should not be used against the defendant.

39.        e undersigned respectfully requests that the Court waive any requirement for a separate memorandum of law.

40.        6.  The undersigned is diligently attempting to determine the amount of damage caused by the assistant that departed and to attend to matters filed while he was incapacitated; and the undersigned respectfully requests that any default or response out of time be excused.

41.

42. WHEREFORE, the undersigned asks the Judges of this Honorable Court for Stay Pending Appeal as well as a stay of proceedings pending recovery of the undersigned from injuries sustained in his accident.  Furthermore, the undersigned respectfully requests a seal of

those documents relating to the accident and excuse of any matter involving default or out of

time response

Respectfully,

John J. Koresko, V*

* Acting pro se; PA order of emergency suspension on appeal; stay pending appeal requested; active US Tax Ct.


December 8, 2014


### NOTICE OF ADDRESSES DURING MEDICAL TREATMENT AND TRANSITION

TO THE CLERK AND ALL CONCERNED:

PLEASE TAKE NOTE OF THE FOLLOWING ADDRESSES THAT SHOULD BE USED
UNTIL FURTHER NOTICE:

 Mailing Address:                                              Temporary Address in Florida :
P.O. Box 5
Bridgeport, PA 10495                                  c/o Law Offices of Scott Alan Orth
                                                                       3880 Sheridan St.
With a copy to                                               Hollywood, FL 33020

P.O. Box 60157
King of Prussia, PA 19406-0157
                          Tel:  484 680 4733 (cel messages)
                          Message line (delayed): 610-992-2200
                          Fax: 610-992-1091
                          Email:  jjkoresko@gmail.com (best)

# Certificate of Service

I hereby certify that the PLAINTIFF/COUNTERCLAIM DEFENDANTS'

OPPOSITION TO PLAINTIFF'S MOTION TO AMEND and memorandum in support thereof

have been served via First Class U.S. Mail or ECF upon the following:

DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
Linda M. Henry, Esq. or
Joanne Biletta Jarquin, Esq.
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA  19106

And    Lawrence McMichal, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street
Suite 3500E |
Philadelphia, PA 19102

John J. Koresko, V, Esq.

December 8, 2014

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEREZ , Secretary of Labor**<br><br>**v**<br><br>**JOHN J. Koresko** | ))<br>)<br>)<br>)<br>)<br>)<br>) | **NO.  09-cv-00988 MAM** |

**ORDER RE**
**OMNIBUS MOTION FOR STAY PENDING APPEAL;**
**MOTION FOR GENERAL STAY AND RELIEF FROM**
**OUT OF TIME RESPONSES OR DEFAULT PENDING RECOVERY**
**FROM AUTOMOBILE INJURIES**

ORDER

AND NOW THIS ____ DAY OF AUGUST 2014, on consideration of the **EMERGENCY MOTION FOR STAY PENDING APPEAL;MOTION FOR GENERAL STAY AND RELIEF FROM OUT OF TIME RESPONSES OR DEFAULT PENDING RECOVERY FROM AUTOMOBILE INJURIES;  and MOTION FOR UNRESTRICTED REPRESENTATION OF COUNSEL WITH COMPENSATION**

IT IS HEREBY ORDERED THAT THERE IS A STAY OF THIS COURT'S PRIOR ORDERS TO COMPEL MR. KORESKO TO SIGN A CERTAIN POWER OF ATTORNEY TO PLACE FUNDS IN NEVIS INTO THE CONTROL OF WAGNER LAW GROUP OR  A PERSON ACTING ON ITS BEHALF. THE COMMENT OF THE COURT THAT FAILURE TO SIGN WOULD BE CONTMPT IS ALSO STAYED until further order of the court.  The Court needs further time to determine the validity of the arguments and the impact of the alleged confusion of counsel's allowed scope of representation.  The Court also thinks defendant has raised a valid

issue  to determine whether there has been a showing of the elements of mandatory injunction and appropriate equitable relief, given the amont of property taken by Wagner Law Group and the other actions that are alleged.  The Court may integrate the allegations about Wagner and the Department of Labor into another evidentiary hearing.  The Court gives some credibility that Wagner had Nevis counsel, but this Court did not authorize the Dilworth Firm to obtain Nevis counsel, and there may have been an unfair presentation of issues of foreign law.

The court needs time to consider the other issues, including whether the trial in this matter has made relief not appropriate, or whether Wagner and DOL actually seek return of money which may be legal, not equitable, relief.  Further, the Court recognizes the similarity of this matter to that already on appeal in the Third Circuit.

Given the extraordinary circumstances of his serious automobile accident, request for reasonable accommodation, and other matters described in the motion, and considering any response, IT IS HEREBY ORDERED that the motion is GRANTED

    FURTHER ORDERED that the date of any response due with respect to Motions or other documents filed by other parties are hereby extended until further order of the Court;

    FURTHER ORDERED that any Scheduling Order previously in place shall be modified to take into account this Order, and all counsel and parties will be informed  by further Order of such modifications.

    FURTHER ORDERED that Mr. Koresko shall immediately notify this Court as to the disposition of his appeals.

    FURHER ORDERED, that the Court takes this action without prejudice of the right of Defendant.  The Court intends no adverse consequences that may affect the right of

defendant to appeal. Nevertheless, there is a STAY and the rights of defendant to appeal will not be impacted while the court considers whether there was an appropriate participation of counsel, whether counsel should be addressing the court, and whether there should be any restrictions on the compensable duties of counsel in connection with the defenses of the defendants and any attempts to obtain injunction or contempt penalties. The Court expects to issue a further order on that point and others as necessary. The Court will instruct counsel as to its decision on the conduct of the incomplete trial of this matter.

**FURTHER ORDERED that to prevent any prejudice, the Orders issued this past Friday and previously as to the requirement that Mr. Koresko execute a power of attorney are rescinded for the time being, without prejudice, until further consideration and order of the Court.** The Court will clarify the procedures that will follow if it decides to consider this motion further and recognizes that an evidentiary hearing may be necessary.

**In light of the circumstances, the Court will not require Mr.** Koresko's participation as an advocate for himself, as he has explained the issue involving his counsel. The Court expects the Dilworth Firm not to consider itself constricted by matters relating to defense of the DOL and Wagner actions, but should err on the side of its duties to the client. If there is any question about the role of counsel, the Dilworth Firm should ask for a clarifying order immediately. Nevertheless, it appears inconsistent with the goal of the case to have counsel contacting the court at every turn, and so there must be a presumption of compensation for actual necessary services, and DOL or Wagner always have the right to contest that when compensation is requested. The Court will also consider whether it continues to be equitable to deny Mr. Koresko any compensation, given the considerable effects of this case. The Court may request additional briefing as to that issue.

**The defendant is hereby advised that this Order is not a license for him to ignore the valid orders of the Court.**  The Court recognizes that defendant signed a previous document as ordered.  The Court believes it has exercised appropriate patience and restraint, but it is not the intention of the Court to give any indication of prejudgment or to deny the defendants their right to defend or appeal.  The Court notes that Wagner has not reported whether the previous document accomplished the Court's purpose, and without the benefit of Nevis counsel, it would be inequitable to ascribe contempt to a disagreement over foreign law that no party before the court has purported to have.  Nevertheless, the complexity of the issues and the required due process to which Defendants are entitled lead the Court to believe that there may always be a disagreement as to foreign law in the absence of a proper weighing of expert testimony.  The Court accepts as true the argument that Wagner controls very large sums of money, and that the assets of defendants have been taken into custody as ordered.  There was no evidence on the adequacy of such amounts to give appropriate protections to participants under ERISA..  The Court has not yet decided the ultimate question of the assets that require ERISA remedies, and the decision of the Court of Appeals will impact all of the parties depending on the disposition of the jurisdictional questions and standing.  The Court will, in fairness, review the impact of other laws on the powers exercised by Wagner but will not otherwise decide any questions of the Wagner actions without more review.

BY THE COURT:


_____

MARY A. McLAUGHLIN,  J.


Cc:

Lawrence McMichael, Esquire
Linda Henry, Esquire
John J. Koresko, (pro se)