```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS E. PEREZ, SECRETARY OF   :   CIVIL ACTION
LABOR, UNITED STATES            :
DEPARTMENT OF LABOR             :
                                :
     v.                         :
                                :
JOHN J. KORESKO, V, et al.      :   No. 09-988
```

                          <u>MEMORANDUM</u>

McLaughlin, J.                                    May 13, 2015

        Defendants John J. Koresko, V, and Jeanne Bonney each filed requests with the Court to revisit the Court's February 6 Memorandum Opinion (Docket No. 1134) and corresponding March 13 Judgment and Order (Docket No. 1149).  Through his counsel, Dilworth Paxson LLP ("Dilworth"), Mr. Koresko filed a motion for a new trial or, in the alternative, to alter or amend judgment pursuant to Rule 59 (Docket No. 1168), while Ms. Bonney, acting pro se, submitted a letter to the Court,[1] requesting various amendments to the findings of fact and conclusions of law (Docket No. 1182).  The U.S. Department of Labor ("DOL") responded to each separately (Docket Nos. 1179, 1194).  For the reasons that follow, Mr. Koresko's motion is denied in part and

---

[1] The Court does not consider the "Motion of Defendant Jeanne D. Bonney, Esquire, Pro Se for Post-Trial Relief" (Docket No, 1169) because, for the reasons stated in the Court's April 29, 2015, Order, Ms. Bonney "stated that she neither filed it nor gave anyone the authority to file it on her behalf" (Docket No. 1180).


granted in part, and the Court shall amend the judgment to reduce the Koresko Defendants'[2] total liability by $79,568.74, from $38,417,109.63 to $38,337,540.89 (Docket No. 1149). Ms. Bonney's request is granted insofar as it relates to confirming that she is permanently enjoined from serving in any capacity with regard to an employee benefit plan under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., (Docket No. 1149).

I.  Background

Given the long, protracted history of this matter, the Court incorporates into this opinion the facts and procedural history as set forth in the Court's February 6, 2015, Memorandum Opinion (Docket No. 1134).

II. Analysis

Rule 59(a) of the Federal Rules of Civil Procedure provides that a Court may, "on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones,

---

[2] The "Koresko Defendants" include John J. Koresko, V; PennMont Benefit Services, Inc.; Koresko & Associates, P.C.; Koresko Law Firm, P.C.; and Penn Public Trust. Perez v. Koresko, No. 09-cv-988, 2015 WL 505471, at *90 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-cv-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).

and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).  But a judge need only reopen the trial record when she is "confused on certain matters," In re Japanese Elec. Products Antitrust Litig., 631 F.2d 1069, 1087 (3d Cir. 1980), or when it is apparent that a decision would result in the "miscarriage of justice," Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).[3]

Because there is no confusion on the record before the Court and because the Court has repeatedly given Mr. Koresko the benefit of the doubt -- even in the face of countless protests by plan beneficiaries and persistent filings by the DOL -- the Court has no reason to disturb its findings of fact or conclusions of law.  However, in abiding by those same conclusions of law, the Court must reduce the Koresko Defendants total liability from $38,417,109.63 to $38,337,540.89 (Docket No. 1149).  In addition, the Court confirms that Ms. Bonney is permanently enjoined from serving in any capacity with regard to an employee benefit plan under ERISA, as articulated in paragraphs 2 and 4 of the Judgment and Order (Docket No. 1149).

---

[3] Rule 59(e) of the Federal Rules of Civil Procedures requires that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although the DOL is correct that Ms. Bonney filed her letter well after the deadline to do so, the Court still considers the letter in its effort to get the right decision, not the most expedient one.

The Court considers each party's arguments below, beginning with Mr. Koresko's.

### A.  Mr. Koresko's Motion

Mr. Koresko raises issues with regard to the Court's finding on indemnification and the 2009 Amendment, which he believes each warrants the grant of a new trial, and seven smaller concerns related to specific findings of whether certain legal services "were necessary for the establishment or operation of the plan," 29 U.S.C. § 1108(b)(2), which he argues require an amendment in the judgment.  Although the Court has addressed each of the larger, more substantive arguments with Mr. Koresko before, the Court will again explain why neither has merit.  The Court will also address Mr. Koresko's concerns regarding the "safe harbor" provision set forth in ERISA Section 408.

The brunt of Mr. Koresko's motion is that the judgment "is based entirely on an incomplete and one-sided trial record" and is therefore unjust (Docket No. 1168-1).  The "failure to provide for the advancement of defense costs" –- by the Court first freezing Mr. Koresko's bank accounts and then refusing to indemnify him for his legal fees –- was a "fundamental error," according to Mr. Koresko, because it "impaired his ability to meaningfully participate in the trial" (Id.).

To begin, Mr. Koresko's assertions of "being deprived of counsel" are belied by the record.  Mr. Koresko was given ample opportunity to participate in trial and in post-trial motions.  Although Dilworth initially represented Mr. Koresko only through his contempt proceedings, which began in October 2013 (Docket No. 530), that representation was expanded in June 2014 so that Mr. Koresko could supplement the trial record and submit proposed findings of fact and conclusions of law (Docket Nos. 894, 898).  Not only has Dilworth fully advocated on behalf of Mr. Koresko since that appointment -- filing no less than three separate memoranda alone on Mr. Koresko's request to supplement the trial record and challenge the DOL's legal arguments, in addition to various other letters and filings[4] –- Dilworth has also been paid $852,779.21 from trust assets between October 2013 until January 2015 (Docket Nos. 984, 1015,

---

[4] See, e.g., Defendant's Designation of Documents and Witnesses (Docket No. 924); Defendant's Supplemental Designation of Documents and Witnesses (Docket No. 967); Order directing Mr. Koresko to file a memorandum "(1) explaining how the proposed supplemental documents and witnesses are admissible and relevant to his theories of defense ... ; and (2) setting forth the defendant's response to the Department of Labor's proposed findings of fact and conclusions of law" (Docket No. 975); Defendant's Memorandum of Law Regarding Defenses and Response to DOL's Proposed Findings of Fact and Conclusions of Law (Docket No. 984); Defendant's Supplemental Memorandum Regarding Defenses and Responses to Plaintiff's Second Revised Proposed Findings of Fact and Conclusions of Law (Docket No. 1015); Defendant's Second Supplemental Memorandum of Law Regarding Defenses and Response to DOL's Proposed Findings of Fact and Conclusions of Law (Docket No. 1036).

1036).  Perez v. Koresko, No. 09-988, 2015 WL 505471, at *67 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).  As the Court stated in its Order dated December 9, 2014, "[g]iven [this] number, it is hard to imagine what Mr. Koresko envisions as representation different from what he already has"[5] (Docket No. 1092).

Such representation by Dilworth is on top of Mr. Koresko's own vigorous advocacy.  Mr. Koresko continues to file motions directly with the Court, despite his having counsel, including a 34-page emergency motion to stay the proceedings on December 9, 2014 (Docket No. 1091).  In fact, prior to Dilworth joining Mr. Koresko as counsel, Mr. Koresko routinely filed motions directly with the Court, even while he was represented by his previous law firm, Montgomery, McCracken, Walker & Rhoads LLP ("Montgomery McCracken") (Docket Nos 399, 403, 404, 426, 432, 433, 440, 441, 449, 450, 451, 452).  Such motions continued once the Court granted Montgomery McCracken's motion to withdraw

---

[5] By the same measure, the idea that Mr. Koresko "had no [] resources at his disposal with which to mount a defense" (Docket No. 1168-1) overlooks the fact that all of the evidence of Mr. Koresko's alleged wrongdoing was in Mr. Koresko's sole control; if Mr. Koresko was indeed innocent of the Department of Labor's allegations, he could have simply handed over the exonerating materials.  He did not.  See Perez v. Koresko, No. 09-988, 2015 WL 505471, at *2 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015) ("Because Mr. Koresko refused to comply with the subpoenas, the Court ordered him to be incarcerated until he produced the documents requested. The day before he was to be put in jail, Mr. Koresko complied with the subpoenas.").

(Docket No. 457). The record simply cannot bear the interpretation that Mr. Koresko went "unrepresented" during these proceedings when his actions suggest the opposite.

### 1. <u>Indemnification</u>

With regard to the argument that Mr. Koresko has the right to indemnification, Mr. Koresko contends[6] that the Single Employer Welfare Benefit Plan ("SEWBP") specifically provided for indemnification. The SEWBP Master Trust Agreement states:

> <u>Indemnification of Trustee</u>. In consideration of the Trustee agreeing to enter into this Agreement, the Plan Administrator and Adopting Employer hereby agree to indemnify and hold harmless the Trustee, individually and as Trustee, and the Trustee's parent and affiliates and each of their directors, officers, employees, subsidiaries and agents ("Indemnified Parties") from and against all amounts, including without limitation ... expenses (including reasonable counsel fees) ..., incurred by or assessed against each Indemnified party ("Claims"), <u>in advance</u>, <u>unless it is alleged and until it is conclusively determined</u> that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement.

Government Exhibit ("GX")[7] 9 at ¶ 8.5 (emphasis added). The REAL VEBA Master Trust Agreement contains almost identical language.

---

[6] Mr. Koresko also argues that his ability to pay is irrelevant to indemnification. Because the Court never considered his ability to pay before, this argument appears to be nothing more than a straw-man, which the Court will not take the time to rebut (<u>cf</u>. Docket No. 768).

[7] "GX" refers to the exhibits admitted as Government Exhibits (including subparts) during the three-day bench trial on June 9 through June 11, 2014. <u>See also</u> <u>Perez v. Koresko</u>, No.

7

In addition, the REAL VEBA Plan Document provides for indemnification of the administrator, in this case PennMont Benefit Services, Inc. ("PennMont"), for legal fees and expenses, which amounts "may be charged as expenses of the Plan and Trust against assets contributed by the Employer which would otherwise be employed or distributable hereunder." GX47 at ¶ 10.10.  Because Mr. Koresko was president and majority owner of PennMont, he claims that he was entitled to indemnification.

The problem with Mr. Koresko's argument, however, is that it pays short shrift to Section 410(a) of ERISA, 29 U.S.C. § 1110(a), while also ignoring the context in which the indemnification under SEWBP is provided.

Section 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."  29 U.S.C. § 1110(a).  The DOL has interpreted this provision:

> to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under part 4 of title I. Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner

---

09-988, 2015 WL 505471, at *1 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).

>as insurance purchased under section 410(b)(3), are therefore not void under section 410(a). ... The Department of Labor interprets section 410(a) as <u>rendering void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan</u>. Such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.

29 C.F.R. § 2509.75-4 (emphasis added). In other words, any plan indemnification provisions that purport to allow the plan itself, through plan assets, to indemnify a fiduciary are considered void under Section 410(a) of ERISA.

Although Mr. Koresko attempts to distinguish it, the case of <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1079-80 (9th Cir. 2009) is directly on point here. In <u>Johnson</u>, the Ninth Circuit found that because plaintiffs were likely to succeed in proving that the defendants breached their ERISA duties, they were "also likely to succeed in proving that Defendants are not entitled to indemnification, nor to advancement of defense costs, because section 410(a) of ERISA renders the governing agreements [which would allow the use of plan assets] void." 572 F.3d 1079-80. It should be uncontroversial that when an ERISA fiduciary "writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally

without effect." IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1418 (9th Cir. 1997). That is exactly what occurred here.[8]

Even assuming that the SEWBP Master Trust Agreement applies in the face of Section 410(a), the agreement specifically limits indemnification where "it is alleged" and "conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement." GX9 at ¶ 8.5. Because the Court granted in August 2012 the Department of Labor's motion for partial summary judgment as to Mr. Koresko, Ms. Bonney, and PennMont for violations of ERISA Sections 403, 29 U.S.C. § 1103; 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) for all three Plans, and for violations of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), as to the Cetylite Plan, the Court finds that it was "conclusively determined" by at least August 2012 that Mr. Koresko had breached his fiduciary duties under ERISA such that indemnification would be inappropriate.[9] Solis v. Koresko, 884

---

[8] Certainly, ERISA does not bar the purchase of liability insurance by a plan, fiduciary, or an employer, 29 U.S.C. § 1110(b), but DOL has interpreted Section 410 to prohibit indemnification when it "relieve[s] a fiduciary of responsibility or liability" under ERISA. 29 C.F.R. § 2509.74-4.

[9] To be certain, in its July 23, 2013, Interim Order, the Court stated that it "again finds that the Secretary and the private litigants have shown (a) likelihood of success on the

F. Supp. 2d 261, 290 (E.D. Pa. 2012); see also Perez v. Koresko, No. 09-988, 2015 WL 505471, at *4 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).  The argument for granting a new trial and for "advance[ing] all reasonable defense costs of whatever nature consistent with [Mr. Koresko's] contractual indemnification rights under the governing Trust documents" is therefore baseless (Docket No. 1168-1 at 9).

### 2. 2009 Amendment

With regard to the conclusion that the 2009 Amendment is invalid, Mr. Koresko disputes the Court's finding, arguing further that the invalidity of the Amendment in fact vitiates the Court's jurisdiction.  Because the Court relied on three separate legal determinations to find that the Amendment was invalid, Mr. Koresko addresses each in his motion.

First, Mr. Koresko contends that PennMont did, in fact, have authority to amend the plan (and that he would have explained that authority to the Court in 2012 had the Department of Labor first raised the issue, but the Court did so sua sponte in its Memorandum Opinion).  Because such authority to amend was

---

merits of their ERISA claims and their claims of breach of fiduciary duties; and (b) the probability of irreparable injury to the public and the Plans and their participants and beneficiaries absent relief" (Docket No. 436 at 2 (emphasis added)).  The Court would not have noted "again" if it had not already found that the Secretary was likely to succeed on the merits of his ERISA claims.

11

delegated in the plan documents to the "League," and the League in turn delegated that authority to PennMont, Mr. Koresko claims that he was proper to amend the plan because he was the "attorney in fact" to PennMont (Docket No. 1168-1 at 10).

Second, Mr. Koresko argues that the existence of the provision in the plan documents limiting what amendments could and could not be added to the document was created solely for tax-purposes and therefore could be preempted.  For Mr. Koresko, "[t]he presence of provisions in a VEBA plan document to demonstrate compliance with IRC § 501(c)(9) does not mean that the plan sponsor must maintain the organization as a tax-exempt VEBA forever" (Docket No. 1168-1 at 12).  By that reasoning, Mr. Koresko claims that PennMont consciously chose to amend the provisions, even if it meant losing tax status and that doing so was not improper.

Finally, Mr. Koresko disputes the conclusion that the 2009 Amendment was contrary to public policy.  Citing <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155, 1160 (3d Cir. 1990), he argues that an administrator is well within his right to independently amend a plan and, as in the case here, remove it from ERISA coverage.

For the sake of argument, the Court is willing to accept that PennMont did indeed have authority to amend the plan, but the Court remains unpersuaded that (1) the plan

12

Amendment could violate another provision of the plan just because Mr. Koresko decided he no longer wanted the same tax status and (2) that an Amendment which removes ERISA coverage would have the same effect as an Amendment which simply limits or terminates benefits, as was the case in Hozier, 908 F.2d at 1162. As a starting point, Mr. Koresko would have to repeal the first provision that limited the introduction of the 2009 Amendment before simply adding the 2009 Amendment and there is no evidence in the record that he did so. Second, in Hozier, the Third Circuit made clear that any decision about plan administration, particularly if it was made by the plan administrator, "would be governed by section 404 of ERISA, 29 U.S.C. § 1104, which requires an undivided duty of loyalty to covered employees." Hozier, 908 F. 2d at 1159. Because Mr. Koresko conceded at oral argument that one purpose of the 2009 Amendment was to "get rid of the ERISA issues," Solis v. Koresko, 884 F. Supp. 2d 261, 281 n.18 (E.D. Pa. 2012), Mr. Koresko hardly demonstrated an "undivided duty of loyalty to covered employees" and the Court cannot find that the 2009 Amendment was not against public policy. See also United States v. Wofford, 560 F.3d 341, 349 (5th Cir. 2009) ("[V]iolations of ERISA do not make ERISA inapplicable, as the Bank believes; if extensive violations of a federal law made that law go away, the

rules would be chimerical. ERISA applied, and was violated . . . ."). Given this, the 2009 Amendment was invalid.

### 3. Safe Harbors

Finally, although the Court will reduce the Koresko Defendants total liability by $79,568.74, from $38,417,109.63 to $38,337,540.89 (Docket No. 1149), Mr. Koresko has offered the Court no evidence to suggest that the remaining specified service providers should benefit from the safe harbor provided under ERISA Section 408, 29 U.S.C. § 1108(b)(2).

In determining that certain expenditures by the Koresko Defendants met the requirements of ERISA Section 408 because they were "necessary for the establishment and operation of the plan," the Court found "the hiring and use of [Samuels Yoelin Kantor LLP ("SYK")], who represented Mr. Koresko, PennMont, and REAL VEBA in RAM Technical Services, Inc. v. Koresko," could be deemed "necessary." Perez v. Koresko, No. 09-988, 2015 WL 505471, at *81, *84 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015). Nevertheless, the Court included two invoices to SYK regarding the Ram Technical Services case in its determination of total liability. That was an oversight. Subtracting those invoices from the amount of total liability, the Court amends its judgment against the Koresko Defendants by $79,568.74, for a total liability of $38,337,540.89.

But the Court finds that no other amendments to the judgment are appropriate.  Although Mr. Koresko identifies 13[10] other entities he believes should be given "safe harbor," he supplies the Court with only legal conclusions, not factual support, for shielding such entities.  For example, in arguing that the work of Jefferson Government Relations ("JGR") was "integral," Mr. Koresko notes that the work "positively affected the tax status of the employers who had made contributions to the plans" (Docket No. 1168-1 at 18).  But ERISA Section 408 requires more.  It is not sufficient for the service to "positively affect" the employers; rather, "[c]ontracting or making reasonable arrangements with a party in interest" for legal services is protected only if such services were "necessary for the establishment or operation of the plan."  29 U.S.C. § 1108(b)(2).  There is no evidence in the record or now provided by Mr. Koresko that any other legal service, other than those already identified by the Court, was necessary for the establishment or continued operation of any plan.[11]

---

[10]   Although Mr. Koresko lists 13 entities, he only provides written support for 6 entities: Locke Lord Bissell, JGR, Caplin & Drysdale, Webster, Dryud & Mitchell, Octagon Consulting, and Koresko Law Firm.

[11]   In the Court's 2015 Memorandum Opinion, it made the distinction of protecting the Trusts.  In other words, when a Trust was sued, the Court determined that the legal services required to defend the Trust were necessary under ERISA Section 408, 29 U.S.C. § 1108(b)(2), but were otherwise unnecessary when

The Court therefore will not alter either its findings of fact or legal conclusions and only amends the judgment by reducing it by $79,568.74.

B.  <u>Ms. Bonney's Motion</u>

Ms. Bonney asks the Court to "rehabilitate" her "settlement offer" and correct various alleged inconsistencies in the findings of facts with regard to the taking out of "maximum loans" by her and Mr. Koresko (Docket No. 1182).[12]

Because Ms. Bonney is concerned that a part of the February 6 Memorandum Opinion may be misinterpreted to mean that the Court seeks her permanent disbarment as an attorney (Docket No. 1134), she requests clarification regarding the Court's decision.  If there is any confusion with respect to Ms. Bonney's liability under the February 6 Memorandum Opinion, the Court now clarifies that it does not uniformly bar Ms. Bonney

---

Mr. Koresko or his affiliated entities were sued.  <u>Perez v. Koresko</u>, No. 09-988, 2015 WL 505471, at *52 (E.D. Pa. Feb. 6, 2015) <u>judgment entered,</u> No. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).

[12] Ms. Bonney also recommends the Court do away with its plan of equitable accounting and instead rely exclusively on PennMont's own database (Docket No. 1182).  Because the Koresko Defendants and Ms. Bonney refused to hand over that database from the start, leaving the DOL to have to build it almost from scratch, the Court refuses to put any stock into the idea that it will now be able to use this apparent database, even if one is ever properly handed over.

from serving as an attorney but only that she not serve in any capacity dealing with employee welfare plans under ERISA.[13] Paragraphs 2 and 4 of the Judgment and Order confirm as much.

With regard to the alleged inconsistencies in the findings of fact, Ms. Bonney takes issue with the following: (1) that she and others signed for $35 million in loans, sometimes on behalf of CTC as a Trustee; (2) that the proceeds of these loans were transferred into Mr. Koresko's escrow account; and (3) that the employers were never notified of additional fees and expenses (Docket Nos. 1182, 1194). Given the record, and the lack of factual, documented support for Ms. Bonney's allegations otherwise, the Court has no basis to amend its findings of fact with regard to the loans.

In disputing the Court's findings, Ms. Bonney notes that, because the "Court has taken [her] July 30, 2014, deposition statements as true," in which she made it "abundantly clear that [she] neither participated in nor had any knowledge of the 'maximum loans' taken for 'investment'" (Docket No.

---

[13] Ms. Bonney appears to recollect the settlement agreement as a consent judgment, where she would not be permanently barred by the Court from serving as a fiduciary but instead would simply "refrain from service as a professional in an ERISA arrangement" (Docket No. 1182). But the transcript of the telephone conference suggests otherwise (Docket No. 867). Be that as it may, the Court finds that Ms. Bonney's actions, irrespective of whatever deal she may or may not have reached with the Court or with the DOL, rises to the level that a permanent enjoinment from her serving in any capacity related to an ERISA arrangement is not only appropriate but necessary.

17

1182), she cannot now be on the hook for any bad acts involving the defendants' loan scheme.  But Ms. Bonney misreads the Memorandum Opinion.  The opinion does not state that the Court accepted Ms. Bonney's deposition testimony wholesale.  Rather, the Court was careful to note that, "[i]n large part, the Court accepted the facts presented in Ms. Bonney's deposition as true" (Docket No. 1134).  That means that, where Ms. Bonney's deposition conflicted with documentary evidence in the record, the Court accepted the documentary evidence as true, not Ms. Bonney's deposition.  Ms. Bonney signed various applications for loans on insurance policies owned by the trusts and for the ostensible benefit of the plans: copies of those documents were admitted to the record.  Although Ms. Bonney now attests that GX5 contains certain "typos" and "misrepresentation[s]" (Docket No. 1182), any such mistakes are irrelevant to the Court's findings that these loans were in fact taken out: the point is not that "maximum loans" were taken out but that loans were taken out at all.  In the same vein, it is incidental that Ms. Bonney may have been given authority, by a custodial agreement, to sign documents as "Signator, CTC Trustee."  That assertion, whether correct or not, does not bear on the Court's findings of fact.  See FOF118-122, Perez v. Koresko, No. 09-cv-988, 2015 WL 505471, at *90 (E.D. Pa. Feb. 6, 2015) judgment entered, No. 09-cv-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015).

The Court therefore will not alter any of its findings of fact, based on Ms. Bonney's letter, and will only clarify that she is not permanently barred from serving as an attorney by the Court's decision.

An appropriate Order shall follow.

Case 2:09-cv-00988-WB   Document 1197   Filed 05/13/15   Page 19 of 19

19