**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HILDA L. SOLIS,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | **NO.  09-988** |
| **JOHN J. KORESKO, V, JEANNE BONNEY, PENN-MONT BENEFIT SERVICES, INC., KORESKO & ASSOCIATES, P.C., REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST, SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST** | |
| **Defendants.** | |
| **v.** | |
| **NATIONWIDE LIFE INSURANCE COMPANY** | |
| **Movant** | |

**<u>OPINION</u>**

This case arises out of an action by Plaintiff, the Secretary of Labor of the United States Department of Labor ("DOL"), brought against two multiple-employer trusts and others, alleging breach of their fiduciary duties under the Employee Retirement Income Security Act for failure to maintain employee welfare benefit plan assets in trust and transferring plan assets into non-trust accounts they controlled.  Before the Court is Defendant John J. Koresko's ("Koresko") Motion for Reconsideration[1] of the Court's Order of Contempt issued April 26, 2016 (ECF No. 1307).

---

[1] As discussed *infra*, although Koresko styles his papers as a motion pursuant to the All Writs Act, *habeas corpus*, and other provisions, the numerous letters and other correspondence sent to the Court are more appropriately considered together as one motion for reconsideration.

I.      **FACTS**

**A. Background**

This case has a long and difficult history stretching back more than seven years, during which time the Court has overseen numerous motions, requests for injunctions, hearings, and an eventual trial.  In the interest of clarity of the events preceding the instant Motion, and because the Court writes primarily for the parties, the Court assumes the reader had familiarity with the underlying facts and previous decisions in this case: *Solis v. Koresko*, 884 F.Supp.2d 261 (E.D. Pa. 2012) and *Perez v. Koresko*, 86 F.Supp.3d 293 (E.D. Pa. 2015), *aff'd sub. nom. Sec'y of Labor v. Koresko*, Nos. 15-2470, 15-3141, -- Fed. Appx. -- , 2016 WL 1358101 (3d Cir. Apr. 5, 2016).

**B. Relevant Procedural History**

On March 6, 2009, the DOL brought suit against Koresko and others  pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the Defendants' oversight and administration of the Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association ("REAL VEBA"), and the Single Employer Welfare Benefit Plan Trusts ("SEWBPT") (collectively, "the Trusts").  On August 3, 2012, the Court found that Koresko, and entities under Koresko's control, committed fiduciary breaches and other ERISA violations in administering the REAL VEBA Trust and by mishandling and misappropriating related plan assets.  *See Solis*, 884 F.Supp.2d at 261.

On June 19, 2013, the DOL moved for preliminary injunctive relief to prevent Koresko from further misappropriating and depleting the Trusts' assets.  The DOL supported the motion with evidence that Koresko used Trust assets to purchase real estate properties in the Caribbean island of Nevis, and that he moved an additional $1.68 million from bank accounts in the United

States containing Trust assets to an account in Nevis in the name of "John J. Koresko Client Escrow."

On July 8, 2013, Koresko appeared at a hearing to oppose the DOL's motion, whereupon he admitted that he had used trust assets to purchase six condominium units in Nevis and had transferred the $1.68 million for the purpose of further investing in the condominium units. Pending a further hearing on the DOL's motion, the Court issued interim orders freezing several bank accounts containing trust assets that were under Koresko's control.  On September 16, 2013, the Court held another hearing at which Koresko provided testimony and additional arguments in response to the DOL's motion.  Koresko testified that he made investments for the Trusts by using Trust assets to purchase real estate property at the Nelson Springs Resort in Nevis.  *See* ECF No. 1283, Ex. B at 90-94.

At the conclusion of the hearing, the Court found that the DOL was likely to succeed on the merits of the ERISA claims against Koresko and that the plan participants and beneficiaries would likely suffer immediate irreparable harm in the absence of an injunction.  In an Order dated September 16, 2013, the Court removed Koresko and others from any positions they held with regard to the Trusts and appointed the Wagner Law Group as the Independent Fiduciary for the trusts.  *See* ECF No. 496.  The Court enjoined Koresko and others from serving the Trusts, their plans, and participants in any capacity and further ordered that "Defendants John J. Koresko, PennMont Benefit Services, Inc., Koresko and Associates, P.C., and Koresko Law Firm, P.C., their agents, employees service providers, accountants, attorneys, and any other party acting in concert with or at their direction shall turn over all assets of the plans and employer arrangements," and "all documentation related to the plans and employer arrangements to the Independent Fiduciary."  The Defendants were also specifically ordered to assign "all rights in

the Nelson Springs condominiums" to the Independent Fiduciary.  *Id.*  In addition to his personal presence at the hearings, Koresko – then a licensed attorney – received notification of the Court's Order through the Court's Case Management/Electronic Case Filing system at his email account "jjkoresko@gmail.com" pursuant to Local Rule 5.1.2.(4)(c).

Koresko failed to provide the Independent Fiduciary with documentation relating to the plans, the location of plan assets, and other relevant information concerning plan finances as directed to by the Order.  On September 27, 2013, the DOL filed its first motion for contempt. On September 30, 2013, the Court issued an Order to Show Cause why the Defendants should not be held in civil contempt and subject to sanctions for their failure to comply with the September 16th Order.  *See* ECF No. 522.  On October 2, 2013, the Court held a contempt hearing at which much of the discussion focused on retention of counsel for Koresko; Lawrence G. McMichael, Esq. ("McMichael"), of Dilworth Paxson, appeared on Korekso's behalf, but did not formally enter an appearance for another two weeks.  *See* ECF Nos. 534, 538.

With the contempt motion pending, Koresko gave deposition testimony on December 17 and 18, 2013, and January 7 and 8, 2014, while represented by counsel.  During these sessions, Koresko testified under oath that with regard to the purchase of the condominiums, "[t]he original intention was that this was going to be a trust investment."  ECF No. 1283, Exh. D at 189.  Koresko also testified that he transferred $1.68 million in trust assets to the Scotia Bank in Nevis under an account titled "John Koresko Client Escrow Account," to facilitate the transfer of funds for construction on condominium properties in Nevis.  *See* ECF No. 1283, Exh. D at 152-53, 176, 189-92.  Koresko admitted that he traveled to Nevis to transfer the funds held in the Scotia Bank to the Royal Bank of Trinidad and Tobago after the Court had ordered the transfer

of funds in Nevis to the Independent Fiduciary.  *See* ECF No. 1283, Exh. E at 152-53, 171-76,

236.

Several weeks after the depositions were taken, on February 27, 2014, the Court directed

the DOL to inform the Court of any outstanding contempt issues.  The DOL filed a supplemental

memorandum regarding Koresko's refusal to turn over certain Trust assets, particularly with

regard to the condominiums and funds in Nevis.  *See* Docket No. 726.  The Court held a second

contempt hearing on April 1, 2014 at which, rather than holding Koresko in contempt, the parties

agreed on language to be included in a court order directing Koresko to sign letters authorizing

the banks in Nevis to give information to the Independent Fiduciary about the accounts held

there.

On June 27, 2014, the Court ordered Koresko to wire transfer the funds in Nevis account

number -3337 to an account used for the administration of the Trusts by July 14, 2014.  *See* ECF

No. 898.  Koresko filed a declaration with the Court on July 11, 2014 stating that the Royal Bank

of Trinidad and Tobago would not wire the Nevis funds into the United States as requested.  *See*

ECF No. 912.  Based on this declaration, the Court granted leave for Koresko to travel to Nevis

for the purpose of arranging the transfer of funds to the Independent Fiduciary in person;

unfortunately, Koresko subsequently was involved in a car accident and was unable to complete

the transaction.

On September 10, 2014, the Court denied the DOL's motion for contempt "except with

respect to Mr. Koresko's failure to transfer to the United States the accounts held in the Nevis

branch of the Royal Bank of Trinidad and Tobago."  ECF No. 990.  The Court further ordered

that Koresko had until October 3, 2014, to transfer the funds in the Nevis account to the United

States or face contempt.  The Court extended the deadline based on Koresko's representations

about his ill health, but ordered that if Koresko could not effectuate the transfer of funds, he would be required to "sign a power-of-attorney, providing the Independent Fiduciary control of the accounts" by October 31, 2014.  ECF No. 1033.

Koresko chose to draft his own power of attorney that was later deemed deficient under Nevisian law.  On December 4, 2014, the Court ordered Koresko to sign a power of attorney already approved by Nevisian counsel no later than December 8th, or face contempt.  *See* ECF No. 1087.  Koresko failed to sign the document but, nevertheless, the Court delayed in holding Koresko in contempt until December 15, 2014 (ECF No. 1098), at which point he was given three days to purge himself of contempt before being required to turn himself in to the Office of the U.S. Marshal.  On the morning of the day Koresko was required to surrender himself, his attorney informed the Court that he had executed the revised power of attorney.  *See* ECF No. 1102.  On December 30, 2014, the Independent Fiduciary confirmed that it had received the signed power of attorney.  *See* ECF No. 1115.

On February 6, 2015, the Court entered judgment in favor of the DOL on all ERISA claims and found that, *inter alia*, the funds Koresko transferred to the Royal Bank of Trinidad and Tobago were the Trusts' assets, and Koresko was the sole signatory on that account.  The Court also made a finding of fact that Koresko transferred the funds from the Scotia Bank to the Royal Bank of Trinidad and Tobago after the appointment of the Independent Fiduciary and the Court's September 16, 2013 Order.  *See Perez*, 86 F.Supp.3d at 350-52.  In addition to other assets misappropriated by Koresko, the Court held that Koresko was required to disgorge and surrender all Trust assets and funds that he had transferred into the Royal Bank of Trinidad and Tobago.

On March 13, 2015, the Court entered a final judgment and order that provided, in part, "[t]o the extent that notwithstanding the September 16, 2013 Order, any assets of the REAL VEBA or SEWBPT remain in the custody or control of any of the Koresko Defendants or third parties, the Koresko Defendants and third parties *shall immediately turn over such assets* to the [Independent Fiduciary] and *such assets shall be permanently retitled* to the [Independent Fiduciary]".  ECF No. 1149 (emphasis added).

## C.  Contempt Motion

On February 9, 2016, the DOL filed its Second Motion for Contempt.  The Court held a status conference between the parties on March 8, 2016 at which Koresko was again represented by McMichael.  In an Order dated March 31, 2016, the Court determined that Koresko was not entitled to indemnification of the cost of legal representation  from the Trusts.[2]  *See* ECF No. 1300.  The Court's Order required Koresko to file a response to the Motion no later than April 14, 2016 and scheduled the hearing for April 26, 2016.

Neither Koresko nor his attorneys appeared for the hearing at which the Court  read an oral opinion from the bench (ECF No. 1321) and found:

1.  On September 16, 2013, the Court issued an Order (ECF No. 496) directing Defendant Koresko to turn over all trust assets and assign all rights in the Nevis condominiums to the Independent Fiduciary.

2.  Koresko was present at the September 16, 2013 hearing that preceded the Court's Order and he took part in the argument between the parties regarding the language of the Court's Order.  *See* ECF No. 1283, Exh. B at 87-111.

3.  Koresko submitted a declaration acknowledging his knowledge of the Court's September 16, 2013 Order (ECF No. 912), and he appealed the Court's September 16, 2013 Order, although the Third Circuit eventually dismissed that appeal as moot.

---

[2] "The Supreme Court has not recognized nor has the Court of Appeals found a constitutional right to counsel for civil litigants."  *Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997); *see also Turner v. Rogers*, 564 U.S. 431 (2011).

4. Koresko was represented by counsel from the law firm of Dilworth Paxson, who responded on his behalf to the DOL's first motion for contempt and related supplemental briefings arising from the Court's September 16, 2013, Order.

5. On June 27, 2014, the Court issued an Order (ECF No. 898) directing Koresko to complete a wire transfer of the funds in Nevis to the Independent Fiduciary.

6. On September 10, 2014, the Court issued an Order (ECF No. 990) directing Koresko to transfer the Nevis accounts to the United States no later than October 3, 2014.

7. On October 15, 2014, the Court issued an Order (ECF No. 1033) directing Koresko to transfer the accounts from Nevis to the United States no later than October 31, 2014.

8. On March 13, 2015, the Court issued an Order (ECF No. 1149) directing Koresko to immediately turn over all REAL VEBA or SEWBPT assets remaining in his custody or control to the Independent Fiduciary.

9. Koresko participated in the Court's Case Management/Electronic Case Filing system, by which he was served at his email account "jjkoresko@gmail.com" pursuant to Local Rule 5.1.2.(4)(c).

10. Koresko used trust assets in the amount of $3.372 million to purchase real property in Nevis at the Nelson Springs resort and moved $1.68 million from bank accounts in the United States containing trust assets to an account in Nevis in the name of "John J. Koresko Client Escrow."

11. Koresko failed to surrender to the Independent Fiduciary the trust assets that were transferred first to the Scotia Bank and then to the Royal Bank of Trinidad and Tobago. Koresko retained custody and control over these funds throughout the pendency of this case, up to and including the Court's final judgment and Order in March 2015. Koresko has the present ability to transfer these funds, but has refused to do so.

12. Koresko failed to assign all rights to the real property in Nevis to the Independent Fiduciary. Koresko has the present ability to assign whatever rights he has in the properties to the Independent Fiduciary, but has refused to do so.

Accordingly, the Court determined that the DOL produced clear and convincing evidence that: Koresko had knowledge of the Order directing him to turn over the assets in the bank account in Nevis along with the assignment of rights, deeds, and indicia of ownership of the real properties in the Nelson Springs Resort condominiums; Koresko had knowledge of the Court's four subsequent Orders reaffirming that directive; Koresko disobeyed the Court's September 16, 2013, Order, as well as the four subsequent Court orders directing Koresko to turn over the

8

aforementioned assets to the Independent Fiduciary; and Koresko has a present ability to comply

with the Order.  Accordingly, the Court found Koresko in contempt and directed Koresko to

surrender himself to the United States Marshals Service on May 4, 2016, until such time as he

complied with the terms of the April 26, 2016  Order ("the Contempt Order").  *See* ECF No.

1307.  The terms of the Contempt Order were, specifically, that Koresko: (1) cause the transfer

of $1.68 million to Wilmington Trust, the Court appointed Independent Fiduciary; (2) cause the

transfer of title for each real property located at Nelson Springs Resort in Nevis, *i.e.* Condo

United 3A, Condo Unit 5B, Condo Unit 5C, Condo Unit 6A, and Condo Unit 6B, to Wilmington

Trust; and (3) transfer title of any lot of land held in the name of John Koresko at Cliff Dwellers

in Nevis to Wilmington Trust.  *Id.*

On May 2, 2016, Koresko provided a thirty-one page document to the undersigned's

chambers (ECF No. 1310), that detailed Koresko's familial difficulties, his objections to ERISA

generally and its application in this matter, his conviction that the Court lacks jurisdiction over

this matter, and constitutional violations that he alleges he has suffered.  He did not, however,

self-surrender as required by the Contempt Order.  On May 5, 2016, the Court issued a bench

warrant for his arrest.  *See* ECF No. 1311.  At the request of the United States Marshals Service,

Koresko presented himself to the Marshals on May 6, 2016 and was confined to custody.  On

May 17, 2016, Koresko's counsel, Lawrence McMichael of Dilworth Paxson, filed a Motion for

Relief from Contempt Order on his behalf (ECF No. 1316), which was subsequently denied.

ECF No. 1333.

At a status conference held on May 18, 2016, McMichael was asked to clarify the extent

of his firm's representation of Koresko.  Koresko himself made an oral motion for this Court to

recuse itself due to an alleged conflict of interest.  *See* ECF No. 1350.  McMichael withdrew his

9

appearance on May 26, 2016 (ECF No. 1328), and the Court denied Koresko's oral motion for recusal on May 27, 2016.  ECF No. 1330.

The Court held status conferences on June 1, June 16, July 5, and August 24, 2016, regarding Koresko's willingness to comply with the Court's Contempt Order and the Department of Labor's suggested path forward.  Koresko, meanwhile, filed various letters, memoranda, and miscellaneous motions on June 20 (ECF No. 1346), July 21 (ECF No. 1362), July 25 (ECF No. 1363), August 9 (ECF No. 1375), August 15 (ECF No. 1379), August 16 (ECF No. 1380), and August 23, 2016 (ECF No. 1385), totaling well in excess of three hundred (300) pages of single-spaced, largely handwritten text.[3]

## II.   DISCUSSION

### A.  Current Procedural Posture

#### 1.  Validity and Authority of the Order

The Court rejects Koresko's arguments challenging the general authority of a district court to compel confinement in a civil[4] contempt matter and the validity of the underlying orders in this case.  *See* ECF No. 1346 at 10, 14, 35, 40-41, 45; 1346-1 at 19, 21; 1346-2 at 5.  It has long been recognized that courts possess the inherent authority to hold persons in contempt, and may utilize a number of methods to secure obedience, including "an indeterminate period of confinement which may be brought to an end only by the contemnor's ultimate adherence to the court order."  *Latrobe Steel Co. v. United Steelworkers of America*, 545 F.2d 1336, 1344 (3d Cir. 1976); *see also United States v. Hudson*, 7 Cranch 32, 34 (1812); *Shillitani v. United States*, 384

---

[3] Although one of Koresko's many complaints is that it is difficult to write motions by hand while confined, it does not appear to have impacted his ability to regularly bombard the Court with hundreds of pages of argument.

[4] Throughout his filings, Koresko frequently – and incorrectly – refers to his predicament as a result of criminal, rather than civil, contempt proceedings. There is a notable difference between the two: "In civil contempt the punishment is remedial, to secure an end; while in criminal the punishment is punitive, to vindicate the authority and dignity of the court. It is not the fact of punishment but the purpose and character of it which distinguishes contempts."  *In re Fox*, 96 F.2d 23, 25 (3d Cir. 1938).

U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt"); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994) ("*Bagwell*").  A defendant incarcerated for civil contempt "carries the keys of his prison in his own pocket."  *Harris v. City of Philadelphia*, 47 F.3d 1311, 1328 (3d Cir. 1995).  As outlined in the Contempt Order, Koresko need only cause the transfer of the $1.68 million, his property interest in the Nevis condos, and the title to the Cliff Dwellers plot, to the Independent Fiduciary to be released from his current confinement.

While Koresko spends much energy in his many filings arguing that the September 2013 Order is invalid, the substantive validity of an order cannot be challenged in a collateral proceeding such as contempt.  *See Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) (citing *United States v. Stine*, 636 F.2d 839, 845 (3d Cir. 1981)).[5]  A fundamental principle of the legal system is that "all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."  *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  A private determination that an order is incorrect, or even unconstitutional, may still result in contempt "even if [that person's] private determination is

---

[5] Koresko repeatedly cites *Montanile v. Board of Trustees of Nat. Elevator Indus. Health Benefit Plan*, -- U.S. --, 136 S.Ct. 651 (2016) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) in support of his argument that the Department of Labor is not entitled to assets outlined in the Contempt Order.  *See* ECF No. 1369 at 1, 4; ECF No. 1379 at 9-12; ECF No. 1385 at 2.  Even if they were applicable here – which they are not, these cases are easily distinguishable.  *Montanile* concerned an administrator of a health plan who sought reimbursement of medical expenses from a participant who had reached a settlement with the drunk driver that injured him.  In that case, the Court held that the plan could only seek equitable relief from specifically identifiable funds in the beneficiary's possession, not from the beneficiary's general assets.  *Id.* at 657-58.  Further, because the defendant had dissipated "the entire fund on nontraceable items, that complete dissipation eliminated the lien."  *Id.* at 659.  Similarly, *Great-West* was an action for specific performance of a reimbursement provision of an ERISA plan seeking to compel the plan beneficiary to provide restitution to the plan.  As the Department of Labor points out, however, the funds and properties in this case are not Koresko's general assets; the Court has already found that these are Trust assets, and Koresko has not offered any evidence that the properties or funds have "dissipate[d]" as they did in *Montanile*.  136 S.Ct. at 659.  *See* ECF No. 496, *Koresko*, 86 F.Supp.3d at 351-52.

later proven correct in the courts." *Walker v. City of Birmingham*, 388 U.S. 307 (1967); *see also Howat v. Kansas*, 258 U.S. 181 (1922).

Koresko's related contention that equity provides no basis for coercive contempt (ECF No. 1346 at 39-40) is also misplaced.  A court in equity acts *in personam* on the parties before it, which has always included the power to issue decrees, in terms of a personal command, to the defendant to return property under pain of imprisonment.  *See Bagwell*, 512 U.S. at 841 (Scalia, J., concurring); John Norton Pomeroy, 1 *Treatise on Equity Jurisprudence* § 428 at 469 (Bancroft-Whitney Co. 1886).  The Seventh Circuit recently addressed a very similar case in which the defendant "lodge[d] a host of procedural objections to the contempt proceedings . . . for example, that [the plaintiffs] lacked standing to pursue contempt sanctions. This argument is frivolous. The judgment requires [the defendant] to restore money to the [plaintiff], and [the plaintiff] is the administrator of the plan . . . It's well established that an equitable decree of restitution in an ERISA case may be enforced by contempt."  *Chesemore v. Fenkell*, No. 14-3181, 2016 WL 3924308, at *11 (7th Cir. July 21, 2016).

### 2.  *Habeas Corpus* Relief

Although a person incarcerated for civil contempt meets the "in custody" requirement for purposes of invoking *habeas corpus* jurisdiction  (*see e.g.*, *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 23 (1st Cir. 1991); *Duncan v. Walker*, 533 U.S. 167, 176 (2001)), *habeas corpus* review generally "will not be allowed to do service for an appeal."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation omitted); *see also Matin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983) (holding that absent extraordinary circumstances, "all available routes of appeal must be exhausted before a person imprisoned for civil contempt . . . can avail himself of *habeas corpus* relief"); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (same).  Here, Koresko's petition

12

for *habeas corpus* is deficient on several levels: Koresko has not used the standard form provided by the court as required by Local Rule 9.3(a); he has not identified the correct respondent, the warden of his correctional institution; and, most importantly, he did not avail himself of the avenues of appeal available to him.  Thus, Koresko is not entitled to *habeas* relief.

### 3.  All Writs Act

Koresko also purports to submit a petition for relief under the All Writs Act, a catch-all statute that permits "all courts established by Act of Congress" to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651; *see* ECF No. 1369 at 6.  A request for a writ pursuant to the All Writs Act is widely recognized as an extraordinary measure that should be rarely, "if ever," granted.  *In re United States*, 273 F.3d 380, 385 (3d Cir. 2001) (citing *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973)); *see also In re Balsimo*, 68 F.3d 185, 186 (7th Cir. 1995); *Will v. United States*, 389 U.S. 90 (1967).  The "exceptional nature" of the statute has naturally resulted in a dearth of case law, and Koresko has not identified any precedent in which the statute was applied in a civil contempt matter or any real analysis as to why this is the rare instance where the Court should reach for such an extraordinary measure; therefore, Koresko has failed to demonstrate that he is entitled to relief under the All Writs Act.  *In re United States*, 273 F.3d at 385.

### 4.  Service

Koresko also claims that he was not served with notice of the contempt proceedings, arguing that email is insufficient to complete service pursuant to the Rules Enabling Act.  *See* ECF No. 1362 at 2, 14; ECF No. 1385 at 3-4; ECF No. 1379 at 26.  From October of 2013 through May 26, 2016, Koresko was represented by counsel.  *See* ECF No. 538 (Notice of

Appearance by Lawrence G. McMichael); ECF No. 1328 (Notice of Withdrawal by Lawrence G. McMichael).  If a party is represented by an attorney, service "must be made on the attorney unless the court orders service on the party."  Fed. R. Civ. P. 5(b)(1).  The Department of Labor served Koresko's attorney, McMichael, with a copy of the Second Motion for Contempt, in accordance with the Federal Rules.  *See* ECF No. 1283 at 20.  Beyond serving his attorney, Koresko himself received electronic service and copies of all filings.  The United States District Court for the Eastern District of Pennsylvania has created a Case Management/ Electronic Case Filling ("ECF") system, and adopted Local Rule 5.1.2.(4)(c), which reads:

> Registration as an ECF Filing User constitutes agreement to receive and consent to make electronic service of all documents as provided in these ECF Procedures in accordance with Rule 5(b) (2) (D) of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, as referenced in Rule 49(b) of the Federal Rules of Criminal Procedure. This agreement and consent is applicable to all future cases until revoked by the ECF Filing User.

*See also* Fed. R. Civ. P. 83 ("a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice").  Koresko's subsequent disbarment notwithstanding, he did enter an appearance on his own behalf in this case in April 2009 and has since received ECF notifications at his email address "jjkoresko@gmail.com."  *See* ECF No. 44 (Notice of Appearance by John J. Koresko, V).  Thus, Koresko's complaint that he has never been properly served is meritless.

### 5. Frivolous Filings

Koresko's filings alternate between letter and motion formats, and are variously titled a motion for relief, a motion to set aside the order of contempt, a motion under the All Writs Act, and a petition for a writ of *habeas corpus*.  While it is apparent that, at core, Koresko seeks reconsideration of the contempt order, his remaining complaints – ranging in topic from

government propaganda to personal medical issues – are patently frivolous, and the Court cannot discern any other legitimate claims from his submissions.  The inclusion of these lengthy, unfocused passages has both strained the Court's resources and obfuscated Koresko's arguments. Where a party repeatedly submits frivolous motions and petitions that result in an undue burden on a district court's time, he may be prohibited from filing any other actions in that case without leave of the district court.  *See Matter of Packer Ave Assoc.*, 884 F.2d 745, 748-49 (3d Cir. 1989) ("*Packer Ave.*"); *see also Thrower v. Beacon Journal Pub. Co.*, 985 F.2d 561 (6th Cir. 1993); *Hurt v. Social Security Admin*. 544 F.3d 308, (D.C. Cir. 2008).  This restriction "strikes a good balance between the right of the litigant to access to the courts . . . and the right of taxpayers not to have a frivolous litigant become an unwarranted drain on their resources." *Packer Ave.*, 884 F.2d at 748-49.  Accordingly, Koresko, whose profuse and frivolous filings have already taken up disproportionate amounts of the Court's time and resources, shall be prohibited from filing any further motions (however the document is styled) without leave of court.

**B. Standards**

As stated at the outset, the Court's best interpretations of the remaining contents of Koresko's letters, motions, and memoranda, is that he is seeking reconsideration of the Contempt Order.  The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Motions for reconsideration should only be granted "sparingly" and are to be "strictly reviewed" by district courts. *Velazquez v. UPMC Bedford Memorial Hosp.*, 338 F.Supp.2d 609, 611 (W.D. Pa. 2004).

In entering the Contempt Order, the Court concluded that the DOL had proved by clear and convincing evidence that: (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order.  *See FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 (3d Cir. 2010).  The Court's rationale was set forth in its oral opinion from the bench at the conclusion of the hearing on the Motion for Contempt.  *See* ECF No. 1321.

Beyond the frivolous and meritless objections discussed *supra*, Koresko has not offered any newly-discovered evidence or asserted any manifest errors of law or fact that would warrant reconsideration.  A motion for reconsideration should generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Koresko having failed to do so, the motion is denied.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**