IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, AND THE UNITED STATES DEPARTMENT OF LABOR<br>        Plaintiffs,<br><br>v.<br><br>JOHN J. KORESKO, V, JEANNE BONNEY, PENN-MONT BENEFIT SERVICES, INC., KORESKO & ASSOCIATES, P.C., REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST, AND SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST<br>        Defendants,<br><br>v.<br><br>CHARLES PARSONS, PARSONS & ASSOCIATES CHARTERED WELFARE BENEFIT PLAN<br>        Movants. | CIVIL ACTION<br><br>NO. 09-988 |

## MEMORANDUM OPINION

        Charles Parsons and the Charles Parsons & Associates Chartered Welfare Benefit Plan ("the Plan" or "the Parson Plan") (together, the "Intervenors") move for approval of a settlement of claims against Athene Annuity and Life Insurance Company ("Athene"). This settlement arises in the aftermath of a scheme to convert welfare benefit funds that was perpetrated by John Koresko and various associates – a scheme that has spawned multi-year, multi-party and multi-matter litigation. The Plan, which was enmeshed in the scheme, had purchased an insurance

policy on Charles Parsons' life (the "Policy"). In 2000, Koresko arranged for the owner and beneficiary of the Policy to be changed to a trust that he controlled – the REAL VEBA. In 2006, Koresko again arranged for the owner and beneficiary of the Policy to be changed, this time to a different trust he controlled – the SEWBPT. Then, in 2008 the Policy was converted into term insurance and allowed to lapse due to non-payment of premiums, which led to the depletion of virtually the entire cash value in the Policy. Intervenors discovered these changes in early 2016, at which time they also learned that the Policy was about to terminate and could not be reinstated. The proposed settlement contemplates a payment in the amount of $355,000 from Athene to the Parson Intervenors and a release by the Parson Intervenors of Athene.

On February 6, 2015, Koresko and various associates were found to have violated their fiduciary duties under ERISA. *Perez v. Koresko*, 86 F. Supp.3d 293 (E.D. Pa. 2015) ("*Perez*") *aff'd,* 646 F. App'x. 230 (3d Cir. 2016). Soon thereafter, the Court appointed Wilmington Trust as the Trustee for the assets of the welfare benefit funds affected by the Koresko scheme (the "Trust"), and Marcum LLC to provide forensic accounting services. Marcum then proposed a Unified Model for distribution of the Trust's assets (the "Model").

Affected parties were provided a description of the Model and told whether their plan would be categorized as "open" or "closed" under the Model – only open plans would participate in the distribution. Magistrate Judge Hey then held a hearing where Marcum explained the Model, and, along with the Department of Labor, responded to questions from plan sponsors and other interested parties. Parties were given the opportunity to file objections to the Model, to a plan's designation as either open or closed, or to a plan's inclusion in the Trust. Magistrate Judge Hey then issued a Report and Recommendation addressing each objection, and parties had the opportunity to file objections to the Report and Recommendation with this Court. Having

reviewed and ruled on all such objections, this Court adopted the Model. Upon approval of the Model, the plans each received individualized notices of how the distribution method in the Model would be applied to them. Once again, a process was in place for any plan to raise objections. The Parsons Plan was categorized as open; the Parsons Intervenors neither objected to the Model itself, nor to the categorization of the Parsons Plan as open, nor to the application of the distribution model to them.

The principal question before the Court is whether the payment can be distributed directly to the Parsons Intervenors – as the parties request – or instead must be distributed through the Trust.

Intervenors and the Department of Labor offer several reasons in support of distributing the settlement amount directly to Intervenors. First, Intervenors argue that the Plan should be characterized as "closed" and therefore should not be deemed to participate in the Court's equitable distribution of Trust assets. Second, Intervenors argue that because they never participated in the underlying case, they are not bound to the ruling in that case, which held that each of the 533 plans that participated in Koresko's scheme "holds an undivided beneficial interest in each of the [REAL VEBA's and SEWBPT's] underlying assets and each of these underlying . . . assets is a plan asset of each of the[] 533 plans," *id.* at 378. Finally, the Department of Labor argues that because the Policy was lapsed when the Court appointed Wilmington Trust, the Policy was not a part of the Trust at that time and therefore not subject to the Court's determination that each of the plans has an undivided beneficial interest in the Trust.

Intervenors argue that whether the settlement can be distributed to the Plan or to the Trust "turns on whether the plan is most properly characterized as closed or open," because only open plans are a part of the equitable distribution. According to the Model, closed accounts were

3

either plans that: (1) "voluntarily ceased participation in the [REAL VEBA and SEWBPT] upon cessation of payment of premiums or other amounts due"; (2) "ha[d] been engaged in litigation with PennMont that resulted in an adjudicated resolution that may have resulted in distribution of cash or insurance policies to part[ies] opposing PennMont";[1] or (3) had "policies understood to be owned by [REAL VEBA or SEWBPT]." Intervenors offer several "factors" that support a closed status for their Plan, including that they believe no premium payments were made on the Policy beyond the initial premium paid when the Policy was originally purchased, that once the Policy lapsed in 2008 the Plan was destined to terminate in early 2016, that the Trust has not incurred any expenses related to the Plan since the independent fiduciary assumed control of the Trust, that Koresko treated the Plan as closed beginning in 2012, and that the underlying claim here is a claim personal to Intervenors.

Whether or not these arguments are persuasive on the merits, Intervenors already had the opportunity to raise objections to their open status. Indeed, as described *supra*, they could have objected to how the Model categorized plans generally, to their own specific categorization as open, to the application of the Model distribution methodology to them, as well as to any Report and Recommendation of Magistrate Judge Hey to any of these issues. Unlike various other plans, *see, e.g.*, ECF No. 1439 (Omni Management and Consulting objecting to its plan's "closed" designation), Intervenors did not object, and therefore have waived their opportunity to assert that the Plan should be classified as closed. *See United States v. Georgiou*, 777 F.3d 125, 147 (3d Cir. 2015) (finding waiver where party failed to object despite opportunity to do so).

Intervenors argue that because they were not parties to the underlying case, *Perez v. Koresko*, *supra*, that case does not control the distribution of settlements or judgments related to

---

[1] Penn-Mont Benefit Services, Inc., an entity controlled by John Koresko and his associates, arranged the establishment of the Parson Plan.

claims arising under the Parsons Plan. To the contrary, however, the Parsons Plan was a part of the REAL VEBA/SEWBPT and, as such, "holds an undivided beneficial interest in [the REAL VEBA's and SEWBPT's] underlying assets and each of these underlying . . . assets is a plan asset of each of the[] 533 plans," 86 F. Supp.3d at 378.

In further support of their contention, Intervenors also point to the Court's Order that accompanied the *Perez* opinion, which noted: "The exact method of determining the benefit(s) owed by the Trust[] to participants or beneficiaries in any given situation is a question of fact and law to be addressed and decided in the case(s) before the Court." That language, however, merely reflects the fact that the Model had not yet been approved and thus the mechanics for distributing Trust assets still needed to be resolved; it does not cast doubt on the Court's determination that the plans each hold an undivided beneficial interest in the underlying assets.

The Department of Labor argues that because the Policy lapsed in 2008 it was neither a part of the Parsons Plan nor a part of the REAL VEBA and SEWBPT when the independent fiduciary assumed control of the welfare benefit plan assets, and that therefore the "other plans under the Trust do not have a 'community of interest' in the lapsed policy" that could create equity jurisdiction. The upshot, according to the Department, is that "the Parsons parties' settlement [is] outside the Court's prior undivided beneficial interest ruling."

This argument cannot succeed for two reasons. First, the fact that the Policy had lapsed does not negate that there is a community of interest. Indeed, the motion here evidences that the Policy carried value after its lapse insofar as parties could use it as leverage to negotiate a settlement and release of claims.

Second, the Policy is not the correct unit of analysis. Instead, focus on the Plan – which clearly was covered by the *Perez* opinion – is more appropriate because the settlement between

Intervenors and Athene turns primarily on the connection between the plans and the REAL VEBA and SEWBPT, not the connection between plans and individual policies.

Accordingly, the Motion for Approval of the Settlement Agreement will be denied. An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**_____**
**WENDY BEETLESTONE, J.**

**November 5th, 2018**