IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, AND THE UNITED STATES DEPARTMENT OF LABOR<br>　　　　Plaintiffs,<br><br>v.<br><br>JOHN J. KORESKO, V, JEANNE BONNEY, PENN-MONT BENEFIT SERVICES, INC., KORESKO & ASSOCIATES, P.C., REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST, AND SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST<br>　　　　Defendants,<br><br>v.<br><br>CHARLES PARSONS, PARSONS & ASSOCIATES CHARTERED WELFARE BENEFIT PLAN<br>　　　　Movants. | CIVIL ACTION<br><br>NO. 09-988 |

## MEMORANDUM OPINION

Charles Parsons and the Charles Parsons & Associates Chartered Welfare Benefit Plan ("the Plan" or "the Parson Plan") (together, the "Intervenors") move the Court to reconsider or clarify its earlier opinion and order, ECF Nos. 1796 & 1797, denying approval of a settlement of claims against Athene Annuity and Life Insurance Company ("Athene").

**I.　　Background**

The genesis of this dispute is somewhat thorny. The settlement itself arose in the aftermath of a scheme to convert welfare benefit funds perpetrated by John Koresko and various

1

associates—a scheme that has spawned multi-year, multi-party and multi-matter litigation. The Plan, which was enmeshed in the scheme, had purchased an insurance policy on Charles Parsons' life (the "Policy"). In 2000, Koresko arranged for the owner and beneficiary of the Policy to be changed to a trust that he controlled—the REAL VEBA. In 2006, Koresko again arranged for the owner and beneficiary of the Policy to be changed, this time to a different trust he controlled—the SEWBPT. Then, in 2008 the Policy was converted into term insurance and allowed to lapse due to non-payment of premiums, which led to the depletion of virtually the entire cash value in the Policy. Intervenors discovered these changes in early 2016, at which time they also learned that the Policy was about to terminate and could not be reinstated.

On February 6, 2015, Koresko and various associates were found to have violated their fiduciary duties under ERISA. *Perez v. Koresko*, 86 F. Supp.3d 293 (E.D. Pa. 2015) ("*Perez*") *aff'd,* 646 F. App'x. 230 (3d Cir. 2016). Soon thereafter, the Court appointed Wilmington Trust as the Trustee for the assets of the welfare benefit funds affected by the Koresko scheme (the "Trust"), and Marcum LLC to provide forensic accounting services. Marcum then proposed and, after opportunity for objection by affected parties, the Court adopted a Unified Model for distribution of the Trust's assets.

On June 13, 2018, Intervenors moved for approval of a settlement of claims against Athene Annuity and Life Insurance Company. The proposed settlement contemplated a payment in the amount of $355,000 from Athene to Intervenors and a release of Athene from any claims by both Intervenors and the Trust.

The Court ordered Intervenors and the Department of Labor to file briefs addressing whether settlement proceeds should be distributed directly to Intervenors, or whether they should be distributed to the Court-appointed Trust. Both Intervenors and the Department argued that the

settlement should be distributed directly to Intervenors rather than distributed to the Trust. The Court ultimately denied the motion for approval of the settlement, largely on the basis that "the Parsons Plan was a part of the REAL VEBA/SEWBPT and, as such, 'holds an undivided beneficial interest in [the REAL VEBA's and SEWBPT's] underlying assets and each of these underlying . . . assets is a plan asset of each of the . . . plans." *Acosta v. Koresko*, 2018 WL 5811461, at *3 (E.D. Pa. Nov. 5, 2018) (quoting *Perez*, 86 F. Supp.3d at 378). Intervenors then filed the currently pending motion for reconsideration and clarification. Intervenors' motion, in addition to addressing Intervenors' settlement with Athene, also noted that Intervenors' counsel Ira Silverstein was working to settle other "stand alone" matters related to the underlying Koresko litigation; Attorney Silverstein, through the motion, requested "guidance" as to how settlement of these lawsuits "will be handled." The Court ordered Attorney Silverstein to show cause why the Court's approval was not required for such "stand alone" settlements and why the proceeds from such settlements should not be distributed through the Trust. Attorney Silverstein responded, as did the Department of Labor, offering various reasons for distributing proceeds directly to the parties rather than through the Trust.

Before the Court now is Intervenors' motion for reconsideration and clarification. The Court maintains that the settlement cannot be approved in its current form. However, having considered the parties' additional arguments, the Court concludes that the reasons that the settlement cannot be approved differ from those outlined in the Court's initial opinion. Therefore, the Court will vacate that initial opinion (ECF No. 1796), but the settlement will nevertheless not be approved.

**II.     Analysis**

"The purpose of [a motion for reconsideration] is to correct a clear error of law or to

3

prevent a manifest injustice[.]" *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

Intervenors raise two legal questions: (1) in what circumstances settlements of claims between private parties (here, Intervenors and Athene) that arise out of the Koresko scheme require Court approval, and (2) whether the proceeds of such settlements may be distributed directly to Intervenors or instead must be distributed by the Trust.

As a general matter, "settlement agreements are creatures of private contract law." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011). However, under certain circumstances, such as "any settlement of a certified class," *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)), settlement requires court approval.

Intervenors sought Court approval because the negotiated settlement between Intervenors and Athene contemplates release of all claims by the Trust (as well as, of course, release by Intervenors). Had the settlement not contemplated such a release—as Attorney Silverstein represents is the case in various other negotiated settlements related to the Koresko litigation—there would have been no legal obligation to seek Court approval of the settlement.

Here, however, Intervenors were indeed required to seek Court approval because they seek to bind a third party—the Trust—to their agreement. While the Court takes no position as to whether the Trust indeed possesses claims that could be released, the Court cannot approve a settlement that requires the Trust to release such claims. For one, the Court is not the trustee of the Trust. *See* ECF No. 1242 (appointing Wilmington Trust as trustee with the instruction to "exercise full authority and control of the trust assets"). For another, because each plan "holds an undivided beneficial interest in each of the [Trust's] underlying assets and each of the[] underlying Trust assets is a plan asset of each of [the] plans," *Perez*, 86 F. Supp.3d at 378, releasing the claims could entail prejudice to the other plans with interests in the Trust.

4

As to the distribution of settlement proceeds, the resolution of this second issue flows from the resolution of the first. There is no dispute that private negotiations regarding private claims can generate private settlements. Moreover, there is no indication that allowing individuals to negotiate settlements in private and to receive the proceeds of those settlements would prejudice the Trust (or plans with interests in the Trust) in recovering funds misappropriated by Koresko. These two potential sources of recovery—the equitable distribution from the Trust via the Unified Distribution Model, on the one hand, and, on the other, settlements (or judgments) won by plaintiffs (or, in this case, the Parsons Intervenors) against insurers—are entirely separate. Therefore, settlements negotiated by private parties against private entities, such as the various "stand-alone" suits to which Attorney Silverstein refers in his briefing, need not be distributed through the Trust and rather may be distributed directly to plan sponsors. And because these "stand-alone" settlements are merely contracts between two private actors, nothing about such settlements will affect the Trust's ability to pursue claims it believes it has against any actor party to the settlement.

In sum, the Court's previous opinion, ECF No. 1796, will be vacated, but the order denying the motion to approve the settlement, ECF No. 1797, remains in force.

An appropriate order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**

_____
**WENDY BEETLESTONE, J.**

**February 11, 2019**