## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| SECRETARY OF LABOR, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 09-988 (WB/ETH) |
| | ) | |
| JOHN J. KORESKO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAN SPONSORS' MOTION FOR AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and Section 502(g) of the Employee Retirement Income Security Act ("ERISA"), undersigned counsel, on behalf of Cavaliere Professional PC; Crandall Investments, Inc.; James M. LaRose, D.O. & Associates; Omni Management and Consultants Unlimited, Inc.; Brigham City Arthritis Clinic; John Roland Enterprises, Inc.; FBSS f/b/p Joanna Roland; and Perfume Center of America, Inc. (collectively, the "Plan Sponsors") respectfully move this court to compel Wilmington Trust Co. ("Wilmington") to reimburse Plan Sponsors for the attorney fees expended in objecting to Wilmington's unauthorized decision to improperly withhold taxes from the distributions owed to all of the Trusts' participants, and for other and further relief as this Court deems just and proper. In support, Plan Sponsors submits a memorandum of law which is incorporated below.

## MEMORANDUM OF LAW

Attorney fees are appropriate where a claimant has shown "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158, 176 L. Ed. 2d 998 (2010) (citation and internal quotation marks omitted).

1

In its order on August 9, 2019, (Dkt. #1867), this Court adopted the remedies set forth in Plan Sponsors' original objection, (Dkt. #1788), and their subsequent joint response with other plan sponsors, (Dkt. #1828). Specifically, this Court ordered that Wilmington take no further withholdings, including withholdings for employer tax obligations; that Wilmington shall issue Form 1099-MISC in connection with all future distributions and shall issue this form in connection with all past distributions; and that Wilmington shall distribute to plan sponsors, plans, and participants the funds that were previously set aside for tax obligations. (Dkt. #1867). Over Wilmington's objections that its withholdings were proper, (Dkt. #1836), Plan Sponsors argued in favor of these same remedies, (*see, e.g.,* Dkt. #1828, at 10, 15) on the grounds that Wilmington was not an "employer," the distributions were not taxable as wage income, and proper taxation had already been assessed on many of the plans in separate settlement agreements with the IRS, (*see, e.g.*, Dkt. #1788, at 3–7; Dkt. #1828, at 2–15). Ultimately, this Court adopted the arguments and remedies proposed by Plan Sponsors and found that Wilmington was not entitled to retain the previously withheld amounts. (Dkt. #1867). Thus, Plan Sponsors have clearly obtained some success on the merits and are therefore eligible for attorney fees.

Wilmington is a fiduciary that owes a duty of loyalty and prudence to the participants and beneficiaries of the trust it oversees. *See* 29 U.S.C. § 1104(a); *see also* Restatement (Third) of Trusts §§ 77–78. Wilmington breached these duties by placing its own interests in pursuing misguided and inaccurate efforts of self-protection above the interests of Plan participants and beneficiaries by improperly withholding funds that belong to the Plans without Court permission and without any basis in tax law that justified the withholdings. No set amount of attorney fee award is provided under ERISA. Thus, in determining that amount to award in attorney fees to

participants and beneficiaries who have been injured by breaching fiduciaries, district courts in the Third Circuit must consider the following five factors:

> (1) the offending parties' culpability or bad faith;
> (2) the ability of the offending parties to satisfy an award of attorneys' fees;
> (3) the deterrent effect of an award of attorneys' fees against the offending parties;
> (4) the benefit conferred on members of the pension plan as a whole; and
> (5) the relative merits of the parties' position.

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 254 (3d Cir. 1994).

A.  Culpability

Wilmington is wholly culpable for its actions. Wilmington was appointed in August 2015 a trustee responsible for (among other responsibilities) Plan tax compliance. *See* Dkt. #1242. It was put on notice as early as June 2017 that the Trusts may have tax obligations related to distributions. *See* Dkt. #1519. But it was not until May or June 2018 that Wilmington bothered to seek outside counsel regarding the withholdings. *See* Hearing Transcript, November 3, 2018, at pp. 33–34, 40. Wilmington had not sought any tax advice from any advisor prior to that point. *Id.* Wilmington did not even bother to confer with its own internal tax support team. *Id.* at pp. 37–38.  Wilmington then proceeded to unilaterally withhold nearly $4 million from the Trusts for distributions that had already been made. *See* Dkt. #1773. Trust participants and beneficiaries were only alerted because the Department of Labor objected to the improper and unauthorized withholding. *See id.*

At multiple points, Plan Sponsor's counsel alerted both Wilmington and Wilmington's counsel that several of Plan Sponsors had already entered into settlement agreements with the IRS, and, that in any event, the distributions should not be viewed as wages subject to withholding. *See* Affidavit of W. Waldan Lloyd, attached as Exhibit B. In conversations with Wilmington and Wilmington's counsel it became clear that Wilmington was interested only in

protecting itself by maximizing withholdings in order to avoid any perceived liability. *Id.* Despite Wilmington's clear knowledge at this point of the taxes that had already been paid by Plan Sponsors through settlement agreements, Wilmington continued to pursue its own withholding scheme—despite the double taxation it was now aware would result. *See id.*

Wilmington had innumerable opportunities in the four years that it had been acting as a trustee to correctly determine the appropriate way to fulfill its tax obligations regarding distributions. For example, with several million dollars at stake, Wilmington could have sought a Private Letter Ruling from the IRS addressing this specific issue. It instead waited until after distributions had begun to address the issue, and then selected a course of action that was inappropriate. After being alerted to the inappropriateness of the course of action it unilaterally chose by the Department of Labor and by Plan Sponsors, Wilmington unsuccessfully continued to push its unfounded scheme forward in briefing before this Court. Plan Sponsors incurred burdensome fees in preventing Wilmington's improper scheme, and, as the party culpable for the breach in the first place, Wilmington should be required to reimburse these fees.

B.  Ability to satisfy an award

Wilmington is more than capable of repaying such attorney fees. According to its own publicly available marketing documents, Wilmington is part of the M&T Bank Corporation, "[o]ne of the 20 largest independent commercial bank holding companies in the U.S." and which oversees $121.6 billion in assets.[1] As a professional trustee, Wilmington has received hundreds of thousands of dollars in compensation in this action alone and can afford to remedy the breach it caused by its failure to solicit formal IRS advice, consider other withholding strategies, or consider the facts presented such as the existence of previous settlement agreements.

---

[1] "The Wilmington Trust Advantage," *available at* https://www.wilmingtontrust.com/repositories/wtc_sitecontent/PDF/Wilmington_Trust_Corporate_Fact_Sheet.pdf.

C.  Deterrence

An attorney fee award would act as a deterrent to Wilmington in the future. As a professional trustee, it is likely Wilmington will be in a position like this again where it is responsible for tax compliance of the trusts it oversees. By asking Wilmington to pay for its imprudence, Wilmington will be on notice that it cannot take such a cavalier and self-serving position regarding tax obligations in the future.

D.  Benefit conferred

Plan Sponsors should have their attorney fees reimbursed because Plan Sponsors' actions have benefitted all participants and beneficiaries in this case and not just themselves.[2] Plan Sponsors were among only a handful of the participants and beneficiaries in this action to fully brief the tax issues before this Court. Plan Sponsors were the first to provide a comprehensive response to the Department of Labor's objection to Wilmington's actions and to propose the 1099-MISC reporting remedy ultimately adopted by this Court. *See* Dkts. #1788, 1828. All participants and beneficiaries will benefit from this Court's Order barring Wilmington from making future withholdings, ordering the issuance of Forms 1099-MISC, and compelling the redistribution of funds that were previously and improperly taken from participants and beneficiaries by Wilmington. *See* Dkt. #1867. Plan Sponsors should not be left uncompensated for its efforts in briefing that led to this outcome or left uncompensated in its efforts to object to a scheme by Wilmington that would have harmed all participants and beneficiaries.

---

[2] Plan Sponsors can also make an argument for recovery of attorney fees under the "common fund doctrine" which permits a litigant "who recovers a common fund for the benefit of persons other than himself or his client" to "a reasonable attorney's fee from the fund as a whole." *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Here, Plan Sponsors acted for the benefit of all participants and beneficiaries in seeking to have Wilmington return the entire $4 million in funds withheld, and not just those funds that represented Plan Sponsors' portion. However, Plan Sponsors believe that Wilmington, and not the funds of fellow participants and beneficiaries, is the appropriate source of funding for the expended attorney fees as it is Wilmington, and not the other participants and beneficiaries, that is culpable for the improper withholding.

E.   Relative merits

Finally, as discussed above, Plan Sponsors have shown that they were correct on the merits in their opposition to Wilmington's proposed future withholdings and the taking of previous withholdings. This Court properly determined, as argued by Plan Sponsors, that withholdings were improper and that any prior withholdings should be recovered and redistributed. *Compare* Dkt. #1788 (arguing that withholdings should be returned because distributions were not wage income and that Wilmington's withholdings based on perceived employer tax liability were improper), *with* Dkt. #1867 (ordering return by Wilmington of previous withholdings). Wilmington, on the other hand, did not prevail on the merits as its proposal to retain the withholdings and to pay employer FICA taxes from these funds and was wholly rejected.[3] *Compare* Dkt. #1811 (Wilmington requesting this Court to ratify its decision to withhold funds and stating that trust assets "are the appropriate sources of employer FICA"), *with* Dkt. #1867 (ordering that Wilmington shall "not set aside or withhold any of the Trusts' assets for possible employer tax obligations"). Award of all attorney fees expended by Plan Sponsors is therefore justified as all five factors under *McPherson* can be analyzed in favor of Plan Sponsors.

Wilmington acted imprudently by failing to consult with the IRS, take individual settlement agreements into account, applying self-serving withholding calculation across all plan participants, and proceeding with its withholding scheme without first obtaining Court permission. Plan Sponsors have spent roughly $18,754 in attorney fees opposing Wilmington's

---

[3] In addition, Wilmington should be barred from seeking reimbursement of any attorney fees it incurred. Such fees were incurred to defend Wilmington's personal interests due to the failure to competently or prudently address this issue. Such expenses incurred at the expense of participants in seeking to retroactively address the previous failure are not proper expenses of trust administration. *See* Restatement (Second) of Trusts § 244 (stating that trustees can seek reimbursement only for fees "properly incurred" in trust administration).

imprudent actions, not including the fees that will be incurred in bringing this motion. This expense to Plan Sponsors is wholly unnecessary and unjust and could have been avoided had Wilmington acted in a prudent manner more befitting of a fiduciary. In opposing Wilmington's actions and aiding in the prevention of further harm to all plan sponsors, plans, and participants, Plan Sponsors should not have to endure further diminishment of their assets.

## CONCLUSION

For the foregoing reasons, Plan Sponsors request that the Court grant Plan Sponsors' request for attorneys' fees and award attorneys' fees in the amount of $18,754 plus any fees incurred in bringing this motion.

Respectfully submitted,

/s/ W. Waldan Lloyd
W. Waldan Lloyd
**DURHAM JONES & PINEGAR**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Phone: (801) 297-1330
Fax: (801) 415-3500
Email: wwlloyd@djplaw.com

7

## CERTIFICATE OF SERVICE

I certify that on August 22, 2019, I electronically filed the foregoing **PLAN SPONSORS' MOTION FOR AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES** with the Clerk of Court by using the CM/ECF system, which will provide notice and an electronic link to this document to all registered CM/ECF users.

/s/ W. Waldan Lloyd
W. Waldan Lloyd

8

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R. ALEXANDER ACOSTA,                    )
SECRETARY OF LABOR, et al.              )
                                        )
    Plaintiffs,                         )
                                        )
    v.                                  )      CIVIL NO. 09-988 (WB/ETH)
                                        )
JOHN J. KORESKO, et al.,                )
                                        )
    Defendants.                         )

## [PROPOSED] ORDER GRANTING CERTAIN PLAN SPONSORS' MOTION FOR ATTORNEYS' FEES

Having considered the motion of Cavaliere Professional PC; Crandall Investments, Inc.; James M. LaRose, D.O. & Associates; Omni Management and Consultants Unlimited, Inc.; Brigham City Arthritis Clinic; John Roland Enterprises, Inc.; FBSS f/b/p Joanna Roland; and Perfume Center of America, Inc. ("Certain Plan Sponsors") for attorneys' fees, it is **HEREBY ORDERED** that:

1. CERTAIN PLAN SPONSORS' MOTION FOR AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES is **GRANTED.**

2. Attorneys' fees in the amount of $18,754 plus the amount of fees incurred by Certain Plan Sponsors in bringing this motion are hereby awarded to Certain Plan Sponsors.

**IT IS SO ORDERED.**

Dated: This ____ day of ____, _____.

_____

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN J. KORESKO, V, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 09-988 (WB/ETH) |

## AFFIDAVIT OF W. WALDAN LLOYD

W. Waldan Lloyd, being first duly sworn upon his oath, deposes and states as follows:

1.   On September 26, and again on October 1, 2018, I prepared and submitted emails to Doug Marmion at Wilmington Trust, in which I explained that my firm represented a number of clients whose funds continued to be held by Wilmington as the trustee of the court-directed trust in the above captioned matter.

2.   I pointed out in those emails that, contrary to Wilmington's views, pursuant to IRS settlement agreements with my clients, the funds Wilmington held should not be viewed as wages subject to withholding.

3.   I also attached a redacted copy of a settlement agreement between one of my clients and the IRS, which evidenced and supported my clients' position that treating a distribution from the court-established trust as wages was inappropriate and improper.

4.   Mr. Marmion agreed to conduct a conference call with me and Wilmington's outside legal counsel, to discuss the matter further.

SLC_4465884.1

5.      The conference call took place on October 3, 2018.  Participants on the call included Mr. Marmion, Rachel Shim from Wilmington's outside law firm, Holland & Knight, and myself.  The call lasted approximately one hour.

6.      To my surprise and dismay, rather than consider alternative options and possible solutions for simply reporting distributions from the trust to the IRS, rather than withholding on such distributions, Ms. Shim, on behalf of Wilmington, did nothing more than argue for withholding as the only option, based on her firm's analysis of the Tax Code.

7.      After almost an hour of discussion, it became clear that neither Wilmington nor its counsel were interested in considering any alternative other than withholding when dealing with distribution of the participants' funds in the trust.

8.      It became apparent to me during the course of the call that little or no consideration of Wilmington's fiduciary duties to the trust participants had been given in the analysis done by Holland and Knight.  Instead, the focus of the views expressed by Wilmington counsel (and followed by Wilmington) was entirely on protecting Wilmington's own interests, regardless of the impact on or detriment to the trust participants.

9.      I closed the call by reminding Wilmington and its counsel that as a fiduciary of the trust it was incumbent on Wilmington to act in the trust participants' best interests, not its own. I told Wilmington and its counsel that a prudent fiduciary would look for every possible means to reduce the cost to participants and avoid withholding, especially in light of the settlement agreements many participants had already entered into with the IRS.

**I AFFIRM THAT THE FOREGOING STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

Dated: _8/20/19_                              

                                              _____
                                              W. Waldan Lloyd

STATE OF UTAH              )
                          )    SS:
COUNTY OF SALT LAKE       )

    Before me, a Notary Public in and for said County and State, personally appeared W. Waldan Lloyd, who acknowledged the execution of the foregoing, and who, having been duly sworn, states that the representations contained therein are true.

    Witness my hand and Notarial Seal this 20ᵗʰ day of Tue, Aug 20, 2019.


Notary Signature _Anne L. Janssen_____

Notary Printed: Anne Janssen

My Commission Expires: _10·13·2021_          County of Residence: Salt Lake

Notary Public - State of Utah
**ANNE L. JANSSEN**
Commission #697015
My Commission Expires
October 13, 2021