IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, ) | |
| SECRETARY OF LABOR, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. 09-988 (WB/ETH) |
| ) | |
| JOHN J. KORESKO, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAN SPONSORS' REPLY MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES**

Undersigned counsel, on behalf of Cavaliere Professional PC; Crandall Investments, Inc.; James M. LaRose, D.O. & Associates; Omni Management and Consultants Unlimited, Inc.; Brigham City Arthritis Clinic; John Roland Enterprises, Inc.; FBSS f/b/p Joanna Roland; and Perfume Center of America, Inc. (collectively, the "Plan Sponsors") submit this reply in response to Wilmington Trust's Response In Opposition to Plan Sponsors' Motion for Attorney's Fees (Dkt. #1874).

**MEMORANDUM OF LAW**

**I.    AN ACTION EXISTS UNDER ERISA**

Section 502(g)(1) of ERISA authorizes attorney fees in "*any* action under this title." 29 U.S.C. § 1132(g)(1) (emphasis added). Wilmington argues that, because no ERISA action has been brought specifically against Wilmington by Plan Sponsors, no attorney fees can be awarded. (Dkt. 1874, at 2). But that is not what the plain language of the statute permits. Section 502(g)(1) only requires that the motion for fees be brought within the context of *any* action under ERISA. There is no dispute that the underlying action in this case is one governed by ERISA.

1

*See Perez v. Koresko*, 86 F. Supp. 3d 293, 373 (E.D. Pa. 2015). Wilmington is thus a court-appointed trustee in an ERISA action and has acted in a way that has damaged participants in that ERISA action. Attorney fees in this instance are therefore appropriate and Wilmington's efforts to evade accountability should be rejected.

## II.     PLAN SPONSORS HAVE SHOWN SUCCESS ON THE MERITS

Wilmington next argues that Plan Sponsors have not achieved success on the merits. (Dkt. #1874, at 4) because the victory of Plan Sponsors was only a "procedural" victory. Wilmington cites to an unpublished decision from the Southern District of Alabama in support of its argument. (*See* Dkt. #1874, at 4 (citing *Olds v. Ret. Plan of Int'l Paper Co.*, No. CIV.A. 09-0192-WS-N, 2011 WL 2160264 (S.D. Ala. June 1, 2011)). A careful review of this case reveals that it supports the position of Plan Sponsors—not the position of Wilmington. In *Olds*, the court considered whether a procedural remand was "success on the merits." *Olds*, 2011 WL 2160264, at *2. The court noted the distinction between procedural "victories" and procedural "remedies." Procedural victories do not ultimately impact the outcome of the claims, but procedural remedies "follow a substantive victory, which victory necessarily reflects some degree on the merits of the litigated claim." *Id.* Substantive victories justify an award of attorney fees. *Id.* at *5.

Here, Wilmington unilaterally misused $4.6 million of trust assets and attempted to collect even more for inappropriate tax withholdings. Plan Sponsors opposed these efforts and correctly argued that proper administration of plan assets involved the issuance of Forms 1099-MISC and no withholding. The court agreed, ordering Wilmington to return the withheld funds, directing Wilmington to issue Forms 1099-MISC to the appropriate persons, and prohibited Wilmington from engaging in further withholding. This was not a purely procedural victory. It was instead a remedy which prevented the potential misappropriation by Wilmington of millions

of dollars in funds that rightfully belong to the Trust participants and beneficiaries. And, under the case cited by Wilmington, such a procedural remedy supports a fee award to Plan Sponsors.

No additional finding by this court was necessary in order for Plan Sponsors to achieve "success on the merits." Moreover, ERISA case law has repeatedly stated that a party does not need to be a "prevailing party" in order to be awarded attorney fees. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 252, 254 (2010); *Templin v. Indep. Blue Cross*, 785 F.3d 861, 865 (3d Cir. 2015). A formal court order is not even necessary. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 687 n.8 (1983). Instead, once a party has demonstrated it has been even partially successful, a court weighs five factors to determine whether attorney fees are appropriate: (1) "the offending parties' culpability or bad faith"; (2) "the ability of the offending parties to satisfy an award of attorney's fees"; (3) "the deterrent effect of an award of attorney's fees"; (4) "the benefit conferred upon members of the pension plan as a whole"; and (5) "the relative merits of the parties' positions." *See Templin v. Indep. Blue Cross*, 785 F.3d 861, 867 (3d Cir. 2015).

Plan Sponsors now address each factor and Wilmington's arguments in relation thereto.

### III. THE FACTORS IN THIS CASES JUSTIFY ATTORNEY FEES

a. Wilmington's Culpability or Bad Faith

"A party is culpable if it is 'blamable; censureable or at fault.'" *Templin*, 785 F.3d at 867 (alterations omitted) (quoting *McPherson v. Employees' Pension Plan of American Re-Insurance Co.*, 33 F.3d 253, 257 (3d Cir. 1994)). Wilmington claims that "at all times Wilmington Trust has endured to follow the directions of Court and the requirements of applicable law." (Dkt. #1874, at 5). As detailed in Plan Sponsors' earlier brief, however, the record shows otherwise. (*See* Dkt. #1869, at 3–4). Wilmington repeatedly failed to seek appropriate tax guidance; it acted unilaterally and without requesting Court permission or participant or beneficiary input. As a

result, Wilmington put large sums of money it held for the benefit of participants at risk of potential and unnecessary forfeiture, participants on whose behalf Wilmington had been appointed to act and protect.

    b.  <u>Wilmington's Ability To Satisfy An Award</u>

Wilmington fails to address this factor in its response. Plan Sponsors therefore rely on their arguments in connection with this factor from its opening brief. (*See* Dkt. #1869, at 4). Given the publicly available information regarding the financial health and stability of Wilmington, Plan Sponsors believe it would be disingenuous for Wilmington to argue that it does not have the ability to pay the attorney fees incurred by Plan Sponsors due to Wilmington's own misapplication of tax law.[1] *See also Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir. 1987) ("We cannot conclude that Monkelis lacks the ability to satisfy the fee award since Monkelis has never argued that he is unable to satisfy [the] claim . . . .").

    c.  <u>Deterrent Effect</u>

Wilmington argues that fees will have "no deterrent effect, as Wilmington Trust has acted diligently and in its best ability to comply with the directions of the Court and applicable law at all times." (Dkt. #1874, at 6). Plan Sponsors dispute Wilmington's claims with regards to its diligence. Failing to seek IRS guidance, then effectively forgetting about the issue until after distributions began is not "diligent," much less "prudent." But even if Wilmington's statement were to have some merit, in determining this factor the Court is required not only to consider the likelihood a fee award would deter Wilmington from committing bad behavior in the future, but

---

[1] For example, according to its website, Wilmington is a wholly-owned subsidiary of M&T Bank. *See* https://www.wilmingtontrust.com/wtcom/index.jsp?section=About. M&T Bank's most recent Form 10-Q, filed with the SEC on August 5, 2019, reports that as of June 30, 2019, M&T has over $121 billion in assets and more than $1.56 billion in income for the second quarter ending June 30, 2019. *Available at* https://ir.mandtbank.com/static-files/acbfdd25-5462-4d44-ac14-097ba9e93f10.

"whether an award of attorneys' fees . . . would deter *other* persons acting under similar circumstances." *Hardt*, 560 U.S. at 249 n.1. An award of attorney fees in this case will put other court-appointed trustees on notice that nothing except for careful and deliberate treatment of plan assets will be tolerated. An award of attorney fees in this instance will act as a reminder to any court-appointed trustee that it is not justified in withholding plan assets to offset potential tax liability without obtaining the appropriate IRS or court guidance *before*, rather than after, plan assets are withheld.

    d.   Benefit Conferred Upon Members of the Trust

Wilmington argues that no benefit has been conferred upon members of "the Trust as a whole, as most members have not been involved in these proceedings." (Dkt. #1874, at 6). This argument misses the mark. It is precisely *because* most members of the Trust have not had the capacity or ability to participate in the proceedings that Plan Sponsors should be awarded attorney fees for taking action on their behalf. The objections raised by Plan Sponsors did not benefit only Plan Sponsors. Instead, Plan Sponsors' objection relating to proper tax reporting and the return of plan assets benefitted *all* members of the Trust. Plan Sponsors undertook its motion and pursued an argument for which they will now bear the burden alone, even though all members of the Trust are now better off, unless Wilmington is properly held accountable for its serious mistakes.

Wilmington seeks to diminish the gravity of its misdeeds by claiming it has made no "profit" from its role as a court-appointed fiduciary. Wilmington may not have put Trust assets in its pocket, but its conduct was clearly intended to allow Wilmington to avoid imagined IRS penalties at the expense of plan participants and beneficiaries. Wilmington's employment as a court-appointed trustee, and the resulting fees it has been awarded from assets of the Trust, are

certainly benefits to Wilmington that should also be taken into account in equitably restoring Plan Sponsors. It is entirely appropriate for Plan Sponsors to expect that a portion of the fees paid to Wilmington for its administration of plan assets be used to cover the expenses Plan Sponsors incurred to make sure that Wilmington was not permitted to go forward with a distribution plan that would have resulted in severe and completely unnecessary tax consequences for a significant number of members of the Trust. As has been made obvious, the only reason Wilmington engaged in withholding was to benefit itself, regardless of the adverse impact on the Trust participants whose interests Wilmington had been appointed to protect. Wilmington should not now be rewarded for such behavior by further avoiding reimbursement of the Plan Sponsors' legal expenses incurred in thwarting its self-serving conduct.

    e. Relative Merits of Parties' Position

Wilmington asserts that because "no findings have been made regarding the relative merits of the parties' positions" no attorney fees can be awarded. Findings specifically decrying Wilmington's position, however, are not a requirement for attorney fees. *See McPherson*, 33 F.3d at 258 ("[W]e believe there will be cases in which the relative merits of the positions of the parties will support an award even in the absence of bad faith litigating."). Here, the merits of Plan Sponsors' arguments in favor of issuance of Forms 1099-MISC and against the continued withholding by Wilmington were necessarily and implicitly deemed to outweigh the merits of the arguments made by Wilmington in favor such withholdings when this Court ordered the issuance of Forms 1099-MISC, the refund of previous withholdings, and further ended all future withholdings by Wilmington. A specific finding by this Court against Wilmington is not required in order to grant Plan Sponsors relief in the form of compensation for the fees spent in making their arguments against improper withholding.

## CONCLUSION

For the foregoing reasons, Plan Sponsors request that the Court grant Plan Sponsors' request for attorneys' fees and award attorneys' fees in the amount of $18,754 plus any additional fees incurred in bringing their motion and this reply.

    Respectfully submitted,

/s/ W. Waldan Lloyd
W. Waldan Lloyd
**DURHAM JONES & PINEGAR**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Phone: (801) 297-1330
Fax: (801) 415-3500
Email: wwlloyd@djplaw.com

## CERTIFICATE OF SERVICE

I certify that on September 23, 2019, I electronically filed the foregoing **PLAN SPONSORS' REPLY MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES** with the Clerk of Court by using the CM/ECF system, which will provide notice and an electronic link to this document to all registered CM/ECF users.

/s/ W. Waldan Lloyd
W. Waldan Lloyd